## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited
liability company,

      Plaintiff,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant.

_____/

### PLAINTIFF'S MOTION FOR LEAVE TO REOPEN FACT DISCOVERY, TO COMPEL DEFENDANT TO PRODUCE IMAGES OF HIS HARD DRIVES, AND FOR SANCTIONS

      Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), hereby files the following Motion for Leave to Reopen Fact Discovery, to Compel Defendant John Doe ("Defendant") to Produce Images of His Hard Drives and responses to Deposition Questions, and for Sanctions (the "Motion").

### I.    INTRODUCTION

      Plaintiff's expert, Patrick Paige, has uncovered compelling evidence that Defendant destroyed evidence on both his Linux-based laptop (Lenovo X220) and Windows-based desktop computer (ASRock D110). Specifically, the System Log Files establish that the Linux operating system ("OS") was

1

installed *in the middle of this litigation*, and that the Windows OS received a massive update also in the middle of this litigation. The OS reinstallation and massive update deleted critical data from Defendant's hard drives. This indicates that Defendant's proposed "search string" protocol was designed to ensure that Plaintiff would never discover this destruction of critical computer evidence. Plaintiff is now trying to salvage what evidence–if any–is recoverable so that it can support its case. Defendant's misconduct has eviscerated the integrity of any evidence he has selectively produced to date in this matter.

The discovery violations do not end there. Mr. Paige's examination also revealed the existence of yet another undisclosed OS – one storing an adult movie file originating from the BitTorrent network that *stars* an adult performer featured in one of Plaintiff's works in this matter. The System Log Files also contain multiple instances of the term "torrent" in files that Defendant had not produced. Finally, Defendant has refused to clarify his terse responses–at points, just one word–to Plaintiff's written deposition questions regarding his attorney fee arrangement and has refused to answer any follow up questions.

For the foregoing reasons, Plaintiff respectfully moves this Court for: (1) entry of an order reopening fact discovery for the limited purpose of (a) compelling Defendant's production of forensically sound images of his Lenovo X220, ASRock D110, and any other devices not previously disclosed to Plaintiff for full examination; (b) compelling responses to Plaintiff's deposition questions and follow up questions posed to Defendant; and (2) entry of an order sanctioning Defendant for his discovery abuses, and any additional relief against Defendant that the Court deems just and proper.

## II.   FACTUAL BACKGROUND

### A.   DEFENDANT'S DUTY TO PRESERVE BEGAN IN JANUARY 2020

Defendant is a computer network engineer, holds a degree in computer science, and has obtained certifications in various technical skills, including "Certified Hacker Forensic Investigator." *See Def.'s Expert Report*, D.E. 62-1, at 5. Defendant even designated himself as an expert in this matter. There can be little doubt that Defendant knows how computer data is recorded and stored on his devices.

Defendant has also known about this litigation since at least January 2020 when Frontier first notified him of Plaintiff's pending subpoena. *Def.'s Depo.* 116:24–117:17 (Ex. 1). When asked at his deposition whether he was

3

"aware that [he] did in fact have to preserve evidence" after "[he] receive[d] the notice of the subpoena," Defendant replied "Sure." *Id.* at 174:25–175:6. Further, on February 5, 2020, before its Complaint was even filed, Plaintiff sent defense counsel[1] a comprehensive Notice of Duty to Preserve Evidence (Ex. 2). It instructed Defendant to "act immediately to preserve potentially relevant Documents and ESI," including "to immediately . . . suspend features of" his computers routine destruction, to guard against deletion, and to even "image" his devices. *Id.*

The notice removes any doubt about Defendant's awareness of his duty to preserve his ESI. And only now–after months of objections and the lapse of the fact discovery deadline–has it become clear that Defendant violated these express instructions and his duty to preserve. Not surprisingly, Defendant fought back every request from Plaintiff to produce any evidence that would reveal this destruction of evidence, unnecessarily increasing Plaintiff's litigation expenses and the Court's resources. When confronted about these issues, Defendant had little to say about the missing evidence during the parties' conferrals.

