# EXHIBIT 2



100 SE 2nd St., Ste. 2000<br/>
Miami, FL 33131<br/>
Mamonevillalon.com<br/>
Tel: (786) 209-2379<br/>
Tyler@mvlawpllc.com

February 6, 2020

**Via Electronic Mail**
Daniel J. Simon, Esq.
Lalchandani Simon PL
25 Southeast Second Avenue, Suite 1020
Miami, FL 33131
danny@lslawpl.com

Re:   Motions to Quash Filed in Strike 3 Bill of Discovery Case; Case No. 2019-032122-CC-05
      IP Addresses 47.146.41.71, 47.200.122.198 and 47.197.99.186

Dear Mr. Simon:

  As you are aware, I represent Strike 3 Holdings, LLC.  We are in receipt of the multiple Motions to Quash filed by your firm in my client's Miami-Dade County Pure Bill of Discovery cases.  As you can see, these suits are filed against the infringer using the applicable IP address cited in the Complaint.  It appears you are filing these Motions to Quash on behalf of non-party subscribers, who are not named in the suits.  While we do not agree with the arguments in your motions, to conserve time and resources, Strike 3 agrees to dismiss your clients and file subsequent actions against them in federal court in their district of domicile, as your Motions suggest.

  My client wishes to make very clear that it will not oppose motions for protective orders allowing your clients to litigate anonymously through discovery, and my client diligently adheres to the ruling as set forth by the Ninth Circuit in the Cobbler case, and will only proceed with an amended copyright action against a guilty party against whom there is corroborating evidence.

  Please be advised that nearly every attempt to quash Strike 3's subpoena in federal court has been denied, and in the one rare instance that a subpoena was quashed, it was based on a technicality not present in these actions.

  Strike 3's original purpose in bringing the Bill of Discovery cases was to enable it to conduct an investigation and determine the infringing party prior to suing an individual in federal court for copyright infringement.  This would enable Strike 3 to significantly reduce litigation against subscribers.  Additionally, it provides the opportunity for the subscriber to resolve claims before a federal action is brought against him or her or alternatively provide Strike 3 with evidence of innocence or financial hardship.

1

2

  Should you retain future clients that desire to be sued in federal court rather than remain as a third-party in a bill of discovery action, please feel free to contact me. Strike 3 will dismiss each one and file the action in federal court, allowing your clients and the court to preserve administrative resources required by your motions. Further, please see the attached notice of duty to preserve evidence.

  Thank you for your attention to this matter. Should you have any questions, feel free to contact me.

                Very truly yours,

                Tyler A. Mamone, Esq.

## **NOTICE OF DUTY TO PRESERVE EVIDENCE**

Please advise your clients of each individuals' duty to preserve evidence. The duty extends to data, documents and tangible things in the possession, custody and control of your client, and any agents, contractors, carriers, or other nonparties who possess materials that are relevant and/or reasonably anticipated to be subject to discovery in this action.

"Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; email; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; modems; routers; cloud based accounts; printouts; document image files; web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes. Also included is information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata.

Information subject to disclosure or responsive to discovery may be stored on your client's current and former computer systems and other media and devices including, but not limited to, computing devices, cell phones, fax machines, copy machines, smart phones, smart devices, Blackberry's and the like, modem, routers, cloud based accounts, magnetic/electronic media, phone systems, and card access systems.

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes, by the way of example and not as an exclusive list, potentially relevant information electronically, magnetically, or optically stored as: digital communication; spreadsheets and tables; word processed documents; accounting application data; image and facsimile files; sound recordings; project management application data; video and animation; databases; contact and relationship management data; calendar and diary application data; online access data; presentations; network access and server activity logs; computer aided design/drawing files; and back-up and archival files.

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to your client, but also in areas your client may deem not reasonably accessible. Your client is obligated to preserve potentially relevant evidence from both these resources of ESI, even if it does not anticipate producing such ESI.

Please preserve all information related in any way to the subject of the Lawsuit or your client, including all matters set forth in the Complaint for Bill of Discovery. Failure to properly preserve discoverable information may result in sanctions being imposed for spoliation of evidence or potential evidence.

### PRESERVATION REQUIRES IMMEDIATE ATTENTION AND INTERVENTION

Your client must act immediately to preserve potentially relevant Documents and ESI. Adequate preservation of Documents and ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. Your client must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your client's computers. Booting a drive, examining its contents, or running any application will irretrievably alter the evidence it contains and may constitute spoliation of evidence. Consequently, alteration and erasure may result from your client's failure to act to prevent loss or corruption of ESI.

### SUSPENSION OF ROUTINE DESTRUCTION

Your client is directed to immediately initiate a litigation hold for potentially relevant ESI, documents, and other tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. Your client is further directed to immediately identify and modify or suspend features of its information systems and devices in routine operation operate to cause the loss of potentially relevant ESI.

### GUARD AGAINST DELETION

Your client, or its agents, may take actions that result in the destruction of or otherwise altering of ESI, especially where internet access is concerned, and any custodian of ESI should take actions to prevent or guard against these occurrences.

### PRESERVATION BY IMAGING

Your client should take affirmative steps to prevent anyone with access to his or her data, systems and archives to modify, destroy, or hide electronic evidence on network or local hard drives or smartphone devices. With respect to local hard drives, one way to protect existing data is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be a clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve significant data that may exist in such areas as unallocated space, slack space, and the swap file.

### PRESERVATION IN NATIVE FORM

Your client should anticipate that certain ESI will be sought in the form or forms in which it is ordinarily maintained. Accordingly, your client should preserve ESI in such native forms, and should not select methods to preserve ESI that remove or degrade the ability to search the ESI by electronic means or make it difficult or burdensome to access or use the information efficiently.

Your client should additionally refrain from actions that shift ESI from reasonable accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### METADATA

Your client should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration, and distribution data and dates of creation and printing. For electronic mail, metadata includes all header routine data and base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, and CC, and fields.

### HOME SYSTEMS AND OTHER ESI VENUES

Though we expect that your client will act swiftly to preserve data on office workstations and servers, he or she should also determine if any home or portable systems may contain potentially relevant data. To the extent that partners, employees, or agents have sent or received potentially relevant emails or created or reviewed potentially relevant documents away from the office, your client must preserve contents of the systems, devices, and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smartphone, voice mailbox, or other forms of ESI storage).

Similarly, if employees or agents used online or browser-based email accounts or services to send or receive potentially relevant messages and attachments, the contents of these account mailboxes should be preserved.

### ANCILLARY PRESERVATION

Your client should further preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant items or that may be required to access, interpret, or search potentially relevant ESI, including logs, specifications, indices, naming protocols, file lists, network diagrams, flow charts, data entry forms, abbreviation keys, user ID and password rosters, and the like.

Your client must preserve any password, keys, or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals, and license keys for application required to access the ESI.

Your client must preserve any cabling, drivers, and hardware, if needed to access or interpret media on which ESI is stored. This includes tape drives bar code readers, zip drives and other legacy or proprietary devices.