## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

      Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant/Counter-Plaintiff.

_____/

### PLAINTIFF STRIKE 3 HOLDINGS, LLC'S
### *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND
### TESTIMONY OF DEFENDANT'S EXPERT MR. DAVID DICKSON

Pursuant to Fed. R. Evid. 702, Plaintiff/Counter-Defendant, Strike 3 Holdings,

LLC ("Strike 3" or "Plaintiff"), respectfully requests entry of an order excluding the

opinions and testimony of Defendant's Expert, Mr. David Dickson, and in support

thereof, states:

### I.      INTRODUCTION

On April 3, 2022, Defendant designated Mr. David Dickson ("Mr. Dickson")

as an expert in this matter and submitted an "expert" report. *See Dickson's Report*,

attached as Exhibit 1. Mr. Dickson's report sets forth the following opinions: Strike

3's movies: (1) are not "high-end, artistic, and performer-inspiring[,]" and are not

"produced with a Hollywood style budget and quality[,]" and (2) were "produced

with a cost of $2,000.00 - $6,000.00" which "appears to be in-line with the costs of producing pornographic films." Mr. Dickson however has zero experience in the adult entertainment industry, has never worked in Plaintiff's accounting department, has never worked for Plaintiff, and has not reviewed any documents detailing the specific parameters of each production in this case prior to rendering such opinions. Mr. Dickson provides nothing more than a layman's opinion of Plaintiff's movies based on his own movie preferences – a clearly unreliable method for determining the cost of production and quality of the film.

Additionally, Mr. Dickson's testimony does nothing to assist the trier of fact to understand the evidence or determine a fact issue, because even if his unsupported opinions are true, such opinions do nothing to assist the jury in understanding any evidence or to support any of the claims or defenses in this case.

For the foregoing reasons, as explained more fully below, Plaintiff seeks entry of an order excluding the purported 'expert' opinions and testimony of Defendant's expert, Mr. David Dickson.

## II.     LEGAL STANDARD

Expert testimony must satisfy the standard for admissibility in Federal Rule of Evidence 702, as clarified by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court is required to act as a "gatekeeper" to ensure that proposed expert testimony satisfies Rule 702. *Kumho*, 526 U.S. at 152.

As the proponent of Mr. Dickson's testimony, Defendant carries "a substantial burden" to show, by a preponderance of the evidence, "that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). Put another way, Defendant must show that "(1) the expert is sufficiently qualified to testify on the issues he intends to address; (2) the expert's methodology is 'sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Guinn v. AstraZeneca Pharms., L.P.*, 602 F.3d 1245, 1252 (11th Cir. 2010) (citation omitted).

The proponent must establish all three prongs of this Rule 702 inquiry. *Cook*, 402 F.3d at 1107, n.5. The point of these conditions is to ensure only relevant and

reliable information reaches the trier of fact. *Daubert*, 509 U.S.. at 591 (noting "expert testimony which does not relate to any issue in the case is not relevant and ergo, not helpful").

### III.   ANALYSIS

#### A.   MR. DICKSON IS NOT QUALIFIED TO RENDER AN EXPERT OPINION IN THIS CASE

Mr. Dickson is an occasional independent movie producer who, according to his expert report, has only worked on one project since 2016.[1] *See Dickson Report* attached hereto as <u>Exhibit 1</u>, at p. 2. And his background is that he has "assisted with the production of several Hollywood movies, including successful ones . . . and unsuccessful ones[.]" *See id*.  He has "been in the film business for 35 years, producing and directing feature films and documentaries . . . [and has] been a consulting producer and executive producer on many films." *See id*. While Mr. Dickson may be qualified as an expert in some areas of film production, most notably documentaries created over a decade ago, he is simply not qualified to opine on the production value and costs of Plaintiff's movies at issue in this case. Indeed, he has never worked for Strike 3 Holdings, LLC or any of its affiliated entities, nor has he

---

[1] Indeed, his expert report highlights eight "past projects" mentioning only one project he worked on since 2016.  Of Mr. Dickinson's eight "projects," the most mainstream project only credits him with a "thanks" (despite listing roles of over 100 crew members) and does not list any actual role he had in creating the film. *See* https://www.imdb.com/title/tt1615147/fullcredits/?ref_=tt_cl_sm (last accessed on July 18, 2022). This seems to indicate he is greatly exaggerating his experience from the past ten years in the film business.

ever worked in the adult movie industry at all.  He has barely worked on any film production since Strike 3 has existed.  His report does not provide any information related to the regularity with which he views adult works – both past and present. Plaintiff and Mr. Dickson agree on one thing: "While both [Strike 3 adult movies and Hollywood movies] provide filmed entertainment, the manner of going about making that entertainment and a movies main purpose are very different." *See Dickson Report* at p. 5. Expertise in one does not equate to expertise in the other.

