## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

      Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant/Counter-Plaintiff.

_____/

## PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 37(e)(2)

Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") hereby files the following

Motion for Sanctions Pursuant to Rule 37(e)(2).

## I.    INTRODUCTION

Defendant has conceded that he has failed to preserve material data on his

hard drives, and, just days before the dispositive motion deadline, produced evidence

of a previously undisclosed device. Defendant's destruction of evidence, lack of

candor, failure to cooperate throughout discovery, and intent to deprive Plaintiff of

this critical data demand Rule 37(e)(2) sanctions.

## II.    FACTUAL BACKGROUND

Plaintiff has long been wary of Defendant's production and preservation

efforts. From the start of the litigation, Defendant has taken extraordinary steps to

1

conceal evidence, not just on his hard drive, but of his online activities. For example, Defendant originally denied, and would not subsequently disclose, using virtual proxy network ("VPN") software, which "masks" Internet activity. When Plaintiff brought Defendant's VPN use to the Court's attention, Defendant accused Strike 3 of "mak[ing] statements for which [it] ha[s] no personal knowledge, *are false, and slanderous*, [and] for the purposes of gaining an edge in this motion." *Def.'s Oppo Am. Scheduling Order*, [DE 41], at p.4 (emphasis added). Later, however, Defendant freely admitted to using VPNs. *Def.'s Fact Depo.* 92:8–92:19. attached as <u>Exhibit 1</u>. This included using VPNs at work, *id.* at 188:9–16 ("We do that at work all the time."), at home, *id.* at 188:21–188:23, and on his "disclosed computer devices." *Id.* at 189:11–189:13. This included the VPN Plaintiff uncovered infringing Strike 3's works *during the litigation*, which Defendant later admitted to terminating once he learned Plaintiff had subpoenaed the VPN. *See id.* at 92:5–92:19. Defendant sharp denials, juxtaposed with his shifting explanations and eventual admissions, would come to define the discovery process. This behavior severely challenges Defendant's credibility. *See BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15-10340, 2018 WL 1616725, at *9 (N.D. Ill. Apr. 4, 2018).

But this Motion concerns Defendant's computer devices, which are at "the heart of this case." *See Strike 3 Holdings, LLC v. Bordley*, No. 18-868, 2019 WL 9098120, at *1 n.1 (E.D. Pa. Feb. 26, 2019). Defendant previously testified that he

was aware of his duty to preserve evidence in January 2020 after receiving notice from his Internet service provider about Plaintiff's subpoena. *See Def.'s Fact Depo.* at 174:10–175:14. He affirmed that he preserved *all* his devices,[1] except for his iPad and iPhone, which he continued to use in his day-to-day activities, and gaming consoles, which he stopped using. *See id.* at 175:15–178:14. He also testified that the only data deleted from these devices would have been from automatic functions–not by his own hand–*see id.* at 180:24–181:8, that he had not even "partially wiped" his devices, *see id.* at 183:4–183:6, and that he had never disposed of or given away any of his devices. *See id.* at 184:25–185:14. Much of this would later prove untrue.

Only after Defendant produced some of his system log files–under the Court's supervision–was Plaintiff's expert, Patrick Paige, able to check some of Defendant's representations. He uncovered that the operating systems ("OS") on Defendant's laptop and desktop had been reinstalled in June 2020 and November 2020 respectively. [DE 89-11] at ¶¶7–10, 16–18. As Defendant would later concede, he manually reinstalled the OS on his laptop, and failed to disable the automatic updates on his desktop computer. *Infra*. These updates destroyed critical data contained on the hard drives, including system log files during the relevant period. *See* [DE 89-11] at ¶11.

---

[1] Defendant revealed during that deposition that he also possessed ten previously undisclosed thumb drives.

Defendant only acted to preserve any data on his devices when he imaged his them in February 2021, almost a year after reinstalling the OS on his laptop device. Clones of those devices were sent to his expert, Michael Yasumoto, but apparently not retained by Defendant. *See Def.'s Expert Depo.* at 28:9–30:4 attached as <u>Exhibit 2</u>. Instead, when Defendant performed "keyword" searches of his devices–the backbone to his claim the works did not appear on his hard drives–he created *new* images of his devices in searching those starting in November 2021. *See id.* Defendant then deleted even these later images of his devices to clear space to perform additional searches. *See id.* at 61:3–62:10. Thus, Plaintiff cannot confirm the veracity of these belated searches. The timing of Defendant's imaging of these hard drives is equally suspect.

