## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

      Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant/Counter-Plaintiff.

_____/

### PLAINTIFF STRIKE 3 HOLDINGS, LLC'S *DAUBERT* MOTION TO EXCLUDE THE DEFENDANT'S EXPERT OPINIONS AND TESTIMONY

Pursuant to Fed. R. Evid. 702 and Fed. R. Civ. P. 37(c)(1), Plaintiff/Counter-Defendant, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), moves to exclude Defendant's expert testimony and in support thereof, states:

### I.    INTRODUCTION

Opting to designate himself as an expert in this matter, on April 2, 2022, Defendant submitted a defective and biased expert report – one based entirely on unreliable search methods and unreliable data. To explain, Defendant's search results first outright contradict his own document production in this case. His explanation for this anomaly does little to ensure reliability—actually, the explanation destroys it. Indeed, he reasons that his expert searches were conducted

on data that *had not been preserved* until the middle of this litigation. Further, the data Defendant searched is data that Plaintiff does not possess and has never been permitted to possess. It even appears to be data that John Doe's other experts do not possess. Defendant's report also fails to outline precisely how he made specific 'determinations' of false positives. Nothing in Defendant's report nor any data related thereto provides authentication that the searched drives even belong to Defendant. It is no surprise that John Doe's testimony is so defective, based on unreliable date, and intentional omissions. Indeed, he is a party to this case and, at one time, believed he would profit from this litigation. His bias is on full display.

Defendant's testimony and report are plagued with countless defects that cannot survive a *Daubert* challenge. Defendant's testimony is the type of testimony that *Daubert* was designed to prohibit from ever reaching a jury. As it relates to factual testimony, Defendant has woven a web of lies and deceit evidenced by numerous contradictions already on the record in this case. He now submits additional testimony under the "expert" designation in the hopes that it will garner him credibility. But he is simply not reliable under the inquiry *Daubert* demands. Defendant should not be permitted to set forth any purported "expert" testimony or report. He should be confined to his role as a fact witness and nothing more.

For the foregoing reasons, as explained more fully below, Plaintiff seeks entry of an order excluding the purported 'expert' opinions and testimony of Defendant's expert, Mr. John Doe.

## II.    LEGAL STANDARD

Expert testimony must satisfy the standard for admissibility in Federal Rule of Evidence 702, as clarified by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court is required to act as a "gatekeeper" to ensure that proposed expert testimony satisfies Rule 702. *Kumho*, 526 U.S. at 152.

As the proponent of Mr. John Doe's testimony, Defendant carries "a substantial burden" to show, by a preponderance of the evidence, "that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Cook ex rel.*

*Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). The Daubert standard involves three main factors: "(1) the expert is sufficiently qualified to testify on the issues he intends to address; (2) the expert's methodology is 'sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" *Guinn v. AstraZeneca Pharms., L.P.*, 602 F.3d 1245, 1252 (11th Cir. 2010) (citation omitted). The proponent must establish all three prongs of this Rule 702 inquiry. *Cook*, 402 F.3d at 1107, n.5.

Under Fed. R. Civ. P 26 (a)(2)(B)(ii), a party is required to provide the "data" its expert witness considered in forming his expert opinions. Federal Rule of Civil Procedure 37(c)(1) provides that "[it]f a party fails to provide information […] as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). "In determining whether the failure to disclose was justified or harmless, courts consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the

information had been admitted." *Bendik v. USAA Cas. Ins. Co.*, No. 619CV118ORL41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019). "This District also employs a five-factor test to determine whether the failure was substantially justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Bendik v. USAA Cas. Ins. Co.*, No. 619CV118ORL41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019) (internal quotations omitted).

### III.   ANALYSIS

#### A. Defendant's Methodology is Not Sufficiently Reliable as Determined by the Inquiry Mandated in *Daubert*

Eleventh Circuit case law "plainly establishes that one may be considered an expert but still offer unreliable testimony." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003). "[T]he expert testimony must be reliable, so that it must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning something more than subjective belief or unsupported assumptions." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (internal quotation marks omitted). "The *Daubert* requirement that [an] expert testify to scientific knowledge—conclusions supported by good grounds for each step in the analysis—means that any step that renders the

analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). Further, "the reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion[.]" *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). Here, while Plaintiff does not dispute Defendant's qualifications as a computer and network professional generally, Defendant has offered unreliable testimony in this case.

