# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

      Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant/Counter-Plaintiff.

_____/

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND STATEMENT OF MATERIAL FACTS ................ 1

II.  LEGAL STANDARD ........................................................................ 9

III.  LEGAL ANALYSIS ........................................................................ 11

    A.  NO DISPUTE OF MATERIAL FACT REGARDING DEFENDANT'S COPYRIGHT INFRINGMENT .................................................. 11

        1.  INFRINGEMENT ELEMENTS ........................................... 11

        2.  STRIKE 3 OWNS THE COPYRIGHTS-IN-SUIT ................. 11

        3.  DEFENDANT, AND NOT SOMEONE ELSE, COPIED STRIKE 3'S COPYRIGHTS ....................................................... 12

            a.  Evidentiary Threshold ............................................ 12

            b.  Plaintiff's PCAPs Prove Defendant Factually Copied Its Works ........ 13

            c.  PCAPs Evidence Legal Copying ............................ 14

            d.  Defendant is the Infringer .................................... 17

    B.  THERE IS NO DISPUTE OF MATERIAL FACT REGARDING DEFENDANT'S COUNTERCLAIM ...................................... 20

    C.  DEFENDANT'S AFFIRMATIVE DEFENSES ARE EITHER LEGALLY UNTENABLE OR WOEFULLY UNSUPPORTED BY THE EVIDENCE .................................................................. 26

IV.  CONCLUSION ............................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agripost, LLC v. Miami-Dade Cnty., Fla.*,
   525 F.3d 1049 (11th Cir. 2008) ........................................................... 30

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................... 9, 26

*Apple Inc. v. Qualcomm Inc.*,
   992 F.3d 1378 (Fed. Cir. 2021) ......................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............... 24

*Banks v. Sec'y, Dep't of Health & Hum. Servs.*,
   38 F.4th 86 (11th Cir. 2022) ............................................................. 24

*Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*,
   151 F. Supp. 3d 1294 (M.D. Fla. 2015) ............................................ 10

*Bostock v. Clayton Cnty., Georgia*,
   140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) ...................................... 30

*Burke v. Johnson*,
   No. 16-199-ORL-41TBS, 2016 WL 9503732 (M.D. Fla. June 27, 2016) ......... 21

*California v. Texas*,
   141 S. Ct. 2104, 210 L. Ed. 2d 230 (2021) .................................. 21, 22

*Compulife Software Inc. v. Newman*,
   959 F.3d 1288 (11th Cir. 2020) ......................................................... 12

*Davis v. Passman*,
   442 U.S. 228 (1979) ........................................................................... 21

*Does 1-98 v. Boies, Schiller & Flexner, LLP*,
   709 F. App'x 684 (11th Cir. 2017) .................................................... 25

*Dream Custom Homes, Inc. v. Mod. Day Const., Inc.*,
   773 F. Supp. 2d 1288 (M.D. Fla. 2011) ............................................ 16

*Eli Rsch., LLC v. Must Have Info Inc.*,
   No. 13-695-FTM-38CM, 2015 WL 5934632 (M.D. Fla. Oct. 6, 2015)........ 26, 27

*Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*,
   948 F.3d 261 (5th Cir. 2020) ............................................................. 29

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ............ 11, 31

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ............... 23

*Foley v. Orange Cnty., Fla.*,
   No. 12-269-ORL-37, 2012 WL 6021459 (M.D. Fla. Dec. 4, 2012) ......... 21

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) .......................................................................... 11

*Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*,
  36 F.4th 1100 (11th Cir. 2022)........................................................... 24

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018)..................................................... 14, 22

*Hannah v. Armor Corr. Health Servs., Inc.*,
  No. 19-596-T-60SPF, 2020 WL 6701604 (M.D. Fla. Nov. 13, 2020)............... 26

*Home Design Servs., Inc. v. Turner Heritage Homes Inc.*,
  825 F.3d 1314 (11th Cir. 2016)..................................................... 11, 12

*Kernel Records Oy v. Mosley*,
  694 F.3d 1294 (11th Cir. 2012)............................................................ 10

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197, 136 S. Ct. 1979, 195 L. Ed. 2d 368 (2016) ................... 23

*Krone v. Dick's Sporting Goods, Inc.*,
  No. 20-2438-KKM-SPF, 2022 WL 486334 (M.D. Fla. Feb. 17, 2022)............. 27

*Lipscher v. LRP Publications, Inc.*,
  266 F.3d 1305 (11th Cir. 2001) ........................................................... 31

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ..................... 10, 23, 25

*Malibu Media, LLC v. Doe*,
  381 F. Supp. 3d 343 (M.D. Pa. 2018)........................................... 32, 33, 34

*Malibu Media, LLC v. Doe*,
  No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014) ................... 23

*Malibu Media, LLC v. Doe*,
  No. 14-748 WDQ, 2015 WL 857408 (D. Md. Feb. 26, 2015) ........................ 18

*Malibu Media, LLC v. Fitzpatrick*,
  No. 12-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013) ............................ 32

*Malibu Media, LLC v. Flanagan*,
  No. 13-5890, 2014 WL 2957701 (E.D. Pa. July 1, 2014) ................................. 19

*Malibu Media, LLC v. Long*,
  No. 14-1582-T-35MAP, 2015 WL 12839266 (M.D. Fla. Apr. 8, 2015) ............ 27

*Malibu Media, LLC v. Rahusen*,
  No. 14-6976 JLL JAD, 2015 WL 2231853 (D.N.J. May 11, 2015).................... 18

*Malibu Media, LLC v. Weaver*,
  No. 14-1580-T-33TBM, 2016 WL 1394331 (M.D. Fla. Apr. 8, 2016) .......*passim*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ....................... 10

*Maverick Recording Co. v. Harper*,

    598 F.3d 193 (5th Cir. 2010) ............................................................................. 27

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ....................................... 22

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) .................................. 14

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
    702 F.3d 1312 (11th Cir. 2012) ........................................................................ 15

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) .......................................................................... 20

*North Carolina v. Rice*,
    404 U.S. 244, 92 S. Ct. 402, 30 L. Ed. 2d 413 (1971) ....................................... 22

*Palmer v. Braun*,
    287 F.3d 1325 (11th Cir. 2002) ........................................................................ 15

*Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enterprises*,
    533 F.3d 1287 (11th Cir. 2008) ........................................................................ 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014) ................................. 33

*Pk Studios, Inc. v. R.L.R. Invs., LLC*,
    No. 15-389-FTM-99CM,
2016 WL 4529323 (M.D. Fla. Aug. 30, 2016) ......................................... 27, 28, 30

*Plastic the Movie Ltd. v. Jenkins*,
    No. 15-505-ORL-CEM-DAB, 2015 WL 12856452 (M.D. Fla. Dec. 11, 2015). 14

*Playboy Enterprises, Inc. v. Frena*,
    839 F. Supp. 1552 (M.D. Fla. 1993) ................................................................ 28

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
    344 U.S. 237, 73 S. Ct. 236, 97 L. Ed. 291 (1952) ........................................... 22

*Rimini St., Inc. v. Oracle USA, Inc.*,
    139 S. Ct. 873, 203 L. Ed. 2d 180 (2019).......................................................... 25

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) ........................................................................ 24

*SC Holdings, Inc. v. Redisi*,
    309 F.3d 988 (7th Cir. 2002) ............................................................................ 31

*Schilling v. Rogers*,
    363 U.S. 666, 80 S. Ct. 1288, 4 L. Ed. 2d 1478 (1960) ..................................... 23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ................................. 20

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ................................... 25

*Strike 3 Holdings, LLC v. Doe*,
  964 F.3d 1203 (D.C. Cir. 2020)..................................................................... 22
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585-NLH-JS, 2020 WL 3567282 (D.N.J. June 30, 2020)................... 29
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-08231 (KAW), 2020 WL 1942471 (N.D. Cal. Apr. 22, 2020) .............. 32
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-08239 (VKD), 2020 WL 1865379 (N.D. Cal. Apr. 13, 2020) ............... 31
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-10674 (TJH) (SP), 2020 WL 2574940 (C.D. Cal. Apr. 28, 2020) ......... 31
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-10674 (TJH)(SPx), 2020 WL 5357793 (C.D. Cal. Apr. 28, 2020) ........ 31
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-10677 (TJH)(SP), 2020 WL 2616243 (C.D. Cal. Apr. 23, 2020) ........... 31
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-10677 (TJH)(SPx), 2020 WL 5357781 (C.D. Cal. Apr. 23, 2020) ......... 31
*Strike 3 Holdings, LLC v. Doe*,
  No. 19-2452 (JAH)(LL), 2020 WL 2467067 (S.D. Cal. May 13, 2020) ............ 32
*Strike 3 Holdings, LLC v. Doe*,
  No. 20-67 (LAB)(LL), 2020 WL 3640008 (S.D. Cal. July 6, 2020) .................. 32
*Strike 3 Holdings, LLC v. Doe*,
  No. 21-83 (GJH), 2022 WL 1289667 (D. Md. Apr. 29, 2022............................ 23
*Strike 3 Holdings, LLC v. Poluck*,
  No. 220CV02146TLNCKD, 2022 WL 224020 (E.D. Cal. Jan. 25, 2022) ......... 18
*Strike 3 Holdings, LLC v. Poluk*,
  No. 20-2146-TLN-CKD, 2021 WL 5321824 (E.D. Cal. Nov. 16, 2021) ........... 18
*Strike 3 Holdings, LLC v. Unknown Infringer's Identified on Exhibit "1"*,
  No. 2019-032122-CC-05 ................................................................................... 3
*Strike 3 Holdings, LLC v. Vokoun*,
  No. 20-14321 (NLH)(AMD), 2022 WL 310201 (D.N.J. Feb. 2, 2022)................ 4
*Strober v. Harris*,
  No. 20-2663-MSS-JSS, 2021 WL 7629457 (M.D. Fla. Nov. 23, 2021)............. 12
*Thole v. U. S. Bank N.A*,
  140 S. Ct. 1615, 207 L. Ed. 2d 85 (2020)................................................ 25, 26
*Thompson v. Looney's Tavern Prods., Inc.*,
  204 F. App'x 844 (11th Cir. 2006) ................................................................. 33
*Thornton v. J Jargon Co.*,
  580 F. Supp. 2d 1261 (M.D. Fla. 2008) ........................................................... 34
*Tingley Sys., Inc. v. HealthLink*, Inc.,
  509 F. Supp. 2d 1209 (M.D. Fla. 2007) ........................................................... 11

*Tokyo Gwinnett, LLC v. Gwinnett Cnty., Georgia*,
  940 F.3d 1254 (11th Cir. 2019) ...................................................... 25
*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
  137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017) ...................................... 21
*TriNet Grp., Inc. v. United States*,
  359 F. Supp. 3d 1144 (M.D. Fla. 2018) ............................................ 9
*United States v. Cullen*,
  796 F. App'x 976 (11th Cir. 2019) ................................................. 16
*Weiss v. McDonough*,
  No. 19-1545-CPT, 2021 WL 1214960 (M.D. Fla. Mar. 31, 2021) .................... 20
*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018 ......................................................... 12
*Wilton v. Seven Falls Co.*,
  515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) .................... 21
*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
  142 S. Ct. 2078 (2022) .............................................................. 31

## Statutes

17 U.S.C. § 102(a) .................................................................... 31
17 U.S.C. § 1201(c)(3) ............................................................... 29
17 U.S.C. § 410(c) ................................................................... 11
17 U.S.C. § 501(a) ................................................................... 29
17 U.S.C. § 504(c)(2) ................................................................ 27
17 U.S.C. § 505 ...................................................................... 23
28 U.S.C. § 1738 ..................................................................... 30
28 U.S.C. § 2201(a) .................................................................. 21
47 U.S.C. § 551(c)(1 ................................................................. 30

**Other Authorities**

Kevin Townsend,
    *All Eyes on PCAP: The Gold Standard of Traffic* Analysis, Security Week (Apr. 6, 2021), https://www.securityweek.com/all-eyes-pcap-gold-standard-traffic-analysis ................................................................................................................... 2

Matthew Sag, Jake Haskell,
    *Defense Against the Dark Arts of Copyright Trolling*, 103 IOWA L. REV. 571, 597 (2018) ......................................................................................................................... 2

William F. Patry,
    *Patry on Copyright* § 17:49 (2022) ............................................................. 20, 29

**Rules**

Fed. R. Civ. P. 56 .............................................................................................. 1, 10
Fed. R. Civ. P. 8(d)(3) ........................................................................................... 28

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") moves for summary judgment as to its claim for copyright infringement in its Amended Complaint [DE 1] and as to the action for declaratory judgment brought by Defendant John Doe in his Counterclaim [DE 23].

## MEMORANDUM OF LAW

## I.   INTRODUCTION AND STATEMENT OF MATERIAL FACTS

This litigation over the widespread infringement of Plaintiff's movies across the BitTorrent network is less an exegesis on copyright's knotty jurisprudence than a "whodunit." There is no genuine dispute whether downloading and distributing files over the BitTorrent network infringes Strike 3's copyrights. There is no genuine dispute whether those files are substantially similar. And there is no genuine dispute whether a tenable affirmative defense exists. The only issue is whether Defendant, John Doe infringer assigned IP address 47.197.99.186 ("Doe" or "Defendant"), is the infringer. The record evidence proves he is.

Strike 3 is the rightsholder of popular, award-winning adult movies. But success begets piracy. *See Williamson Decl.*, [DE 11-1], at ¶¶13–32; *see also Certs. of Reg.* attached as Exhibit 1. To protect itself against mass infringement, Plaintiff developed VXN Scan, a forensic software that monitors, records, and gathers evidence from BitTorrent infringers. *See* [DE 11-1] at ¶¶40–80. Using VXN Scan,

Plaintiff recorded an individual using IP address 47.197.99.186 to infringe thirty-six (36) of Plaintiff's copyrighted movies between June 23, 2019 and December 12, 2019. *See* [DE 17-1]. That evidence was logged and preserved in Packet Capture ("PCAP") files.[1] *See Williamson Rebut. Report*, at ¶17 attached as <u>Exhibit 2</u>. In this case, Plaintiff recorded 137 separate PCAPs of Defendant's thirty-six infringements. *See id.*; *see also* [DE 17-1].

Each PCAP contains not just affirmative proof of the "handshake" between Defendant's IP address and VXN Scan, which is direct evidence of Plaintiff's works being transferred over the BitTorrent network, but information about the "BitField" of the file. *Id.* at ¶31. The BitField indicates the percentage of the file downloaded by the user at IP address 47.197.99.186, that is, how much of the file a user could potentially upload to other peers. *Cf.* Matthew Sag, Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling*, 103 Iowa L. Rev. 571, 597 (2018) (explaining how a BitField value would show that the file on an infringer's computer was not a mere "snapshot"). The BitFields show that Defendant's IP address had *downloaded 100% of thirty-three of the copyrights-in-suit. Williamson Rebut. Report*, at ¶31. Of the three-remaining works, the BitFields comprised 39%, 77%, and 86% of the file at the time the PCAP was recorded. *See id.*

---

[1] *See generally* Kevin Townsend, *All Eyes on PCAP: The Gold Standard of Traffic* Analysis, Security Week (Apr. 6, 2021), https://www.securityweek.com/all-eyes-pcap-gold-standard-traffic-analysis.

Armed with this overwhelming evidence, Strike 3 resolved to seek judicial assistance to identify the infringer. On December 4, 2019, just days before the infringement stopped, Plaintiff requested a pure bill of discovery in Miami-Dade County Florida. *Strike 3 Holdings, LLC v. Unknown Infringer's Identified on Exhibit "1"*, No. 2019-032122-CC-05, Dkt. No. 1 (Fla. Miami-Dade County Ct. Dec. 4, 2019) attached as <u>Exhibit 3</u>. That court granted Plaintiff's relief and allowed it to subpoena Defendant's Internet Service Provider ("ISP") Frontier Communications Inc. ("Frontier") to uncover Defendant's identity. *See id.* at Dkt. No. 5.

Frontier notified Defendant of the subpoena sometime in January 2020, and on February 4, attorney Daniel Simon filed a motion to quash Plaintiff's subpoena in the Miami-Dade court. *See id.* at Dkt. No. 9. Thus, Plaintiff sent Mr. Simon a preservation letter on February 6, 2020, [DE 89-11], at ¶10, dropped Defendant from the pure bill of discovery, and promptly filed a claim for copyright infringement with this Court. [DE 1]. Plaintiff's counsel then conferred with Mr. Simon on May 26 regarding Defendant's position on Strike 3 filing another motion for an early subpoena, and eventually filed its motion, which the Court granted. [DE 11, 12].

Just seven days after the conferral–and five days after Plaintiff filed its motion, Defendant reinstalled the operating system ("OS") on his Lenovo laptop "delet[ing] and/or overwrit[ing] critical data previously stored on the hard drive." [DE 89-11] at ¶¶9, 11.

On August 5, 2020, Frontier informed Plaintiff that Defendant was the subscriber to IP address 47.197.99.186 and produced his name and address. *Fernandez Decl.*, at ¶2 attached as <u>Exhibit 4</u>. Plaintiff immediately used that information to investigate whether Defendant or someone else was the infringer. The evidence connecting Defendant to the infringement is compelling.

Plaintiff maintains a database of BitTorrent network activity collected by VXN Scan as well as IPP International. *Id.* at ¶3. These databases record and outline BitTorrent downloads of third-parties' works, such as videogames, software, and documents. *Id.* The data in these databases is collected separately from the data in VXN Scan, which uses PCAPs to collect direct evidence of infringement of Plaintiff's works. *Id.* Collectively, this evidence of third-party downloads is referred to as the Plaintiff's "Additional Evidence." Plaintiff reviewed this Additional Evidence and correlated it to Defendant's interests and activities. *See* [DE 11] at ¶¶47–54; *see also Strike 3 Holdings, LLC v. Vokoun*, No. 20-14321 (NLH)(AMD), 2022 WL 310201, at *3 (D.N.J. Feb. 2, 2022) ("Plaintiff has made a prima facie showing that Defendant is indeed the infringer."). These data, taken together, *inter alia*, show:

1. Defendant listed "VPN" under industry knowledge on his LinkedIn profile. Plaintiff's Additional Evidence shows Defendant's IP address downloading the following files:

   a. *Avira Phantom VPN Pro 569 27075 Final Incl Crack*;
   b. *CyberGhost VPN 9803188  Crack*;

    c. *Express Vpn 8 63 Key only 2018*;
    d. *Hotspot Shield VPN*;
    e. *Hotspot Shield VPN Elite 113624 Multilingual  Patch*;
    f. *Hotspot Shield VPN Elite 92415  Patch Keygen*;
    g. *VPN 365  Free Unlimited VPN Proxy  WiFi VPN v1 2 6 Mod AdFree*;
    h. *Easy VPN v3.0.OSX Mac OS*;
    i. *Hide My IP 12.4.241 Multilingual Premium VPN + Key*;
    j. *HMA! Pro VPN 3.2b for Windows (Vista  7  8.1  10)*;
    k. *Hotspot Shield VPN Elite 10.29.13 Multilingual + Patch*;
    l. *IPVanish VPN 11.8.8 Full Version &10days Free With Cracked*; and
    m. *IPVanish VPN 11.8.8 Full Version &amp;10days Free With Cracked*.

2. Defendant listed "VMware" and "VMware ESX" under "Tools & Technologies" on his LinkedIn profile. Plaintiff's Additional Evidence lists:

    a. *VMware Workstation 1210 Build 2305331 Final Incl*;
    b. *VMware Workstation v1400 FULL  Serials [TechTools]*;
    c. *VMware Workstation Pro 12.1.1 Build 3770994 + Keys*; and
    d. *Mac OS X 112 Mavericks for ESXI*.

3. Defendant's LinkedIn identified him as a "Network Infrastructure Engineer." Plaintiff's Additional Evidence lists:

    a. *VisualRoutev81d Professional  CrackFiSKPiNNE*;
    b. *serverscheckmonitoringsoftware8 0 5 exe*; and
    c. *MATLAB R2018 a [PC] [x64] with Serial  Crack*.

4. Defendant is a Star Wars fan. Plaintiff's Additional Evidence lists:

    a. *[PsP - CsO] Lego Star Wars [Motionxcitystx] .cso*;
    b. *Star      Wars      The      Rise      of      Skywalker 2019BRRipXviDAC3EVO[EtMovies]torrent*;
    c. *Rogue One A Star Wars Story 2016 BRRipXviDAC3EVO*; and
    d. *Star Wars  Rogue One Adaptation 02 of 06 2017 3 covers digital MinutemenMidascbr*.

5. Defendant is a World of Warcraft fan. And Plaintiff's Additional Evidence lists:

    a. *World of Warcraft Client - Version 1.12.1 enUS – Windows*.

6. Defendant is a Seth McFarlane fan. Plaintiff's Additional Evidence lists:

    a. *Download Family Guy S16E18 2018 HDTV x264  LEGi0N torrent*; and
    b. *Family Guy S16E18 2018 HDTV x264 – CM.*
    c. *TheOrvilleS01E061080pWEBx264TBS [rarbg]*

7. Defendant is a fan of the videogame Diablo. Plaintiff's Additional Evidence lists:

    a. *Diablo 3 With Lord of Destruction (v1.21c) (Direct Play)*

8. Defendant has stated in his deposition that he is certified in "ethical hacking." Plaintiff's Additional Evidence lists:

    a. *Learn Ethical Hacking using Kali Linux  Full Course.*

Exhibit 4, at ¶4.  These various intersections between the BitTorrent downloads and Defendant's personal life eliminate the possibility that someone else used Defendant's IP address to download these files over the BitTorrent network. Plaintiff included many of these allegations in its First Amended Complaint, which Defendant answered on November 12, 2020. [DE 23]. Additionally, Defendant counterclaimed for declaratory judgment of non-infringement with a claim to recover his fees and expenses associated with the litigation. *Id.*

On November 25, 2020, the OS on Defendant's other hard drive, a Microsoft desktop, was reinstalled.[2] [DE 89-11] at ¶18. This update destroyed all Windows

---

[2] According to Defendant's LinkedIn Profile, Defendant is a Microsoft Certified Technology Specialist (MS Windows, Vista, Configuration; Windows Server 2008 Active Directory, Configuration) and Microsoft Certified Professional and therefore would know the impact of the update. *See* Exhibit 4. For a more in-depth review of

Event Logs. *Id*. at ¶17. The destroyed Windows Event Log files would have contained significant occurrences in the system including events using dates, times, usernames, computer name, and the program that caused the event. *Id*. Despite concealing these OS reinstallations during discovery, Defendant never denied them.

But spoilation of the hard drives was just the beginning. On December 8th, 2021, over irrelevant objections and prior evasive responses, Defendant produced complete data of his user data from Twitter. Exhibit 4, at ¶6. This data included a list of IP addresses that Defendant used to log into Twitter, including IP address 47.197.99.186. *Id.* Another IP address, however, was "146.70.38.84." *Id.*

Plaintiff researched that IP address and traced it to a virtual proxy network ("VPN") service titled Private Internet Access ("PIA"). *Id.* at ¶7. Plaintiff searched that IP address in its Additional Evidence database and discovered evidence of BitTorrent infringement from August 12, 2021 to December 8, 2021. *Id.* at ¶7. In fact, Plaintiff's Additional Evidence shows that the IP address infringed *more* of Strike 3's works via BitTorrent. *Id.* The Additional Evidence also shows that IP address 146.70.38.84 downloaded files for Minecraft, Borderlands, and Spotify.[3] *Id.* at ¶8.

---

Defendant's spoilation of evidence *see* Plaintiff's Motion for Sanctions Pursuant to Rule 37(e)(2).

[3] Defendant produced screenshots of the files on his PlayStation console during discovery that show Minecraft, Borderlands, and Spotify were present on that device. *See JAD073–75* attached as Exhibit 7.

On December 9, 2021, Plaintiff notified Defendant of its intent to serve a subpoena on PIA. *See Notice* attached as <u>Exhibit 5</u>. The infringement immediately ceased and has not resumed. Defendant later testified that he did maintain an account with PIA and that he terminated it once he received notice of the subpoena on PIA. *Def.'s Fact Depo.* at 92:5–92:19 attached as <u>Exhibit 6</u>. Defendant would also later concede the connections linking him to the infringement in Plaintiff's First Amended Complaint. *See id.* at 139:8–139:19.

Despite the overwhelming evidence, Defendant sticks to a theory that someone else–"maybe a neighbor!"–could have accessed his IP address to infringe Strike 3's works. But he admitted that he has no evidence that any of his neighbors accessed his Internet, no evidence that his Internet was hacked, nor that anyone used his Internet without his permission. <u>Exhibit 6</u> at 119:3–119:22. Nor does anyone else have such evidence. Out of an abundance of caution, Plaintiff deposed Defendant's neighbor, who testified that all available wi-fi networks in his neighborhood appeared password protected, and that he could not recall ever seeing a network unsecured by a password. *See Neighbor Depo.* at 21:21–24:2 attached as <u>Exhibit 8</u>.

Finally, despite Defendant's spoliation of ESI, Plaintiff's expert, Patrick Paige, was able to uncover a "ShellBag file" from one Defendant's system log files. [DE 89-11] at ¶¶20–24.  In computer forensics, ShellBags provide an investigator with information related to the user's browsing history "as well as details for any

folder that might no longer exist on a system (due to deletion or being located on a removable device)." *Id.* at ¶20. The System Log Files for Defendant's Windows computer contained a ShellBag file that demonstrated that Defendant accessed on December 25, 2018 a folder partially titled: "American-Pornstar. 18.12.19.Gina.Gerson.XXX.SD.MP4-KLEENEX" on. (Gina Gerson starred in one of Strike 3's movies at issue in this case, titled "Vacation with Benefits.") *Id.* This evidence also indicated the existence of an undisclosed hard drive, the ADATA device, to which Defendant has recently confessed. *See* [DE 103-2]. The direct evidence from the PCAPs, the circumstantial evidence of the Additional Evidence, as well as Defendant's outright spoliation and contradictions in discovery, leave no dispute of material fact: Defendant is the infringer of Plaintiff's works.

## II.   LEGAL STANDARD

"Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *TriNet Grp., Inc. v. United States*, 359 F. Supp. 3d 1144, 1149 (M.D. Fla. 2018), *aff'd*, 979 F.3d 1311 (11th Cir. 2020) (citations omitted). "Which facts are material depends on the substantive law applicable to the case." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "If the movant shows 'an absence of evidence to support the nonmoving party's case,' the burden then shifts to the non-moving party to

demonstrate that there are, in fact, genuine disputes of material facts." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1301 (M.D. Fla. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)).

"To satisfy its burden, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Rather, the non-movant must go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (collecting cases). "[I]nferences based upon speculation are not reasonable." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) (citation omitted). Additionally, with respect to standing, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (collecting cases). A party "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts[.]'" *Id.* (citations omitted); *see* Fed. R. Civ. P. 56(e).

## III.   LEGAL ANALYSIS

### A.   NO DISPUTE OF MATERIAL FACT REGARDING DEFENDANT'S COPYRIGHT INFRINGEMENT

#### 1.   INFRINGEMENT ELEMENTS

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991) (citation omitted). "The second element can be proven either with direct proof of copying or, if direct proof is unavailable, by demonstrating that the defendants had access to the copyrighted work and that the works are substantially similar." *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016). Such proof need only be established by a preponderance of the evidence. *See Tingley Sys., Inc. v. HealthLink*, Inc., 509 F. Supp. 2d 1209, 1217 (M.D. Fla. 2007).

#### 2.   STRIKE 3 OWNS THE COPYRIGHTS-IN-SUIT

The first element is easily met. Plaintiff produced to Defendant the Certificates of Registration issued by the United States Copyright Office for each of the works-in-suit, which constitute "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019). Those certificates show that Strike 3 the proper claimant. *See Strober v. Harris*, No.

20-2663-MSS-JSS, 2021 WL 7629457, at *2 (M.D. Fla. Nov. 23, 2021). And as outlined Plaintiff's Exhibit A to its first Amended Complaint, the underlying copyrights were timely registered. *See* [DE 17-1].

### 3. DEFENDANT, AND NOT SOMEONE ELSE, COPIED STRIKE 3'S COPYRIGHTS

#### a. Evidentiary Threshold

Defendant's failure to preserve his ESI has eliminated the parties' ability to rely on direct evidence on the hard drives. This does not, however, prevent Strike 3 from proving copying through circumstantial evidence, which is by far the most common means of proving copyright infringement. *See Home Design Servs*, 825 F.3d at 1321; *Williams v. Gaye*, 895 F.3d 1106, 1123 (9th Cir. 2018) ("Because direct evidence is rare, copying is usually circumstantially proved[.]"). The copying prong "comprises two subparts, 'factual and legal copying[.]'" *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020).

Factual copying asks "'whether the defendant actually used the plaintiff's material,' [and] may be inferred from indirect evidence demonstrating that the defendant had access to the copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work." *Id.* (citations omitted). "'Legal'—or 'actionable'—copying occurs when 'those elements of the [copyrighted work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.* (citations

omitted). In any event, Plaintiff must show the a "substantial similarity" in the copies, which is "assessed with respect to both the quantitative and the qualitative significance of the amount copied to the copyrighted work as a whole." *Id.* (citation omitted). Here, Defendant had access to Strike 3's works online and downloaded and uploaded identical copies of those works.

### b.   Plaintiff's PCAPs Prove Defendant Factually Copied Its Works

There is no question that Defendant had access to Strike 3's works and that actual copying of Strike 3's works occurred. VXN Scan recorded consistent and continuous BitTorrent activity from Defendant's IP address. *See generally Supp. Paige Report* attached as <u>Exhibit 9</u> (testing VXN Scan's accuracy). Those infringements were recorded in 137 Packet Capture ("PCAP") files, *see Williamson Rebut. Report*, at ¶17, which "is a computer file containing captured or recorded data transmitted between network devices. In short, it is a recording of network traffic." [DE 11-2] at ¶14. It is akin to a surveillance footage of the networks exchanging the infringing file. The presence of these PCAP files–showing that a computer using Defendant's IP address uploaded Plaintiff's works to VXN Scan, proves that Defendant had "access" to the works. *Cf. Malibu Media, LLC v. Weaver*, No. 14-1580-T-33TBM, 2016 WL 1394331, at *5 (M.D. Fla. Apr. 8, 2016).

### c.   PCAPs Evidence Legal Copying

While direct evidence of copying is unavailable because Defendant failed to preserve relevant ESI, Plaintiff preserved the above PCAPs which contain both direct and strong circumstantial evidence of the infringement. *See Plastic the Movie Ltd. v. Jenkins*, No. 15-505-ORL-CEM-DAB, 2015 WL 12856452, at *2 (M.D. Fla. Dec. 11, 2015), *report and recommendation adopted*, No. 15-505-ORL-41DAB, 2016 WL 7446510 (M.D. Fla. Feb. 16, 2016) (finding plaintiff satisfied the copying prong no default where the "PCAP shows Defendant's IP address, and the piece that was distributed"). Indeed, Plaintiff produced all 137 PCAPs to Defendant and he has neither challenged their contents nor Plaintiff's experts' findings based on them.

Each PCAP's BitField value shows that Defendant had 100% of Plaintiff's movie in *all but three* of the movies. *Williamson Rebut. Report*, at ¶31. That is, Defendant's computer had downloaded 100% of thirty-three of the works-in-suit before uploading them to VXN Scan. Downloading and distributing an entire work over a peer-to-peer website is a paradigmatic example of copyright infringement. *See*, *e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005); *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) (noting the rightsholder achieved a "total success" on its copyright claim when the defendant stipulated to downloading the work over the BitTorrent network).

Of those three files that VXN Scan did not record a BitField of 100%, those percentages were 39%, 77%, and 86%. Thus, even at the lowest end of the spectrum, Defendant had already downloaded at least over one-third of the movie, which, while not identical to the work, is nonetheless substantially similar. This is not the typical case in which the defendant only copied portions of the rightsholder work–where the "differences" in the expression of the works "weigh heavily" in substantial similarity analysis. *See*, *e.g.*, *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1326 (11th Cir. 2012) (citations omitted). Here, Defendant had tried–very likely successfully–to download the entire file, but Plaintiff's pre-suit evidence only recorded those downloads in progress.

Regardless, "even if the borrowed expression from the [movie] does not exceed one percent of [Plaintiff's source] materials" the Eleventh Circuit has explained that that calculation misapprehends the inquiry "because *it is the relative portion of the copyrighted work*—not the relative portion of the infringing work—that is the relevant comparison." *Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enterprises*, 533 F.3d 1287, 1307 (11th Cir. 2008) (emphasis added). No "average lay observer" would fail to "recognize the alleged copy"–39% of Strike 3's movie–"as having been appropriated from the copyrighted work." *See Palmer v. Braun*, 287 F.3d 1325, 1330 (11th Cir. 2002). They would recognize that file for what it is: a substantial, though incomplete, copy of Strike 3's work.

The Eleventh Circuit has also approved of similar network evidence for proof of evidence on an unpreserved hard drive. In *United States v. Cullen*, 796 F. App'x 976, 981 (11th Cir. 2019), the defendant appealed his enhanced sentence that was based on files not recovered from his laptop. The court denied the appeal:

> The District Court, however, considered 27 videos that were fully downloaded to IP addresses associated with Cullen as reflected on the CPS database. [T]hey had never actually been found on Cullen's devices. *Still, the Government has demonstrated, by a preponderance of evidence, that these videos were involved in Cullen's offense.* They were linked to his IP addresses, they matched the hash values [known in the CPS database], and they had been fully downloaded into his computer. *While they were not found on the physical devices seized from his home, the District Court reasonably inferred that Cullen had deleted them, especially given his testimony that he routinely reformatted his computer.*

*Id.* (emphasis added). Plaintiff's pre-suit evidence permits the same inferences.

Plaintiff confirmed that Defendant's IP address exchanged pieces of files with VXN Scan. Those pieces correspond to publicly broadcast "infohash" values, which Strike 3's witness, Ms. Stalzer, confirmed corresponded to identical or substantially similar copies of Plaintiff's works. *See* [DE 11-1]. Again, none of the facts–the PCAPs, the information contained within the PCAPs, Ms. Stalzer's conclusions– have been contested by Defendant. This is necessary for Defendant to prevail. *See Dream Custom Homes, Inc.* v. *Mod. Day Const., Inc.*, 773 F. Supp. 2d 1288, 1301 (M.D. Fla. 2011), *aff'd*, 476 F. App'x 190 (11th Cir. 2012) (explaining that a defendant can "rebut the inference of copying by showing that its product was

independently created despite its similarity to the plaintiff's work"). There is no genuine dispute as to any of the elements of copyright infringement. The only remaining issue is whether Doe is the infringer. The evidence here is compelling.

### d.    Defendant is the Infringer

There are only two people who reside at Defendant's address who had consistent access to IP address 47.197.99.186: Defendant and his mother. Exhibit 6 at 22:19–22:21. Defendant has lived at the address throughout the period of infringement. He is a network infrastructure engineer with significant technical background. He is also a certified "ethical hacker," *id.* at 39:14–40:23, and testified that he uncovered zero evidence of hacking or unauthorized access to his Internet. *Id.* at 119:12–119:22. There is no evidence that his mother is capable of using BitTorrent software or that she ever has. Defendant admitted he has zero evidence that anyone else accessed his Internet to download Plaintiff's works. Thus, the only individual with consistent access to IP address 47.197.99.186 who could operate the BitTorrent protocol is Defendant.

There is no dispute of material fact that the infringer is Defendant.  As set forth above, numerous files on Plaintiff's Additional Evidence correlate to Defendant's career, hobbies, interests and expertise. All of these files were downloaded at or around the same time as Plaintiff's works through BitTorrent using Defendant's Internet. This evidence supports a finding of infringement under

17

applicable case law. *See*, *e.g.*, *Malibu Media, LLC v. Rahusen*, No. 14-6976 JLL JAD, 2015 WL 2231853, at *4 (D.N.J. May 11, 2015); *Malibu Media, LLC v. Doe*, No. 14-748 WDQ, 2015 WL 857408, at *4 (D. Md. Feb. 26, 2015).

Although Defendant plead that he did not have sufficient information to answer whether his social media contained evidence of his interests in Diablo 3, World of Warcraft, and Star Wars, [DE 23] at p. 5, he later admitted the allegations were correct. *See* Exhibit 6 at139:8–17; *see also id.* at 85:24–85:25, 86:9–86:15 (admitting to using "battle.net," a legitimate peer-to-peer network, to download materials for World of Warcraft and Diablo).

Defendant also revealed at deposition that he had viewed or used other media (while denying others) that were contained in Strike 3's Additional Evidence, including videogames like "Divinity: Original Sin", "Dark Souls," "Dungeons and Dragons," "Final Fantasy XIV," "Kingdom Hearts," "Lego Star Wars," "The Sims 3," "The Sims 4," and "The Witcher 3." Exhibit 6 at 101:19–104:6, and movies like "Cliffhanger," "Dragonball Super: Broley," "Ex Machina," and "The Hateful Eight." *Id.* at 107:5–108:23. Courts routinely find that Plaintiff's Additional Evidence can identify the infringer. *See*, *e.g.*, *Strike 3 Holdings, LLC v. Poluk*, No. 20-2146-TLN-CKD, 2021 WL 5321824, at *3 (E.D. Cal. Nov. 16, 2021), *report and recommendation adopted sub nom. Strike 3 Holdings, LLC v. Poluck*, No. 220CV02146TLNCKD, 2022 WL 224020 (E.D. Cal. Jan. 25, 2022) (holding that

"the undersigned is satisfied plaintiff's substantive claim has merit and the allegations are sufficient" after reviewing Plaintiff's Additional Evidence); *Malibu Media, LLC v. Flanagan*, No. 13-5890, 2014 WL 2957701, at *1 (E.D. Pa. July 1, 2014) ("Plaintiff's Amended Complaint lists various 'additional evidence,' such as information on Defendant's [F]acebook page and other material downloaded from the IP address that implicates that the Defendant was the infringer.").

Perhaps the most telling evidence is that Defendant used a VPN to, again, infringe more of Plaintiff's works (and other files similar to the ones on Plaintiff's Additional Evidence) during the course of this litigation. And where Defendant has tried to deflect the blame onto other for the infringements committed over his front-facing IP address, he does not claim that anyone other than himself had access to his PIA VPN account. That infringement only stopped when Defendant was notified of Strike 3's subpoena on the VPN.

Finally, the ShellBag file discovered by Mr. Paige containing a deleted adult film that appears to be downloaded from BitTorrent, contains the same actress starring in one of Plaintiff's works. The fact that Defendant would have a remnant of that file on his computer (along with the other matches to Strike 3's Additional Evidence) cannot be credibly passed off on some mysterious, speculative third-party.

## B.     THERE IS NO DISPUTE OF MATERIAL FACT REGARDING DEFENDANT'S COUNTERCLAIM

Defendant has not shown a cognizable injury-in-fact and thus lacks standing to maintain his counterclaim for declaratory relief. The mirror-image counterclaim merely presents a "bare" claim for relief "divorced from any concrete harm[.]" *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Such claims are "nonsensical . . . and do not provide an independent case or controversy." 5 William F. Patry, *Patry on Copyright* § 17:49 (2022).

The counterclaim is predicated solely on the fact that Strike 3 has brought a claim against Defendant who "has incurred costs, fees, and expenses in connection with its Defense."[4] *Ans.* [DE 23] at ¶¶ 5–6. But "standing is not dispensed in gross" and Defendant "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S.

---

[4] Although not in his pleadings, Defendant later stated during a deposition that he also brought suit to "[t]o clear [his] name." *Def.'s Fact Depo.* at 152:25–153:3. Despite never requesting a protective order, Fed. R. Civ. P. 26(c), Strike 3 has privately agreed to maintain Defendant's anoyminity throughout these proceedings; his name has never appeared on the docket. There is thus nothing to "clear." Additionally, since this injury was not claimed in any of Defendant's pleadings, it cannot be considered on summary judgment. *Cf. Weiss v. McDonough*, No. 19-1545-CPT, 2021 WL 1214960, at *3 (M.D. Fla. Mar. 31, 2021); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 925 (11th Cir. 2020) ("[Courts] are powerless to 'create jurisdiction by embellishing a deficient allegation of injury.'") (citation omitted).

Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017) (collecting cases). Missing from this threadbare the allegation is (1) the basis to declaratory relief (*i.e.*, a right or legal relationship), and (2), an injury-in-fact. Nor has Defendant produced any evidence in support of his basis or injury.

The Declaratory Judgment Act provides, with irrelevant exceptions that "[i]n a *case of actual controversy* within its jurisdiction," a district court "*may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphases added). It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995) (collecting cases). The Act "alone does not provide a court with jurisdiction," *California v. Texas*, 141 S. Ct. 2104, 2115, 210 L. Ed. 2d 230 (2021) (citations omitted), and it "does not provide an independent cause of action or theory of recovery." *Foley v. Orange Cnty., Fla.*, No. 12-269-ORL-37, 2012 WL 6021459, at *8 (M.D. Fla. Dec. 4, 2012) (citations omitted); *Burke v. Johnson*, No. 16-199-ORL-41TBS, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016) ("[It] is not a cause of action; it is a remedy."); *see Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[W]hether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive.").

Thus, "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California*, 141 S. Ct. at 2115 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)). The Supreme Court has consistently "required that the dispute be 'definite and concrete, *touching the legal relations of parties having adverse legal interests*[.]'" *See MedImmune*, 549 U.S. at 127 (citation omitted) (emphasis added).

That is, "the availability of [declaratory] relief presupposes the existence of a judicially remediable right. *No such right exists here*."[5] *See Schilling v. Rogers*, 363

---

[5]"[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404, 30 L. Ed. 2d 413 (1971) (citation omitted).  Defendant has not alleged a "legal relationship" between the parties, such as a preexisting contract or business relationship. *See*, *e.g.*, *MedImmune*, 549 U.S. at 121 (disputing patent validity, contractual obligations, and royalties between manufacturers); *Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378, 1385 (Fed. Cir. 2021). In fact, the parties were complete strangers until Strike 3's subpoenaed. *See Def.'s Fact Depo.* at 94:4–94:17; *see also Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1212 (D.C. Cir. 2020) (explaining that Strike 3 cannot know who the identity of the party until after it receives a response to its subpoena).

Nor has Defendant alleged any "right" to use, or intent to use, any of Strike 3's copyrights. "This is not a case of the infringer creating something new and incorporating a copyrighted element into that new, creative work." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (citations omitted). "Rather, this case is the digital equivalent of standing outside the neighborhood Redbox—or Blockbuster Video, for fans of history—and giving away copies of the movie for free." *Id.* There is no right in the Copyright Act, at statute, or at common law to be declared "innocent." *Cf. Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242, 73 S. Ct. 236, 239, 97 L. Ed. 291 (1952) (noting the Declaratory

U.S. 666, 677, 80 S. Ct. 1288, 1296, 4 L. Ed. 2d 1478 (1960) (emphasis added); *Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014) ("Doe's counterclaim seeks no affirmative relief other than a determination . . . that he is not liable to [Strike 3] for copyright infringement. As such, it is not appropriately a counterclaim.") (collecting cases); *see also Strike 3 Holdings, LLC v. Doe*, No. 21-83 (GJH), 2022 WL 1289667, at *3 (D. Md. Apr. 29, 2022). Yet even had Defendant alleged subject-matter of the kind the Declaratory Judgement Act could redress, the counterclaim would still fail because Defendant has failed to present or prove an Article III injury.

To sustain his counterclaim, Defendant "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *See TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[A]n injury in law is not an injury in fact." *TransUnion*, 141 S. Ct. at 2205 ("This Court has rejected 'the argument that a plaintiff automatically satisfies the

---

Judgement Act expressly "omits status" from its scope "and limits the declaration to cases of actual controversy"). Nor does the Copyright Act award fees "as a matter of course," *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202, 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455 (1994)) (internal quotations omitted), as that determination is wholly committed to the Court's discretion. *See* 17 U.S.C. § 505.

injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'") (citations omitted). "[A]n act of Congress that creates a statutory right and a private right of action to sue does not automatically create standing[.]" *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019).

"To establish an injury in fact," Defendant "must demonstrate that [he] suffered an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86 (11th Cir. 2022) (citation omitted). "A 'concrete' injury is one that actually exists—it is 'real,' as opposed to 'abstract.'" *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022) (citations omitted). "No concrete harm, no standing." *TransUnion*, 141 S. Ct. at 2214.

To the extent that Defendant's "unadorned, the-defendant-unlawfully-harmed-me accusation" in his counterclaim implies an injury, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted), it is one for attorneys' fees. *See* [DE 23] at ¶¶ 5–6. "Obviously, however, [Defendant] cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the [counter-]plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation

itself." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107–08, 118 S. Ct. 1003, 1019, 140 L. Ed. 2d 210 (1998); *Tokyo Gwinnett, LLC v. Gwinnett Cnty., Georgia*, 940 F.3d 1254, 1262 n.2 (11th Cir. 2019) (rejecting standing where party argued it was injured by the "money spent on th[e] litigation"); *cf. Does 1-98 v. Boies, Schiller & Flexner, LLP*, 709 F. App'x 684, 686 (11th Cir. 2017) (finding similar argument "meritless"). "To be sure [Defendant's] attorneys have a stake in the lawsuit, but an 'interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1619, 207 L. Ed. 2d 85 (2020) (collecting cases).

Even if Defendant had bootstrapped some right under the Declaratory Judgement Act or alleged a cognizable injury, he still has not met his burden to prove his injury. *See Lujan*, 504 U.S. at 561. Well documented throughout this litigation is Defendant's complete refusal to substantiate his claim that he has "incurred" fees. All Defendant has revealed is that he has paid $2,000 to Mr. Edmondson, [DE 89-9] but the only bill Plaintiff has to substantiate that, is from Defendant's experts. Exhibit 4, at ¶10. But "expert witness fees" and "e-discovery expenses" are not recoverable under the Copyright Act, *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878, 203 L. Ed. 2d 180 (2019), let alone a basis for standing.

Accordingly, Defendant "has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit

in American courts." *See TransUnion*, 141 S. Ct. at 2206.   Irrespective of any expenses his attorneys may have debited, since Defendant himself has "no concrete stake in the lawsuit, [he] lack[s] Article III standing." *See Thole*, 140 S. Ct. at 1619. Nor has Defendant produced any evidence in support of the counterclaim. Thus, summary judgment must be entered against Defendant's claim for declaratory relief.

### C. DEFENDANT'S AFFIRMATIVE DEFENSES ARE EITHER LEGALLY UNTENABLE OR WOEFULLY UNSUPPORTED BY THE EVIDENCE

"[S]ummary judgment may properly be granted on affirmative defenses." *Eli Rsch., LLC v. Must Have Info Inc.*, No. 13-695-FTM-38CM, 2015 WL 5934632, at *2 (M.D. Fla. Oct. 6, 2015) (collecting cases). Plaintiff "must . . . show[] that Defendant cannot maintain these defenses by a preponderance of the evidence," *id.* (citation omitted), and "[o]nly the existence of a genuine issue of material fact will preclude summary judgment." *See Hannah v. Armor Corr. Health Servs., Inc.*, No. 19-596-T-60SPF, 2020 WL 6701604, at *2 (M.D. Fla. Nov. 13, 2020) (citing *Anderson*, 477 U.S. at 249).

Many of Defendant's affirmative defenses fail as a matter of law. To start, Defendant's First and Ninth Affirmative Defenses for Failure to State a Claim and "Injunctive Relief" are not affirmative defenses at all. "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Krone v. Dick's*

*Sporting Goods, Inc.*, No. 20-2438-KKM-SPF, 2022 WL 486334, at *3 (M.D. Fla. Feb. 17, 2022) (citations omitted). "In other words, a defense that 'points out a defect in the plaintiff's prima facie case is *not* an affirmative defense'—even if the defendant labels it as one." *Id.* (citations omitted) (emphasis original).

"Failure to state a claim . . . is not properly asserted as an affirmative defense." *Malibu Media, LLC v. Long*, No. 14-1582-T-35MAP, 2015 WL 12839266, at *3 (M.D. Fla. Apr. 8, 2015) (Scriven, J.) (striking defense); *accord Pk Studios, Inc. v. R.L.R. Invs., LLC*, No. 15-389-FTM-99CM, 2016 WL 4529323, at *2 (M.D. Fla. Aug. 30, 2016). The same is true of Defendant's "injunctive relief" defense, which, like a failure to state a claim defense, "simply den[ies] the complaint's allegations" and is thus "not [an] affirmative defense[]." *See Eli Rsch.*, 2015 WL 5934632 at *5 (granting summary judgement against a defense of "injunctive relief").

Similar issues undercut the Sixth and Seventh Affirmative Defenses for Mitigation of Damages and Innocent Infringement. "The innocent infringer defense gives the district court discretion to reduce the minimum statutory damages from $750 to $200 per infringed work if it finds that the infringer 'was not aware and had no reason to believe that his or her acts constituted an infringement of copyright.'" *Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010) (citing 17 U.S.C. § 504(c)(2)). At best, these "defenses" may influence damages, but they do

not affect Defendant's liability such that a finding for either defense would require judgment for the defendant.

Hence, "[i]nnocent infringement of a copyright is not an affirmative defense[.]" *See Pk Studios*, 2016 WL 4529323 at *4 (striking defense). This is particularly true here where Defendant pleads that he "had no reason to believe that its acts constituted an infringement," which is irrelevant to a strict liability offense. *See Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1559 (M.D. Fla. 1993) ("Intent or knowledge is not an element of infringement, and thus even an innocent infringer is liable for infringement[.]"). More importantly, it is useless where Defendant has *denied* all infringement. [DE 23] at ¶57; Exhibit 6 at 92:20–92:23. And if that denial were false, the infringement could hardly be called "innocent." Defendant can have it both ways in the pleadings, *see* Fed. R. Civ. P. 8(d)(3), but not on summary judgement.

A failure to mitigates damages, is a valid affirmative defense in some situations. This is not one of them. As the name imports, it is an equitable defense whereby courts may remit damage where, as Defendant has alleged, Plaintiff had a "duty to mitigate its damages and has failed to do so." [DE 23] at p. 7. But that defense "is generally inappropriate when a party seeks only statutory, as opposed to actual, damages." *Weaver*, 2016 WL 1394331 at *7 (collecting cases) (granting summary judgement against that defense); *Energy Intel. Grp., Inc. v. Kayne*

*Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020) ("Where plaintiff seeks only statutory damages, such a defense is meritless and should be struck since there is no requirement that statutory damages be pegged to actual damages.") (quoting 6 Patry on Copyright § 22:192.25). Strike 3 has sought statutory damages, not actual damages, eliminating the grounds for this defense. *See* [DE 17] at ¶46.

Moreover, Defendant's suggestion that Strike 3 has a duty (and failed) to adopt certain technical measures and litigation tactics is irrelevant. *See Strike 3 Holdings, LLC v. Doe*, No. 18-12585-NLH-JS, 2020 WL 3567282, at *9 (D.N.J. June 30, 2020) (rejecting argument that litigation was improper because other legal mechanisms were available). Congress has determined that "*[a]nyone* who violates *any* of the exclusive rights of the copyright owner . . . is an infringer," 17 U.S.C. § 501(a) (emphasis added), and it has declined to prescribe the adoption of technical measures as a condition precedent to enforcing a copyright.[6] There is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case"–such as only prosecuting the "original seeder"–"creates a tacit exception" to the "broad rule." *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1747, 207

---

[6] *Cf.* 17 U.S.C. § 1201(c)(3). Additionally, the circumvention of "technological measures" is a separate and distinct tort, *see id.* at 1203(a), that does not "affect [the] rights, remedies, limitations, or defenses to copyright infringement[.]" *Id.* at 1201(c)(1).

L. Ed. 2d 218 (2020). Defendant's attempt to undermine Plaintiff right to protect its copyrights, thus, misses the mark.

Defendant's Eight Affirmative Defense for Copyright Misuse similarly overextends that doctrine. "The purpose of the defense is to prevent a litigant from securing an exclusive right which exceeds what has already been granted via the copyright," and the defense thus "bar[s] recovery for a copyright owner who attempts to *extend its limited copyright rights to property not covered by the copyright*." *Pk Studios, Inc. v. R.L.R. Invs., LLC*, No. 15-389-FTM-99CM, 2016 WL 4529323, at *5 (M.D. Fla. Aug. 30, 2016) (citation omitted) (emphasis added). Defendant's sole basis here is "Plaintiff's use of the Florida State Court as preliminary process to attempt to acquire federally protected subscriber information[.]" [DE 23] at p.7. But this misapprehends the posture and the law.

First, the action is only for copyright infringement; it is not for a pure bill of discovery, which the state court granted. *See Agripost, LLC v. Miami-Dade Cnty., Fla.*, 525 F.3d 1049, 1056 (11th Cir. 2008) (holding the Full Faith and Credit Act, 28 U.S.C. § 1738, "does not permit [courts] to second-guess the correctness of the [state] court's decision on the merits"). Second, although Defendant's subscriber information receives qualified protection from a federal statute, 47 U.S.C. § 551(c)(1), the statute permits a disclosure "pursuant to *a court order*," *id.* at § 511(c)(2)(B) (emphasis added), which is not limited to the federal venue. *Cf. ZF*

30

*Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2086 (2022) (defining "court" broadly as "[t]he seat of a judge") (citation omitted); *SC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("There is no privilege or restriction on releasing customer records to a nongovernmental entity pursuant to a court order.").

Third, a pure bill of discovery does not extend the reach of the copyrights' monopoly because the Copyright Act simply affords a series of "exclusive rights" to "the owner[s] of copyright" in expressive "works of authorship." *See* 17 U.S.C. § 102(a). Defendant does not claim that his name and address are copyrightable subject-matter, and rightfully so, as "these bits of information are uncopyrightable facts." *See Feist*, 499 U.S. at 361; *see also Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001). "Nor has [Defendant] submitted evidence from which a trier of fact might find that [Plaintiff]'s lawsuit is anything other than a 'good faith attempt to enforce a copyright,' conduct which 'does not violate the antitrust laws.'"[7] *Cf. Malibu Media, LLC v. Doe*, 381 F. Supp. 3d 343, 359 (M.D.

---

[7] Various courts have held that Plaintiff's resort to pure bills of discovery is proper, and that it is not engaged in "forum shopping, abuse [of] process, [or] litigation gamesmanship[.]" *Strike 3 Holdings, LLC v. Doe*, No. 19-10674 (TJH)(SPx), 2020 WL 5357793, *2 (C.D. Cal. Apr. 28, 2020) (internal quotations omitted); *Strike 3 Holdings, LLC v. Doe*, No. 19-08239 (VKD), 2020 WL 1865379 (N.D. Cal. Apr. 13, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10677 (TJH)(SP), 2020 WL 2616243 (C.D. Cal. Apr. 23, 2020), *report and rec. adopted*, No. 19-10677 (TJH)(SP), 2020 WL 2615450 (C.D. Cal. May 22, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10677 (TJH)(SPx), 2020 WL 5357781 (C.D. Cal. Apr. 23, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10674 (TJH) (SP), 2020 WL 2574940 (C.D. Cal. Apr. 28, 2020), *report and rec. adopted*, No. 19-10674 (TJH)(SP), 2020 WL

Pa. 2018) (citation omitted) (granting summary judgment against copyright misuse); Exhibit 6 at 122:21–123:25. This defense cannot be sustained.

Finally, Defendant raises a bevy of Affirmative Defenses–waiver, implied license, unclean hands, and estoppel–under an identical notion: that "*[o]n information and belief*, Plaintiff, either directly, or through its agent, directed or allowed its videos to be 'seeded' to the Internet via torrent sites. Defendant either impliedly or expressly had permission to download its copyrighted Works." *See* D.E. 23, at p.6–7 (emphasis added). There is no evidence to substantiated Defendant's far-flung theory.

"Defendant's allegation that Plaintiff itself initially seeded the torrent with copies of its works in an effort to ensnare would-be infringers is unsupported by the record." *Malibu Media, LLC v. Fitzpatrick*, No. 12-22767, 2013 WL 5674711, at *6 (S.D. Fla. Oct. 17, 2013) (granting summary judgment against similar defenses). Neither Plaintiff nor its agents "seeded" any of the works-in-suit or any works. Plaintiff was unequivocal in its motion for early discovery: "To be clear, [VXN Scan] will never upload data to other computer systems in the BitTorrent network." *Decl. Williamson* [DE 11-1] at ¶49. And despite explicitly requesting documents

---

2572456 (C.D. Cal. May 21, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-08231 (KAW), 2020 WL 1942471 (N.D. Cal. Apr. 22, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-2452 (JAH)(LL), 2020 WL 2467067 (S.D. Cal. May 13, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 20-67 (LAB)(LL), 2020 WL 3640008 (S.D. Cal. July 6, 2020).

evidencing his allegation, *Def.'s Supp. Resps.* attached as <u>Exhibit 10</u> (RFP Nos. 25–26), Defendant has produced nothing. These defenses, then, are the exact kind of speculative theories that does not survive summary judgment.

There is no record evidence showing that Plaintiff intended Defendant "copy . . . the work" in the case of an implied license; or intended "to surrender [its] rights," in the case of a waiver. *Weaver*, 2016 WL 1394331 at *8. Bringing suit would suggests the opposite. Defendant cannot maintain these defenses. *See id.* at *9 (granting summary judgement against, *inter alia*, implied license and waiver defenses); *see also Malibu Media*, 381 F. Supp. 3d at 356–57 ("We reject at the outset any suggestion that, by placing a portion of its collection on a limited number of tubesites, [Plaintiff] impliedly licensed every person in the world to download its entire collection of copyrighted materials from any source on the internet.").

The estoppel defense is similarly defective. "The gravamen of estoppel . . . is misleading and consequent loss[.]" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684, 134 S. Ct. 1962, 1977, 188 L. Ed. 2d 979 (2014). It requires, among other elements, that "the defendant must be ignorant of the true facts" and that "he must rely on the plaintiff's conduct to his injury." *Thompson v. Looney's Tavern Prods., Inc.*, 204 F. App'x 844, 850 (11th Cir. 2006) (citation omitted). But Defendant did not rely on any implied or express representation made by Plaintiff. Defendant conceded that he did not know if he ever watched any of Strike 3's videos,

*see* Exhibit 6 at 89:20–90:2, or that he had even seen them on third-party's websites. *See id.* at 96:3–97:1 (explaining it is "hypothetical guess" that Strike 3's movies "would be freely available on some platform somewhere"); *see also Malibu Media*, 381 F. Supp. 3d at 358 ("John Doe has not shown that [Plaintiff] was aware of and acquiesced in his conduct, or in the infringing conduct of other BitTorrent users.").

Lastly, Defendants' unclean hands theory fails.  Here, "Defendants must demonstrate that: (1) Plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and (2) Defendants were personally injured by Plaintiff's conduct." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1283 (M.D. Fla. 2008) (collecting cases). Again, "[t]he record contains no evidence from which a trier of fact could reasonably conclude that [Plaintiff] intentionally misled John Doe and the general public," *Malibu Media*, 381 F. Supp. 3d at 357, let alone that Strike 3 "seeded" its works to Defendant, or that Defendant even believed that Strike 3 had made its works available over the BitTorrent network. *See Weaver*, 2016 WL 1394331 at *9 ("[Defendant] has presented no evidence in support of this affirmative defense and, therefore, has failed to carry his burden."); *Thornton*, 580 F. Supp. 2d at 1283.  Thus, to the extent any of Defendant's affirmative defenses are legally tenable, the record is devoid of any competent, evidentiary support. There being no genuine or material dispute over these facts, judgement must be entered against the defenses.

## IV. CONCLUSION

The case began as a bill of discovery in a state court as Plaintiff sought the identity of the infringer. The "whodunit" was quickly solved, as the infringer was identified early on. Since then, Plaintiff has marshaled an overwhelming amount of evidence, both direct and circumstantial, to prove that there is no dispute of material fact regarding either the underlying claims or the counterclaim. It conclusively shows that Plaintiff is entitled to judgment on all claims.

**WHEREFORE**, Plaintiff respectfully requests the Court enter summary judgment in favor of Plaintiff's claim for copyright infringement, and enter judgment against Defendant's counterclaim for declaratory relief as well as all nine of his affirmative defenses.

DATED: July 20, 2022          Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh [FBN 71093]
WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone: 321-800-6008
Fax: 844-206-0245

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2022, a true and correct copy of the following documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh