## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| | § | |
| STRIKE 3 HOLDINGS, LLC, | § | Civil Action |
| | § | No. 8:20-cv-00676-MSS-CPT |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| JOHN DOE infringer identified | § | |
| As using IP  address | § | |
| 47.197.99.186, | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## SUMMARY OF RELIEF REQUESTED

Defendant, John Doe, an alleged infringer allegedly using IP address 47.197.99.186 ("John Doe" or "Doe") seeks summary judgment in his favor and against Strike 3 on Strike 3's claim of Copyright Infringement and on John Doe's counterclaim of Declaratory Relief of Non-infringement on the 36 movies ("Works") in this case.

Strike 3 carries the burden of proof as to the two elements of a Copyright Infringement case: (1) ownership and (2) copying.  Strike 3 fails on each of these elements.

Strike 3 has not shown ownership of their Works in this case.  Strike 3 is the alleged owner by an assignment of rights.  Strike 3 has refused to produce assignment

1

records of any assignment to Strike 3.  Thus, no evidence of any assignment exists, and as such Strike 3 cannot as a matter of law establish ownership.

Strike 3 also cannot show copying of their Works by John Doe.  To survive Summary Judgment, Strike 3 must show that VXN, its self-concocted computer system, "works" (e.g. generates admissible data). It has no admissible evidence of such Then Strike 3 must show that the IP Address was assigned to John Doe via competent evidence.  Consequently, Strike 3 has no admissible evidence that John Doe downloaded the movies at issue in this case.

## INTRODUCTION

## THE  VXN's DATA IS INADMISSIBLE BECAUSE IT IS THE RESULT OF A DEVICE THAT HAS NEVER BEEN PEER REVIEWED OR ACCEPTED BY THE RELEVANT COMMUNITY

Strike 3's sole claim of copyright infringement is premised on the  conclusions its unqualified experts allegedly  "divine" from ostensible data allegedly generated from Plaintiff's self-named and self-concocted "VXN" detection system, which it has refused to produce. That system has never been peer reviewed or proven to be capable of generating the data ascribed to it, much less that the data is valid and data upon which any *Daubert* qualified expert can reasonably rely. Because the VXN system, as a matter of law, cannot serve to show copyright infringement, and because it is the sole basis for the assertion of copyright here, this motion must be granted.

Strike 3's complaint alleges John Doe copied original material using "Bittorrent". Thus, Strike 3 bears the burden to show John Doe copied original material using "Bittorrent".   There is <u>no admissible evidence</u> that VXN exists or generates any <u>admissible data</u> collected from the "Bittorrent Network", much less that VXN is even capable of generating such data.  Without VXN's data from the "Bittorrent Network", Strike 3 has nothing to connect John Doe to the alleged infringements.

Strike 3 has asserted without any supporting, much less scientifically vetted evidence, that allegedly the VXN in unexplained ways interacts with the Internet to allegedly remotely monitor thousands of IP addresses, and then claims, again without any supporting, much less scientifically vetted evidence, to record "PCAP data", collects "torrent information", and downloads allegedly infringed copies from "Bittorrent Swarms". Strike 3 claims that VXN is "forensic software" – it is not and Strike 3 has not offered a scintilla of admissible evidence that it is. Strike 3 has not produced any evidence of VXN actually existing aside from hearsay testimony by people who work for Strike 3. And have refused to produce the alleged system. It only summarily declares "trust us". Well, as the saying goes, trust, but only subject to verification. Having offered no verification during discovery by way of any evidence, much less *Daubert* qualifying expert testimony, it now too late to show that the Strike 3 concocted system VXN exists or performs as claimed.

Strike 3's alleged "expert", David Williamson, admitted that VXN was built without any design documents, formal specifications, or a plan to validate proper operation.   When deployed in 2019, VXN was operated without any user documentation or operational manuals.  From 2019 to 2021, no effort was made by Strike 3 to test VXN for accuracy.  The first attempt at a "test" of VXN was allegedly made by Patrick Paige—almost 2 years after the alleged infringement in this case occurred, and that 'test' does not remotely reach the necessary degree of  validation for acceptance in a court.

Evidence gathered from complex forensic devices to be used in Court is not uncommon:  DNA evidence in murder cases, chemical test reports in Superfund cases, and structural tests in building failures, etc.   The devices that generate these reports are manufactured by independent companies that rigorously test the devices for accuracy. Standards bodies create protocols to insured conformity of testing.

To have admissible data, VXN must satisfy the four *Daubert* prongs:

- Does VXN employ a "theory or technique . . that can be (and has been) tested?
- Has VXN been subjected to peer review and publication?
- Can Strike 3 show VXN's "known or potential rate of error" or has "standards controlling the technique's operation"? and
- Does VXN have "general acceptance'" within the "relevant scientific community"? *Kumho Tire Co. v. Carmichael,* 526 U.S. 137,149-150 (1999)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-594 (1993).)

Strike 3 fails on all four prongs.  Since the data generated from its self-concocted system is clearly inadmissible, any reliance on data it allegedly has generated, whether by lay or expert testimony, is likewise inadmissible.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### Strike 3's Has No Admissible Evidence of Ownership of the Works

1.  Strike 3 produces adult movies under the brands: *Blacked*, *Tushy*, *Vixen*, and *Blacked Raw* (ECF No. 17, ℙ3).

2.  Strike 3 has alleged 36 infringements from July 23, 2019 to December 11, 2019 of 36 movies ("Works")(Ex A, ECF No. 17-1).

3. Strike 3 has alleged that they own the Works (ECF 17, ℙℙ 2, 56).

4.  Although Strike 3 claims  ownership of the Works by assignment from several other entities (Ex. 1, Copyright Certificates; Exhibit 2, Strike 3's Amended Initial Disclosures; Edmondson ( "JCE") Decl., ℙℙ1 and2), Strike 3 objected to Doe's request for  production of assignment and transfer documents for the Works. (Exhibit 3, Strike 3's Objections to  Doe's Request for Documents; JCE Decl.. ℙ3).

5. Strike 3 never produced any  assignment agreements as of the close of fact discovery (Exhibit 4, Strike 3 Corporate Deposition excerpt; JCE Decl., ℙ4).

6.  Strike 3 stated that they did not know where the documents for GL Web Media, one of the alleged assignors, was located.  (Jessica Fernandez's Deposition excerpt, pg. 195:6 to pg. 196:9; JCE Decl.. ℙ4.)

**Strike 3 Has No Admissible Evidence that John Doe copied their Works**

7.      VXN does not actually exist. Strike 3 Monitors the Internet allegedly by using its "VXN" and alleges Infringement of the Works from 7/23/2019 to 12/11/2019. (ECF 1).  The entire infringement detection system Strike 3 claims to operate is referred by Strike 3 to as "VXN" and various sub modules will be referred to by Strike 3's nomenclature. Strike 3 has not produced any admissible evidence of VXN actually existing aside from inadmissible hearsay testimony by people who work for Strike 3. (Exhibit 3, Strike 3's Objections to John Doe's Request for Production of Documents; JCE Decl. ¶3).

8.      Assuming arguendo, but with conceding, Strike 3 allegedly  "developed, owns, and operates and infringement detection system it calls "VXN Scan." (ECF 17, ¶27).  Assuming arguendo, but without conceding, that the VXN Scan purportedly works as follows:

        a.      Strike 3 Locates and Downloads copy of Alleged Infringing Movie File from the Internet:  David Williamson allegedly oversaw the design and development of VXN (ECF 11-1, ¶¶40-41).  VXN allegedly searches the Internet for ".torrent files or torrent metadata" using "The Torrent Collector" searches (see ECF 11-1, ¶¶43-46, "the Torrent Collector/Scrapper" (sic)").   The Torrent Collector allegedly conducts "lexical searches" of Strike 3's titles within "well-known" torrent websites. *Id.*  The Torrent Collector is allegedly hosted by Amazon, and allegedly

collects infringing ".torrent files" of Plaintiff's works. (ECF 17, ₱27). The ".torrent files" allegedly related to the Works were provided by Plaintiff in "BATES 4." (JCE Decl.., ₱5.) Strike 3 then allegedly downloads a movie associated with the ".torrent file" from the "whole BitTorrent swarm" (ECF 11-1, ₱47). Strike 3 admits to not downloading the work from "a single infringer" or the infringer at IP Address 47.197.99.186. This alleged resulting downloaded movie is called the "Targeted Computer File." (ECF 11-1, ₱47). The alleged Targeted Computer File is allegedly stored at Amazon (ECF 11-1, ₱50).

b. <u>Alleged Comparison of the Copyrighted Works to the Infringed Works by Susan Stalzer</u> – Strike 3 allegedly then had layperson Susan Stalzer compare an "infringing movie" to a "Strike 3 Work" using VXN Scan. (ECF 17, ¶33). Susan Stalzer allegedly makes a determination if the movie is "identical, strikingly similar, or substantially similar" (ECF 11-3, ¶7) by viewing the movies "side-by-side" (ECF 11-3, ₱10). Susan Stalzer has no direct knowledge on how the movies are processed or presented on her computer (ECF 11-3, ¶9, Stalzer Deposition, p. 12, lines 3-18; Exhibit 5, JCE Decl.., ₱6). Susan Stalzer was not designated as an expert witness in this case and provided no expert report. (JCE Decl.. ₱6). Stalzer does not record any dates on when this work is conducted, nor does she record any notes as to whether the works are "identical", "strikingly similar" or "substantially similar". Susan Stalzer also allegedly interpreted results from an ARIN

database "at the time of the infringements". (ECF 11-3, ⁋12).  Susan Stalzer does not describe how she can determine which ISP owned the IP Address on July 23, 2019, when she signed the declaration on May 20, 2020, almost a year later. (ECF 11-3, ¶9).  Susan Stalzer has no personal knowledge if the works she compared were those filed with the United States Copyright Office.   Stalzer is not a licensed private investigator in Illinois (her location), Florida (this case location), or California (Strike 3's headquarters). (Stalzer Deposition, pg. 21, lines 12-24; Exhibit 5, JCE Decl.., ⁋6). Stalzer has no personal knowledge of the format the digital media she reviews is in, or if it came from the IP address at issue in this case. (Stalzer Deposition, pg. 35:13 to pg. 36:19; Exhibit 5, JCE Decl.., ⁋6).

   c.   <u>Strike 3 collects <200 PCAPs related to Doe's IP Address</u> – Strike 3 then allegedly collects "PCAP" data using a "Proprietary Client" to gather swarm data (ECF 11-1, ⁋⁋52-56).  Strike 3 allegedly uses a "Info Hash" to correlate the infringed copyrighted work to PCAP data (ECF 11-1, ⁋54).  Strike 3 allegedly downloads data from the "BitTorrent Swarm" for peers in that BitTorrent Swarm. *Id.* Strike 3 also has a separate component of VXN called the "PCAP Recorder/Capture Card." (ECF 11-1, ⁋⁋57-70).  The "Capture Card" is allegedly located in Florida, but data captured by the "Capture Card" is stored allegedly by Amazon. (ECF 11-1, ⁋68, … the PCAP data is streamed in real time and stored directly onto Amazon….").  Strike 3 states that transactions are allegedly "stamped" with a "PCAP Stamper" at

Amazon. (ECF 11-1, ¶71-73). The PCAP data is allegedly then "analyzed" using the "PCAP Analyzer". The PCAP Analyzer software is allegedly located at Amazon (ECF 11-1, ¶79).

9.     Strike 3's State Court  lawsuit alleged infringement of 42 Works and/or 26 Works. Exhibit 1 to the State Court complaint lists 42 works as infringing, then Exhibit 2 to the State Court complaint lists 26 works. The instant complaint claims 36 works as infringing. (Exhibit 10, ECF 1-1, 17-1) (JCE Decl., ▯8).

10.    John Doe's Account Information from Frontier is unverified inadmissible hearsay –Strike 3 served a subpoena on Frontier for the subscriber information for the IP address in use on December 11, 2019. (Exhibit 6, Strike 3's Rule 45 Subpoena, JCE Decl.., ▯9). On September 30, 2021, Strike 3 served a second Rule 45 *subpoena duces tecum* on Frontier requesting information correlate John Doe's IP address to dates of usage.  Frontier responded with an unsigned and unverified document which only shows allocation on the address from August 23, 2019 to December 16, 2019. (Exhibit 7, Fronter's response to the subpoena, JCE Decl.., ▯10).

**John Doe's Evidence of Non-Infringement**

11.    John Does has never admitted infringement and, in fact, served a sworn Declaration of Non-Infringement on October 21, 2020. (Exhibit 8, Declaration, JCE Decl.., ▯11). John Doe's prior counsel had previously stated several times that John

Doe did not infringe. (Exhibit 9, JCE Decl.., ℙ12).

12.     During the period of alleged infringement, Doe had a router with open Wifi. ( Doe Decl., ℙ3). Doe's neighbors had access to this open WiFi. (*Id.*; Martinez Decl., ℙ5).  A neighbor also testified that third parties were in the vicinity of Doe's home. (See Exhibit 9; Neighbor's Depo Excerpt, pg. 25; lines 6-18;  JCE Decl.., ℙ13). The neighbor had a degree in Computer Science. (Id, , pg 28, lines 13-17).

13.     Doe's  Open  WiFi  was  accessible  by  numerous  neighbors  and passerby's with computer devices. (Expert Report of Juan Martinez).

14.     Doe works for a government contractor.  Doe cannot access his home computer or Wifi from work.  Doe has produced timecards showing  he was not at home during numerous days of the alleged infringement.  (Exhibit 11,  Doe Decl. ℙ5.)

**Examination of the Media**

15.      John Doe examined all of his media using the forensic tool "Autopsy". (Doe Decl., ℙ8).  Search strings were used to locate Strike 3's Works on the media. No Strike 3's Works, portions thereof, or related torrent files was found on the media.

16.     John Doe retained forensics expert Michael Yasumoto to examine the Linux hard drive and Windows hard drive.  He conducted analysis of Doe's media and found no evidence of Strike 3's Works. (Yasumoto Decl., ℙ4.)

**The Unreliability of VXN and IPP Data**

17.     Doe's computer expert, Kal Toth, was retained by John Doe.  Dr. Toth

has a 30-year history of testing computer systems and had been involved in large scale computer validation processes. He has taught university level software engineering courses. Of importance is that Dr. Toth has been retained as an expert on numerous "BitTorrent" cases involving Malibu Media, Strike 3, and non-pornographic companies. (Toth Decl., ¶3)

18.     Dr. Toth opined  the VXN was developed without formal specifications, user manuals, design documents. Strike 3 did not provide any data supporting the testing and validation of VXN during the design process.  (Toth Decl., ¶4).

### Strike 3's PCAP data and Movie Data

19.     Strike 3 produced documents identified as the "Control Copies" of the Works and documents identified as the "Infringing Copies".   Each of the movies (whether Control Copies or Infringing Copies) are from 300-400 MB, in size.   For these 36 works, the total size of the infringed movies is more than 10GB of data.

20.     Strike 3 produced 36 PCAPS (corresponding to each Work)  ranging in size from 25KB to 2.2MB.  The total data was less than 18MB.   Strike 3 produced 136 "Additional PCAPS" ranging in size from 21KB to 2.2 MB.

21.     Strike 3 did not produce any chain of custody documents linking these specific PCAPs to the alleged "Infringing Copies".

### III.     ARGUMENT

### A.     Summary Judgment Standard

Summary judgment is proper where the pleadings and discovery demonstrate that there is "no genuine dispute as to any material fact[,] . . . and the movant is entitled to judgment as a matter of law." FRCP §56(a).

The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving  bears the initial burden of demonstrating, by reference to the record, that no genuine issues of material fact exist. See *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 607–08 (11th Cir. 1991). Once met, the non-moving party,  Strike 3, must show a triable issue of fact by admissible evidence. *Allen v. Board of Public Educ. for Bibb County,* 495 F. 3d 1306, 1314 (11th Cir. 2007). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex, Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  If a nonmoving plaintiff cannot make an adequate showing on "an element essential to its case, and on which it will bear the burden of proof at trial, then judgment is proper. *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805-06 (1999). A nonmoving party cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir.1986).

12

Strike 3 bears the burden of proof of all elements of infringement.  *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F. 2d 821, 829 (11th Cir. 1982).   Strike 3 also bears the burden of proof in a declaratory relief action for non-infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC.*, 571 U.S. 191 (2014).

**B.**     **Strike 3 cannot Show Ownership and Copying of the 36 Works**

Copyright Infringement has two elements: (1) ownership of a valid copyright and (2) copying of the protectable elements. *Home Design Servs., Inc. v. Turner Heritage Homes Inc.,* 825 F.3d 1314, 1320 (11th Cir. 2016).

**1.**     **STRIKE 3 CANNOT SHOW OWNERSHIP OF THE WORKS BECAUSE THEY DID NOT PRODUCE THE UNDERLYING ASSIGNMENT DOCUMENTS FOR THE WORKS**

Copyright ownership can only be conveyed by a written instrument. 17 U.S.C. §204(a). *See, Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc*., 29 F.3d 1529, 1531 (11th Cir. 1994).  Strike 3 bears the burden of proof on ownership. *Adobe Sys. Inc. v. Christenson,* 809 F.3d 1071, 1076 (9th Cir. 2015).  Although a copyright certificate is *prima facie evidence* of ownership (*Latimer v. Roaring Toyz, Inc*., 601 F.3d 1224 (11th Cir. 2010)), such can be rebutted if the plaintiff shows a lack of ownership. *Entertainment Research v. Genesis Group*, 122 F. 3d 1211, 1218 (9th Cir. 1997).

The Copyright Certificates in this case state that anywhere from 1 to 3 parties assigned the rights for the Works to Strike 3 Holdings, LLC pursuant to a written assignment. (JCE Decl.., ⁋18).  Also, Strike 3 testified, through their corporate

13

representative that documents for one of the entities, GL Web Media Systems, Inc., are not available and no longer exist. (JCE Decl.., ⁋4 and Exhibit 4.)

Despite the fact that Strike 3 agreed to produce the assignment documents in their corporate representative's deposition, Strike 3 has produced no assignment documents at the close of discovery. *Id*.  Strike 3 further objected to the production of these documents on numerous specious grounds.  *Id.*

The issue of copyright assignment is an important.   As was found in *Righthaven LLC v. Hoehn,* 716 F.3d 1166 (9th Cir. 2013),  Righthaven's assignment of a bare right to sue was ineffective to provide for standing to sue.  This was after hundreds or thousands had already been sued.   At least in *Righthaven*, the operative contracts were provided in discovery.  Here, Strike 3 has refused to provide any

John Doe has rebutted the *prima facie* evidence of the presumption of ownership by showing there are no assignments, since Strike 3 has failed to produce in discovery any admissible evidence assignments or ownership. Summary Judgment should be granted on this basis alone.

## 2.    STRIKE 3 HAS NOT SHOWN JOHN DOE COPIED THE 36 WORKS

Strike 3 must prove that John Doe had access to the copyrighted Works and that the evidence in John Doe's possession shows a substantial similarity to the 36 Works that are owned by Strike 3. *Herzog v. Castle Rock Entertainment*, 193 F. 3d 1241, 1249 (11th Cir. 1999) Strike 3 must also show that the elements copied are

protected by copyright; for example, Strike 3 cannot argue infringement if they only have evidence of a frame showing a blank screen.

No evidence of infringing works is on John Doe's hard drives.  Also, John Doe has not admitted to the infringement of the 36 Works.  (Doe Decl., ¶2.) Strike 3 is then stuck with proof of infringement inferentially from alleged data collected by the alleged "VXN", which allegedly  collects and processes "PCAP data".

a.   **THERE IS NO ADMISSIBLE EVIDENCE THAT SHOWS "VXN" EXISTS OR GENERATES FORENSIC DATA THAT IS ADMISSIBLE**

Strike 3 bears the burden of proof of copyright infringement with admissible data.   The alleged data generated from the alleged VXN and provided by Strike 3 suffers from two defects:  foundation and hearsay.

There is no admissible evidence produced or testified to that the VXN even exists to generate data, and to the extent it existed that it produced admissible data. Strike 3 claims that VXN is "forensic software" – it is not and Strike 3 has not offered a scintilla of admissible evidence that it is. Strike 3 has not produced any evidence of VXN actually existing aside from hearsay testimony by people who work for Strike 3. And Strike 3 has refused to produce the alleged system. It only summarily declares "trust us". Well, as the saying goes, "trust, but only subject to verification". Having offered no verification during discovery by way of any evidence, much less *Daubert* qualifying expert testimony, it now too late to show that the Strike 3 concocted

15

system VXN exists or performs as claimed.

To have admissible data, VXN must satisfy the four *Daubert* prongs:

- Does VXN employ a "theory or technique . . that can be (and <u>has been</u>) tested?
- Has VXN been subjected to peer review and publication?
- Can Strike 3 show VXN's "known or potential rate of error" or has "standards controlling the technique's operation"? and
- Does VXN have "general acceptance'" within the "relevant scientific community"? *Kumho Tire Co. v. Carmichael,* 526 U.S. 137,149-150 (1999)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-594 (1993).)

Strike 3 fails on all four prongs. Since the data generated from its self-concocted system is clearly inadmissible, any reliance on data it allegedly has generated, whether by lay or expert testimony, is likewise inadmissible.

As amply shown by the concurrently filed Daubert motions, Strike 3 has no such expert testimony necessary to attest to the system or its reliability.

With regard to hearsay, Strike 3 states that several parts of the data are, in fact, processed and stored at Amazon. Strike 3 did not provide, in discovery, any documents from records custodians at Amazon showing that the data produce were true and accurate copies from the "VXN" system. See *Watson v. Adecco Employment Services, Inc.,* 252 F. Supp. 2d 1347, 1352-1353 (MD Fl 2003).

With regard to foundation, there is no evidence that a single PCAP can be traced from Strike 3's "Torrent Colletor/Scrapper[Sic]" to John Doe's computer, but to VXN's data collection system. Strike 3's David Williamson testified that VXN

had no computer manuals, no instruction manuals, or any other documents that showed VXN is in existence. (Exhibit 12, Williamson deposition, JCE Decl.., ¶16). Strike 3 refused to produce any evidence of an operational program, either source code or object code. Strike 3 did not produce any "screen captures" of the programs in operation.

Standards for testing and documenting computer programs have been in place for over forty years, if not sixty years. As discussed in the National Bureau of Standards publication "Validation, Verification, and Testing of Computer Softare" (See Exhibit 13, hereinafter "NBS"), there are two key attributes of quality software: reliability and testability. These two key attributes are not disclosed by Strike 3 with regard to VXN. There is no data on VXN's reliability and Strike 3 has admitted it was only tested in 2022. For over two years VXN was used to sue thousands of individuals without any measurement of false positives (which is the situation that we have here).

This is not a new issue. As discussed by the authors in "Software on the Witness Stand" describes in detail the problem with Mavis Roy who was accused by the RIAA of downloading songs. (See Exhibit 12, "*Witness*") The problem was that Ms. Roy did not have a computer. *Witness* at 4. The authors conclude that software should be allowed to be inspected by experts. *Witness* at 10. In this case Strike 3 would or could not turn over such basic documents as a "user manual" and would not

allow a review of the source code.

John Doe's computer systems and software reliability expert, Kal Toth, has opined that a computer system of any importance, certainly one that is used to sue thousand of individuals and collect million of dollars in settlements, would have at a minimum: requirement documents, design documents, functional specifications, test specifications, user and maintenance manuals, source code, and object codes. Toth Decl., ⁋5. David Williamson, the developer and project lead admits this in his expert report. (Exhibit 12, Williamson expert report, JCE Decl., ⁋15).

For the Court to admit any evidence of computer data from an undocumented computer system would the equivalent of at least three degrees of hearsay. The generation of the data would require authentication by the program writer that the data is collected accurately (one degree); that the data is processed accurately (second degree); and that the resulting reports are in and of themselves an accurate compilation of the processed data (third degree).

**b.**   **"VXN" DATA IS INADMISSIBLE HEARSAY SINCE IT WAS GENERATED SOLELY FOR THE PURPOSES OF LITIGATION**

To determine if the "forensic data" from "VXN" may be relied on by Strike 3 to support their 36 claims of infringement, Strike 3 must show how VXN correctly processed each step and prove this with admissible evidence.

Our Supreme Court has found that data collected and then used solely for the

18

purposes of litigation is inadmissible hearsay. *Palmer v. Hoffman*, 318 U.S. 109, 113 (1943)("Engineer's statement regarding accident was an inadmissible business record"); *see also*, *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009)("Analyst's report was inadmissible hearsay"); and *In the Matter of PALM INVESTMENTS OF PINELLAS COUNTY, INC.,* Debtor.2 B.R. 646, 649 (1980)("…the documentary evidence offered in support of the claim, which is the typewritten list of debits and credits, is incompetent and lacks evidentiary value…")

The cornerstone of Strike 3's claims (and thousands of other lawsuits) is that VXN acquires, processes, and generates admissible evidence.

The documents created by VXN are, by definition, hearsay. FRE 801, 802.  To admit VXN business records under the law of the Eleventh Circuit, the case law requires three elements must be established for the hearsay exception under FRE 803(6):

- The VXN data records must be kept pursuant to some routine *procedure* designed to assure their accuracy;
- The VXN data records must be created for *motives* that would tend to assure accuracy (**preparation for litigation, for example, is not such a motive**); and
- The VXN data records must not themselves be mere accumulations of hearsay or uninformed opinion.
  *See Rosenberg v. Collins,* 624 F. 2d 659, 665 (5th Circuit 1980)(citing to *United States v. Fendley*, 522 F.2d 181 (5th Cir. 1975).)

An example of inadmissible data, analogous here, has involved stolen aircraft blueprints, where the Court analyzed the inadmissibility of a report. *United*

*Technologies Corp. v. Mazer*, 556 F. 3d 1260 (11th Cir 2009).

Ultimately, the problem is that Mr. Williamson's livelihood is inextricably bound up in the operation of the VXN software. (Exhibit 17, Williamson Depo., pg. 24:8-14); JCE Decl.., ₱16).  Likewise, Patrick Paige's testimony was even more bizarre in that his declarations have been filed in hundreds of Strike 3 cases without his knowledge. (Exhibit 18, Paige Depo.; JCE Decl.., ₱17).  Neither Williamson's nor Paige's testimony can be given any credibility as their livelihood is bound up on the operation of the IPP software. *United Sates v. Marine Shale Processors,* (5th Cir. 1996) 81 F.3d 1361, 1370.

Data collected solely for the purpose of litigation is inadmissible as hearsay. Since Strike 3's case rests on the VXN, their case fails on this fundamental principle.

**c.** **STRIKE 3 CANNOT SHOW JOHN DOE ACCESSED THE WORKS SINCE STRIKE 3 HAS NO ADMISSIBLE EVIDENCE THAT JOHN DOE USED IP ADDRESS 47.197.99.186 DURING THE ALLEGED PERIODS OF INFRINGEMENT.**

Strike 3's sole evidence that John Doe used IP Address 47.197.99.186. Fundamentally this document is hearsay. Fed. R. Evid. 801(2)(2), 802.  For admission under the business records exception, Strike 3 must satisfy five criteria:

> (1) it was "made at or near the time by—or from information transmitted by— someone with knowledge";
> (2) it was "kept in the course of a regularly conducted activity";
> (3) "making the record was a regular practice of that activity";
> (4) "all these conditions are shown by the custodian or another qualified witness"; and

(5) "the opponent does not show that the source of the information or method or circumstances of preparation suggest a lack of trustworthiness." Fed. R. Evid. 803(6)(A)–(E).      See, *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006).

Strike 3 has failed on prongs: (1), (3), and (4). Frontier's document is computer printed without an attestation by a records custodian or qualified witness.      This evidence is inadmissible as a matter of law.

Under the first prong, Strike 3 cannot prove that the Frontier documents were made at or near of the time of the alleged infringement by someone with knowledge because the subpoena requested records in 2020 for alleged conduct dating back to 2019.  *Seattle-First Nat'l. Bank v. Randall\*, 532  F.2d 1291, 1296* (9th Cir. 1976)  Similarly, under the third prong, Strike 3 cannot prove that the Frontier records were "made for a regular business purpose."  Rather, it was made for the purpose of litigation.  Rule 803(6) requires that both the underlying records and a report summarizing those records be prepared and \*maintained for business purposes in the ordinary course of business and not for purposes of litigation \*(emphasis added). \*See, United States v. Kim, 595 F.2d 755, 760-64 (D.C.Cir. 1979).

d.      **STRIKE 3 CANNOT SHOW JOHN DOE ACCESSED THE WORKS USING BITTORRENT SINCE THE PCAP DATA IS DOES NOT AND CANNOT SHOW COPYING.**

To infringe, an infringer must create a copy that is "substantially similar" to

the original. *Malibu Media. v. Doe* (E.D. Pa. 2015) 2:14-cv-01280; *see also* Melville

B. Nimmer and David Nimmer, <u>*Nimmer on Copyright*</u> (Matthew Bender, Rev. Ed.

2014) §13.03 [A], 38.1.  A small fraction is not enough. *Ingenuity 13, LLC v. Doe*

(C.D. Cal. Feb. 7, 2013) 12-cv-08333.  As Hon. Otis Wright stated in his order:

"This snapshot allegedly shows that the Defendants were downloading the

copyrighted work—at least at that moment in time.  But downloading a large file like

a video takes time . . . To allege copyright infringement based on an IP snapshot is

akin to alleging theft based on a single surveillance camera shot: a photo of a child

reaching for candy from a display does not automatically mean he stole it."  *Id.*

The tiny portion of the PCAP file is so small that it  even if it could render a

frame, it would all under the *de-mimus* doctrine.  *Strike 3 Media LLC. v. Doe*, (E.D.

Pa. 2015) 2:14-cv-01280.

**e.**     <u>**STRIKE 3 HAS NO ADMISSIBLE EVIDENCE THAT THE FILE EXAMINED BY SUSAN STALZER WAS DOWNLOADED FROM THE SAME BITTORRENT SWARM THAT STRIKE 3 ALLEGES JOHN DOE ACCESSED**</u>

The next evidentiary gap in the alleged VXN process of proving infringement

is "comparing" a "reference copy" of each of the 36 Works to the "infringed copy"

of each of the 36 Works.     Strike 3's attempt to show a proper comparison is the

evidentiary equivalent of a magician's "sleight of hand" on two levels.

On the first level, Stalzer has no personal knowledge of either the "reference

copy" or the "infringed copy" when she makes the "comparison" as the files are fed to her via a third party application. ("…I am told on Slack there are a bunch of files to be verified…").  All Stalzer does is compare two computer files put in front of her and check a computer box.  There is no chain of title comparing the referenced copy to the infringed copy.   Therefore Strike 3, via Stalzer, is unable to authenticate the that the "infringing copy" actually "infringes".  See Fed.R.Evid. 901(a);  *Hal Roach Studios vs. Richard Feiner and Company* 896 F. 2d 1542 (1990).

On the second level, there is no competent evidence linking the "Infringed Copy" as a file that contains data actually acquired from the IP Address at issue.  This is because Strike 3 did not produce all of the PCAP's collected that would constitute the evidence from the "Bittorrent Swarm".

Susan Stalzer allegedly uses  VXN to "compare" two copies.  Strike 3 has not provided any admissible evidence that the "Infringed Copy" that Susan Stalzer compares.  Susan Stalzer, "the comparer", is not qualified to testify as to substantial similarity.  She was not designated as an expert witness.  She cannot now authenticate the chain of title, whether the PCAPs from IP Address 47.197.99.186 were part of the Works compared to the reference copy for which testified that she made comparison.   Finally, there is no data documenting what copies Ms. Stalzer compared.

Therefore Strike 3's claim of infringement fails as they have no admissible

23

evidence that a proper comparison can (or would be) made.

**f.**     **STRIKE 3 DID NOT SHOW JOHN DOE WAS PRESENT AT HIS COMPUTER WHEN THE WORKS WERE DOWNLOADED SINCE HIS TIMECARDS SHOW THAT WE WAS AT WORK AND HIS NEIGHBORS COULD ACCESS HIS WIFI**

Strike 3 may argue that the "only person" who could have downloaded their Works (assuming that the VXN system generates accurate data) was John Doe. This was not the case as John Doe maintained an open WiFi.    Strike 3 cannot speculate that just because John Doe is the subscriber is responsible for the infringements. See  *Cobbler Nevada, LLC v. Gonzales*, 901 F. 3d 1142, 1447 (9th Cir.  2018) "simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address.".  Strike 3 has the burden to show that John Doe was the individual that downloaded the Works at issue, and not simply speculate by inference".

**g.**     **STRIKE 3 DID NOT SHOW ITS WORKS WERE FOUND ON JOHN DOE'S COMPUTER SYSTEM.**

Strike 3 may argue that they can prove their case by finding their Works on the media owned by John Doe.  While this theory suffers from the same foundational defect.  The evidence that Strike 3 would use to compare their work to the original work is largely inadmissible (e.g. infringed movie data from VXN, unsupported comparisons of the movies by Stalzer, PCAP data from VXN, etc. are inadmissible

24

hearsay); John Doe analyzed all of his media using the forensic tool Autopsy (www.autopsy.com). Autopsy is a recognized tool that has been tested by NIST. (See, Exhibit 16, Department of Homeland Security Autopsy Test Results).

John Doe[4]'s report of search results, as attached to his declaration, shows that there was a thorough search of his media. (John Doe Decl.). No evidence of Strike 3's Works were found. John Doe's expert, Michael Yasumoto, examined two key pieces of media (the Windows Drive and the Linux Drive) and no evidence of Strike 3's Works were found. (Michael Yasumoto Decl.). A second expert, Joel Brillhart, also examined John Doe's media and found no evidence of Strike 3's Works. (Joel Brillhart's Declaration[5]).

## CONCLUSION

There are no triable issues of fact in dispute. Summary judgment should be granted in favor of John Doe for non-infringement of the 36 Works.

Dated:  July 20, 2022

Respectfully submitted,
BY: */S/ J. CURTIS EDMONDSON*
J. Curtis Edmondson (CSB 236105)
Edmondson IP Law
15490 NW Oak Hills  Dr.
Beaverton, OR 97006
503-336-3749/ FAX: (503) 482-7418
jcedmondson@edmolaw.com

---

[4] John Doe's testimony is admissible opinion testimony under FRE 702, 703  as he has been disclosed as expert under FRCP 26(2)(C).

[5] Two experts were retained because Joel Brillhart could not testify at the Court Ordered April 25, 2022 evidentiary hearing, requiring Michael Yasumoto to testify.

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically served the foregoing document on:

MAMONE VILLALON
Tyler A. Mamone, Esq.
Florida Bar No.: 111632
100 SE 2nd St., Suite 2000
Miami, Florida, 33131
Tel: (786) 209-2379
Tyler@mvlawpllc.co*m*

Christian W. Waugh
Waugh Grant, PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
321-800-6008: Phone
844-206-0245: Fax
cwaugh@waughgrant.com
*Counsel for Plaintiff*

Via email as per agreement of the parties.

/J. Curtis Edmondson/

Declarant

26