# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Civil Action |
| | No. 8:20-cv-00676-MSS-CPT |
| Plaintiff, | |
| v. | |
| JOHN DOE infringer identified as using IP address 47.197.99.186, | |
| Defendant. | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DAVID DICKSON UNDER *DAUBERT*

Defendant, JOHN DOE, infringer identified as using IP address 47.197.99.186, ("John Doe"), requests that this Court deny Strike 3 Holding's, LLC ("Strike 3") motion to exclude David Dickson ("Dickson") as an export (ECF 110).

## INTRODUCTION

On July 20, 2022, Strike 3 has brought a 19-page *Daubert* motion to exclude Dickson as an expert (ECF 110). This oversized motion presents two simple arguments: 1) Is Dickson qualified to opine on Strike 3's allegations and declarations that their movies are of "Hollywood" characteristics; and 2) Can Dickson's opinion testimony aid the fact finder in any aspect of the claims and defenses?

Dickson is qualified to render an expert testimony in regard to Strike 3's claims that their adult films are made using Hollywood Industry standards. As a movie

producer Dickson is uniquely trained to understand to standards of the world-famous Hollywood Film Industry. Having worked on major film productions such as "Parts per Billion" and "Margin Call" gives Dickson the qualifications due to a movie producer of 3 decades. Dickson gives testimony on a field he has three decades of personal knowledge of: the production value of the works which Strike 3 and its agents claim to be "comparable to Hollywood industry standards".

John Doe has the right provide opinion testimony on damages as they relate to the cost of producing movies. Strike 3 is extremely evasive about production costs despite the industry standard that all major movie studios broadcast their budgets of production costs[1]. It is only Strike 3 that refuses to identify production costs and refused to turn over financials in discovery.

Dickson can aid the trier of fact his expert opinion that the films are made in the range of 3K to 5K. As someone with movie producing experience, totaling over three decades, Dickson will be able to give opinion testimony as to what the production value of the adult films is likely to be. Throughout Dickson's report Dickson gives his opinion based on the angles, storylines, scenes used, and overall content of the film. In turn allowing Dickson to assess the value of the production instead of taking Strike 3's claims of Hollywood production standards at face value.

---

[1] Top Gun Maverick had a budget of $ 170M, see https://www.cinemablend.com/movies/yes-top-gun-maverick-paid-to-use-actual-fighter-planes-and-yes-it-cost-the-movie-a-pretty-penny

Dickson's experience in Hollywood offers valuable evidence for John Doe that the films are not filmed with Hollywood industry standards.

The use of Dickson as an expert will depend on how Strike 3 intends to handle their case-in-chief with regard to the claim of infringement and damages. In the unlikely event that Strike 3 is able to establish liability, John Doe has a right to present every piece of opinion evidence needed to inform the jury that Strike 3's movies are not made by the "Steven Spielberg(s) of Porn[2]". Damages under the Copyright Act are tried to a jury. 17 U.S.C. §504. This is true for both actual and statutory damages[3].

## ARGUMENT

### I. DICKSON IS QUALIFIED UINDER DAUBERT

Federal Rule of Evidence 702 states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] See https://www.lexology.com/library/detail.aspx?g=0a97ea8b-f51d-4635-9d2c-c33f0e52443a

[3] Statutory damages range from $ 200.00 to $ 150,000.00

This is the codification of the standards set forth in *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). The *Daubert* standard "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry' assessing whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *TRA Farms, Inc. v. Syngenta Seeds, Inc.*, 5:12-CV-378-MW/EMT, 2014 WL 3844838 at *1 (N.D. Fla. Apr 14, 2014) (citing *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

In *Latele Television C.A. vs. Telemundo* 113 U.S.P.Q.2d 1413 2014 WL 7150626 (FL SD 2014), many of the Daubert issues were decided in the context of the production of a television show. The plaintiff in *Latele* challenged three experts on all basis. This Court applied the law of this circuit and stated that there is "…no particularized or defined expertise, qualification or training that qualifies an individual to render a reliable opinion in analyzing and comparing two narrative works…." As such, this court set a pretty low bar for 'qualification and training'. In *Latele*, the court admitted all three experts over plaintiff's *Daubert* motion.

David Dickson meets and exceeds that bar by producing numerous films including "*Margin Call*", and the infectious Amazon Prime distributed film, "*Parts-per-Billion*". David Dickson has provided a declaration in support of this motion. (See Declaration of Dickson). In Dickson's declaration (and his expert report) he has considerable expertise in the film-making industry. (Dickson Declaration).

As the court found in *Latele* the standard for admissibility of an expert =under *Daubert* is a very flexible one when it comes to issues involving the entertainment industry. As stated in *Latele*, "*…An expert engaged in analytical dissection of the elements of a narrative work need not attempt to segregate out with mathematical precision…*" . Even when it comes to damages apportionment, where you would expect a "hard number analysis", the court stated in *Latele* that.. "*courts have explained that it need not be proven with "mathematical exactness but only a reasonable approximation."*

Dickson clearly meets the *Daubert* threshold to testify as an expert. All the issues that Strike 3 has, regarding Dickson as an expert, go to the weight of the experts' opinions and to their credibility, rather than the threshold issue of admissibility.

## II. THE DICKSON EXPERT REPORT (ECF 110-1) AND HIS TESTIMONY ARE HELPFUL TO THE DETERMINATION OF FACTS AT ISSUE IN THIS CASE.

### A. DICKSON IS QUALIFIED TO AID THE FACT-FINDER ON THE ISSUE OF DAMAGES

Damages are triable to the jury for both actual and statutory damages. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 345 (1998). Any testimony, both lay and expert, that assist the jury in determination of damages. When it comes to Dickson's estimation of production costs, his opinion is consistent with John Doe's damages expert, Eric Fruits. (See Exhibit 2) and can be used to corroborate Fruits expert report.

Strike 3 has stated in numerous places, in thousands of cookie-cutter complaints (see ECF 17), and declarations (see ECF 11-1), that Strike 3 films are made to "*Hollywood Standards*". Strike 3 could have easily reduced their lawsuit(s) to a two-page complaint and left out all of the fluff. There are three bases for Dickson aiding the factfinder with opinion testimony.

John Doe has the right to rebut any opinion testimony Strike 3 intends to interject about the nature and quality of their works and how their works would

command a superior price in the marketplace *vis-à-vis* statutory damages.

## B. DICKSON IS QUALIFIED TO TESTIFY THAT THE WORKS ARE EITHER COMPILATIONS OR DERIVATIVE WORKS

Statutory Damages has an important limitation of damages which states as follows:

.. For the purposes of this subsection, all the parts of a <u>compilation</u> or <u>derivative work</u> constitute one work.. . 17 U.S.C. §504 (c)(1)

The Copyright Act does not use the word "Copyright", rather uses the term "works".  This is an important distinction.  One can have numerous copyrights, but for statutory damages it may only be one "work" for the purposes of statutory damage calculations.  Strike 3's 36 copyrights, (ECF 17-1) as shown in Dickson's report have numerous interrelated scenes, same actors, and even the same furniture. Further the Strike 3 admits that the films are classified into four Brands: "Blacked, Blacked Raw, Tushy, and Vixen", and one low monthly or annual payment gets you unlimited access to all of the content for each Brand. [4]

Dickson can aid the fact finder, that the "36 copyrights" (ECF 17-1) are not, in fact, "36 copyrights" for the purposes of statutory damages, but are either compilations or derivative works.  *Yellow Pages Photos, Inc. v. Ziplocal, LP,* 795

---

[4] Strike 3 bundles thousands of titles for less than $ 2.00 per day paid monthly.

F.3d 1255, 1277 (11th Cir. 2015).  Here both compilations and derivative works are at play.  Strike 3 has four brands at issue in this case: *Blacked*, *Blacked Raw, Tushy*, and *Vixen*.  Each brand has hundreds of media pieces in each brand.  A customer can view any of these movies by <u>brand</u> and not by individual <u>work</u>.  Like the photographer in *Yellow Pages* (Moore) who licensed his works as collections and was found to have had one work for the purposes of statutory damages, the factfinder can also find that Strike 3 had "4 works" and not "36 works".

Likewise, Dickson can aid the fact finder to show that the works are derived from each other. Dickson's summary chart explains this in detail:

**G. SEVERAL OF THE SAME LOCATION SHOTS ARE USED IN MULTIPLE MOVIES**

Unlike movies produced by the same director or the same studio, in these films I found that the same location shot was used in multiple movies. Shooting out of sequence is an industry standard technique, but at this scale it suggests a factory line of production.

| | Location #1 | Location #2 | Location #3 | Location #4 | Location #5 | Location #6 | Location #7 | Location #8 | Location #9 | Location #10 | Location #11 | Location #12 | Location #13 | Location #14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PUSHING BUTTONS | | | | | | | ✓ | | | | | | | |
| TRAVELLING TOGETHER | | | ✓ | | | | | | | | | | ✓ | |
| CHECK THEM OUT | | | | | | | | | | | | | | |
| BBC TO GO | | ✓ | | | | | | | | | | | | |
| IT WAS MY DREAM TO MEET HIM | | | ✓ | | | | | | | | | | | |
| SOMETHING TO LOOK FORWARD TO | | | ✓ | | | | | | | | | | | |
| NOSTALGIA | | | | | | | | | | | | ✓ | | |
| WHERE TO | | | ✓ | | | | | | | | | | | |
| GIRLS NIGHT IN | | | | | | | | | | | ✓ | | | |
| A QUIET WEEKEND IN MYKONOS | | ✓ | | | | | | | | | | | | |
| ALONE IN MYKONOS | | | | | | ✓ | | | | | | | | |
| VACATION WITH BENEFITS | | ✓ | | | | | | | | | | | | |
| WITH A VIEW | | | ✓ | | | | | | | | | | | |
| PROVING MY WORTH | | ✓ | | | | | | | | | | | | |
| HER COMMISSION | | ✓ | | | | | | | | | | | | |
| HONEY LOOK WHAT I FOUND | | | | | | | | | | | | ✓ | | |
| WE ALL DO IT | | | | | | | | ✓ | | | | | | |
| STIR ME UP | ✓ | | | | | | | | | | | | | |
| DO I KNOW YOU | ✓ | | | | | | | | | | | | | |
| ONE NIGHT ONLY | | | | | | | | | | | ✓ | | | |

Dickson's opinion on how the "Works" interrelate will assist the factfinder on the issue of damages.

## C. DICKSON IS QUALIFIED TO TESTIFY ON THE THRESHOLD ISSUE OF ORIGINALITY.

Strike 3 bears the burden to show that each of their works are original. (See Exhibit 4, pattern jury instructions created from Eleventh Circuit Jury instruction builder). The jury instruction for originality is:

> To qualify for copyright protection, the claimed work must be original to the author. "Original" means only that the author independently created the work – the author didn't copy it from other works – and it possesses at least a minimal degree of creativity.

Dickson, in his expert report, analyzed each of the 36 films and found that certain elements of the films are copied from film to film. There is the underlying question of whether the act of copulation by *homo sapiens* is, in itself, "creative". See *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC,* 803 F.3d 1032 (9th Cir. 2015) finding that the Choudbury's system of yoga poses are not the subject of copyright. The mere changing of the yoga instructor (or an adult film performer) performing downward dog does not raise a yoga pose to the level of originality required. Strike 3 has the burden of proof on originality and Dickson can aid the trier of fact on the issue of originality.

### III.    FERNANDEZ AND WILLIAMSON ARE NOT QUALIFIED TO OPINE ON DICKSON'S QUALIFICATIONS

Both Williamson and Fernandez have offered opinions regarding Dickson in support of Strike 3's motion to Daubert. (ECF 110-2, 110-3). Notably, Strike 3 has not supported their motion with a person who expertise in movie production. Strike 3 has not asked for a declaration from Greg Lansky, the purported "Spielberg of Porn"[5]. Williamson's parroting of Lansky's skills that are attributed to Lanksy does not turn Williamson into a "Greg Lansky", no more than a key grip talking about Star Wars makes him a " George Lucas".

Williamson runs the computers at Strike 3. He has no personal knowledge of how the films are made, much less any background in filming. He admitted in his deposition that he has no idea how long it takes to make a film. (See Exhibit 2).

> Q (Edmondson). Looking at Paragraph 29, how much time does it take for you to produce a film?
> A (Williamson): I would not know exactly, I can speculate that, that it's probably weeks, I do not know.

This is in direct contrast to Williamson's February 2020 strident declaration to have this Court issue discovery :

> 29. We put a tremendous amount of time, effort and creative energy into producing and distributing valuable content for our paid customers. …(ECF 11-1)

---

[5] https://nypost.com/2017/12/02/steven-spielberg-of-porn-stop-stealing-my-adult-films/

Fernandez is a lawyer. Her deposition transcript shows she performed copyright litigation for a number of law firms. (Exhibit 3, Fernandez Deposition Extract, pp 8-13). She works for the "parent company" of Strike 3. Prior to that she worked for Malibu Media[6] for Pillar Law while in Los Angeles and for the Lipscomb firm in Miami, also on Malibu Media cases. Fernandez admits that she cannot even testify as to fundamental aspect of Strike 3 movie's characteristic, originality. (Id. pp 203-205). Fernandez has no personal knowledge of how the Strike 3 films are made Her expertise is managing thousands of lawsuits that settle in the range of 5K to 10K.

## CONCLUSION

For the above reasons, John Doe respectfully requests that this Court deny Strike 3's motion to exclude David Dickson as an expert.

---

[6] Malibu Media sued thousands for alleging infringing their pornographic movies.

Respectfully Submitted,


**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
*Local Counsel for Plaintiffs*
201 South Biscayne Boulevard
Miami Center, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

By: */s/ Stephanie Reed Traband*
Stephanie Reed Traband
Florida Bar No. 0158471
Primary: srt@lklsg.com


BY: */s/ J. Curtis Edmondson*
J. Curtis Edmondson (CSB 236105)
Admitted Pro Hac Vice
Edmondson IP Law
15490 NW Oak Hills Drive
Beaverton OR 97006
503-336-3749/ FAX: (503) 482-7418
jcedmondson@edmolaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically served the foregoing document on:

Tyler A. Mamone
100 SE 2nd St., Suite 2000
Miami, Florida, 33131

Christian W. Waugh
Waugh Grant, PLLC
201 E. Pine Street, Ste.315
Orlando, FL 32801

                                             Counsel for Plaintiff.
                                             /s/ J. Curtis Edmondson Hillsboro, OR