# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

      Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant/Counter-Plaintiff.

_____/

## PLAINTIFF STRIKE 3 HOLDINGS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION TO BAR ANY TESTIMONY FROM PLAINTIFF'S "PROFFERED EXPERTS" FOR SUMMARY JUDGMENT, FOR TRIAL OR ANY OTHER PURPOSE IN THIS CASE

Plaintiff, Strike 3 Holdings, LLC ("Strike 3") hereby respectfully submits this Response in Opposition to Defendant's *Daubert* Motion to Bar Testimony from Plaintiff's "Proffered Experts" for Summary Judgment, for Trial or any other Purpose in this Case [DE 111] ("Motion") and in support, states:

## I.    INTRODUCTION

Defendant has moved to exclude the testimony of Plaintiff's expert witnesses, David Williamson ("Williamson"), and Patrick Paige ("Paige"), in an attempt to avoid liability for infringement. Williamson works for Plaintiff as its Chief Technology Officer (CTO) and, in his role, oversaw the design and creation of

Plaintiff's infringement detection system, VXN Scan ("VXN"), which gave rise to Plaintiff's copyright infringement claim.  He is, thus, a hybrid expert, possessing important factual knowledge and also capable of providing helpful opinion testimony given the legal issues. Paige is Plaintiff's computer forensics expert who tested the VXN Scan system to ensure it reliably collected evidence of BitTorrent activity and infringement of Plaintiff's works.

At its core, Defendant's Motion makes unsupported statements and challenges to the experts' qualifications and methodologies. But such unsupported statements reveal the weakness of Defendant's Motion and are insufficient to exclude Plaintiff's experts, particularly when there is an abundance of data demonstrating each expert's qualifications and the reliability of their methodologies to detect infringement. There is no question that both experts provide opinion testimony that assists the trier of fact and is relevant to the claims at issue. Accordingly, Plaintiff respectfully requests that Defendant's Motion be denied.

## II.   FACTS

On May 28, 2020, Plaintiff filed its Motion for Leave to Serve a Third-Party Subpoena Prior to Rule 26(f) Conference, which included Williamson's declaration in support thereof. [DE 11-2].  Williamson's declaration included information regarding his role with Plaintiff, Plaintiff's success in the adult entertainment industry, and his design and development of VXN Scan– the system that detected

and captured evidence of the BitTorrent infringement transactions emanating from IP address 47.197.99.186. *Id*. On December 20, 2021, Defendant deposed Williamson in his capacity as a 30(b)(6) witness, a fact witness, and to the extent VXN Scan was discussed, an expert witness.[1] *See Pla.'s Designation of Corporate Rep. for Def.'s 30(b)(6) Depo. Topics*, attached hereto as Exhibit A. On or around February 4, 2022, Plaintiff produced–and Defendant does not contest–all information and data Williamson considered in forming his opinions together with Plaintiff's production of evidence it intends on using at trial. On April 4, 2022, Plaintiff served Williamson's Expert Report which contained all information previously included in his May 28, 2020 declaration as well as additional details about VXN Scan. *See Williamson Expert Report*, attached hereto as Exhibit B. On June 22, 2022, Plaintiff served Defendant with Williamson's rebuttal expert report. *See Williamson Rebuttal Expert Report*, attached hereto as Exhibit C. And on June 27, 2022, Defendant deposed Williamson again, but solely in his capacity as an expert. *See Williamson Second Depo.*, attached as Exhibit D.

Additionally, on April 4, 2022, Plaintiff served on Defendant Paige's Expert Report, and June 16, it served Paige's Supplemental Expert Report on Defendant.

---

[1] Prior to this deposition, Plaintiff advised Defendant of its intention to designate Williamson as an expert and asked that Defendant wait to depose Williamson until his Expert Report was served.

*See Paige Sup. Expert Report*, attached as <u>Exhibit E</u>. On June 2, 2022, Defendant deposed Paige in his capacity as an expert. *See Paige Depo.*, attached as <u>Exhibit F</u>.

## III.   LEGAL STANDARD

"Federal Rule of Evidence 702 permits '[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education' to testify in the form of an opinion. Rule 702 imposes an obligation on district courts to act as gatekeepers 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies 'expert testimony.'" *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). This gatekeeping role applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999).

When acting as a gate keeper, "[t]rial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Whether an expert

opinion "assists the trier of fact" turns on relevance, reliability, and "offer[ing] insights beyond the understanding and experience of the average citizen." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 390 (M.D. Fla. 2018).

## IV.   ARGUMENT

### A. WILLIAMSON'S EXPERT OPINIONS SHOULD NOT BE EXCLUDED

#### 1.  Williamson is a Qualified Expert

Williamson is Strike 3's CTO who oversaw the design, development, and participated in the creation of VXN Scan ("VXN"), which Plaintiff used to identify IP addresses infringing Plaintiff's movies via the BitTorrent protocol. Exhibit B at ¶40.

Defendant argues, without basis, that Williamson failed "to establish any qualifications that he was competent to design any forensic device [or] any training in computer forensics or the ability to interpret any VXN data."[2] [DE 111] at 8.  This ignores all of Williamson's credentials, including that he "attended Bispham Technical College located in Bispham, Blackpool, United Kingdom, where [he] studied computer science." Exhibit B at ¶3. His education was followed by thirty-four years of experience in the information technology industry which included working as a service engineer, hardware engineer, developer, team leader, IT

---

[2] Interestingly, Paige is an expert in computer forensics but nevertheless Defendant still seeks to exclude Paige's testimony under *Daubert*.

Consultant, Infrastructure Manager, and Internet Consultant, Infrastructure Practice

Manager, a Security & Networking Specialty Manager, and a Software Consulting

Practice Manager. *Id*. at ¶¶4–5. Williamson also confirmed his experience in

software development, security, databases, cloud computing, and other Web

technologies, and networking programming in various languages including Java,

Javascript, PHP, C, and Assembler. *Id*. at ¶¶7–9.  Indeed, he has previously worked

in his field for the UK Department of Defense (British Aerospace), Sun

Microsystems, and AXA Insurance.  *Id*. at ¶6.

Williamson's expert opinions are based on his knowledge and skills, role as

CTO, over 34 years of professional experience in technology, and the fact that he

oversaw the entire creation of VXN Scan. *Id*. at ¶¶3–12, 40. "Under Rule 702, an

expert may be qualified by knowledge, skill, experience, training, or education."

*PWS Env't Inc. v. Borghese at Hammock Bay Condo. Ass'n, Inc*., No. 18-109-FTM-

PAM-CM, 2019 WL 1473125, at *2 (M.D. Fla. Jan. 17, 2019) (citing Fed. R. Evid.

702). In *PWS*, this Court held that an expert was qualified even when his CV failed

to list the exact specialty of "pressure washing services" because of his overarching

experience in property damage and mitigation, and that his company offered such

services. Likewise, here, just because Williamson's CV does not specifically

mention "training in computer forensics" his over 34 years in the IT field–

specifically in network security with work experience at Sun Microsystems and UK

Department of Defense–renders him capable of developing a system to detect infringement via the BitTorrent network.

Further, as set forth below, Paige tested the system and found that it worked as Williamson describes. *See* Exhibit E at ¶¶32–60, 68. Defendant had the opportunity to perform the same exact test but declined. Accordingly, Williamson is qualified to oversee the design of VXN and to interpret any VXN data. Indeed, "[t]he qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *United Fire & Cas. Co. v. Progressive Express Ins. Co*., No. 19-1049-CEM-EJK, 2021 WL 9085913, at *2 (M.D. Fla. Sept. 29, 2021).

Without any support, Defendant also asserts that Plaintiff did not properly designate Williamson "in compliance with FRCP 26(a)(2)" because the report was "conclusory." [DE 111] at 7.  Defendant fails to provide: (1) which opinion or statement is conclusory, (2) why it is conclusory, and (3) what, if any, facts, bases or reasonings are missing. Instead, he asserts in his own conclusory manner "[e]xpert opinions that merely state conclusory opinions, and therefore fail to comply with Rule 26's requirement to provide a 'complete statement' of the opinions and the 'basis and reasons for them,' should therefore be excluded." [DE 111] at 7–8.

Without specifically identifying any statement as conclusory, Plaintiff is unable to ascertain the basis for which Defendant even seeks exclusion.

However, Defendant *has been provided* the bases for Williamson's expert conclusion. Indeed, Williamson's report contains an in-depth explanation of how VXN scan works, including a step-by-step, detailed factual description of each component based on Williamson's first-hand knowledge. *See* Exhibit B at ¶¶40–87. This report "fulfills the requirements of Rule 26(a)(2)(B) because it alerts defense counsel to the substance of [Williamson's] testimony." *Watkins v. Cap. City Bank*, No. 10-087, 2012 WL 12929768, at *3 (S.D. Ga. Sept. 24, 2012).

Additionally, Plaintiff produced to Defendant the following pieces of evidence: (1) all 137 PCAPs VXN Scan captured related to the infringing transactions between VXN and IP address 47.197.99.186 which contain the forensic unalterable data capturing each transaction, (2) the ISP's subpoena response establishing that Defendant was the subscriber assigned IP address 47.197.99.186 at a date and time of infringement, (3) the Additional Evidence, and (4) all copyright registrations evidencing Strike 3's ownership of each work at issue. Plaintiff also timely produced every article cited to in Williamson's report. Plaintiff provided Paige's expert report detailing the forensic test he did of VXN Scan concluding that it works as Williamson describes it. *See* Exhibit E at ¶¶32–60, 68. Defendant has possessed all of these documents since at least February 4, 2022.

## 2. Williamson's Opinions are Supported by Reliable Methodology

Defendant challenges Williamson's methodology for creating VXN Scan arguing that "[t]o have admissible data, VXN [Scan] must satisfy the four *Daubert/Kumho* prongs:"

> • Does VXN employ a 'theory or technique . . . that can be (and has been) tested?
> • Has VXN been subjected to peer review and publication?
> • Can Strike 3 show VXN's 'known or potential rate of error' or has 'standards controlling the technique's operation'? and
> • Does VXN have 'general acceptance' within the 'relevant scientific community'?

[DE 111] at 3.

First, these prongs do not apply to inanimate objects like software. They apply to experts as people, and Defendant's assertion is essentially a *non sequitur*. Second, and more importantly, Defendant misreads the applicable case law. "*Daubert* makes clear that the factors it mentions do not constitute a definitive checklist or test." *Kumho*, 526 U.S. at 150 (internal quotations omitted). "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. As such, *Daubert* "made clear that its list of factors was meant to be helpful, *not definitive*." *Id*. (emphasis added). "Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *PWS*, 2019 WL 1473125 at *2. "[N]o one denies that an expert might draw a conclusion

9

from a set of observations based on extensive and specialized experience." *Id.* (citing *Kumho*, 526 U.S. at 156).

VXN Scan is not a system that would be subject to peer review or have "general acceptance within the relevant scientific community" because VXN Scan is a proprietary infringement detection system used to identify infringers of Plaintiff's copyrighted works. Similar to technology created by law enforcement to track child pornographers, making the source code available for peer review would enable infringers to develop ways to evade being caught:

> [T]here is a credible explanation for the absence of peer review. The record shows that the source code is purposely kept secret because the government reasonably fears that traders of child pornography (a notoriously computer-literate group) otherwise would be able to use the source code to develop ways either to evade apprehension or to mislead the authorities. This circumstance satisfactorily explains the absence of any peer review.

*United States v. Chiaradio*, 684 F.3d 265, 278 (1st Cir. 2012).[3]

Second, Williamson's expert report *does* contain specific, reliable methodology, while the Motion fails to explain any unreliability. Williamson, using his qualifications and technical skills, discusses at length each component and

---

[3] This fear is not unsubstantiated. Defense counsel in this case read Williamson's declaration describing VXN Scan to his 17,000+ followers on YouTube and invited the online BitTorrent community to analyze it, receiving over 450 "comments." *See* https://www.youtube.com/watch?v=i-oWZF-jtdg&t=861s at around 23:30. (remarking in the same sentence, Defendant's counsel, Leonard French, concedes that the VXN Scan software is "remarkable" and "clever").

technical process that makes up VXN Scan–the details of which he is extremely familiar with since he "oversaw the design, development, and overall creation of . . . VXN Scan." Exhibit B at ¶¶7–9. For example, Williamson describes: (1) how the torrent collector portion of VXN Scan "conducts a lexical search of Plaintiff's titles within well-known torrent websites," *id*. at ¶45, (2) that VXN Scan "subsequently downloads the .torrent file and a full copy of the targeted computer file from the whole BitTorrent swarm," *id*. at ¶47, (3) that VXN Scan "stores the .torrent file and a full copy of the targeted computer file directly onto a cloud platform account provided by Amazon Web Services," *id*. at ¶50, (4) that VXN Scan "connects to . . . peers using TCP/IP connection," *Id*. at ¶53, (5) that VXN Scan downloads "a piece or multiple pieces of the infringing computer file from other computers," *id*. at ¶50, and (6) that VXN Scan uses a capture card to record copies of all its network traffic and "streams the PCAP files directly onto a cloud platform account provided by AWS." *Id*. at ¶66.

Further, Williamson provides an explanation of the different components of torrenting, and how VXN uses them to collect evidence of the distribution of Plaintiff's works. For example, he explains that BitTorrent websites host .torrent files," Exhibit B at ¶44, and that VXN Scan's torrent collector "conducts lexical searches of Plaintiff's titles within well-known torrent websites." *Id*. at ¶45. He also notes that BitTorrent clients can read "the .torrent file's metadata, specifically its

'Info Hash[.]'" *Id*. at ¶44. And that VXN Scan uses the Info Hash to download the .torrent file and a full copy of the targeted computer file from the whole BitTorrent swarm. *Id*. at ¶48.

Finally, Williamson provides testimony of the PCAPS and how VXN generates them. He explains, "[d]ata sent through the Internet is delivered in the form of 'packets' of information." *Id*. at ¶58. And "[a] PCAP is a computer file containing captures or recorded data transmitted between network devices." *Id*. The PCAPs contain, among other things, the transmitting and receiving IP addresses, info hashes of the transacted piece, and the exact date and time of each transaction. *Id*. at ¶¶61–62. None of the foregoing is lay witness testimony. In creating VXN Scan, Williamson testified that his team ran countless tests, both at the code level and real-world testing. Exhibit D at 35:11–35:24, 36:1–36:10. Development of VXN Scan took six months and involved extensive planning, meetings, coding, programming, and communication. Exhibit C at ¶13. He also testified that his team used the Agile methodology[4] for software development, Exhibit D at 39:6–39:10.

Based on Williamson's knowledge, experience, and training, VXN Scan's software development and the creation processes accord with software and network industry standards. Exhibit C at ¶11. Defendant fails to explain why this generally

---

[4] "The agile method is a 'fail fast' method of making incremental progress on a project and solving problems 'as you go' rather than all at once." *Israelitt v. Enter. Servs. LLC*, No. 18-01454-SAG, 2022 WL 672158, at *3 (D. Md. Mar. 7, 2022).

accepted software development method or VXN Scan are unreliable. "[U]nlike the fields of 'laboratory or medical testing, which employ rigorous and replicable protocols, technical fields such as engineering often involve more idiosyncratic methods of testing and design." *Cornerstone Missionary Baptist Church v. S. Mut. Church Ins. Co.*, No. 12-149-HL, 2013 WL 6712928, at *5 (M.D. Ga. Dec. 18, 2013). Indeed, "[i]nstead of pointing to flaws, inconsistencies, or actual analytical gaps in [Williamson's] methodology, Defendant is left to making conclusory statements that [Williamson's] methods are unreliable." *Altidor v. Carnival Corp.*, 550 F. Supp. 3d 1322, 1333 (S.D. Fla. 2021). This is insufficient to exclude Williamson's expert testimony.

### 3. Williamson's Expert Testimony Assists the Trier of Fact

Williamson's expert testimony assists the trier of fact in this matter since his testimony explains the electronic evidence captured by VXN Scan which gave rise to Plaintiff's copyright infringement claim. "As the Supreme Court made clear in *Daubert*, the requirement that expert testimony assist the trier of fact goes primarily to relevance[.]" *Frazier*, 387 F.3d at n.24 (internal quotations omitted). "An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute[.]" *Daubert*, 509 U.S. at 591 (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). "Expert

testimony aids the trier of fact when it logically advances a material aspect of the proposing party's case." *City of S. Miami v. Desantis*, No. 19-22927, 2020 WL 7074644, at *13 (S.D. Fla. Dec. 3, 2020) (internal quotations omitted). "To do this, the expert's testimony must constitute either direct or circumstantial evidence that, if believed, will prove or make more likely an element of the proponent's case." *Id*.

Here, Williamson uses his expert knowledge to explain the components of VXN Scan. Prior to filing this lawsuit, VXN detected IP address 47.197.99.186 – Defendant's IP Address – actively distributing Plaintiff's movies on the BitTorrent network without authorization. This is evidenced by the PCAPs VXN Scan captured. Thus, Williamson's testimony can help the jury understand what PCAPs are, how VXN Scan generated them, the information they contain, and why they are reliable. The testimony explains, therefore, how Plaintiff knows and is able to prove that Defendant committed copyright infringement. This is the heart of Plaintiff's case.

### 4. Williamson is a Hybrid Expert Witness and His Factual Testimony is Admissible

Defendant's Motion seeks to bar **any** testimony from Williamson. But *Daubert* is inapplicable to many portions of Williamson's testimony since he is a hybrid witness. "Hybrid witnesses provide both fact and opinion testimony grounded in their scientific, technical, or specialized knowledge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 18-1149-ORL-78DCI, 2020 WL 5848317, at *3 (M.D. Fla. Oct. 1, 2020). "Hybrid witnesses may only testify on their

14

observations based on personal knowledge as well as their lay opinions . . . when such opinion testimony is based upon the witness' experience as a professional and is helpful in understanding the witness' decision making process." *Id*. at *4 (internal quotations omitted).

In this case, Williamson's non-expert testimony consists of facts about Plaintiff's websites, content, awards, notoriety in the adult entertainment industry, and its values. Exhibit B at ¶¶1–39. Williamson's factual testimony details the hard work that Strike 3 puts into creating its works and the many awards and success it has achieved in the industry which has clearly played a role in its decision to protect its copyrights by filing lawsuits. *Id*. at ¶¶26–29. Further, Plaintiff designated Williamson as a Rule 30(b)(6) witness for various non-expert deposition topics such as the quality of Plaintiff's movies, and Plaintiff's reputation in the adult entertainment industry. *See generally* Exhibit A. This also includes the factual description of how VXN Scan works since it is based on his first-hand knowledge. *See* Exhibit B. Accordingly, Williamson's factual testimony is admissible and should not be the subject of a *Daubert* motion.

### B. PAIGE'S OPINION AND TEST OF VXN SCAN SHOULD NOT BE EXCLUDED

#### 1. Paige is qualified to test VXN Scan

Defendant seeks to exclude only paragraph 60 of Paige's expert report which states: "As such, this test confirms that when the ExpressVPN software is running

on a Test Computer, all the Internet traffic, including BitTorrent client traffic, is routed through ExpressVPN's servers, and VXN Scan accurately captures the VPN IP address."[5] Exhibit E at ¶60.

Defendant's barebones argument is that Paige's opinion should be excluded because he is not qualified to review and test software systems. [DE 111] at 10. But Paige's background and experience make him qualified to test the VXN Scan system. "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 369 (M.D. Fla. 2018) (citing *Frazier*, 387 F.3d at 1260) ("[E]xpert status may be based on 'knowledge, skill, experience, training, or education.'") Paige has had experience with BitTorrent clients "since they were invented," Exhibit F at 19:10–19:11, and has been using computers all his life and builds them. *Id*. at 119:1–119:25.

And, during his years in law enforcement's Computer Crimes Unit, Paige investigated cases involving the distribution of criminal files on peer-to-peer file sharing networks. Exhibit E at ¶20. This involved ensuring law enforcement's tracking system established successful TCP/IP connections with IP addresses transmitting criminal content, transmission of the illegal content had occurred,

---

[5] Oddly, Defendant's Motion states that Paige's expert report "offers two (2) opinions." [DE 111] at 9. This is untrue. Paige's Supplemental Expert Report contains eight (8) opinions. *See* Exhibit E at ¶101.

subpoenaing ISPs for subscribers IP addresses, and executing search warrants for computer devices. *Id*. at ¶¶14–24. Paige even described VXN Scan as a software that is "very similar to what law enforcement uses to monitor BitTorrent traffic" of people sharing criminal content. Exhibit F at 7:19–7:25, 8:1–8:2. Additionally, Paige's test of VXN Scan was not his first rodeo. He conducted this same real-world test on at least two other similar BitTorrent tracking systems. *See* Exhibit E at ¶34; *see also* Exhibit F at 18:15.

### 2. Paige's Methodology is Reliable

Paige's methodology and expert opinion on infringement tracking systems had been accepted by other courts. *See*, *e.g.*, *Malibu Media, LLC v. Harrison*, No. 12-01117-WTL, 2014 WL 5598582, at *11 (S.D. Ind. Nov. 3, 2014), *report and recommendation adopted*, No. 12-01117-WTL, 2014 WL 7005288 (S.D. Ind. Dec. 10, 2014) ("As such, the Court concludes that Plaintiff has met its burden of showing that Paige's methodology satisfies the requirements of *Daubert*."); *Malibu Media v. Does*, No. 12-02078, Dkt. No. 205, at 109–142 (E.D. Pa. June 18, 2013) (hearing Paige's expert testimony relating to the software used by IPP International to monitor and identify copyright infringers). "This prior judicial acceptance of Paige's tests weighs in favor of its admissibility." *Harrison*, 2014 WL 5598582 at *11.

Defendant argues that Paige "does not admit that he was conducting his test of VXN system two years after the fact[.]" [DE 111] at 10. But Paige has not

concealed this fact. <u>Exhibit E</u> at ¶45 ("On February 15, 2022, I started the test[.]"). Further, Williamson testified that "the version of VXN Scan which Paige tested, is the same version of VXN Scan which was used to collect infringement data for IP address 47.197.99.186 . . . because VXN Scan has not undergone any substantial change since it was made live." <u>Exhibit C</u> at ¶18. Defendant provides no evidence that disputes this.

Defendant accuses Paige of "not [maintaining] his testing data and equipment used so that it could be independently reviewed." [DE 111] at 10. But all testing data (PCAPs generated during the test, all facts and data Paige considered in forming his opinions, and any other data required by the Fed. R. Civ. P. 26) has been produced to Defendant. *Cf.* <u>Exhibit E</u> at ¶34. As for the accusation that Paige has not maintained the equipment used to conduct his test, it is the VXN Scan itself that must be maintained in order to be independently reviewed–not Paige's equipment used to conduct his test.

Lastly, Defendant argues that Paige's methodology "has never been peer reviewed or determined to be a generally accepted practice by anyone or any entity." [DE 111] at 10. But this alone is not a basis to exclude his opinion under *Daubert*. *See Kumho*, 526 U.S. at 150 (internal quotations omitted). Further, this *Daubert* factor is inapplicable to Paige's test in this case. Indeed, Paige's test need not be peer reviewed or determined to be a 'generally accepted practice' because it is a

straightforward and basic real-world test that can be easily replicated, and it is not a new or novel scientific experiment. In another BitTorrent case where Paige performed a similar test of an infringement tracking system, the Court agreed, holding that Paige's method is "not a likely candidate for peer-reviewed studies in scientific journals." *Harrison*, 2014 WL 5598582 at *11. Here, Defendant could have performed the same exact test but chose not to.

### 3. Paige's Testimony Assists the Trier of Fact

Finally, Paige's expert testimony assists the trier of fact in this matter since his testimony highlights the accuracy of VXN Scan. As previously stated, "the requirement that expert testimony assist the trier of fact goes primarily to relevance[.]"*Frazier*, 387 F.3d at n.24 (internal quotations omitted). Paige tested VXN Scan using a reliable methodology. The results of this test are relevant because it "logically advances a material aspect" of Plaintiff's case. *Desantis*, 2020 WL 7074644 at *13 (internal quotations omitted). An accuracy test of the infringement detection system used to detect Defendant's alleged infringement is relevant as it makes Defendant's infringement of Plaintiff's works more likely than not.

### V.   CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court deny Defendant's Motion.

DATED: August 10, 2022      /s/ Christian W. Waugh
                            Christian W. Waugh [FBN 71093]

WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone:  321-800-6008
Fax:   844-206-0245

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, a true and correct copy of the

following documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh