# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |  |
|---|---|---|
| STRIKE 3 HOLDINGS, LLC, | § § § | Civil Action No. 8:20-cv-00676-MSS-CPT |
| Plaintiff, | § | |
| v. | § § | |
| JOHN DOE infringer identified | § | |
| As using IP  address | § | |
| 47.197.99.186, | § | |
| Defendant. | § § | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Strike 3's motion fails on three grounds. First, Strike 3's motion fails on a jurisdictional basis as there is no evidence connecting the 36 films at issue to the copyright certificates filed in their motion. Second, Strike 3's motion fails because Strike 3 failed to show John Doe copied the works. Lastly, Strike 3's motion on the declaratory relief counterclaim should be denied under Supreme Court precedent.

Strike 3's entire case is based on unsupported arguments that are couched as facts combined with supposition.  Strike 3 has no hard evidence that VXN collects internet data in a reliable manner. Strike 3 has not explained how the "PCAP's" map into the movies to show where John Doe copied anything. Strike 3 has not addressed the fact that John Doe's media does not have a single  ".torrent" file  or any of  Strike 3's media.  Strike 3's argument involving "PIA VPN" data has no factual grounding

1

as PIA has not corroborated the IP address Strike 3 contends John Doe used in 2021.

Instead of methodically proving up their case, Strike 3's motion is nothing but tangential arguments unsupported by admissible evidence.  Without any admissible evidence supporting Strike 3's claims of infringement, their motion for summary judgment (ECF 114) must be denied and judgment of non-infringement entered in John Doe's favor under Rule 56(f)(1).

## I.    ARGUMENT

## A.    SUMMARY

Strike 3 first has to show that this Court had subject matter jurisdiction over the films at issue by associating the films with their respective Copyright Certificates.  *Fourth Estate Public Benefit Corp. v. Wall-Street.com*, 586 U.S. ___; 139 S. Ct. 881 (2019).    Strike 3 has not introduced evidence to associate the 36 films with their respective copyright certificates with admissible documents from their filings with the copyright office.

Strike 3 next has to prove two elements of copyright infringement: (1) ownership of a valid copyright and (2) copying of the protectable elements. *Home Design Servs., Inc. v. Turner Heritage Homes Inc.,* 825 F.3d 1314, 1320 (11th Cir. 2016); *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir.2011). On the first prong, Strike 3 failed to provide evidence that the works were assigned from the author to the owner for each work. On the second prong, Strike 3 must show with

*admissible evidence* that John Doe copied all or substantially all of each of the thirty six works.  Strike 3 just engages in wholesale speculation with regard to copying. There is no evidence linking the data in the PCAP's to the movies at issue in this case. Finally, John Doe has adequately supported his counterclaim for declaratory judgment under *Medimmune* and has adequately supported his affirmative defense of copyright misuse.

## B.   STRIKE 3 HAS FAILED TO SHOW THAT THIS COURT HAS JURISDICTION SINCE STRIKE 3 CANNOT ASSOCIATE THE 36 FILMS WITH THE COPYRIGHT CERTIFICATES

Strike 3 provided the Court with 36 copyright certificates. (ECF 114-1). Strike 3 has not presented this Court with admissible evidence that the 36 copyright certificates are *associated with the films* that are identified as Strike 3's Exhibit A. (ECF 17-1).   Strike 3 bears to burden of proof of infringement with admissible evidence.

Strike 3's motion fails jurisdictionally since it is impossible to determine at this stage, without new extrinsic evidence, if the films at issue are, in fact, the ones subject to the copyright certificates.   *Fourth Estate Public Benefit Corp. v. Wall-Street.com*, 586 U.S. ___; 139 S. Ct. 881 (2019).  The corollary to this rule is that a party in an infringement lawsuit must eventually associate the work being allegedly infringed with the actual copyright certificate.  To prove infringement, one does not compare the contents of a copyright registration to allegedly infringing work; rather,

they compare the contents of the work itself to the allegedly infringing work.  To draw an analogy, one does not trespass on the deed to land, one trespasses on the land itself, the deed simply evidencing the meets and bounds of the property right.

In this case, as is typical in many other Strike 3 cases , there is no declaration from Strike 3's representative in the moving papers or any other document that associates the films identified by Exhibit A (ECF 17-1) with the copyright certificates.  The 36 films submitted under seal that Strike 3 now attempts to move into evidence <u>after</u> their MSJ was filed, (purportedly called the "Control Copies" or "BATES 1") do not contain any evidence linking the certificate to the contents of the movie.   This is because the movies themselves do not have "front rollers" with titles and "back rollers" with identifying information.   These films, unlike "Hollywood Style" movies, do not even give screen credits to the actors and actresses.

John Doe's expert, David Dickson,  examined each of the 36 films and the 36 registration certificates.  (Dickson Declaration).  Dickson  found no evidence in the movies where one could link a movie to a certificate.   If Strike 3 only produced 36 movies total, this might not be an issue, but Strike 3 has over 1350 registrations, and there may be tens of thousands of unregistered works (since it costs relatively little to produce their movies).

At the close of discovery, Strike 3 did not produce any correspondence with the Copyright Office or even a declaration corroborating the films with the

registration certificates.  This evidence of correspondence with the Copyright Office exists.  A log is created that shows how the registration is made and the documents sent to the Copyright Office.  (Exhibit 1; Edmondson Declaration ¶¶ 2-5).   Strike 3 failed to produce any of these logs by the close of discovery. *Id.*

This alone warrants denial of Strike 3's motion for summary judgment for lack of sufficient evidence and warrants entry of judgment in John Doe's favor as fact discovery is closed.  *See Mendoza v. Borden, Inc*., 195 F. 3d 1238, 1244 (11th Cir. 1999) ("Although the existence of a genuine issue of material fact precludes judgment as a matter of law, 'a jury question does not exist because of the presence of a `mere scintilla of evidence'".).  It would be inequitable to allow Strike 3 to bring in new evidence after the close of fact discovery, especially for the purpose of attempting to satisfy a basic requirement for its summary judgment motion.

## C.   STRIKE 3 FAILS TO PROVIDE THE "WRITTEN ASSIGNMENT" FOR THE 36 WORKS IN QUESTION AND THEREFORE LACKS STANDING

For Strike 3 to assert the copyrights against John Doe, it must have standing. *Imperial Residential Design v. Palms Development*, 70 F. 3d 96, 99 (11th Cir. 1995) ("...Regal must establish that it owned the copyright in the Regency design and that defendants copied the design....").

The copyright certificates state that there was an assignment of rights from other entities to Strike 3.  (ECF 114-1).  The underlying assignments were requested

from Strike 3, but none were produced at the close of discovery. (Edmondson Decl,) While the copyright certificates themselves may indicate an assignment, this is only a presumption. John Doe has sufficiently rebutted this assumption by requesting the underlying assignments in discovery and Strike 3 has failed to produce them at the close. (Edmondson Declaration, ¶6).

The Court can infer that the lack of the underlying assignments that it is insufficient to show that the rights were properly assigned. *Righthaven LLC v. Hoehn*, 716 F. 3d 1166, 1169-1170 (9th Cir 2013). A copyright certificate that indicates that there is an underlying assignment requires the owner to show the complete chain of title. Strike 3's argument of "trust us, we own it", is insufficient. *Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1167 (D. OR 2018 ).

Strike 3's failure to provide the assignments at the close of discovery should be a bar to later argument that valid assignments exist.

## D.   STRIKE 3 HAS FAILED TO SHOW THAT THE DATA GENERATED FROM VXN AND ASSOCIATED PARTS IS RELIABLE AND ADMISSIBLE

Central to Strike 3's argument is that the VXN creates reliable data. There is no evidence of that. But even if it did create reliable data, it is still hearsay not subject to any of the hearsay exceptions. All VXN creates is data solely for the purpose of

litigation.

John Doe's computer expert, Kal Toth, has shown numerous points of failure regarding the VXN system. (See Declaration of Kal Toth).



Kal Toth identifies at least 9 points Strike 3's VXN system is deficient at recording data. (Toth Declaration).  Further Strike 3's overall system for determining if infringements occur is woefully inadequate and inaccurate. (Fruits Declaration). Strike 3 has failed to show, with admissible evidence, how the data is connected.

Strike 3's "VXN Scan" expert, David Williamson ("Williamson") swore to this Court in 2020 that VXN is an "infringement detection system" to allow early discovery. (ECF 11-1). The phrase "Infringement detection system" is not vague, it means that you know who the infringer is.  In a surprising about-face, Williamson, who is also a part owner of Strike 3's parent company, now states that Strike 3's "VXN Scan" is fatally imprecise:

> "21.VXN Scan operates at the IP address level. It does not make any legal conclusions about who used the IP address or who infringed Strike 3's movies. Decisions about who infringed Strike 3's movies and who Strike 3 prosecutes is an entirely different inquiry not made by VXN Scan." (ECF 114-2.)

VXN Scan cannot tell who accessed the IP Address, where it was accessed from, or even what computer did the accessing.  VXN Scan is no better than the computer system used in *Cobbler* and therefore incapable of identifying "infringements" under *Twombly/Iqbal*, or as here applicable, the summary judgment standards under *Celotex*.  *See Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1146; *see* also *Malibu Media v. Doe,* No. 19-CV-950, 2020 WL 4569433, 2020 U.S. Dist. LEXIS 141388 (N.D.N.Y. Aug. 7, 2020).

The case upon which Strike 3 relies in pages 15-16 of its brief as to VXN Scan is completely inapposite.  *United States v. Cullen, 796 F. App'x 976, 981* (11th Cir. 2019).  Strike 3's argument is illogical and akin to comparing apples to oranges.

The software used in *Cullen* to generate the evidence had been in operation for

8

more than a decade, was used by thousands of police departments, had user documentation, and was built by software professionals. The output from the CPS is "forensic data" and the police departments have every economic motivation not to pursue cases on unreliable data. (Fruits Declaration).

This is in sharp contrast to VXN, which was not tested, is solely used in-house by Strike 3, which has no economic disincentive not to pursue false positives.

Strike 3's contention that VXN data should be relied upon is false and should be rejected.

**E.  STRIKE 3 HAS FAILED TO SHOW JOHN DOE ACCESSED AND COPIED THE 36 FILMS**

**1.  STRIKE 3 FAILED TO SHOW JOHN DOE HAD ACCESS TO THE 36 FILMS**

Strike 3 has the burden of proof showing that John Doe had access to the Works. *Herzog v. Castle Rock Entertainment*, 193 F. 3d 1241, 1248 (11th Cir 1999). Strike 3 has not shown with substantial evidence that John Doe had access to the Bittorrent Network because John Doe did not have a torrent client on his media (e.g. computers), Strike 3 has not shown that John Doe accessed IP Addresses 47.197.99.186 and 146.70.38.84, and John Doe has produced evidence that he was not home during many of period of infringements.

a. **JOHN DOE DID NOT ACCESS THE BITTORRENT NETWORK AS THERE WAS NO TORRENT CLIENT ON ANY OF HIS MEDIA.**

Strike 3's allegations and motion claim John Doe accessed the "BitTorrent Network". (see ECF 1 and ECF 17, ¶¶ 4,17-19, 22, 24, 26,28-29, 50).  Accessing the "BitTorrent Network" requires that John Doe use a BitTorrent Client.   Simply having a BitTorrent Client does not mean one infringed Strike 3's works.  A BitTorrent client can be used to download public domain works from such sites as "Archive.org".

Strike 3 has produced no evidence that a "BitTorrent Client" of any type was used by John Doe. Patrick Paige was allowed to specify what files were needed as a result of the April 25, 2022 evidentiary hearing. (ECF 82, 83, 84).  Paige, in his expert report, failed to state that he found a "BitTorrent Client" or any artifacts of that software program.  (see ECF 114-9).  There is not a single mention that a "BitTorrent Client" was found on any of the media in Patrick Paige's expert report.

Strike 3's failure to identify a single "BitTorrent Client" on any of John Doe's computers is fatal to Strike 3's claim of infringement since John Doe's access to Strike 3's movies using a BitTorrent Client is prerequisite to a suit for infringement. *Compulife Software Inc. v. Newman*, 959 F. 3d 1288, 1301-1302 (11th Cir 2020) "… that the defendant had access to the copyrighted work …."; See also *Rentmeester v. Nike, Inc*., 883 F. 3d 1111, 1117 (9th Cir 2018) citing to 4 Nimmer on Copyright § 13.01[B]).   This was confirmed by John Doe's string searches on his media. (See Declaration of John Doe.).

**b.      JOHN DOE DID NOT ACCESS THE INTERNET ON IP ADDRESS 47.197.99.186 FOR PERIOD OF INFRINGEMENTS FROM JULY 21, 2019 TO DECEMBER 11, 2019**

Strike 3 claims to have acquired the IP address from Frontier, John Doe's alleged ISP.  (ECF 115-6).  Frontier produced documents to Strike 3.  Strike 3 failed to provide those documents with their moving papers.  (See ECF 114-1 to ECF 114-10).

In the event that Strike 3 wishes to rely on Frontier's subpoena responses showing John Doe was assigned IP Address 47.197.99.186 during those time periods, this document is hearsay. FRE 802, See also *US v. Santos,* 947 F.3d 711, 723 (2020). This document does not satisfy the hearsay exception under FRE 803(6).  Strike 3 has not shown with competent evidence from Frontier that ISP records are:

> (A) "… made at or near the time by—or from information transmitted by—someone with knowledge,"
> (B) "the record was kept in the course of a regularly conducted activity of a business," and
> (C) "making the record was a regular practice of that activity. *Id.*

Strike 3 did not take the deposition of the records custodian of Frontier authenticating this document.   Without such certification, merely referencing the records tying John Doe to the IP address is inadmissible hearsay. More importantly the Court does not know if these documents were prepared by Frontier specially for this litigation.

**c.**   **JOHN DOE DID NOT ACCESS THE INTERNET USING IP ADDRESS 146.70.38.84 FOR PERIOD OF INFRINGEMENTS FROM AUGUST 12, 2021 TO DECEMBER 6, 2021**

Strike 3 claims John Doe infringed its works using IP Address 146.70.38.84 from the time period of August 12, 2021 to December 6, 2021. (See ECF 114, Page 7, "…IP address 146.70.38.84 downloaded files…"; Page 19 "..Defendant used a VPN..").

The only evidence Strike 3 has supporting this claim is the declaration of Jessica Fernandez. (ECF 114-4, ¶ 6,8, 12).  Ms. Fernandez's statement is hearsay. FRE 802. No business record from PIA VPN shows IP Address 146.70.38.84 as being used.  In fact, PIA states that the IP address cannot be determined during this time period.  (Declaration of John Arsenault).   The records from Twitter are hearsay without a declaration from Twitter's record custodian. FRE 802.  Ms. Fernandez also offers opinion testimony, but she is an unqualified expert on the allocation of IP addresses from PIA.  FRE 702; *Williams v. Mosaic Fertilizer, LLC*, 889 F. 3d 1239, 1244 (2018).  Ms. Fernandez was not designated by Strike 3 as an expert and did not file an expert report. (Edmondson Decl, ¶ 7)

In the event that Strike 3 wishes to rely on Ms. Fernandez's unsupported conjecture that John Doe was assigned IP Address 146.70.38.84 during those time periods, this testimony is hearsay. FRE 802, See also *US v. Santos,* 947 F.3d 711, 723 (2020). This testimony does not satisfy the hearsay exception under FRE 803(6).

Strike 3 has not shown with competent evidence from PIA.

Strike 3 did not take the deposition of the records custodian of PIA authenticating this IP Address for this time period.  Without such certification, merely referencing the records tying John Doe to the IP address is inadmissible hearsay.

### d. JOHN DOE WAS NOT AT HOME DURING MANY OF THE ALLEGED INFRINGEMENTS

John Doe has produced timecard evidence that he was not at home during the period of infringements and was working in a classified area at his job where he could not remotely access the computer.  (*See* Declaration of John Doe ¶ 9 ; *see also* ECF 115-23).  The fact that he worked and had timecards is not in dispute.

John Doe has shifted the burden to Strike 3 to show that he was at home or operated his computer remotely.  Strike 3 has not produced any evidence contradicting the fact that he was not at home.  *Gogel v. Kia Motors Mfg. of Georgia, Inc.,* 967 F. 3d 1121, 1134 (11th Cir 2020).  It is a reasonable inference that if John Doe did not have access to the internet for a large portion of downloads, he did not perform any of the downloads.  Indeed, it is is a much more reasonable and logical inference than the ones Strike 3 is asking this Court to make—that, because John Doe played certain video games like Diablo, this must be proof of copyright infringement.

## 2.  STRIKE 3 HAS FAILED TO SHOW JOHN DOE COPIED ALL OR A SUBSTANTIAL PORTION AND THE ORIGINAL MATERIAL OF THE 36 FILMS

Strike 3 has failed to show that John Doe copied the films at issue with sufficient evidence for the purposes of summary judgment. *May v. Sony Music Entertainment,* 399 F. Supp. 3d 169 (NY SD 2019) "… (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's…".  Without proof of access, Strike 3 must show "similarities ... that can only be explained by copying, rather than by coincidence, independent creation, or prior common source".

### a.  THERE WAS NO EVIDENCE OF STRIKE 3'S WORKS ON JOHN DOE'S MEDIA

John Doe has produced evidence that he did not have Strike 3's works on his media.  This statement was corroborated by two experts, Brillhart and Yasumoto. This shifts the burden to Strike 3 to show that there was Strike 3's material on John Doe's media.

Strike 3 and its expert, Patrick Paige, have not met this burden.  Paige has not shown in his expert report where any of Strike 3's works were found on nay of John Doe's media.  (See  ECF 114-9,  ¶ 101).  Further Patrick Paige ignores the salient facts that there is no corroborating evidence of the IP addresses at issue and the fact that John Doe was at work.

14

**b.   PCAP "BITFIELD" ANALYSIS IS NOT IN WILLIAMSON'S OR PAIGE'S EXPERT REPORTS AND THE ATTEMPT TO CURE IN REBUTTAL EXPERT REPORTS IS NOT ALLOWED.**

Strike 3 then argues in its motion that an inference from "Bitfield" data from "PCAPS" can lead the trier of fact to an assumption that the entire movie was downloaded by John Doe.  (ECF 114, Page 2). The presupposes that the IP address was assigned to John Doe, that John Doe was home, and that VXN accurately records anything. *See* Arguments, *supra*.   Strike contends that 33 of the films had "100% downloaded" and that three of the films had "39%, 79%, and 86%" downloaded.  Strike does not explain how it can determine this, despite the fact that the total amount of data in the PCAP's is approximately 0.2% of the movies, an amount that cannot render a frame. (ECF 114, Page 14).  Strike 3 refers to both the *Grokster* and the *Glacier* case to support its argument but fails to mention that neither case discusses the mechanics of Bitfields.   Strike 3 asks this Court to rely on a law review article as a substitute for expert testimony. (e.g. Haskell article).  The analysis of "PCAP's" and "Bitfields" is data that requires expert testimony.

Strike 3 cannot introduce evidence in a rebuttal report that was required in its opening report.  *Guevara v. NCL (Bahamas) Ltd.,* 920 F. 3d 710, 719 (11th Cir 2019) ("[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report"(*citation omitted*).)  David Williamson's Expert Report makes

no mentions of "Bitfields" or the value of the "Bitfields" or how "Bitfields" are associated with the downloaded content.   Williamson cannot use a "rebuttal expert report" to introduce opinion that should have been in his opening report.   Further, the issue of Bitfield accuracy is heavily contested and should be an issue for the jury. *See BMG RIGHTS MGMT.(US) LLC v. Cox Communications*, 199 F. Supp. 3d 958,972 (VA ED 2016)

Nowhere in Paige's expert report does Paige analyze John Doe's PCAP bitfield, instead Page demonstrates the process of the VXN scan and how it uses PCAPs to determine IP addresses. Similarly, Williamson does not analyze PCAPs that are claimed to be John Doe's PCAP bitfields, instead Williamson explains how his software (VXN) work through PCAPs to find IP addresses. Further, in Williamson's rebuttal there is no  analysis of PCAPs bitfields. It is noteworthy that there is no PCAP analysis of John Doe included by the experts who have the most experience with and are in direct contact with the software. Not to mention, these are effectively employee experts for Strike 3 who likely use the same reports for their litigious adult film making company of which Williamson is an executive.

c.   **STRIKE 3 CANNOT USE "ADDITIONAL EVIDENCE" TO INFER JOHN DOE WAS THE INFRINGER.**

Strike 3 relies on the circumstantial "Additional Evidence" file created by a third party "IPP".  This file is inadmissible hearsay.  FRE 802.

Strike 3 did not provide a declaration from the records custodian from IPP.

FRE 803(6); *see* arguments *supra* regarding VPN and Frontier records. The declaration by attorney Jessica Fernandez in support of the "Additional Evidence" provided by IPP does not meet the business record's exception under the three-prong test of FRE 803(6) as Fernandez does not work for IPP.

There is no foundation for how the Additional Evidence file was created and in what manner and if the alleged files are related to the works at issue. FRE 403; See also *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 658 (ED PA 2015) "...*Malibu Media makes much of what it called 'additional evidence'*..." and further lacks standing to assert infringements of other parties. *Id*. "*Malibu Media of course has no standing to complain of alleged infringement of works to which it does not hold the copyrights* " *Id.* Also, if the evidence is being used to argue that John Doe's downloading of other works is suggestive that he downloaded Strike 3's works, then this is excluded under F.R.E. 404.

Aside from lack of foundation for admissibility of the document, Strike 3 cannot use the "Additional Evidence" file to show John Doe has a "habit" of downloading works, since there has been no prior civil judgments against John Doe for infringement. *See United States v. Holman,* 680 F. 2d 1340, 1351 (11th Cir 1982). That is a wholly inappropriate attempt to use "character" evidence to prove a tendency to act in a certain way.

The sole purpose of the "Additional Evidence" file is a pressure tactic against

people to settle.  Strike 3's designation of a spreadsheet as "evidence" does not make it so.

### d.   STRIKE 3'S "ADDITIONAL VPN EVIDENCE" IS INADMISSIBLE

Strike 3 next relies on the introduction of "VPN Additional Evidence" gathered from IP address "146.70.38.84" from the time period of August 12, 2021 to December 6, 2021.  Strike 3 states that John Doe continued to infringe August 12, 2021 to December 6, 2021 using a VPN provide by PIA.  While Strike 3 refers to "evidence" there is no actual document attached to the moving papers showing any infringements during this time period.

Preliminarily, the "VPN Additional Evidence" file in inadmissible as evidence as it is pure hearsay FRE 803 not within any exception.  There is no declaration from a Records Custodian  that shows that John Doe and no one else was tied to the use of the VPN IP address.  Without such certification and documents, all references to Doe's VPN IP address should be disregarded as inadmissible hearsay evidence.

Strike 3 has not introduced the "VPN Additional Evidence" as an exhibit to its motion or filed a declaration as to the contents.  As such, any reliance on this evidence is improper.  When Strike 3's experts served its opening expert reports, neither Williamson nor Paige even identified the "VPN Additional Evidence" gathered from IP address "146.70.38.84".

Strike 3 believes that it can connect John Doe to this IP Address and then to the Private Internet Access ("PIA").  According to ARINC, this IP address belongs to "RIPE NCC" (*See* Exhibit 6).  Further, PIA's response to Strike 3 fails to substantiate Strike 3's "investigation" of this IP Address.  (*See* Exhibit A attached to Arsenault Declaration).

A VPN maps hundreds, if not thousands, of users to a single IP Address.  For this 100-day time period, it is the functional equivalent of John Doe having 100,000 neighbors using his open WiFi.  The "VPN Additional Evidence" has no evidentiary value since technically it cannot be correlated to any one user.

The reality is that John Doe used PIA when deployed to the Middle East. (John Doe Declaration). PIA provides a VPN subscription service to millions of individuals to protect their privacy. https://en.wikipedia.org/wiki/Virtual_private_network  .  If you are a dissident in Hong Kong, a subversive in Russia, or a reporter in the Middle East, a VPN is likely the way you would protect your communications.   If John Doe tested his PIA VPN using Twitter then the assigned IP address would be only valid only for the short period of time.

Strike 3 is attempting to sneak in expert testimony via Strike 3's lay witness, Jessica Fernandez.

**F.     JOHN DOE'S OPEN WIFI WAS ACCESSIBLE BY NEIGHBORS**

Strike 3 argues in its motion  that the deposition testimony of a neighbor was

that he could not find an open "WiFi."  The deposition testimony of the neighbor's

observations lacks foundation. FRE 803. Further, the neighbor is not a qualified

expert. FRE 703.

John Doe retained Juan Martinez as an expert on this issue.  Juan Martinez

prepared an expert report showing that John Doe's open WiFi signal was available

to many neighbors in the vicinity.  This visual map of  the signal propagation shows

the coverage:



Strike 3 did not retain an expert on this topic to contradict Juan Martinez's

testimony.   Strike 3 does not dispute the accuracy of Mr. Martinez's measurements

or his conclusion of that many neighbors could have used John Doe's WiFi.

Strike 3's argument that John Doe was the sole user of the John Doe's WiFi router is sheer speculation as they have no credible evidence to the contrary.

a.   **John Doe's Character Evidence as argument is inadmissible**

Strike 3 alleges that John Doe's character in having certain certifications for his job, and also being a Star Wars fan for example, show that he must be the infringer in this case. (Motion, pg. 4-5, 18.).  This is inadmissible character evidence and the association of John Doe's Linkedin Account in any aspect to "downloading habits" requires expert testimony, probably from an expert involved in internet social media marketing.  Strike 3 did not designate such an expert.

## G.   STRIKE 3 CANNOT EXPLAIN WHY THERE ARE NO EVIDENCE OF TORRENTS FROM AUGUST 12, 2021 TO DECEMBER 6, 2021

All arguments made must have evidentiary support. Rule 11(b)(3). The corollary to this rule is that a party is bound by their factual arguments by signing the pleadings. *Id.* Strike 3 did not plead this new theory of liability.  Therefore, it is now estopped from pursuing this new theory of infringement now. *Christian v. Mattel, Inc.,* 286 F. 3d 1118 (9th Cir 2002) (Copyright litigation on the iconic Barbie Doll).  As shown above, the argument that Strike 3 can correlate the PIA VPN IP address to John Doe over a four-month period is farcical and has no evidentiary support.

Strike 3's theory is that John Doe continued, after the alleged time frame of original infringement between June 2019 to December, 2019 (ECF 17-1), to infringe and download Plaintiff's works during the additional time period from August 12, 2021 to December 8, 2021[1]. Taking Strike 3 at its word, there should be 4,000+ torrent files on John Doe's media, 4,000+ downloads, etc. John Doe's media should be literally riddled with infringed works, ".torrent files", fragments of Strike 3's works, etc.

John Doe and his experts searched his media for ".torrent files" and for Strike 3's media or works. John Doe searched the time period from August 12, 2021 to December 6, 2021 on his Windows and Linux hard drives. There was no evidence of the infringement of Strike 3 movies (or any movies) from August 8, 2021 to December 8, 2021.

## H. STRIKE 3 SPECULATES THAT THE HARD DRIVES HAD RELEVANT EVIDENCE AND WERE INTENTIONALLY DELETED, BUT THERE IS NO EVIDENCE TO SUPPORT THAT SPECULATION

Strike 3 attempts to conflate two devices in their arguments[2]. (ECF 114). The purpose of this conflation is to create confusion. John Doe provided, and Strike 3

---

[1](ECF 114, Page 7, ¶3) "…Plaintiff searched that [VPN] IP address in its Additional Evidence database and discovered evidence of BitTorrent infringement from August 12, 2021 to December 8, 2021…"

[2] See Motion, "Hard drives plural": pgs 6,7;

analyzed, the data from two devices:  a Windows device and a Linux device.

The Windows device has a significant amount of data going back to prior the period of infringement from June 2019 to Dec 2019.   Strike 3 admits that it could read data from the 2018 time frame (*See* reference to "Shellbag file").  All Strike 3 claims is that "System Logs" were no longer available when Windows made a periodic update.   Further, there is no evidence that John Doe intentionally initiated the update.

Further, in view of the fact that there are at least 9 households that had access to John Doe's open WiFi, and each house has many computers, there are probably 45 computers that would have data besides John Doe's computer.   (Martinez Declaration).  Strike 3 simply ignores this point.

Paige himself in his declaration admits that the Microsoft computer was updated by Windows itself in order to update the OS. Much like any piece of technology used in the modern world, system updates are necessary and often run through the night as to not prevent the user from being barred from use of their computer while also providing the highest level of software which is constantly updating in order to prevent bugs or corrupt files from hindering the user. (*See* Declaration of Joel Brillhart).

Strike 3 simply speculates that its files were on John Doe's device because it ignores all of the other places it could be (neighbor's computers) and ignore the fact

the VXN was first tested in 2022. See *ML Healthcare Serv. v. Publix Super Markets*, 881 F. 3d 1293, 1308 (11th Cir 2018).  This is not suprising since David Williamson as an "Expert" gets paid by Strike 3's parent company and purportedly created "VXN," and Patrick Paige has filed over ten thousand declarations for Strike 3 Holdings.

**I.**    **OTHER HOLDINGS IN STRIKE 3 CASES ARE NOT DISPOSTIVE TO THE FACTS IN THIS CASE.**

Strike 3 lists numerous district court decisions as "proof" that the "…defendant [in that case] is indeed the infringer.." and that "…courts routinely find that Plaintiff's Additional Evidence can identify the infringer…". (Motion, pg. 4, 18.)  Plaintiff appears to suggest that because this finding was made in another Strike 3 case that the Court should similarly find that John Doe is the infringer in this case. (*Id*.).  This argument is utter nonsense.

Only one other Strike 3 case has been decided at the summary judgment stage before Judge Zilly in Seattle.  There, John Doe was found not have infringed and Strike 3's "evidence" was utterly lacking. See *Strike 3 Holdings, LLC vs. John Doe*, 17-cv-01731 (WA WD 2020) order on 2/20/2020.

**J.      ARGUMENTS BY ATTORNEY JESSICA FERNANDEZ ARE INADMISSIBLE**

Strike 3's brief is largely based on "evidence" supported by Strike 3's Jessica Fernandez. Fernandez does not simply authenticate documents; rather she argues technical evidence as an expert, without being designated as an expert. Strike 3 did not designate Fernandez as an expert in its initial disclosures or amended disclosures. Fernandez did not file an expert report.  (Edmondson Decl).  Therefore, she cannot provide expert testimony here.

A witness may testify to a matter ***only if*** evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. FRE 602. Evidence that is inadmissible at trial cannot be used to avoid summary judgment. *Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1249 (11th Cir. 2007)(citing to *Broadway v. City of Montgomery, Ala.,* 530 F.2d 657, 661 (5th Cir. 1976)). And "[e]ven on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge. *Citizens Concerned About Our Children v. School Bd. of Broward County, Fla.*, 193 F.3d 1285, 1295, n. 11 (11th Cir.1999) (per curiam).

Ms. Fernandez's testimony in support of Strike 3's Motion consists entirely as inadmissible expert testimony under FRCP 26.  Without any underlying basis for her testimony, Ms. Fernandez states that she has personal knowledge of the statements in her declaration (Fernandez's Decl., ¶1).   Rather than addressing admissible facts she actually knows, has heard or observed, her declaration is filled

with conclusions of things that "Plaintiff" has done.  (Fernandez Decl. ₱2-3, 6, 9-11, 13.) She attempts to link John Doe to the IP address that was identified by Frontier without supporting business records (*Id.* at ₱2).  She describes Plaintiff's use and meaning of Strike 3's VXN Scan and IPP International databases (*Id.* at ₱4-5), as well as "Plaintiff's Additional Evidence" as if she has some knowledge of how those systems were created (*Id.* at ₱₱5-6).

If Strike 3 attempts to boost Ms. Fernandez as an expert by filing a Supplemental expert report after the close of all discovery, the Court should exclude that report pursuant to Federal Rule of Civil Procedure 37(c) since Plaintiff failed to file it prior to the deadline imposed for disclosures. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir.2003).

## K.   PATRICK PAIGE'S TESTIMONY SHOULD BE GIVEN LITTLE WEIGHT

An expert's analysis should be the result of independent conclusions and biases and not affected by conclusions in other cases.  See *Derrickson v. Circuit City Stores* 84 F.Supp 679, 688 (D. Md. 2000) excluding Harvard professor for discussing his "experiences" with IBM and the Boston Globe.

Patrick Paige has filed thousands of declarations for Strike 3, as he did in this case, that are essentially identical. (ECF 11-2.) This is his custom and practice that he has followed when he filed thousands of declarations for Malibu Media, LLC.

There is no evidence that he actually performed any of the analysis that states in his declaration.   Patrick Paige's *pro forma* declarations describing his experience and long career as a police detective[3].

Paige stated in this case that on March 5, 2020 that he was tasked by Strike 3 to perform the following:

> 12. I was retained by Strike 3 Holdings, LLC ("Strike 3") to individually <u>analyze and retain forensic evidence captured by its infringement detection system</u>

Paige, in his declaration, inaccurately characterizes VXN Scan as a "infringement detection system" and he analyzed "forensic evidence".  Paige did even test VXN Scan until 2022, and that was a cursory ad-hoc test VXN system. No "expert" can characterize the output from any measurement device that has never been tested as "forensic."   Paige, as a former police officer clearly knows that the word "forensic" has a specialized meaning when it comes to the word "evidence". Since Paige did not test VXN Scan until 2022, any reference Paige makes to VXN Scan and the data that it generates (PCAP Data, Hash Values, etc.) should be disregarded[4].

---

[3] Patrick Paige was let go from the police force when he was found to be moving contraband using police property.  (*See* Exhibit 4).  This was not noted on Patrick Paige's CV.

[4] John Doe requests the Court to disregard via this opposition in lieu of a separate motion to strike purely as a matter of efficiency.

Paige then completely ignores a number of significant points in any of his expert reports that would counter his predisposed opinion that "John Doe did it" as follows:

- Paige does not address Expert Martinez's WiFi Heatmap showing that the neighbors had access to John Doe's router (and IP Address).
- Paige does not address the Timecard Evidence showing that John Doe was at work during many of the dates of infringement.
- Paige does not address the hearsay document produced from Frontier that the IP Address 47.197.99.186 was not allocated to John Doe as a subscriber for a significant period of time.
- Paige does not address how the "VPN Additional Evidence" as proffered by Strike 3 in their MSJ would place thousands of ".torrent files" and "media files", and yet no ".torrent files" were found, but at the same time is willing to accept Strike 3's representation that VXN worked from June, 2019 to December, 2019.

In *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650 (ED PA 2015) was the expert witness.  Patrick Paige arrived at the same conclusion that "another device" was connected to the computer.  The court stated, "Nor are we impressed by the histrionics over alleged spoliation" and further stated "Indeed, its vain efforts to agitate are particularly unseemly in light of our repeated rulings affording plaintiff wide latitude in its discovery".

In *Malibu Media, LLC v Doe*, 13-CV-6312 (ND IL 2016), the Court found that "Paige opines that "Defendant is the infringer." [*Id.* ¶ 61.]"   The Court also found Patrick Paige opining ".. "[i]t is possible to delete evidence from the unallocated space of a computer without leaving any detectable proof of the deletion," and four paragraphs opining that there is "woefully insufficient evidence" to support Doe's

statement that the two unproduced devices were last used prior to the time of the claimed infringement".

Patrick Paige's expert report are filled with impermissible conjectures based on past experiences with "Computer Crimes Unit" at the same time he was using police property to transport illegal substances for his own personal use. (See Exhibit 4). Paige also allegedly converted assets of his former deceased business partner. None of this was declared on Patrick Paige's CV. The reality is that Patrick Paige really has had one type of client, pornography companies that file thousands of lawsuits (e.g. Malibu Media and Strike 3 Holdings).

Patrick Paige's testimony is not credible in view of his practice of overlooking contradictory evidence with the sole intent of arriving at a predetermined opinion that meets the needs of his primary client, Strike 3.

## L.   *MEDTRONIC* ALLOWS FOR A DECLARATORY RELIEF COUNTERCLAIM

Strike 3 contends that John Doe lacks standing to maintain a declaratory relief counterclaim. (ECF 114, page 20) and argues for six pages what our Supreme Court has already allowed. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 203 (2014). The Supreme Court stated in *Medtronic* that declaratory relief counterclaims provide important public benefit in maintaining "… a well functioning patent system…". *Id* at 204. Here, John Doe's declaratory relief

counterclaim is just as important to the public as a well functioning "copyright system". By any definition, a well functioning copyright system involves bringing lawsuits only in Federal Court, not first in State Court.

In a "normal" copyright case the lawyers know that an infringement action has exclusive jurisdiction in the Federal Courts. 17 USC 301. No trained IP lawyer would initiate a single copyright case in state court. Strike 3 admits that it has initiated dozens of Miami-Dade lawsuits to coerce settlements at the state court level (See ECF 114). Strike 3 claims that it can ignore federal question because it needs to lessen the burden of this Court. (See ECF 1, ¶6, "In an effort to conserve Federal judicial resources,"). This may be a noble statement, but John Doe hardly believes that this Court needs help from a pornography company that chooses not to follow the law. A copyright lawsuit belongs in federal court. That is the law passed by Congress and hundreds of cases on Federal Question of Copyright Act. 17 U.S.C 301[5]. The language of the act includes "all legal or equitable rights", which would subsume all improper "bills of equity" brought in state court.

John Doe was subject to one of those illegal lawsuits and incurred significant "state court" costs to defend a copyright lawsuit in State Court. Strike 3 did not

---

[5] (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified in sections 102 and 103,

even seek permission from this Court to conduct early discovery in state court for a copyright cause of action.

A counterclaim is bound by the same rules of pleading as a claim. Strike 3 never argued the counterclaim was vague under *Twombly*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   Instead Strike 3 argues it is duplicative; it is not, it gave fair notice of what John Doe requested.  The Copyright Act allows an award of costs and reasonable attorney fees for the prevailing party.  17 USC 505.  *Fogerty v. Fantasy, Inc*. 510 U.S. 517 (1994). The law is that the cost and fees are those limited to the federal action itself.  There is an open question, unaddressed by any court, as to whether this would include fees and costs for pre-lawsuit litigation in state court. This declaratory relief counterclaim seeks to resolve the inclusion of those state court costs and fees.

M.    **JOHN DOE'S AFFIRMATIVE DEFENSE OF COPYRIGHT MISUSE IS SUPPORTED BY THE LAW**

Strike 3 contends that there is no affirmative defense of copyright misuse.  The Ninth Circuit analyzed as an affirmative defense of copyright misuse in the context of a supplier and a third-party reseller. *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, (9th Cir. 2015).  Omega tried to control Costco's distribution of high-end consumer watches using the Copyright Act.   The Ninth Circuit, that the goal of the

Copyright Act is to "...to stimulate artistic creativity for the general public good..."
id. at 698 citing to *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975).
The test is whether Strike 3's copyrights are being used in a manner violative of the
public policy embodied in the grant of a copyright.  *Id.,*citing  *Lasercomb Am., Inc.
v. Reynolds, 911 F.2d 970, 978* (4th Cir.1990).  There has been no decision by the
11th Circuit (or any circuit) determining whether bringing a copyright case in state
court as a precursor to a federal case would constitute copyright misuse.

Clearly the public policy from 1976 onwards was that the federal courts would
provide a uniform forum for both legal and equitable claims as shown by Congress
in passing the statute.  17 U.S.C. §301.   Also, the Supreme Court has observed that
"... a pattern of baseless, repetitive claims may emerge which leads the factfinder to
conclude that the administrative and judicial processes have been abused..."
*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513  (1972).

Here Strike 3 admits to that pattern of abuse.  Strike 3 admits filing state court
copyright lawsuits as a precursor to filing federal copyright lawsuits to "unburden the
Federal Court". (ECF 17)  Since the Federal Court has not been directed by Congress
to allow this sort of partnership with Strike 3, the only consequence of this illegal act
is to unburden the unwitting "John Doe" with a state court process to force a contrived
out of court settlement payment.     The state court litigation is designed to decrease
Strike 3's litigation costs and haul out-of-state defendants to a Florida state court.   It

is not about claims of infringement, it is simply an extension of a "Sue and Settle" business model. (Declaration of Eric Fruits). This, coupled with Strike 3's gross misrepresentations regarding the quality and cost of their films, demonstrates that Strike 3 is making porn not for licensing, but for litigation.

Strike 3's reference in the motion (ECF 114, pg. 30) to *Agripost, LLC v. Miami-Dade Cnty.*, *Fla*., 525 F.3d 1049, 1056 (11th Cir. 2008) is clearly not on point. *Agripost* was not a pure federal question case, rather was a takings case that could be brought in either jurisdiction. This case is more akin to a procedural-type *Walker Process* type case. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). Strike 3's admission to going to the wrong court, but then says that "they were fine with it", is odd as tate court orders on copyright infringement matters are "*void ab initio"* for lack of subject matter jurisdiction. It also strips this Court over its inherent power to control early discovery.

As there are no disputed issues of fact, this is question is ripe for summary judgment. No plaintiff should be allowed to bring a precursor copyright infringement case in state court as a way to get around the rules of federal court despite how it "unburdens" the federal system.

Strike 3's motion on partial summary judgment should be denied as to the equitable defense of copyright misuse and John Doe's affirmative defense of copyright misuse should be granted under Rule 56(f).

## II.     CONCLUSION

Strike 3's case is built inadmissible evidence and conjecture.  In fact, Strike 3 does not have admissible data that the IP addresses allegedly used were assigned to John Doe. None of Strike 3's movies were found on John Doe's media and at least 9 neighbors could have been the downloaders.   Speculative theories of infringement by Strike 3 should be ignored and Strike 3's motion should be denied.


Dated:  August 26, 2022                    Respectfully submitted,
                                                     BY: */s/ J. Curtis Edmondson*
                                                     J. Curtis Edmondson (CSB 236105)
                                                     Admitted Pro Hac Vice
                                                     Edmondson IP Law
                                                     15490 NW Oak
                                                     Hillsboro, OR 97123
                                                     503-336-3749/ FAX: (503) 482-7418
                                                     jcedmondson@edmolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically served the foregoing document on:

Tyler A. Mamone, Esq.
MAMONE VILLALON
100 SE 2nd St., Suite 2000
Miami, Florida, 33131
Tel: (786) 209-2379
Tyler@mvlawpllc.com
*Counsel for Plaintiff*

Christian W. Waugh
Waugh Grant, PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
321-800-6008: Phone
844-206-0245: Fax
cwaugh@waughgrant.com
*Counsel for Plaintiff*

Via email as per agreement of the parties.

/J. Curtis Edmondson/

Declarant