---

[1] Defendant has been represented by five separate law firms throughout this action, all hosting attorneys experienced in BitTorrent litigation. At the time, Defendant's attorney was Daniel Simon of Lalchandani Simon PL.

**B.     DEFENDANT DESTROYED CRITIAL DATA ON HIS HARD DRIVES**

Despite Defendant's hard-fought efforts to prevent production of System Log Files, Defendant reluctantly agreed to produce some of those files after a day-long evidentiary hearing that highlighted the import of those files. As established at the April 25th hearing, those files are critical because they record and store information about the user, content, and use of a computer device including but not limited to dates and times of software installation (or uninstallation), use of software, and use of deletion/wiping software.

The reason for Defendant's defiance is now clear.

Mr. Paige's examination establishes that all System Log Files on Defendant's laptop (the Linux-based device) prior to June 2, 2020[2] have been destroyed. In fact, the evidence proves that the OS was outright *installed* on or around June 2, 2020. Decl. Paige., at ¶10 (Ex. 11). The reinstallation of an OS on a computer deletes and/or overwrites critical data previously stored on the hard drive. Decl. Paige., at ¶11 (Ex. 11). In this case, that includes data from the relevant period of infringement.

---

[2] This date is in UTC date and time. In Eastern Standard time, the date is June 1, 2020.

5

That timing is both probative and incriminating. Defendant had purchased that device in 2017 and testified that he used the laptop "[a]t least an hour a day." *See Def.'s Depo.* at 179:8–10. The Linux device should have thousands of System Log Files dating back to 2017, or, at a minimum, it should have logs from at least January 2020, when Defendant was required to preserve evidence. Yet nothing in the System Log Files establishes that the device was ever used prior to June 2, 2020.  More concerning, this date is *just five days after* Plaintiff filed its Motion for Leave to Serve a Third Party Subpoena Prior to Rule 26(f) Conference. *See* D.E. 11. Because Defendant was aware of this litigation, he would have known that his identity was likely to be revealed to Plaintiff after the filing of this motion.  Based on the available evidence, Plaintiff can only conclude that Defendant reinstalled a new OS on his Linux device in the middle of this litigation. This is significant because reinstallation of a new OS over an existing OS deletes and/or overwrites critical, prior existing data. Decl. Paige., at ¶11 (Ex. 11).

Similar issues plague Defendant's desktop computer (the Windows-based device). Indeed, all Windows Event Logs[3] preceding November 25,

---

[3] Windows Event Log files record events that occur on a computer running the Windows operating system. It records significant occurrences in the

2020 on that device have been destroyed. The absence of Windows Event Logs is consistent with a major update to the OS. Decl. Paige, at ¶18 (Ex. 11). This too occurred long after Defendant learned of this lawsuit as well as *after* Defendant filed his Answer and counterclaim for declaratory relief. D.E. 23.

As a computer expert, Defendant must have known the impact that update would have, yet, again, never disclosed it and relentlessly fought any discovery into it. Indeed, Plaintiff had specifically requested documents concerning "the installation and update of the operating system(s)" as early as November 12, 2021. *See Def.'s Resp. 2nd Set RFP* (Request for Production No. 3) (Ex. 3). Defendant objected to that Request, conclusively declaring that it "is irrelevant to this dispute" and "[o]perating system files have no connection to the claims at issue[.]" *Id.* Despite the clear need of these documents to authenticate the evidence, Defendant maintained that "[n]o documents will be produced." *Id.*

---

system including but not limited to: turning the computer on, logging on and off the computer, remote desktop activity, plug-and-play events, the connection of external drives to the system, and computer clock alterations and inaccuracies, etc. Windows Event Log files specifically keep track of events using dates, times, user under which the event was initiated, computer name, and the program that cause the event. Decl. Paige., at n.3.

Rather than be candid about the missing data, Defendant stonewalled discovery and was content to let fact discovery pass without this coming to light. This Court held at the April 25th hearing that the System Log Files *are* relevant. *See Hearing Tr.*, at 108:13–16 (Ex. 3). This implicitly overrules Defendant's prior objections based on the alleged irrelevance of the System Log Files. Defendant, however, has failed to supplement the remainder of these files. *See* Fed. R. Civ. P. 26(e)(1). Now, the only way Plaintiff can attempt to determine if relevant files still exist on the computers is to have its expert examine a complete, forensically sound copy of those devices. Decl. Paige, at ¶¶15, 19 (Ex. 11).

### C.   DEFENDANT FAILED TO PRODUCE ALL DOCUMENTS RESPONSIVE TO THE SEARCH TERM "TORRENT"

Mr. Paige's examination of the System Log Files revealed additional discrepancies. A keyword search of the term "torrent" uncovered that the term exists in the following Windows files: "Hiberfil.sys," "pagefile.sys," "software.log1," and "software.log2."   Decl. Paige, at ¶¶26–27 (Ex. 11). Defendant did not produce any of these files in response to Plaintiff's previous request for a keyword search of the term "torrent." Plaintiff is thus unable to rely on the accuracy of even these basic searches or trust that Defendant has

performed those searches in good faith. Mr. Paige's findings call into question the accuracy of Defendant's own search results–a protocol originally proposed by Defendant.

Indeed, these search strings form the bedrock of his case: "Doe has searched *all his devices*[4] and has found no evidence of infringing works. John Doe has also produced results from his hard drives with the search string results demonstrating non-infringement."[5] *Resp. Oppo. Sched. Deadlines*, D.E. 41, at 1 (emphasis added). But the reinstallation and update of the OS on the devices destroyed the data from the relevant period; the search strings "results" are patently unreliable.

---

[4] Despite Doe's instance that he has searched Strike 3's proposed terms on all media, Doe's expert report–filed after fact discovery closed–shows that Defendant's did not search all media. *Cf.*, *e.g.*, D.E. 62-1.

[5] Defendant also used this excuse to forestall discovery. *See Def.'s Ltr. Dated Dec. 18, 2021* (Ex. 5) ("[T]here is no evidence of 'hard drive' wiping since we have provided you with tens of megabytes of data extracts from that hard drive."); *Def.'s Ltr. Dated Jan. 31, 2022* (Ex. 6) ("If the movies exist on the drive, then they exist on the drive. The movie data exists in static form in the form of a string of bytes that will pattern match to the search strings you provide. Either party can lay a foundation with search string results as the custodian of records can testify that a search string was looked for and a result was returned."). It does not take an expert in computer forensics to see the bad faith of these responses.

### D.   DEFENDANT FAILED TO DISCLOSE OR PRODUCE ANOTHER OPERATING SYSTEM THAT EXISTED ON HIS HOME NETWORK

Evidence suggests that Defendant has not disclosed all relevant computer devices. The System Log Files for the Windows computer contains a critical ShellBag file that establishes the user accessed a pornographic work starring adult performer Gina Gerson. Decl. Paige, at ¶22 (Ex. 11). ShellBags are Windows operating system artifacts that contain information related to the user's browsing history, "as well as details for any folder that might no longer exist on a system (due to deletion or being located on a removable device)." *Id.* at ¶20. Here, the ShellBag file demonstrates the user accessed, via the home network, a folder containing media of Gina Gerson on December 25, 2018.[6] *Id.* at ¶22. Here, the actress's name not only appears multiple times in Plaintiff's Additional Evidence, but she is featured on one of the works-in-suit: "Vacation with Benefits." D.E. 17-1 (Work 13, PA0002149851).

The evidence contained in this ShellBag further establishes the existence of an undisclosed Windows device that contains a username

---

[6] This also undermines Doe's testimony that he never "stored pornography on any of [his] disclosed computer devices," *see Def.'s Depo.* at 94:1–3, and that he never "used a BitTorrent client[.]" *Id.* at 87:16–17.

consisting of Defendant's first name and last initial.[7]  During their conferrals, Plaintiff asked Defendant to clarify the origin of the username and whether he possessed another computer device that had not been disclosed, but Defendant refused to explain the discrepancy.

## E.   DEFENDANT EVADED PLAINTIFF'S DEPOSITION QUESTIONS AND REFUSES TO ANSWER REASONABLE FOLLOW UP QUESTIONS

Plaintiff has long suspected that Defendant's unreasonable obstinance to discovery is not the result of zealous advocacy, but something more insidious: a fee-sharing agreement allowing Defendant to profit from the litigation that has perversely incentivized Defendant to destroy evidence and block discovery into that destruction. He has already stonewalled discovery into that arrangement during his deposition, and Defendant's strategy has since expanded to evasion. *See* D.E. 53 (instructing Defendant not to respond to deposition questions and threatening sanctions). Defendant's continued obstruction of his deposition has been telling.

---

[7] In the interests of maintaining Defendant's privacy, Plaintiff will simply refer to the username as "Username." Plaintiff refers to this other device as "undisclosed" because the Linux-based device is not a Windows-based computer, and the system logs produced for the Linux-based subject computer do not contain the Username. It is however possible that the installation of the Linux OS on June 2, 2020, destroyed any evidence that the Windows OS and the Username existed therein at one point.

Despite insisting that there was nothing unethical about the agreements, on April 22, *just three days before the evidentiary hearing*, both Mr. French and Mr. Edmondson amended their fee agreements to modify the fee-sharing language in their agreements.[8] *See* (Exs. 7 & 8). At the April 25th hearing, Plaintiff withdrew over half of the certified deposition questions. Defendant, in turn, agreed to respond to four questions in writing with the understanding that reasonable follow up questions would also be considered. *See Hearing Tr.* 106:7–16. When Defendant responded to Plaintiff's questions on May 2, his responses appeared to be based on the terms of the amended fee agreements, and not the original fee agreements. *See Def.'s Resp. Depo.* 9 (Ex. 9). Defendant then declined to answer any of Plaintiff's follow up questions, including clarification on whether Defendant's answers were based on the original or amended version of the agreements. (Ex. 10). He also refused to clarify any of these responses during the parties' conferrals.

---

[8] In a bizarre, tacit admission that the amended language divested Defendant of a benefit, i.e., the windfall he could have received had he been awarded attorneys' fees, both agreements expressly discuss the valuable "consideration" counsel will give Defendant in exchange for the modification of those terms. Mr. Edmondson agreed to "pay for [his] outbound plane ticket to the hearing" and Mr. French agreed to "discount [his] total bill . . . by one (1) billable hour." *See* (Exs. 7 & 8).

As set forth in Plaintiff's prior motion to compel, D.E. 53, these questions are relevant to Defendant's counterclaim and injury for attorneys' fees. His discovery misconduct, lack of candor, and refusal to cooperate in discovery has set this litigation back months. Further discovery is not only appropriate, but necessary to rescue this matter from Defendant's evasions, and ensure it is resolved on the merits.

## III.   LEGAL STANDARD

"Courts in the Middle District of Florida have concluded that a motion to reopen discovery constitutes a modification of the Case Management and Scheduling Order." *Robles v. Costco Wholesale Corp.*, No. 18-1453-T-17-JSS, 2019 WL 8014502, at *2 (M.D. Fla. Sept. 13, 2019) (collecting cases). "The court has 'broad discretion over the management of pre-trial activities, including discovery and scheduling.'" *Chittenden v. Hillsborough Cty.*, No. 19-1504-T-60-AAS, 2020 WL 7054551, at *2 (M.D. Fla. Dec. 2, 2020) (quoting *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001)). Fed. R. Civ. P. 37(a)(3)(B)(i)–(iv) permits "[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection." And, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or

respond." *Id*. When potential ESI still exists, the Court may compel discovery of that material prior to adjudicating a full motion for sanctions. *Cf.*, *e.g.*, *Lima v. Lee*, No. 20-82399, 2021 WL 6197773, at *2 (S.D. Fla. Dec. 30, 2021); *Brown v. SSA Atl., LLC*, No. 19-303, 2021 WL 1015891, at *4 (S.D. Ga. Mar. 16, 2021). "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require … the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. (a)(5)(A).

## IV.    LEGAL ANALYSIS

### A.    GOOD CAUSE AND EXCUSABLE NEGLECT EXIST

"A party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, No. 16-1477-T-36-CPT, 2018 WL 4558442, at *3 (M.D. Fla. July 9, 2018) (quoting *Payne v. C.R. Bard, Inc.*, 606 Fed. Appx. 940, 944 (11th Cir. 2015)). "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Id.* (internal citations omitted).

"To determine if there was excusable neglect, the court considers the following factors: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685–86 (11th Cir. 2013) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993)). "[P]rimary importance" is on "the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration." *Id.* (citing *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996)). Here, all four factors favor the reopening of fact discovery.

## 1. DEFENDANT WILL NOT BE PREJUDICED BY A BRIEF REOPENING AND EXTENSION OF FACT DISCOVERY

Plaintiff's request to reopen discovery will not prejudice Defendant.  In fact, a full examination of the hard drives benefits Defendant if Plaintiff's expert can recover relevant, deleted items. As Plaintiff learned at the hearing, Defendant's hard drives contain approximately 100 gigabytes or over 100,000 deleted files in its "unallocated space" that may prove, or disprove, the parties'

claims or defenses. *See Hearing Tr.* at 58:17–20. Thus, a fulsome hard drive examination could actually preclude sanctions or entry of an adverse inference against Defendant and may even support Defendant's counterclaim. On the other hand, denying Plaintiff's motion would only reward Defendant for destroying ESI and hiding the evidence until after the close of fact discovery. "[W]hile there is no danger of prejudice to [Defendant] in extending the deadlines, the danger of prejudice to Plaintiff in denying the motion would be severe." *Andrews v. Marshall*, No. 16-814-FTM-99-MRM, 2019 WL 11638837, at *2 (M.D. Fla. Mar. 20, 2019).

### 2.   THE LENGTH OF THE DELAY WOULD BE SHORT AND REOPENING FACT DISCOVERY ENSURES THIS CASE IS TRIED ON THE MERITS

The delay to the proceedings will likely be negligible. Plaintiff's motion seeks limited discovery to examine images of Defendant's hard drives and the other undisclosed computer device. Thus, reopening fact discovery is truly for the limited purpose of compelling Defendant to produce materials that are subject to expert review.[9]   Fortunately, expert discovery is still ongoing. *See Third Am. Sched. Order*, D.E. 86. Defendant's experts will have the

---

[9] The dispositive motion deadline is also July 20, and the trial date January 30, 2023. D.E. 86; *see* M.D. Fla. R. 3.08(b).

opportunity to address the now obvious foundational issues concerning the hard drives and amend any opinions based on the defective searches. *Cf.* Fed. Rs. Evid. 702(c) & 901(b)(9). Lastly, reopening fact discovery ensures this case will be tried on the merits. Indeed, as detailed above, results of the examination may preclude sanctions or an adverse inference order against Defendant. It is as much to Defendant's benefit as it is to Plaintiff's benefit.

### 3.   ANY DELAY WAS CAUSED AND AGGRAVATED BY DEFENDANT'S OWN MISCONDUCT

Plaintiff has diligently pursued evidence throughout this matter, and Defendant has met each of those requests with hostility and evasion. Plaintiff requested Defendant produce images of his hard drives in November 2021. Defendant, however, refused to produce those drives and instead proposed the parties use search strings instead. *Def.'s Resp. 2nd Set RFP* (Request for Production No. 1). While Plaintiff agreed to that compromise, it "could not have been expected simply to take his word for the fact that he had not infringed." *Cf. Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015).

Plaintiff, thus, requested evidence that would validate Defendant's responses, and it was only after countless conferrals, motions, and two evidentiary hearings, that Defendant finally agreed to produce some System

Log Files. Defendant produced these files after the fact discovery deadline. This should have validated Defendant's search results, but instead, it has done the opposite and proven just how hollow Defendant's discovery responses have been. Although Plaintiff immediately conferred with Defendant to resolve this dispute, he refused to provide any clarification or supplemental production. It appears that Defendant intends to stand on his flagrantly defective discovery responses and avoid any serious arguments on the merits. Defendant has certainly not accepted any responsibility.

The delay in discovering this information was the result of Defendant's delinquency. In good faith, Plaintiff agreed to compromise on a less invasive discovery plan. Defendant, however, wasted Plaintiff's time and effort presenting search string results that he very likely knew would yield no results, and made every effort to avoid revealing evidence that would expose this defect. Defendant should not benefit from his misconduct.

### 4.   AT ALL TIMES PLAINTIFF HAS ACTED IN GOOD FAITH

Plaintiff has at all times acted in good faith. Indeed, it has diligently tried in multiple conferrals to resolve all discovery issues and obtain any information from Defendant that could explain the destruction of log files. Unfortunately, Defendant's deception and obstinance has made this motion

necessary. Plaintiff could not have known, prior to reviewing the System Log Files, that Defendant had destroyed critical files and thus could not have brought this motion sooner.

### B. THE COURT SHOULD COMPEL PRODUCTION OF ALL OF DEFENDANT'S HARD DRIVE IMAGES AND ANY UNDISCLOSED DEVICES

For the reasons discussed above, Plaintiff respectfully requests an order compelling production of the forensically sound image for all Defendant's hard drives (Linux-based device and Windows-based device) so that it can evaluate the extent of ESI destruction and determine if any relevant data remains undestroyed. Further supporting that relief, after Plaintiff filed its original motion to compel, D.E. 52, Defendant designated himself as an expert. *See* D.E. 62-1. But "a party cannot withhold or fail to produce information or documents and then feed those documents to its expert as a backdoor attempt to later introduce the evidence." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 940 (N.D. Ill. 2021).

Plaintiff is entitled to review all the same evidence made available to Defendant's experts, that is, the hard drives.[10] *See* Fed. R. Civ. P.

---

[10] Separate expert reports by Mr. Yasumoto and Joel Brillhart also indicate that they reviewed Defendant's imaged hard drives. Plaintiff's original motion

26(a)(2)(B)(ii); *Digital Assurance Certification, LLC v. Pendolino*, No. 17-72-ORL-41-TBS, 2019 WL 161981, at *5 (M.D. Fla. Jan. 10, 2019) ("[B]oth experts need to search the hard drive for traces, remnants, and residue and then follow those trails, wherever they lead.").

Indeed, in Plaintiff's Request for Production No. 19 (Set No. 1), it requested, "All DOCUMENTS and COMMUNICATIONS that contain the content listed in Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi) related to YOUR retained experts for work in this ACTION." Defendant's only objection was that "expert disclosures outside of the requirements of Rule 26," and responded that the "Expert Reports will be produced *with underlying data relied upon* when the expert reports are submitted." Yet to date, Defendant has not supplemented his production with those materials. *See* Fed. R. Civ. P. 26(e).

Plaintiff respectfully requests an order compelling production of the complete, imaged hard drives so that it can evaluate and cross-examine those expert opinions. Additionally, to the extent another, undisclosed device exists, *supra*, Plaintiff respectfully requests the Court compel Defendant to disclose information about that device as well as a complete image of that device.

---

to compel was filed before Defendant revealed that he would designate himself an expert.

**C.   THE COURT SHOULD COMPEL DEFENDANT'S RESPONSES TO ALL FOLLOW UP DEPOSITION QUESTIONS**

Defendant's obfuscations extend beyond the technological. His refusal to answer the most basic questions about fee agreements has thrown his oral and now written deposition in arrears. By amending his agreements and then answering based on those amendments, he has robbed Plaintiff, again, of uncovering the likely ulterior motive–a financial windfall–to Defendant's counterclaim. Further, "an evasive or incomplete . . . answer . . . must be treated as a failure to . . . answer[.]" *See* Fed. R. Civ. P. 37(a)(4). This line of questioning is made more important now that Defendant has designated himself as an expert. Indeed, as an expert, he is subject to disclosures under Rule 26(a)(2)(B)(vi) (information related to "compensation to be paid [to the expert] for the study and testimony in the case" is discoverable) and Rule 26(b)(4)(C)(i) (communications between an attorney and an expert "relate[d] to compensation for the expert's study or testimony" is also discoverable). Plaintiff, again, respectfully requests that the Court reopen fact discovery for the limited purpose of compelling Defendant to respond to, in good faith, Plaintiff's follow up questions.

### D.    DEFENDANT'S            MISCONDUCT            WARRANTS SANCTIONS

"[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). The Court may sanction a party for failing to supplement discovery under, Fed. R. Civ. P. 37(c)(1), and "if the . . . requested discovery is provided after the motion was filed[,] the court must . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Lastly, "if a party must seek relief from the Court to compel a recalcitrant party to respond [to deposition questions], the moving party may be awarded reasonable expenses including attorney's fees incurred in compelling the responses." MIDDLE DISTRICT OF FLORIDA CIVIL DISCOVERY HANDBOOK, at § I.E.3.

Defendant's discovery misconduct is legion. Plaintiff only recently discovered evidence establishing that Defendant, a computer expert, did not preserve the relevant data on his computer device. And Defendant did not, in the two years of litigation, disclose that fact. Instead, he actively impeded any investigation into the integrity of his computer search results. Presented with

the System Log Files, Plaintiff has now uncovered concerning evidence establishing that Defendant has used his "search string" compromise as a fig leaf to cover up the fact that relevant data has been destroyed. Defendant cannot on one hand proclaim that he is an expert on computers and then act like a Luddite who had no idea what the system updates and OS reinstallation would do.

Defendant's flagrant disregard for the rules and the integrity of the court system has now culminated in Plaintiff's *fourth* motion to compel. Defendant's misconduct has forced Plaintiff to request a complete image of each hard drive–supplemental production of data relied on by Defendant and his experts–as well as supplemental production of the undisclosed computer device. And Plaintiff must resort to the Court's powers again to obtain complete responses to Plaintiff's deposition questions.

Defendant's actions have eviscerated the reliability of any evidence he has selectively (and surreptitiously) produced to date, making the withheld, and clearly responsive materials that much more critical to this matter. That Plaintiff has wasted months corroborating discovery that Defendant likely knew was defective should not go unaddressed.

Accordingly, Plaintiff respectfully requests an order awarding Plaintiff its expenses in preparing for the April 12 remote hearing, the April 25 in-person hearing, and the instant motion, as well as any other expenses or relief the Court deems appropriate.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests entry of an order: (1) reopening fact discovery; (2) compelling production of the forensically sound image of Defendant's Lenovo X220 hard drive, the forensically sound image of Defendant's ASRock D110 hard drive, information about the device associated with the newly discovered Username, and if that device is not one that was previously disclosed in his Response to Interrogatory No. 3 (Set One), to produce a complete forensically sound image of that hard drive, and Defendant's responses to Plaintiff's follow up deposition questions; and (3) sanctioning Defendant for his discovery violations; and (4) providing any other relief that this Court deems just and proper.

Dated: May 27, 2022.                    Respectfully submitted,

                                        /s/ Christian W. Waugh
                                        Christian W. Waugh [FBN 71093]
                                        WAUGH GRANT PLLC
                                        201 E. Pine Street, Suite 315
                                        Orlando, FL 32801
                                        Email: cwaugh@waughgrant.com
                                        Telephone:  321-800-6008
                                        Fax:   844-206-0245

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), undersigned counsel conferred with Defendant's counsel on May 16 and May 19 via telephone. The parties were not able to resolve any of the discovery issues.

/s/ Christian W. Waugh

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2022, a true and correct copy of the following documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh

25