Here, the production of an adult film will naturally be different than a mainstream movie as it would involve an entirely different audience, casting talent willing to engage in extremely intimate acts on film, coordinating the possession of 2257 records, securing locations that permit the filming of these intimate acts, and ensuring that shots involving those intimate acts are obtained, infusing creativity in each act, and deciding sequence of acts, best camera angles, and the gender and number of talent for each scene. Mr. Dickson's professional experience as an occasional movie producer, without experience in the adult industry in any capacity, does not make him qualified to provide an "expert" opinion on the quality, value, or creativeness of Plaintiff's works. Indeed, the qualifications of a potential expert alone are insufficient to satisfy *Daubert. See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343 (11th Cir. 2003) (noting "one may be considered an expert but still offer unreliable testimony.").

### B.   MR. DICKSON'S METHODOLOGY IN ASSESSING THE QUALITY OF PLAINTIFF'S MOVIES IS UNRELIABLE

Just so, Eleventh Circuit case law "plainly establishes that one may be considered an expert but still offer unreliable testimony." *Id.* at 1342. "[T]he expert testimony must be reliable, so that it must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning something more than subjective belief or unsupported assumptions." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (internal quotation marks omitted). "The *Daubert* requirement that [an] expert testify to scientific knowledge— conclusions supported by good grounds for each step in the analysis—means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). Further, "the reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion[.]" *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999).

Here, Mr. Dickson's methodology is unreliable.  Mr. Dickson first takes issue with Plaintiff's statement in its operative complaint related to the quality of Plaintiff's movies:

> [Plaintiff's] brands are famous for redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

*See Dickson Report* at p.2.  He also takes issue with the declaration of Plaintiff's expert, David Williamson, which states: "We film using Hollywood industry standards." *See id.* at p. 5.  The applicable Williamson declaration is attached as <u>Exhibit 2</u>.  Thus, through Mr. Dickson, Defendant seems to be attempting to challenge the notion of the *quality* of Plaintiff's videos, and more specifically that they do not meet Hollywood standards.

On the assertion's merits, this is wrong. First, the term "Hollywood style . . . quality," in Plaintiff's operative complaint, [DE 17], and the statement that "[w]e film using Hollywood industry standards" in Mr. Williamson's declaration, *Williamson Decl.*, at ¶19 (Ex. 2), were meant to describe the fact that Plaintiff's movies, although provided to Defendant in discovery in this case in 270P size/format, are filmed and available on Plaintiff's websites in 4K MP4 UHD. In fact, viewing Plaintiff's movies in 4K on a suitable television is often better quality than watching a movie in theaters since "[r]egardless of how [mainstream] films are shot today, most cinemas have a native resolution of 2k[.]"[2]

The statement that Strike 3 is famous for "redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures" is supported by the

---

[2] *See* https://clipchamp.com/en/blog/native-resolution/#:~:text=Regardless%20of%20how%20films%20are,is%204096%20x%202160%20pixels (last accessed on July 18, 2022).

many awards Plaintiff has won, including but not limited to: Best New Studio (XBIZ, 2017), Studio of the Year (XBIZ, 2018), Best Cinematography (AVN, 2016), Director of the Year (AVN, 2016-2018 ; XBIZ, 2017-2018), Best Director – (XRCO, 2016-2017), Best Membership Website (AVN, 2016-2017), Adult Site of the Year – (XBIZ, 2015-2017), Best marketing campaign – company image (AVN, 2016-2017), Marketing Campaign of the Year (XBIZ, 2018), Greg Lansky – Lifetime Achievement Award (Nightmoves), Vignette Series of the Year (XBIZ, 2018). *See Williamson Decl*. Further, Plaintiff has been the subject of substantial profiles featured on mainstream media: Forbes,[3] The Daily Beast,[4] CBC Radio,[5] Rolling Stone,[6] AdAge,[7] and Jezebel.[8]  Kanye West even announced on late time television that Plaintiff created his favorite adult movies.[9]

---

[3] "How One Pornographer is Trying to Elevate Porn to Art," *Forbes,* July 20, 2017, https://www.forbes.com/sites/susannahbreslin/2017/07/20/pornographer-greg-lansky-interview/#2301d3ae6593.

[4] "Meet the Man Making Porn Great Again," *The Daily Beast*, February 18, 2017, http://www.thedailybeast.com/meet-the-man-making-porn-great-again.

[5] "Porn-o-nomics: How one director is making a fortune by defying conventional wisdom," *CBC Radio*, February 24, 2017, http://www.cbc.ca/radio/day6/episode-326-sanctuary-cities-la-la-land-vs-jazz-hollywood-in-china-porn-o-nomics-and-more-1.3994160/porn-o-nomics-how-one-director-is-making-a-fortune-by-defying-conventional-wisdom-1.3994167.

[6] "Versace, Champagne and Gold: Meet the Director Turning Porn Into High Art." *RollingStone*, April 15, 2018. https://www.rollingstone.com/culture/culture-features/versace-champagne-and-gold-meet-the-director-turning-porn-into-high-art-629908/.

[7] "Kanye West's Favorite Pornographer is a Master of SFW Marketing," *AdAge*, August 17, 2018, https://adage.com/article/cmo-strategy/sfw-pornographer/314604

[8] "The One Percent Fantasies of Greg Lansky's Vixen" *Jezebel*, January 9, 2019, https://jezebel.com/jerking-off-to-capitalism-the-1-percent-fantasies-of-g-1829976586.

[9] "Kanye West's Favorite Pornographer is a Master of SFW Marketing," *AdAge*, August 17, 2018, https://adage.com/article/cmo-strategy/sfw-pornographer/314604

To support his argument that Strike 3's movies are not up to Hollywood standards, Mr. Dickson's report criticizes the format of Plaintiff's end roller credits and states that Plaintiff does "not seek rating from the MPA[.]" *See Dickson Report*, at pp. 10–11. But again, Mr. Dickson's issue with the 'Hollywood' comparison is semantics. Plaintiff and Mr. Williamson used this comparison to describe Plaintiff's content as superior adult content *within the adult industry* that was filmed with high quality equipment in high resolution. And Mr. Dickson's report fails to provide any examples of adult movies that are better, in film quality, than Plaintiff's movies. That Plaintiff does not list its end roller credits in the format used by mainstream producers has nothing to do with the quality of Plaintiff's works. Further, it has been universally established that Strike 3 produces adult works.  The purpose of the MPA rating is to assess the appropriate age rating for children.  *See* https://www.motionpictures.org/film-ratings/ ("Established in 1968, the film rating system provides parents with the information needed to determine if a film is appropriate for their children.").  It is nonsensical for Strike 3 to seek ratings from the MPA, since all its works are universally geared towards adults.  If anything, this criticism highlights again Mr. Dickson's lack of knowledge of the adult motion picture industry.

Defendant's report is further riddled with criticism of Plaintiff's works. Specifically, he comments on the use of film locations across different films, the

"simple" editing, the use of "almost no second takes," "the same basic plot lines[,]" and the lack of "[mainstream] craftsmanship and skills […]in these films." *See Dickson Report* at p. 5. He further notes that Plaintiff's movies are usually shot with one camera, mostly in natural light, and in very few shots. *See id.* But because Mr. Dickson is simply not a qualified expert in the production of pornography, *see supra* § III.A., he fails to consider the fact that this filming approach is exactly what makes the content desirable and high-quality to Plaintiff's consumers and within the adult entertainment industry. Plaintiff has, after all, won an AVN award for Best Cinematography *Williamson Decl*., at ¶ 23, and just this past year won Best Directing and Best Editing.[10] A continuous non-interrupted scene with excellent lighting is what entices consumers most and creates the desired fantasy. *See* Declaration of Fernandez, attached as <u>Exhibit 3</u>. Plaintiff's works are intended to create a sexual fantasy that realistically portrays the intimate acts and typically people engage in these acts in a continuous manner with little interruption. *See id.* Mr. Dickson, merely assumed that these filming approaches and characteristics are indicative of "an economy of scale" without considering this is actually what Plaintiff's viewers desire given the nature of the content being produced. *See Dickson Report* at p. 5.

---

[10] "2022 AVN Award Winners Announces," AVN.com, January 22, 2022
https://avn.com/business/articles/video/2022-avn-award-winners-announced-905527.html

### C.   MR. DICKSON'S METHODOLOGY IN ASSESSING THE PRODUCTION COSTS OF PLAINTIFF'S MOVIES IS UNRELIABLE

Mr. Dickson also opines on Plaintiff's production costs: "to say that any of the adult movies I have reviewed for this [case] compare with a Hollywood movie in terms of production, resources and acting talent is misleading at best and most likely false." *See id.* And that "Strike 3's costs range from $3,156 to $7,569." *See id.* at p. 7. However, Mr. Dickson provides no reliable support for either statement. Rather, he conclusively states, after watching each movie once, that Plaintiff's statement is most likely false and that it was "designed to suggest that the scale, quality, production methods and delivery requirements are the same for both Strike 3 adult movies and mainstream Hollywood movies." *See Dickson Report* at p. 5.

But Mr. Dickson report does not state which contract he reviewed that detailed the delivery requirements of the motion pictures, an inventory of the equipment used to film different scenes, the unique and superior locations Plaintiff films its movies, nor did he review Plaintiff's website to see the different file sizes and quality available to consumers. *See generally id.* Mr. Dickson also did not review any consumer comments which might illustrate that Plaintiff's works "are famous for" its quality. *See generally id.* Finally, Mr. Dickson failed to conduct a meaningful analysis related to production costs – one which considers the length of the film, the

total number of all cast members, the number of locations, and other costs inherent to a mainstream production that are not part of an adult movie production.

By way of example, prior to the Covid-19 pandemic, the adult entertainment industry had far more medical testing than the mainstream industry.[11] Also, common sense dictates that typically a 60-minute film would likely cost far less to produce than a 2 ½ hour movie or a television series. Finally, Plaintiff's movies typically have a smaller cast than a full-length major movie.[12] Mr. Dickson fails to provide any analysis, formula, or explanation for how he accounts for these variations that have less to do with production choices that effect quality and more to do with the nature of the content being produced.

Here, "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). Mr. Dickson's analysis simply "suffers from the impermissible 'black box' syndrome, where data is fed at one end and an answer emerges at the other, and the jury cannot see how the pieces fit together or how the data drives the conclusion." *La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, No. 19-24016, 2022 WL 479877, at *8 (S.D. Fla. Feb. 16, 2022)

---

[11] *See* https://www.nytimes.com/2020/06/18/well/live/coronavirus-testing-travel-covid-database-porn-adult-film.html (Last Accessed on July 19, 2022)

[12] *Compare* https://www.imdb.com/title/tt9446712/fullcredits?ref_=tt_cl_sm (Last Accessed on July 19, 2022) *with* https://www.imdb.com/title/tt0162222/fullcredits?ref_=tt_cl_sm (Last Accessed on July 19, 2022).

(internal quotations omitted). A black box expert opinion is deemed inadmissible because it simply does not allow "the Court, a jury, or an opposing party to meaningfully evaluate the process by which it was reached." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1296 (N.D. Fla. 2017).

### D. MR. DICKSON'S PURPORTED EXPERT OPINION DOES NOT ASSIST THE TRIER OF FACT TO UNDERSTAND THE EVIDENCE OR DETERMINE A FACT IN ISSUE

"As the Supreme Court made clear in *Daubert*, the requirement that expert testimony assist the trier of fact goes primarily to relevance[.]" *United States v. Frazier*, 387 F.3d 1244, n.24 (11th Cir. 2004) (internal quotations omitted). "An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute[.]" *Daubert*, 509 U.S. at 591 (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)).

Nothing in Mr. Dickson's testimony can possibly assist the trier of fact to understand the evidence or determine a fact issue. "Expert testimony aids the trier of fact when it logically advances a material aspect of the proposing party's case." *City of S. Miami v. Desantis*, No. 19-22927, 2020 WL 7074644, at *13 (S.D. Fla. Dec. 3, 2020) (internal quotations omitted). "To do this, the expert's testimony must constitute either direct or circumstantial evidence that, if believed, will prove or make more likely an element of the proponent's case." *Id*.

The only claims at issue are Plaintiff's copyright infringement claim, and Defendant's mirror claim of judgement of non-infringement. "To establish a *prima facie* case for copyright infringement, a plaintiff must show (1) that he owns a valid copyright and (2) that the defendant copied constituent elements of the copyrighted work that are original." *Pronman v. Styles*, 645 F. App'x 870, 873 (11th Cir. 2016). The burden to prove infringement remains with Plaintiff in this case as to Defendant's declaratory judgment of non-infringement. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 194, 134 S. Ct. 843, 846, 187 L. Ed. 2d 703 (2014) ("[W]hen a licensee seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee.").

Although Mr. Dickson reviewed Plaintiff's copyright registrations and movies at issue in this case, *see Dickson Report*, at pp.2, 13, he admits that he is "not a copyright lawyer and [does] not attempt to give an opinion on Copyright Law." *See id.* at p.13. Thus, Mr. Dickson admits that he is not providing an expert opinion on the validity of the copyright registration, nor the alleged infringing act. At most he provides a description of the various acts occurring in the movies and the contents of the copyright registrations.

This does not assist the trier of fact to understand the evidence or determine a fact in issue.  Indeed, the movies and copyright registrations speak for themselves.

Further, even if Plaintiff's movies were of low-quality and cost $3,156 to $7,569 per work to produce, these untrue assertions if believed, do nothing to "prove or make more likely an element of the [Defendant's] case." Lastly, Plaintiff is only seeking statutory damage as provided by 17 U.S.C. § 504.[13] D.E. 17, at ¶46. However, nothing in Mr. Dickson's report discusses damages or facts that could remotely relate to damages in this case.

Mr. Dickson's purported expert testimony is commentary at best and designed to prejudice Plaintiff by diminishing the value of its movies without any actual knowledge of the movies' true value.

If the originality of Plaintiff's work is at issue then Mr. Dickson's testimony is of no import or assistance to the trier of fact. Mr. Dickson has not been designated as an expert in copyright law or any part of copyright law.  Nothing in Mr. Dickson's report discusses the originality (or lack thereof) of the works at issue. While Mr. Dickson admits that he is "not a copyright lawyer and [does] not attempt to give an opinion on Copyright Law," *see Dickson Report*, at pp.13, he attempts to opine on the subject, stating that: "[t]he actions of the actors and actresses in the films appear not to be copyrightable subject matter." *See id.* According to Mr. Dickson's own report he's unqualified to represent this. But even if he was qualified, an expert "may not testify as to his opinion regarding ultimate legal conclusions." *Pacinelli v.*

---

[13] To be clear, Plaintiff is not waiving its attorney fees in this matter.

*Carnival Corp.*, No. 18-22731, 2019 WL 3252133, at \*5 (S.D. Fla. July 19, 2019) (internal quotations omitted). Thus, Mr. Dickson testimony as to copyrightability, especially in reference to originality, is legally insufficient and entirely inadmissible.

"To be original, a work must be independently created and must have some minimal degree of creativity." *LaJoie v. Pavcon, Inc.*, 146 F. Supp. 2d 1240, 1245 (M.D. Fla. 2000). Further "the underlying component parts of a creation are not subject to protection, but a creator's independent selection and arrangement of component parts into an original design is copyrightable." *Id*. Here, the works at issue in this case were independently created. *See* Declaration of Fernandez, attached as <u>Exhibit 3</u>. The minimal degree of creativity is illustrated by the works themselves. Mr. Dickson's testimony is not needed to describe Plaintiff's movies to the jury. It is pure fact.

The Eleventh Circuit has addressed whether a proposed expert report sufficiently considers the element of originality. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1251 (11th Cir. 2007). In *Corwin*, in considering whether to exclude an expert report, the Court noted that "*scenes a faire*, which include 'incidentals, characters, or settings that are indispensable or standard in the treatment of a given topic, are not copyrightable.'" *Id.* (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir.1999)). However, "a work may be protected by copyright law when its otherwise unprotectable elements are arrange in a unique way." *Id.* (citing

16

*Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992). Therefore, "if an expert report relies solely upon *scenes a faire* or other stock elements not protected by copyright, the report is excludable." *Id.*

> The Court ultimately excluded the expert reports, reasoning that:
>
> In this case, all four expert reports focus on the concepts and ideas behind the Painting and EPCOT rather than on the expression of those concepts and ideas. *Each report also incorporates a list of common elements.* As the district court observed with regard to the reports of Colbert, Rydell, and Alexander, although each compares ideas conveyed and similarities in the placement of elements in the Painting and rendering of EPCOT, *each also 'fails to delve into the expressive aspects of these ideas.' The reports of Constantino does not even go so far as to describe the placement of most elements in each work, much less compare the expression thereof.* Because neither the ideas nor the placement of such stock elements are copyright protectable absent a showing that they thereby constituted expression of ideas, the district court did not abuse its discretion in excluding all portions of the reports based thereon.

*Id.* (emphasis added). Mr. Dickson's report contains the same flaws as the reports in the *Corwin* case. *See generally, Dickson Report.* For example, in support of his conclusion that Plaintiff's plot and filming techniques are not comparable to Hollywood movies–an assertion which itself is irrelevant to the legal issues present– Mr. Dickson states that he has reviewed "the same basic plot lines and narrative formula." *Id.* at p. 5. Mr. Dickson's report goes on to opine that each of Plaintiff's films uses the characters and scene set up and lists the common elements of each narrative. *See id.* at p. 5-6.

This is exactly the kind of flawed analysis that courts have excluded. *See Corwin,* 475 F.3d 1239. Mr. Dickson's report fails to address Plaintiff's unique and original expression of each of these ideas and concepts and fails to address each work individually. Again, Mr. Dickson admits himself that "[t]he actions of the actors and actresses in the films appear not to be copyrightable subject matter." *See Dickson Report* at p.13. It follows that his methodology is unreliable and flawed as he failed "to delve into the expressive aspects of these ideas." *Corwin*, 475 F.3d at 1251. Therefore, the portions of his report which Defendant intends to rely on for the requirement of originality must be excluded based on the failure to use proper methodology or assist the trier of fact. *See Corwin,* 475 F.3d 1239.

## IV.    CONCLUSION

Defendant possesses the burden of showing how Mr. Dickson can assist the trier of fact in this case. Defendant failed. Mr. Dickson's report is a highly subjective commentary on the quality of Plaintiff's videos that bears no relevance for the ultimate issues to be determined in this case. But *Daubert* requires the testimony proffered by an expert to be sufficiently tied to the facts of the case so that it will aid the jury in resolving a factual dispute. *See Daubert*, 509 U.S. at 591.

Defendant fails to show how Mr. Dickson's expert opinion is based on sufficient facts and data, or how Mr. Dickson's experience is applied to such data, for the Court. Further, Mr. Dickson's surface level analysis of the common elements

of each of Plaintiff's works is not only an improper assessment of originality under copyright law, it also emphasizes the unreliability of his methodology. *See Corwin,* 475 F.3d 1239. Under these circumstances, exclusion is proper. *See Morrow v. Brenntag Mid-S., Inc.*, 505 F. Supp. 3d 1287, 1290 (M.D. Fla. 2020) (stating that "a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered") (citations omitted).

**WHEREFORE**, Plaintiff respectfully requests entry of an order excluding the opinions and testimony of Defendant's Expert, Mr. David Dickson, whatever they may be, but also specifically those contained in Exhibit 1.

Dated: July 20, 2022.

Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh [FBN 71093]
WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone:  321-800-6008
Fax:   844-206-0245

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Plaintiff conferred with Defendant on July 19, 2022, via zoom conference to discuss the matter. Defendant opposes the relief sought in this Motion.

/s/ Christian W. Waugh

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2022, a true and correct copy of the following

documents was served on Defendant's counsel by email via CM/ECF.

<u>/s/ Christian W. Waugh</u>