Finally, Mr. Paige also uncovered evidence of a potentially undisclosed device. *See* [D. 89-11] at ¶¶ 20–23. Defendant later conceded that that evidence could relate to some device he gave a family member, *contra Def.'s Fact Depo.* at 184:25–185:14, and that someone else may have accessed the file in question. *See* [DE 94-8]. Yet after the close of fact discovery, Defendant nonetheless revealed the existence of a previously undisclosed hard drive. *See* [DE 103-2]. It is not clear if this is the same device discussed in Mr. Paige's report or some other device since Defendant has supplemented little additional information. And since Defendant has

4

refused to produce files from that device, Plaintiff's expert has not had the opportunity to review it.

## III.   LEGAL STANDARD

A party must show good cause and excusable neglect when filing a motion to compel and for sanctions after the close of discovery. *See In re BankAtlantic BanCorp, Inc.*, 07-61542-CIV, 2010 WL 3294342, *3 (S.D. Fla. Aug. 20, 2010). This generally requires a party to show they acted in good faith and with due diligence. *See id.* Where the need for the motion is created by the non-movants own deficient production and the movant has actively tried to confer regarding the issues, courts have found such good cause to exist. *See id.* at *4 (allowing motion to compel and for sanctions to be brought two months after close of discovery).

"Spoliation is the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Butzer as Next of Friend C.W. v. Corecivic, Inc*, No. 17-360-OC-30PRL, 2018 WL 7144285, at *2 (M.D. Fla. Sept. 12, 2018) (quoting *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)) (internal quotations omitted); *see Centennial Bank v. ServisFirst Bank Inc.*, No. 16-88-T-36JSS, 2019 WL 13037169, at *1 (M.D. Fla. Feb. 22, 2019) ("Spoliation is the intentional destruction or concealment of evidence") (citations omitted). "Rule 37(e) governs the preservation of electronically stored information ('ESI') and sanctions for spoliation of ESI." *Staple v. Nw. Mut.*

*Life Ins. Co.*, No. 17-3066-T-35TGW, 2020 WL 11272799, at *2 (M.D. Fla. Sept. 30, 2020) (citation omitted).

"[F]our threshold elements must be present for Rule 37(e) to apply: (1) there was a duty to preserve ESI; (2) ESI was lost or destroyed; (3) the ESI was lost as a result of the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or recovered through additional discovery." *Centennial Bank v. ServisFirst Bank, Inc.*, No. 16-88-CEH-CPT, 2021 WL 662229, at *9 (M.D. Fla. Feb. 20, 2021).

## IV.   LEGAL ANALYSIS

### A. IT IS UNCONTESTED THAT DEFENDANT DESTROYED ESI

#### 1. DEFENDANT HAD A DUTY TO PRESERVE ESI AS EARLY AS JANUARY 2020

"Federal law is clear that a litigant 'is under a duty to preserve what it knows, or reasonably should know, is relevant to litigation or potential litigation." *Swofford v. Eslinger*, No. 8-66-ORL-35-DAB, 2009 WL 10671171, at *1 (M.D. Fla. Dec. 1, 2009) (citation and internal punctuations omitted); *accord Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at *14 (11th Cir. Feb. 14, 2022). "The test for determining whether there was a duty to preserve evidence is whether litigation was 'pending or reasonably foreseeable' when the spoliation occurred," *Staple v. Nw. Mut. Life Ins. Co.*, No. 17-3066-T-35TGW, 2020 WL 11272799, at *6 (M.D. Fla. Sept. 30, 2020) (citations omitted). This is an "objective" standard. *See*

*Nationwide Life Ins. Co. v. Betzer*, No. 18- 39-OC-30PRL, 2019 WL 5700288, at *6 (M.D. Fla. Oct. 28, 2019)  (citation omitted). "If [a party] destroyed evidence while considering or intending to engage in litigation, then, he committed spoliation." *Staple*, 2020 WL 11272799 at *6 (citation omitted).

Defendant has long known about the potential for litigation and the litigation itself. To be sure, this litigation started in state court before traversing into the current, federal forum. Plaintiff originally filed a complaint for a pure bill of discovery.[2] *Strike 3 Holdings, LLC v. Unknown Infringer's Identified on Exhibit "1"*, No. 2019-032122-CC-05, Dkt. No. 1 (Fla. Miami-Dade County Ct. Dec. 4, 2019) [hereinafter *B.D.*]. That court granted Strike 3's motion for a pure bill on January 8, 2020. *See* B.D. at Dkt. No. 5. Plaintiff issued its subpoena on Defendant's ISP on January 16, and the ISP notified Defendant of the subpoena on or around January 22. *See* JAD007–016 attached as <u>Exhibit 3</u>; *see also Def.'s Fact Depo.* at 174:25–175:6 (confirming Defendant received notice). Thus, Defendant has been on express notice of the litigation–or at least the potential for litigation–since January 2020.[3]

---

[2] "A pure bill of discovery is an equitable remedy under state law which serves 'to obtain the disclosure of facts . . . in aid of the prosecution . . . of an action pending or about to be commenced in some other court.'" *Spector v. Suzuki Motor of Am., Inc.*, No. 17-650-FTM-99CM, 2018 WL 345925, at *2 (M.D. Fla. Jan. 10, 2018) (citations omitted).

[3] Although Defendant has previously declared that he "had [his] Windows computer and Linux computer imaged in February 2020," [DE 94-8] at ¶4, Defendant later corrected that representation to note it was sometime in February 2021. *Def.'s Expert Depo.* at 30:2–30:4.

Defendant retained counsel, Mr. Simon, who filed a motion objecting to that subpoena on February 4, contending that federal court was the more appropriate forum. *See* B.D. at Dkt. No. 9. Prior to changing venues, Strike 3 first sent Defendant a letter informing him of its intent to file a complaint in federal court as well as a notice to preserve evidence with explicit instructions to "immediately identify and modify or suspend features of its information systems and devices in routine operation operate to cause the loss of potentially relevant ESI." [DE 89-2]. That letter was emailed to Mr. Simon on February 6 at 11:48 AM, attached as Exhibit 4, and Plaintiff filed its Notice of Dropping Party at 11:51 AM. *See* B.D. at Dkt. No. 10. There was not a single second that Defendant's chain of knowledge of the litigation was broken. *Cf. Arnold v. Charter Commc'ns, LLC*, No. 21-398-TPB-AEP, 2022 WL 2275168, at *3 (M.D. Fla. June 23, 2022) (holding that party had a duty to preserve evidence when the state action commenced, even after it was removed to federal court).

Plaintiff then filed its Complaint with the Court–still against the unknown defendant–on March 24. [DE 1]. In preparation for its motion for early discovery, Plaintiff reached out to Mr. Simon on May 26 to confer on that relief, but Mr. Simon indicated that he did not represent Defendant in the federal action. *See* Exhibit 4. Plaintiff filed its motion on May 28 [DE 11], the Court entered its order on June 16 [DE 12], and Plaintiff issued its subpoena three days later. *See* JAD017–033 attached

as <u>Exhibit 5</u>. Plaintiff used the information it received to amend its complaint. [DE 17]. Defendant later answered that complaint and counterclaimed for declaratory relief on November 11. [DE 23]; *cf. Scarbrough v. Virginia Coll., LLC*, No. 18-00738-KOB, 2019 WL 121277, at *1 (N.D. Ala. Jan. 7, 2019) (noting that "[w]hen a [party] files a lawsuit," such as a counterclaim, "the Federal Rules of Civil Procedure automatically require [parties] to preserve all information that might be relevant to the litigation.") (citations omitted).

Although Defendant does not deny that he had a duty to preserve ESI, he contends that the duty did not attach until much later into the litigation because he "was told"–although he does not specify by whom–"that the state court case had been dismissed and Strike 3 was not pursuing me any further." [DE 94-8] at ¶11 (suggesting he only became aware of the federal litigation in July 2020). Yet Defendant's "contention that [he] did not subjectively foresee litigation is irrelevant because the standard is an objective one." *Betzer*, 2019 WL 5700288, at *8. The record–particularly Plaintiff's notice to preserve evidence–leaves no doubt that Defendant knew about the litigation, and thus had a duty to preserve his ESI.

## 2. DEFENDANT DOES NOT CONTEST THAT ESI HAS BEEN REMOVED FROM THOSE DEVICES

"There is no dispute that [data on Defendant's hard drives] existed at one time," *see Walker v. GEICO Indem. Co.*, No. 15-1002-ORL-41KRS, 2018 WL 7917655, at *3 (M.D. Fla. Oct. 11, 2018), and that much of that data is now missing.

Defendant had purchased his devices in 2017 and testified that he used them, "[a]t least an hour a day." *See Def.'s Fact Depo.* at 179:8–10. Yet Defendant has conceded that system log files, fundamental data about the devices' usage, were overwritten after the duty to preserve attached.

Moreover, Defendant created, reviewed, and *destroyed* multiple images of his devices. Although Defendant first imaged his laptop and desktop in February 2021, *Def.'s Expert Depo.* at 30:2–30:4, he did not personally maintain copies of those images, and instead deleted and generated new images of the devices each time he performed a string search.[4] *See Def.'s Fact Depo.* at 60:1–62:10; *see also GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019) (faulting spoliator who "was not willing to spend a nominal fee for its expert . . . to fully assess the spoliation"). This is a problem because Defendant "continued to use the computers" as he normally would, *Def.'s Expert Depo.* at 30:5–30:12, repeatedly altering and overwriting data. *See id.* at 47:21–48:1 (explaining that data is replaced "anytime you touch a document or anytime you touch anything within a computer").

Data was lost in the process. Defendant concedes that altering or deleting data on a device can affect the results of a string search. *See id.* at 31:1–31:22, 34:14–35:10. A concrete example of this is found in the inconsistent results for the "torrent"

---

[4] To the best if Plaintiff's knowledge, the only previous images of Defendant's hard drives that have not been destroyed are the February 2021 images, which are in Mr. Yasumoto's custody.

search. Mr. Paige uncovered, new results for "torrent" in Defendant's system log files that Defendant had not produced. *See* [DE 89-11] at ¶¶26–28. Defendant does not contest these results.[5] *Cf. Yasumoto Depo.* at 72:17–75:1 attached as <u>Exhibit 6</u> (proffering no evidence to rebut Mr. Paige's findings).

This inconsistency is, according to Defendant, the result of generating and searching later images of the devices. *See* [DE 94] at 3; *see also Def.'s Expert Depo.* 28:9–28:13. It only takes a minor logical step to conclude that data that was once on a device–the keyword "torrent"–which is no longer on that device has been deleted. Worse still, all of Defendant's self-performed keyword searches, including those in his expert report, were performed on the later, unpreserved images.[6] *See* [DE 94] at 3. Despite this flagrant defect in data, Defendant continues to maintain that his preservation of the ESI and keyword searches have been appropriate. *See id.*

### 3.    DEFENDANT IS THE PROXIMATE CAUSE OF THE DESPOILATION

Next, the inquiry turns to "whether the allegedly spoliated ESI was lost because a party failed to take reasonable steps to preserve it." *Betzer*, 2019 WL 5700288 at *9. What conduct qualifies as "reasonable" is informed by the specific facts and circumstances of the case. *Cf. Boeing*, 2022 WL 433457 at *15 (approving

---

[5] The afternoon before the dispositive motion deadline, July 19, 2022, Defendant's expert, Joel Brillhart, produced an email with Defendant's counsel that appears to evidence *thousands* of search results for the term "torrent" never produced to Plaintiff. *See* Email attached as <u>Exhibit 7</u>.

[6] Defendant has not stated if or when the undisclosed device was imaged. *See* [DE 103-2].

the district court's "consider[ation]" of the "context of the deletion"). There is also no question that Defendant was the only individual with control over the hard drives and who was duty-bound to preserve them. The only material difference here is the methods through which he despoiled the ESI.

Defendant's laptop is a standard case. Around June 2, 2020, the OS on Defendant's laptop was reinstalled. *See Def.'s Expert Depo.* at 40:22–41:3; [DE 89-11] at ¶¶7–10. This reinstallation was performed manually, by Defendant, and not the result of some automatic process. *See id.* at 42:4– 42:19, 51:5–51:12. When a party "manually, intentionally and systematically" overwrites ESI, a clear failure to preserve has occurred as "[t]he only step necessary to preserve the evidence here would have been for Defendant to merely refrain from" reinstalling the OS. *See Betzer*, 2019 WL 5700288 at *9.

His failure to preserve his desktop, however, is a more involved question because Defendant claims that the OS was reinstalled per an automatic update. *See Def.'s Expert. Depo.* at 48:18–48–21, 52:17–52:25. The results, however, are no less destructive, and this does not negate his culpability. First, both the Federal Rules and common law demand that Defendant take affirmative acts to preserve evidence. *See* Fed. R. Civ. P. 11(b)(3)–(4) & 26; *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a

'litigation hold' to ensure the preservation of relevant documents."). That includes taking simple steps like disabling automatic functions. *Cf.* THE SEDONA PRINCIPLES, 19 Sedona Conf. J. 1, 105 (3rd ed. 2018).

Defendant is technologically savvy; he has admittedly known about Widows' auto-update function. *See Def.'s Expert Depo.* at 48:22–49:20. Further, Plaintiff sent Defendant detailed instructions on suspending those features. *Supra.* Nothing prevented Defendant from imaging that hard drive at the appropriate time, or disabling the auto-update function, even if that meant simply disconnecting that computer's Internet access. *See id.* at 49:3–49:9. In fact, the timing of the automatic update to the desktop is particularly egregious, as it indisputably takes place *after* Defendant filed his counterclaim when he was certainly aware the litigation. *See* [DE 23]; *see also BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15-10340, 2018 WL 1616725, at *7 (N.D. Ill. Apr. 4, 2018) (finding not credible party's claim that it inadvertently failed to suspend automatic deletion protocols when it happened after litigation commenced).

Second, that the data was replaced by an automatic process–and not "shredded" by Doe–is not a *per se* bar to Rule 37(e) sanctions; it is merely "*a factor* in the analysis." *Sosa v. Carnival Corp.*, No. 18-20957, 2018 WL 6335178, at *12 (S.D. Fla. Dec. 4, 2018) (emphasis original). Viewed along the other circumstances of this matter, Defendant's failure to preserve cannot be attributed to simple

negligence. He knew that the data on his desktop was relevant to both Plaintiff's claim and Defendant's counterclaim. Yet he did nothing to preserve that data until after its destruction.

"[D]espite being on notice of the requirement to preserve evidence relevant to this litigation, Defendant—and [his] counsel—completely failed to do so." *Nuvasive, Inc. v. Absolute Med., LLC*, No. 17-2206-ORL-41GJK, 2021 WL 3008153, at *5 (M.D. Fla. May 4, 2021), *reconsideration denied*, No. 17-2206-CEM-GJK, 2021 WL 7184539 (M.D. Fla. Oct. 25, 2021). Five different firms have represented Defendant; it strains credulity that not one informed him of his duty until late until the litigation. *Cf. id.* (ordering attorney to show cause why he should not be personally sanctioned for client's failure to preserve evidence since "a member of the Bar is expected to have significantly more legal sophistication than a litigant") (citation omitted). Defendant's lack of candor and the fact that he has "repeatedly misled the parties and the Court," not only indicates that he failed to take reasonable steps to preserve the ESI (and tried to cover it up), *cf. Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & Decamp, LLP*, No. 19-1908-WWB-EJK, 2021 WL 5275700, at *4 (M.D. Fla. Nov. 10, 2021), but that he intended to hide that fact.

Since "this litigation and the relevance of the [hard drives] were foreseeable" long before these updates occurred, "the duty to take reasonable steps to preserve information required [Defendant]—a sophisticated litigant—to intervene to prevent

14

the overwriting of the [hard drives]." *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 474 (E.D. Pa. 2020); *see also Betzer*, 2019 WL 5700288 at *8. This was no mere oversight. "When one looks at all of the circumstances in the case, it seems a bit much to swallow, unless we are to abandon common sense and human experience." *BankDirect*, 2018 WL 1616725 at (finding spoliating where party claimed failure to suspend deletion protocols was mistake).

## 4. THE DESTROYED ESI IS UNRECOVERABLE

The reinstallation of an operating system–manually or automatically–deletes data. The parties do not debate that this evidence has been destroyed and is unrecoverable save for those files preserved much later in February 2021. *See* [DE 89-11] at ¶¶8, 11, 17; *see also Def.'s Expert Depo.* at 33:16–37:7. There is no doubt that the system log files from the relevant period are gone.

Defendant "cannot substantiate [his] speculation" about what might or might not be contained in the system log files, "because the evidence that could do so has been permanently deleted." *See Boeing*, 2022 WL 433457 at *16. "[I]n spoliation cases, the prejudiced party should not be held to too strict a standard of proof regarding the probable contents of the destroyed evidence 'because doing so allows the spoliators to profit from the destruction of evidence.'" *Betzer*, 2019 WL 5700288 at *9 (quoting *Southeastern Mechanical Services, Inc. v. Brody*, 657 F.Supp.2d 1293, 1300 (M.D. Fla. 2009)). Destruction of metadata alone is enough to support

of spoliation motion and as shown by the circumstances, Defendant's attempts to conceal and patch over these facts evidence bad intent. *See id.*

### B. DEFENDANT INTENDED TO DEPRIVE PLAINTIFF OF THE ESI AS WELL AS ANY INFORMATION THAT WOULD INDICATE THAT THE ESI WAS DESTROYED

The harsher remedies under Rule 37(e)(2) are warranted because Defendant "acted with the intent to deprive [Plaintiff] of the information's use in the litigation." *See Scarpati v. Fla. Highway Safety & Motor Vehicles*, No. 20-1571-WWB-LRH, 2021 WL 7501822, at *6 (M.D. Fla. Nov. 17, 2021) ("Prejudice is inferred by the court's finding of intent") (citation omitted). "Where, as here, direct evidence of bad faith is unavailable, bad faith may be founded on circumstantial evidence."[7] *Arnold*, 2022 WL 2275168 at *4; *BankDirect*, 2018 WL 1616725 at *11 ("[R]esort to circumstantial evidence is by far the most common means of proving intentional destruction of evidence[.]") (citations omitted).

"The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *Desert Palace, Inc.*

---

[7] The "bad faith" language and analysis are holdovers from the earlier, common law standard that does not appear in the current Rule. The Eleventh Circuit, however, has recently observed that "in determining whether there was an intent to deprive, the appropriate question for us to ask is whether [the party] acted with bad faith," *see Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at *15 (11th Cir. Feb. 14, 2022), although the Court did not clarify if the analysis under the former standard continues to apply in wake of the amendment to Rule 37.

*v. Costa*, 539 U.S. 90, 100, 123 S. Ct. 2148, 2154, 156 L. Ed. 2d 84 (2003) (citation omitted); *see Levi*, 448 F. Supp. at 475–76 (noting "courts are unable to 'examine [a party's] head'" and thus "look to circumstantial evidence to determine intent") (citation omitted). Thus, courts look to:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*See Arnold*, 2022 WL 2275168 at *4 (citations omitted). "[A] finding of intent to deprive can support 'an inference that the lost information was unfavorable to the party that intentionally destroyed it' and 'also an inference that the opposing party was prejudiced by the loss of information that would have favored its position.'" *Betzer*, 2019 WL 5700288 at *10 (quoting Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee).

Here, "the evidence [is] circumstantial, but what circumstances!" *Branion v. Gramly*, 855 F.2d 1256, 1258 (7th Cir. 1988) (Easterbrook, J.). As outlined above, Defendant should have reasonably known about the litigation as early as January 2020 yet took no reasonable steps preserve evidence until over a year later. He never disclosed this failure to Strike 3, despite Plaintiff's voluminous discovery requests and conferrals, until *after* Plaintiff confronted him with Mr. Paige's findings when

the system log files were finally produced. *Cf. Bilokumsky v. Tod*, 263 U.S. 149, 153–54, 44 S. Ct. 54, 56, 68 L. Ed. 221 (1923) ("silence is often evidence of the most persuasive character"); *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1310 (11th Cir. 2014) (holding it was not an abuse of discretion to call a witness to the stand who invoked the Fifth Amendment in front of a civil jury, which then drew a negative inference from the witness's silence).

It is also uncontested that Defendant failed to preserve basic system log files. While he affirmatively reinstalled the OS on his laptop, but not his desktop, Defendant's extreme delay in preserving the latter–combined with his technical sophistication–should be treated as tantamount to an affirmative destruction. *Cf. ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018) (finding no spoilation where the responding party "immediately saved the most relevant portion" of the ESI).

Of course, Plaintiff does not know exactly what evidence was destroyed. "[C]ourts acknowledge that it can often never be proved what was contained in destroyed evidence." *Betzer*, 2019 WL 5700288 at *10. "Typically, only the spoliator knows how much prejudice has been caused by the destruction." *Id.* (citation omitted). Hence "'a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been.'" *See id*. "Where there is evidence of bad faith in the destruction of evidence, it may be inferred that

missing evidence was unfavorable and that there was prejudice." *Id.* (citation omitted).  It is reasonable to presume that the system log files contained evidence of Defendant's computer activities–and that these activities related to use of BitTorrent, including the download and distribution of Plaintiff's works.

Finally, the loss of this evidence cannot be "credibly explained" away. The "timeframe" of the deletion renders Defendant's "various arguments about the deletions being unintentional completely implausible." *Cf. Nuvasivei*, 2021 WL 3008153, at *6. Defendant reinstalled his laptop's OS in the middle of litigation, and the desktop OS was replaced after Defendant filed his counterclaim. *Cf. Levi*, 448 F. Supp. at 475 ("Selective preservation can also reflect intent. Common sense suggests that when a party preserves helpful or neutral information while deleting harmful information, that tends to indicate intentionality.") (citations omitted). And Defendant only disclosed *another* hard drive days before the dispositive motion deadline.[8] *See* [DE 103]; *see also Betzer*, 2019 WL 5700288 at *12 (finding "some insight" from evidence that was "not timely disclosed").

If the reinstallations of Defendant's operating systems, or the late produced hard drive were truly, innocent oversights, "one would have thought he would have informed [Plaintiff]'s lawyers about his 'mistaken' understanding" so that Plaintiff

---

[8] Despite Defendant's suggestion to the contrary, [DE 103] at p.3, Plaintiff *did* ask Mr. Yasumoto about what devices Defendant had was only informed of the "two hard drives" that were previously disclosed. *See Yasumoto Depo.* 38:24–39:8.

would know that certain materials "that were being sought could not be produced because they . . . no longer existed," *cf.* BankDirect, 2018 WL 1616725, at *7, or were overlooked. *Cf. Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir. 1986) ("It is axiomatic that attorneys owe a duty of candor to the court. Moreover, attorneys also have a duty to deal honestly and fairly with opposing counsel."); *Boeing*, 2022 WL 433457 at *15 (finding intent where "rather than notify [the parties] of an inadvertent deletion," the spoliator "communicated . . . that [he] had nothing to send them"). It was only after Strike 3's expert confronted Defendant with the inconsistent and missing evidence that Defendant began to admit ESI was not preserved and that he had not produced all hard drives. *See Allied Prop. v. Zenith Aviation, Inc.*, No. 18-00264 (AJT)(IDD), 2019 WL 10960568, at *3 (E.D. Va. Feb. 8, 2019) (finding, where curative actions "were made after [the opposing party] filed [a] [m]otion," that the spoliating party's "conduct was intentional").

"Failure to mention something under circumstances when a reasonable person would do so is a factor that courts have long approved as an organon for measuring credibility." *See BankDirect*, 2018 WL 1616725 at *7. "[D]elaying or disrupting the litigation"–here, failing to preserve evidence or disclose devices until after the close of discovery–"demonstrates bad faith." *Cf. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citation omitted). "[G]iven the evidence of bad faith, the intentional nature of the destruction of evidence from

both computers (which is unrebutted), the volume of likely evidence on the computers, and, relatedly, the significance of the lost evidence, that [Plaintiff] has indeed established that [Defendant] acted with the intent to deprive [it] of the information's use in litigation." *Betzer*, 2019 WL 5700288 at *14.

## C. DEFENDANT'S EGREGIOUS DESPOILATION WARRANTS HARSH SANCTIONS

The extensive loss of critical ESI, along with Defendant's misconduct and evasions, warrant formidable sanctions. Rule 37(e)(2) expressly authorizes courts to "presume" or "instruct the jury to presume" that "the information was unfavorable to the party" as well as "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). As the "inquiry is intensely fact-specific," *Plantronics*, 930 F.3d at 83, the appropriate sanction is committed to the Court's discretion. *Cf. Boeing*, 2022 WL 433457 at *7, *16 (reviewing Rule 37(e)(2) sanction under the abuse of discretion standard). Ultimately, "[t]he remedy should fit the wrong." Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee.

Evidence from Defendant's hard drives were indispensable in directly proving several items: whether there exists evidence of Strike 3's works, Defendant's computer activities, the works contained in the Additional Evidence, and applications or auxiliary materials evidencing BitTorrent use. By overwriting the operating system on two of his hard drives, and failing to produce another one, Defendant intentionally deprived Plaintiff of that evidence.

21

At a minimum, dismissal of Defendant's counterclaim for a declaration of non-infringement is warranted. Dismissal "should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Centennial Bank*, 2021 WL 662229 at *11 (citations omitted); *see Plantronics, Inc.*, 930 F.3d at 82 (considering whether "the non-responsible party's case is severely impaired because it lacked the information that was not produced") (citation omitted). Defendant and his counsel "have 'evidenced a pattern of inexcusable disregard for the authority of this Court and the larger civil discovery process.'" *Wyndham Vacation Ownership*, 2021 WL 5275700 at *7 (citation omitted). "[A] lesser sanction would 'reward [Defendant's and counsel's] bad behavior without remedying the prejudice [they] have caused.'" *Id.* (citations omitted).

Defendant does not contest that he reinstalled the OS on his computer devices after litigation began. In fact, he testified to destroying multiple imaged copies of his devices well into discovery. This resulted in untold destruction of data. And Defendant has recently admitted to the existence of a third hard drive. Yet it was only because Plaintiff filed numerous motions to compel that it pried enough evidence from Defendant to prove this spoliation. This is the exact kind of bad faith Rule 37(e) is designed to sanction. The counterclaim should be dismissed.

With respect to Plaintiff's claim for copyright infringement, what's sauce for the goose is sauce for the gander. The egregious conduct that plagues discovery of

Defendant's counterclaim is bound with Plaintiff's claim, and thus, the Court should enter default judgement in Strike 3's favor. *See* Fed. R. Civ. P. 37(e)(2)(C); *see also Boeing*, 2022 WL 433457 at *16 (sanctions would not have "impos[ed] cumbersome document retention policies on" Defendant since that duty already inured). There is "no way for Plaintiff[] to effectively prosecute [its] case without a months-long extension of the discovery deadline," which would "have a cascading effect on the remainder of the case" including forcing Plaintiff to "incur untold additional expenses to reengage in discovery." *Wyndham Vacation Ownership*, No. 19- 1908-WWB-EJK, 2021 WL 5275700, at *5 (M.D. Fla. Nov. 10, 2021). "All because the [Defendant], after multiple warnings and extensions, failed to conduct a proper document collection, search, and production until the very last minute. Under these circumstances . . . no sanction short of default would be appropriate." *Id.*

In the alternative, if the Court adjudges that a lesser sanction is more appropriate, Plaintiff respectfully requests the Court, "in the exercise of its discretion," enter an order sanctioning certain, reasonable presumptions that "presume that the lost information was unfavorable to [Defendant.]" *See Nuvasive, LLC*, 2021 WL 3008153 at *7 (citations omitted). Namely, that (1) Defendant is the individual who used IP address 47.197.99.186 to download and upload the files listed in Strike 3's Exhibit A (its copyrights) and Additional Evidence (other media) over the BitTorrent network, and (2) that, at a minimum, Strike 3's copyrighted

works were present on one or more of Defendant's hard drives. *Cf. Betzer*, 2019 WL 5700288 at *14 ("instructing the jury that it must presume that the lost information was unfavorable to" spoliating party); *Glaukos Corp. v. Ivantis, Inc.*, No. 18-620 (JVS)(JDEx), 2020 WL 5914552, at *4 (C.D. Cal. July 30, 2020). Plaintiff will then use that presumption in support of its motion for summary judgment or trial to bridge some of the gulf left by Defendant's spoilation of ESI.

## V.    CONCLUSION

For the foregoing, Plaintiff respectfully requests the Court sanction Defendant under Rule 37(e)(2) for his failure to preserve ESI and enter default in Plaintiff's favor, or, in the alternative, order that certain presumptions of fact be considered against Defendant.

Dated: July 20, 2022.

Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh [FBN 71093]
WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone:  321-800-6008
Fax:   844-206-0245

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), Plaintiff conferred with Defendant on July 19, 2022, via zoom conference to discuss the matter. Defendant opposes the relief sought in this Motion.

<u>/s/ Christian W. Waugh</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2022, a true and correct copy of the following documents was served on Defendant's counsel by email via CM/ECF.

<u>/s/ Christian W. Waugh</u>