> ### i. Defendant's Testimony Regarding Ownership of the Computer is Based Solely on Defendant's Self-Serving Unsupported Statements

On or around April 2, 2022, Defendant first designated himself as an expert in this case and submitted an expert report. *See John Doe Expert Report*, attached hereto as Exhibit A, at p. 146. On or around July 8, 2022, Defendant first provided a "report" to Plaintiff regarding his examination of a newly disclosed solid-state drive. *See John Doe Additional Report*, attached hereto as Exhibit B. In his role as an "expert" Defendant purportedly created forensically sound images of all his computer and storage devices, "ingested" each of these images into Autopsy – an open-source digital forensic software tool kit – and used Autopsy to conduct key word searches for various terms and phrases across all devices. *See* Exhibit A, at 2 and 4; *See also* Exhibit B at 4.

Defendant first provides testimony that he conducted his Autopsy searches across all the "media owned by John Doe[.]" Exhibit A, p. 2. And, at his expert deposition, when asked which steps he took to determine if the drives belonged to Defendant, Defendant responded with "[s]ince they belonged to me, I know they're mine." *Excerpts from Defendant Expert Deposition Transcript* attached hereto as Exhibit C, at 26:6-25 and 27:1-11. While perhaps permissible as a factual witness, such unsupported expert conclusions cannot meet the *Daubert* standard. After all, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 (Advisory Committee's Note 2000), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). Here, Defendant failed to provide any data, documents, or confirmed facts that support his conclusion that the hard drives belonged to a particular individual (Defendant) during the relevant period. Without any data or support, the method used to conclude that the computers belong to Defendant is "predicated solely upon the defendant's own self-serving statements[,]" which is insufficient to meet the *Daubert* standard. See *Tompkins v. Moore*, 193 F.3d 1327, 1337 (11th Cir. 1999) (holding that an expert opinion based solely upon the defendant's own self-serving statements is "unreliable and of little use."); See *Sec. & Exch. Comm'n v. Avent*, No. 1:16-CV-2459-SCJ, 2018 WL 8996270, at *5 (N.D. Ga. Mar. 15, 2018) (holding that an expert considering self-serving, subjective statements made by a party would

only serve to make the expert's methodology "less reliable."). "[T]here is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997).  For all Plaintiff knows, the Autopsy-searched computers do not even belong to Defendant.[1] "[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions, as we have here." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004). By contrast, John Doe's other experts, including Michael Yasumoto and Joel Brillhart, testified that their impartiality was important for their qualification as an expert. *See* Deposition Transcript Excerpt of Michael Yasumoto attached hereto as <u>Exhibit D</u> at 24:10-18.

Defendant's "methodology" regarding creation of the November 2021 image is also nonexistent and therefore unreliable. Similar to Defendant's failure to provide data confirming ownership of the searched image, nothing in Defendant's report (or data, documents, or any facts) confirms the November 2021 imaging date itself. Any conclusion regarding the imaging date is 'supported' only by Defendant's statements and thus is inadmissible. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions, as we have here.").

---

[1] Significantly, Defendant's other expert (Mr. Joel Brillhart) also did not provide any data confirming Defendant's ownership of the hard drives. Interestingly, Mr. Brillhart was careful to never even provide a statement that assumed Defendant's ownership of the devices.

## ii. Defendant's Methodology is Unreliable

"Whether [an] expert has adequately accounted for obvious alternative explanations" of their results is a factor that "[c]ourts both before and after *Daubert* have found relevant in determining whether expert testimony is sufficiently reliable[.]" *See* Fed. R. Evid. 702 (Advisory Committee's Note 2000). Defendant, however, has conduct his searches and formed his expert conclusion in a vacuum – where he outright disregards every obvious possible explanation for why nearly all of his search results turned up empty or contained only false positives.

First, Defendant testified that he used Autopsy to search the term "torrent" on the images and all located files were produced to Plaintiff. *See* Exhibit A, at p.9. However, on or around June 16, 2022, Plaintiff's computer forensics expert confirmed that as part of his examination of the "system log files"[2] he located the term "torrent" in files that had not been produced. D.E. 89-11, p. 9.[3] At his deposition, Defendant explained this discrepancy by noting that the Autopsy-searched hard drives (hard drive images he created in November of 2021) were not the hard drives images from which the System Log Files were extracted by Mr.

---

[2] In this motion, "System Log Files," refers to the files and folders which the parties agreed upon on April 25, 2022. For the Windows-based subject computer, this means the following: $UsnJrnl file, Ntuser.dat file, all Windows event logs, System32/config folder, $MFT file, $LogFile, hiberfil.sys file, page.sys, and swapfile. Further, for the Linux-based subject computer, this means the following: the contents of "var/log" folder.

[3] Another one of his experts, Joel Brillhart, discovered many responses to a search for the term "torrent," including Google searches that John Doe conducted about torrent files. *See* Brillhart Email attached as Exhibit E.

Yasumoto (hard drive images Mr. Yasumoto created in February of 2021). *See* Exhibit C, at 28:9-25, 29:1-25, and 30:1-12. Unfortunately for Defendant, this reasoning solidifies the fact that he cannot establish the necessary reliability which *Daubert* demands.  Indeed, when asked, if Defendant took any steps to ensure the computer data was preserved between the two image creation dates, Defendant responded with: "I'm not an expert in preserving data for federal court. So, no, I continued to use the computers[.]" *Id*., at 30:5-12 and 52:17-25. Thus, Defendant admitted to using Autopsy to conduct searches on a hard drive *which had been used from February 2021 to November 2021 without any preservation protocol in place* – a critical fact noticeably absent from his report.

Defendant then admits that since the hard drives were not preserved during this time, "just normal use" of a computer during that time "could have affected the [Autopsy] search results[.]" *Id*., at 53:16-21. Compounding the problem even further, Defendant's analysis fails to consider other factors that could have affected his Autopsy search results such as intentional edits and deletions on a hard drive. *Id*., at 31:1-4 and 31:5-8. At his deposition Defendant also made clear that the Linux operating system (on the Autopsy-searched November 2021 imaged hard drive) had been re-installed probably "hundreds" of times – another factor that could have affected the Autopsy search results. *See* Exhibit C, at 45:15-19.

10

No matter how reliable Autopsy is, the search results can only be as reliable as the data ingested therein. Here, constant use of the computers, re-installation of the operating systems hundreds of times, and failing to preserve the data on the computers render the "data" Defendant ingested into Autopsy entirely unreliable. And no expert opinion based on unreliable data can be admissible under *Daubert*, particularly when, as here, the expert failed to adequately account for obvious alternative explanations for his search results. *See* Fed. R. Evid. 702 (Advisory Committee's Note 2000). Defendant presents his search results and conclusions as if non-infringement is the only explanation for why his searches yielded no results, while conducting no analysis on *any* of the obvious alternative explanations. Using Defendant's search and examination of the computers alone, non-infringement of Plaintiff's movies is no more likely than total spoliation and destruction of ESI on the hard drives.

### iii.  John Doe Makes Unsupported Determinations

Defendant's search and analysis also "suffers from the impermissible 'black box' syndrome, where data is fed at one end and an answer emerges at the other, and the jury cannot see how the pieces fit together or how the data drives the conclusion." *La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, No. 19-24016-CIV, 2022 WL 479877, at *8 (S.D. Fla. Feb. 16, 2022) (internal quotations omitted). To explain, Defendant's search process is untestable. This is because, as he provides

in his report, "[s]ome of the [search] terms return[ed] hits, but upon further analysis the files did not contain any Strike 3 movies." *See* <u>Exhibit A</u>, at p. 2-3. At his deposition, Defendant confirmed that he alone made the determination of whether a responsive file was a "false positive" – a conclusion that cannot be (and has not been) confirmed by any other peer or expert since Defendant is the only person with possession of the belatedly-preserved Autopsy-searched computers. Thus, Defendant was the sole determiner of what data was a false positive.

A black box expert opinion is deemed inadmissible because it simply does not allow "the Court, a jury, or an opposing party to meaningfully evaluate the process by which it was reached." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1296 (N.D. Fla. 2017). Here, Defendant did not provide a specific explanation of the process he engaged in to determine if a file was a false positive.  For example, he failed to provide a list of file names excluded as false positives, a description of the data within each file which led to the "false positive" determination, the location of the data which led to the "false positive" determination, or any other information that would help the Court determine the reliability of this "false positive" evaluation. Thus, this portion of Defendant's analysis is plagued with black box syndrome, and this renders Defendant's expert opinion inadmissible.

### iv.  Defendant's Autopsy Search Results Are Contradicted by Defendant's Prior Document Production

Defendant provided testimony that an Autopsy search of IP address "47.197.99.186" yielded "No results Found." *See* Exhibit A, p. 8-9. This result defies common sense, logic and is not correct. This is established by Defendant's previously produced documents bates stamped "JAD047(a)-(d)," which is a file containing IP address "47.197.99.186." *See* D.E. 101-5. Further, it is incredible that this IP address would not be located *numerous* times on Defendant's devices since he continued to use his unpreserved devices from February 2021 to November 2021 to presumably communicate with his counsel in this case, for which the caption is *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 47.197.99.186*. Thus, Autopsy clearly failed to locate these responsive files. At his deposition, Defendant reasoned that documents bate stamped "JAD047(a)-(d)" –  screen captures and responses found using Apple's searching system called 'Spotlight' – searched online e-mail accounts which is something Autopsy does not do. *See* Exhibit C, at 77:25 and 78:1-22. But this too is incredible considering the activity in this case between January 2021 and November 2021 and that in this time frame, Defendant had been represented by at least 4 different lawyers located in Europe, Florida, California, and Oregon. That Defendant's Autopsy-searched computers, which went unpreserved until November 2021, do not contain a single locally saved document listing IP address 47.197.99.186 is implausible. And, Defendant examines no additional data to rebut the obvious implausibility of this result.

## IV.   DEFENDANT'S AUTOPSY SEARCHES MAY NOT BE REPLICATED

The *Daubert* court set forth a non-exclusive list of factors for trial courts to use in assessing the reliability of expert testimony. One factor is "whether the expert's technique or theory can be or has been tested---that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability[.]" Fed. R. Evid. 702 (Advisory Committee's Note to 2000); see also *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (Recognizing testability of an expert's methodology as a *Daubert* reliability factor). "Testability 'assures the opponent of proffered evidence the possibility of meaningful cross-examination (should he or someone else undertake the testing).'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1046 (9th Cir. 2014), quoting *United States v. Mitchell*, 365 F.3d 215, 238 (3d Cir.2004). Here, Defendant's search process is not capable of being replicated and is therefore untestable. Specifically, Defendant failed to produce the images themselves so that Plaintiff's expert could verify: (a) the imaging date, (b) Defendant's ownership of the computers during the period of infringement, and (c) all Autopsy search results. Without this data, no expert can replicate Defendant's searches and confirm his conclusions – a fact which Defendant admits. *See* Exhibit C, at 15:23-25 and 16:1-2.

## V.   DEFENDANT IS BIASED

If this Court has any doubt about the merits of this Motion, the tie should go to Plaintiff because the expert in question is the Defendant himself. In this case, Defendant is obviously an interested party, and as a hybrid witness, he has opted to provide both fact and expert testimony. While "[e]xpert testimony of an interested witness may be admissible[,] […] the trial judge may exclude otherwise admissible expert opinion evidence, if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury." *Henderson v. Demars*, No. 11-80589-CIV, 2012 WL 13019217, at *3 (S.D. Fla. Aug. 22, 2012), *report and recommendation adopted*, No. 11-80589, 2012 WL 13019218 (S.D. Fla. Sept. 12, 2012). "Thus, testimony of an expert witness may be excluded when the witness is so biased as to render his or her testimony unhelpful." *Id. See also Kranis v. Scott*, 178 F. Supp. 2d 330, 333–34 (E.D.N.Y. 2002) (Holding that because a party "has been personally involved at every level of the instant action and his role as past defendant, current plaintiff, attorney and expert witness would be unfairly prejudicial, misleading and confusing to the jury."), *see also Ordon v. Karpie*, 543 F. Supp. 2d 124, 127 (D. Conn. 2006) (holding a party could not serve as an expert witness in support of his own claim under Fed.R.Evid. 403.).

As a party to this case, Defendant possesses an extreme bias not typically found in third party expert witnesses. Indeed, Defendant has more at steak in this matter than any other expert. And early in this case Defendant had a direct monetary

15

incentive to proceed with litigation and win- a windfall in attorney fees that would go directly into Defendant's pocket. Additionally, Defendant's hard drive examination methodology as outlined above suffers from such egregious defects that his bias cannot be ignored. With the contradictions discovered between Defendant's testimony and the facts and data this case, and the newly discovered evidence establishing Defendant's reinstallation of an operating system during the pendency of this case, Defendant's extreme bias is clear. Obviously, he is willing to conceal critical facts and evidence that in anyway supports Plaintiff's claim of infringement. Defendant is hardly a credible fact witness, much less, as a credible expert witness. Permitting his expert testimony would be unfairly prejudicial and would mislead and confuse the jury.

## VI.   DEFENDANT'S REPORT FAILS TO PROVIDE THE DATA CONSIDERED IN FORMING HIS OPINION

Separate from the materials that are the subject of Plaintiff's currently pending Motion to Compel Production of Defendant's Expert Documents and Communications (*See* D.E. 101), to date Defendant has ignored the obvious: that his expert report is incomplete because it lacks a key requirement outlined in Fed. R. Civ. P. 26(a)(2)(B)(ii) – the "data" Defendant considered in forming his expert opinions. Indeed, Defendant has not provided to Plaintiff the hard drive images on which he conducted his Autopsy searches. Even Defendant's two other computer forensics experts – Mr. Michael Yasumoto and Mr. Joel Brillhart – do not appear to

possess the hard drives images which Defendant actually searched. Thus, Plaintiff has no way to cross-examine and test Defendant's expert conclusions.

Fed. R. Civ. P. 37(c)(1) provides that "if a party fails to provide information […] as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

While exclusion of expert testimony under this rule is considered 'drastic,' *Bendik v. USAA Cas. Ins. Co.*, No. 619CV118ORL41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019), here all parties have known for months that Defendant refuses to produce his computers. And, Plaintiff's Motion to Compel Production of Hard Drive Images and Leave to Reopen Fact Discovery and For Sanctions (CM/ECF89) (herein after referred to as "Motion to Compel Production of Hard Drive Images") was denied.  Accordingly, Plaintiff respectfully requests that Defendant's expert testimony be excluded pursuant to Fed. R. Civ. P. 37(c)(1). Plaintiff only seeks what is fair – if it cannot have access to Defendant's hard drive images, then Defendant should also be prohibited from opining on any search or examination of those very devices.

## VII.   CONCLUSION

In this case, Defendant's expert testimony does not satisfy the foundational requirements of Rule 702. This is because his opinions were not based on sufficient

and reliable data and his results were not the product of reliable methods. He also failed to comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) by not providing the data on which his expert testimony is based.

**WHEREFORE**, Plaintiff Strike 3 Holdings, LLC respectfully requests that this Court exclude the expert opinion testimony, whether by report, trial testimony, or otherwise, of John Doe.

DATED: July 20, 2022.

Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh [FBN 71093]
WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone:  321-800-6008
Fax:   844-206-0245

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Plaintiff conferred with Defendant on July 19, 2022, via zoom conference to discuss the matter. Defendant opposes the relief sought in this Motion.

/s/ Christian W. Waugh

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2022, a true and correct copy of the following

documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh