# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited liability
company,

       Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

       Defendant/Counter-Plaintiff.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

i

## TABLE OF CONTENTS

I.    INTRODUCTION.........................................................................1

II.   LEGAL STANDARD ................................................................3

III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
      DENIED ....................................................................................5

   A.  DEFENDANT DOES NOT CARRY HIS BURDEN .................................5

   B.  DEFENDANT HAS PRESENTED NO EVIDENCE IN SUPPORT OF
       STANDING ...............................................................................9

   C.  STRIKE 3 OWNS THE COPYRIGHTS-IN-SUIT ................................ 10

      1.  DEFENDANT'S ABSENCE OF EVIDENCE
          CANNOT INVALIDATE STRIKE 3'S COPYRIGHTS ................. 10

      2.  PLAINTIFF'S EVIDENCE OF COPYING IS
          AUTHENTIC AND ADMISSABLE ................................................ 15

         a.  VXN Scan's Data is Not Hearsay................................ 16

         b.  There is Sufficient Foundation to Authenticate
             VXN Scan's Data ......................................................22

         c.  Frontier's Response to Strike 3's Subpoena is Admissible........23

      3.  DEFENDANT FACTUALLY AND LEGALLY
          COPIED THE WORKS-IN-SUIT.......................................................24

         a.  Plaintiff has Shown by a Preponderance of the
             Evidence that Defendant, Not Someone Else, Is the Infringer...24

         b.  The PCAPs Prove Defendant Factually Copied the Works .......27

         c.  The Downloaded Works Are Substantially Similar
             to Strike 3's Copyrighted Works ................................29

   D.  DEFENDANT IS BARRED IN EQUITY FROM RECOVERY..............31

IV.  CONCLUSION ................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Pegasus SPC v. Clear Skies Holding Co., LLC*,
    No. 13-03035 (ELR), 2015 WL 10891937 (N.D. Ga. Sept. 22, 2015) .............. 18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................... 1

*Anderson v. United States*,
    417 U.S. 211, 220, 94 S. Ct. 2253, 2260, 41 L. Ed. 2d 20 (1974) ..................... 15

*Baby Buddies, Inc. v. Toys R Us, Inc.*,
    611 F.3d 1308, 1314 (11th Cir. 2010) ................................................. 5

*Bingham Ltd. v. U.S.*,
    724 F.2d 921 (11th Cir. 1984) ................................................. 4

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    881 F.3d 293 (4th Cir. 2018) ................................................. 16

*Brown v. Vivint Solar, Inc.*,
    No. 18-2838-T24-JSS, 2020 WL 2198184 (M.D. Fla. May 6, 2020) ................ 19

*Bury v. Marietta Dodge*,
    692 F.2d 1335 (11th Cir. 1982) ................................................. 15

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) ........................... 4

*CBS Broad., Inc. v. EchoStar Commc'ns Corp.*,
    No. 98-2651, 2003 WL 27387389 (S.D. Fla. Apr. 1, 2003)............................ 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................... 1

*Charlemagne v. Alibayof*,
    No. 20-62043, 2022 WL 1642299 (S.D. Fla. Apr. 29, 2022)...................... 16, 17

*Chocolate Indus., Inc. v. Cornerstone Promotion, Inc.*,
    No. 11-4649, 2012 WL 3598754 (N.D. Ill. Aug. 20, 2012)................................. 7

*Clark v. Coats & Clark, Inc.*,
    929 F.2d 604 (11th Cir. 1991) ....................................................... 6, 10

*Corbin v. Affiliated Computer Servs., Inc.*,
    No. 13-180-ORL-36, 2013 WL 3804862 (M.D. Fla. July 19, 2013) ............ 16, 19

*Cordoba v. Dillard's, Inc.*,
    419 F.3d 1169 (11th Cir. 2005) ................................................. 8

*Disney Enterprises, Inc. v. Hotfile Corp.*,
    No. 11-20427, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013)............................ 14

*Duncanson v. SJ Wathen Bloomington LLC*,
    No. 14-704-ORL-40KRS, 2016 WL 7228743 (M.D. Fla. June 24, 2016).......... 26

*Evanston Ins. Co. v. Via Ent., LLC*,
   No. 19-562-OC-30PRL, 2020 WL 5995665 (M.D. Fla. Oct. 6, 2020) ......... 20, 23
*Fed. Trade Comm'n v. On Point Glob. LLC*,
   No. 19-25046, 2021 WL 4891334 (S.D. Fla. Sept. 23, 2021) ............................. 21
*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ............................................................................. 13
*Giles v. Winn-Dixie Montgomery, LLC*,
   574 F. App'x 892 (11th Cir. 2014) ....................................................................... 8
*Glovaroma, Inc. v. Maljack Prods., Inc.*,
   71 F. Supp. 2d 846 (N.D. Ill. 1999) ................................................................... 13
*Grandrimo v. Parkcrest Harbour Island Condo. Ass'n, Inc.*,
   No. 10-964-T-27MAP, 2011 WL 3841592 (M.D. Fla. July 27, 2011) ................ 4
*Great Am. Ins. Co. v. Mueller*,
   No. 21-12039, 2022 WL 2377391 (11th Cir. June 30, 2022) .............................. 6
*Hatch v. GeoVera Specialty Ins. Co.*,
   No. 17-214-2ORL-41DCI, 2019 WL 2515926 (M.D. Fla. June 18, 2019).......... 6
*Hedberg v. Ind. Bell Tel. Co.*,
   47 F.3d 928 (7th Cir. 1995) ................................................................................. 8
*Holley v. Carnival Corp.*,
   No. 20-20495, 2021 WL 5299836 (S.D. Fla. Nov. 15, 2021) .............................. 3
*In re Int'l Mgmt. Assocs.*,
   *LLC*, 781 F.3d 1262 (11th Cir. 2015) ................................................................ 15
*Kipperman v. Onex Corp.*,
   260 F.R.D. 682 (N.D. Ga. 2009) ......................................................................... 9
*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ................................. 22
*La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*,
   No. 19-24016, 2022 WL 479877 (S.D. Fla. Feb. 16, 2022) .......................... 8, 22
*Leigh v. Warner Bros.*,
   212 F.3d 1210 (11th Cir. 2000) ........................................................................... 8
*Lewis v. Residential Mortg. Sols.*,
   800 F. App'x 830 (11th Cir. 2020) ..................................................................... 20
*Lujan v. Defs. of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ................................. 10
*Malibu Media, LLC v. Redacted*,
   705 F. App'x 402 (6th Cir. 2017) ....................................................................... 24
*Martinez v. Miami-Dade Cnty.*,
   No. 12-23534, 2014 WL 11878407 (S.D. Fla. Sept. 18, 2014)............................ 7
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ..................................... 5

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
  571 U.S. 191, 134 S. Ct. 843, 187 L. Ed. 2d 703 (2014) ...................................... 4

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
  684 F.2d 821 (11th Cir. 1982) ........................................................................ 11

*Palmer v. Hoffman*,
  318 U.S. 109, 63 S. Ct. 477, 87 L. Ed. 645 (1943) ........................................ 20

*PI Telecom Infrastructure, LLC v. City of Jacksonville, FL*,
  104 F. Supp. 3d 1321 (M.D. Fla. 2015) .......................................................... 5

*Righthaven LLC v. Hoehn*,
  716 F.3d 1166 (9th Cir. 2013) ........................................................................ 13

*Sandoz Inc. v. Amgen Inc.*,
  773 F.3d 1274 (Fed. Cir. 2014) ...................................................................... 5

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585 (NLH)(JS), 2020 WL 3567282 (D.N.J. June 30, 2020) .............. 14

*Strike 3 Holdings, LLC v. Doe*,
  No. 19-00145 (D. Nev. Feb. 26, 2019) ........................................................... 14

*Strike 3 Holdings, LLC v. Doe*,
  No. 22-80075-NC (N.D. Cal. Mar. 19, 2022) .................................................. 25

*Thornton v. J Jargon Co.*,
  580 F. Supp. 2d 1261 (M.D. Fla. 2008) .......................................................... 26

*Tienshan, Inc. v. C.C.A. Int'l (N.J.), Inc.*,
  895 F. Supp. 651 (S.D.N.Y. 1995) ................................................................. 10

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) .................................................... 10

*U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*,
  931 F.2d 744 (11th Cir. 1991) ........................................................................ 4

*United States v. Block*,
  148 F. App'x 904 (11th Cir. 2005) .................................................................. 18

*United States v. Bueno-Sierra*,
  99 F.3d 375 (11th Cir. 1996 ........................................................................... 17

*United States v. Clotaire*,
  963 F.3d 1288 (11th Cir. 2020) ............................................................ 3, 16, 19

*United States v. Craig*,
  573 F.2d 455 (7th Cir. 1977) .......................................................................... 18

*United States v. Glasser*,
  773 F.2d 1553 (11th Cir. 1985) ...................................................................... 17

*United States v. Hart*,
  841 F. App'x 180 (11th Cir. 2021) .................................................................. 15

*United States v. Lamons*,
  532 F.3d 1251 (11th Cir. 2008) ................................................................ 16, 21

*United States v. Langford,*
    647 F.3d 1309 (11th Cir. 2011) .......................................................................... 23

United States v. Lebowitz,
    676 F.3d 1000 (11th Cir. 2012) .......................................................................... 15

*United States v. Lizarraga-Tirado,*
    789 F.3d 1107 (9th Cir. 2015) ............................................................................. 16

United States v. Lopez,
    758 F.2d 1517 (11th Cir. 1985) .......................................................................... 18

*United States v. Mathis,*
    559 F.2d 294 (5th Cir. 1977) .............................................................................. 21

*United States v. New York Foreign Trade Zone Operators, Inc.,*
    304 F.2d 792 (2d Cir. 1962) ............................................................................... 20

*United States v. Smith,*
    918 F.2d 1501 (11th Cir. 1990) .......................................................................... 15

*United States v. Warner,*
    638 F. App'x 961 (11th Cir. 2016) ............................................................... 17, 19

*Valderrama v. Rousseau,*
    780 F.3d 1108 (11th Cir. 2015) ............................................................................ 8

*Wey v. City of St. Petersburg,*
    No. 19-1314-T-60JSS, 2020 WL 7024907 (M.D. Fla. Nov. 30, 2020) ............... 3

Wright & Miller, *30B Fed. Prac. & Proc. Evid.* § 6865 (2022 ed.) ....................... 21

*Yash Raj Films (USA) v. Kumar,*
    No. 05-3811 (FB)(KAM), 2006 WL 3257215 (E.D.N.Y. Nov. 9, 2006) ........... 11

*Zurich Am. Ins. Co. v. S.-Owners Ins. Co.,*
    248 F. Supp. 3d 1268 (M.D. Fla. 2017) .............................................................. 4

**Statutes**

17 U.S.C. § 410(c) ................................................................................................ 10

17 U.S.C. § 505 ..................................................................................................... 24

571 U.S. at 194...................................................................................................... 4

**Other Authorities**

Lawful Masses with Leonard French, *Copyright "Troll" Strike3 Holdings WINS*
    *Abuse of Process Counter-Claim,* (Jul. 31, 2019)
      https://www.youtube.com/watch?v=L8cQF4mQffk .......................................... 12

*Legal holds,* AWS https://docs.aws.amazon.com/AmazonS3/latest/userguide/..... 18

**Rules**

Fed. R. Civ. P. 26(c)(1)(G) ........................................................................ 11

Fed. R. Civ. P. 41(a)(1) ............................................................................. 26

Fed. R. Civ. P. 56(a) ................................................................................... 2

Fed. R. Civ. P. 56(c)(1)(A) .......................................................................... 6

Fed. R. Evid. 702 ...................................................................................... 22

Fed. R. Evid. 801(c)(2) ............................................................................. 17

Fed. R. Evid. 801(d)(2)(B) ........................................................................ 23

Fed. R. Evid. 803 ...................................................................................... 21

Fed. R. Evid. 807 ...................................................................................... 21

Fed. R. Evid. 901 ............................................................................ 15, 21 ,22

## MEMORANDUM OF LAW

### I.   INTRODUCTION

"[The] party seeking summary judgment *always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986) (emphasis added). "The question here is whether a jury could reasonably find . . . that [Defendant] proved his case by the quality and quantity of evidence required by the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). Yet Defendant has spoliated evidence and "not ma[de] any representations regarding the quality or quantity of the data." *See* [DE 94] at 7. Instead, he has leveraged his despoiled hard drives as "evidence" of his innocence in the underlying claim and attempted to foist the burden of proof for *his counterclaim* onto Plaintiff. This gets the procedure backwards: not only has Defendant failed to present competent evidence in support of his claim for declaratory relief, but he has failed to rebut Strike 3's evidence of infringement for the underlying claim.

Not content with shouldering his burden, Defendant goes a step further and contests every facet of the underlying case: Strike 3's ownership of the copyrights-in-suit, the admissibility of Strike 3's evidence, and Defendant's liability. This is

consonant with his approach to the litigation generally. Defendant has stonewalled discovery, withheld evidence, and spoliated evidence so that Strike 3 would be, "stuck" proving its claim without that evidence. *See* [DE 115] at 15. That plan backfires.

To prevail, Defendant must affirmatively show that there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). He has not done this. He relies on incomplete and irrelevant evidence to support his claim of innocence, then tries to cover up the gaps or unfavorable evidence with speculation. Indeed, he does not present a shred of evidence in support of the justiciability of his counterclaim.

Nor does he seriously contest any of Strike 3's evidence of infringement. His challenge to the presumptive validity of Strike 3's copyrights rests entirely on his failure to pursue assignment agreements in discovery. He also challenges, but does not deny, that he was the subscriber to IP address 47.197.99.186 during the entire period of infringement. This ignores Plaintiff's direct and circumstantial evidence connecting him to that account. And his suggestion that he had an "open" Internet connection–and that someone else may have used it to infringe Strike 3's works–is not only speculative, but the "evidence" in support of his router configuration is based entirely on assumptions.

Finally, instead of contending with Strike 3's robust evidence, Defendant largely challenges their admissibility. This is not unlike a criminal who, caught in

the act on camera, claims that it is all a case of "mistaken identity" and that the surveillance footage is inadmissible. *See*, *e.g.*, *United States v. Clotaire*, 963 F.3d 1288, 1292 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1743, 209 L. Ed. 2d 508 (2021). This ignores that much of the challenged ESI as "hearsay" does not even fall under the ambit of that Rule, and Defendant cannot avoid answering to Strike 3's compelling evidence of infringement.

Defendant's authenticity challenges are equally unavailing. Rather than raise these concerns during fact or expert discovery, Defendant has apparently held on to those concerns until this Motion to use as an emergency escape hatch. But this ignores the myriad testimony and reports by Plaintiff's experts, and nonetheless, those materials may be considered on summary judgment because materials may be authenticated "before or during trial." *See Wey v. City of St. Petersburg*, No. 19-1314-T-60JSS, 2020 WL 7024907, at *3 (M.D. Fla. Nov. 30, 2020) (citation omitted); *Holley v. Carnival Corp.*, No. 20-20495, 2021 WL 5299836, at *4 (S.D. Fla. Nov. 15, 2021) ("Plaintiff is not precluded from laying a proper foundation for the admissibility of [the materials] at trial."). Defendant has not and cannot produce any arguments or evidence warranting summary judgment in his favor.

## II.   LEGAL STANDARD

Defendant has moved for summary judgment on both the underlying copyright infringement claim as well as his counterclaim for declaratory relief,

which is nothing but a mirror-image of Strike 3's claim for copyright infringement. "Disposition of a summary judgment motion in a declaratory judgment action is governed by the same basic principles that generally rule the grant or denial of such a motion." *Grandrimo v. Parkcrest Harbour Island Condo. Ass'n, Inc.*, No. 10-964-T-27MAP, 2011 WL 3841592, at *1 (M.D. Fla. July 27, 2011), *report and recommendation adopted*, No. 10-964-T-27MAP, 2011 WL 3841635 (M.D. Fla. Aug. 30, 2011) (citing *Bingham Ltd. v. U.S.*, 724 F.2d 921, 924 (11th Cir. 1984)). "[A] threshold question in an action for declaratory relief must be whether a justiciable controversy exists." *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (quoting *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991)). "[T]he party seeking a declaratory judgment bears the burden 'of establishing the existence of an actual case or controversy.'" *Id.* (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 1974, 124 L.Ed.2d 1 (1993)).

The parties disagree, however, over the who should shoulder the burden. Defendant, citing *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 134 S. Ct. 843, 187 L. Ed. 2d 703 (2014),[1] posits that since he is moving for declaratory relief, the burden of persuasion rests with Plaintiff. [DE 115] at 13. Yet

---

[1] That opinion specifically held that "when a *licensee* seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee." 571 U.S. at 194 (emphasis added).

his "position is quite different" from that case as he has not alleged a right to exploit Strike 3's copyrights. *See Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1281 (Fed. Cir. 2014) (distinguishing *Medtronic* where the party lacked standing). Despite the different vehicles through which the issue of infringement reaches the Court, "[t]he principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." *PI Telecom Infrastructure, LLC v. City of Jacksonville, FL*, 104 F. Supp. 3d 1321, 1336 (M.D. Fla. 2015) (citation omitted). In any event, Defendant "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevail on or defeat a motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted).

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A. DEFENDANT DOES NOT CARRY HIS BURDEN

"[N]on-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1314 (11th Cir. 2010) (collecting

cases). "[I]t is *never* enough simply to state that the non-moving party cannot meet its burden at trial." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (citation omitted) (emphasis added). Yet that is precisely what Defendant's Motion has done as to both the infringement claim as well as the counterclaim. Indeed, because the claims are essentially mirrors of each other, if Defendant succeeded in showing a lack of material fact for non-infringement, then he would necessarily succeed in prevailing on the underlying claim for copyright infringement.

Despite filing over 1,000 pages of exhibits, he cannot hide the fact that he has presented *nothing* rebutting Strike 3's evidence of infringement and no competent arguments supporting his "innocence."[2] Strike 3 only brings claims where it has robust evidence of infringement and compelling evidence linking an individual to

---

[2] The Motion is difficult to follow since Defendant does not provide pincites for much of the material. *See* Fed. R. Civ. P. 56(c)(1)(A); [DE 86] at 6 ("Both the movant and the party opposing summary judgment shall provide pinpoint citations to the pages and lines of the record supporting each material fact. General references to a deposition are inadequate."). Where citations are specified, the Motion often just refers to counsel's or the witnesses' declarations summarizing (without a pincite) the material. *See*, *e.g.*, *Hatch v. GeoVera Specialty Ins. Co.*, No. 17-214-2ORL-41DCI, 2019 WL 2515926, at *5 (M.D. Fla. June 18, 2019) (holding that "Defendant has wholly failed to meet its burden for summary judgment" in which, inter alia, the defendant merely referenced a "litany of 'evidence'" that amounted to a general cite of "an 87-page document"). Indeed, the Court "is under no obligation to 'distill every potential argument that could be made based upon the materials before it on summary judgment.'" *See Great Am. Ins. Co. v. Mueller*, No. 21-12039, 2022 WL 2377391, at *4 (11th Cir. June 30, 2022) (citation omitted).

the infringement. Even within this case, Plaintiff has not included *every* infringement of its copyrights detected by VXN Scan; only those that are supported by Packet Capture files ("PCAP"). *Compare* [DE 114] at 9 *and* [DE 111-1] at 19–142 *with* [DE 17-1]. This ensures that even where, as here, the infringer "is well versed in computers and the type who would easily know how to use a VPN," [DE 115-8] at 4,[3] that Strike 3 has *direct* evidence of the infringement before the suit commences. Defendant does not genuinely dispute (or engage with) any of Strike 3's direct evidence, but instead, collaterally attacks it. This is not a path to summary judgment.

In his attempts to conflate the parties' burdens, Defendant commits several errors throughout his Motion. First, he points to the absence of evidence as evidence of absence. Fallacy aside, many of these "absences" are of Defendant's own making. For example, that there is no record evidence thus far of assignment agreements, VXN Scan's code, and various chain of custody documents, is the result of Defendant's choices to not pursue these in discovery. "[F]ailure to take adequate discovery . . . does not create a genuine issue of fact[.]" *See Martinez v. Miami-Dade Cnty.*, No. 12-23534, 2014 WL 11878407, at *1 (S.D. Fla. Sept. 18, 2014). In contrast to Strike 3's multiple motions to compel, Defendant "offers no explanation . . . for [his] nonchalance in pursuing discovery, and [he] now must bear

---

[3] Defendant's inclusion of negotiation communications in this Exhibit violates Fed. R. Evid. 408(a).

the consequences for its failure to take discovery[.]" *See Chocolate Indus., Inc. v. Cornerstone Promotion, Inc.*, No. 11-4649, 2012 WL 3598754, at *6 (N.D. Ill. Aug. 20, 2012). Strike 3 timely responded to his discovery requests. The Court extended deadlines multiple times over Defendant's objections. He cannot now leverage his lack of diligence and self-sabotaging to prevail on summary judgment.

Nor can he patch over those gaps with conjecture about what evidence may be contained in the materials he did not pursue in discovery. Unsupported speculation cannot prove a material fact and "does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)); *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015). The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citation omitted). No doubt, while Defendant's speculation is "insufficient evidence to overcome" Strike 3's evidence, *see Giles v. Winn-Dixie Montgomery, LLC*, 574 F. App'x 892, 894 (11th Cir. 2014), it is all the more insufficient to carry his burden on the present Motion.

Second, despite overwhelming evidence of spoliation, Defendant continues to pass off deceptive characterizations about the strength of his evidence. He touts that

he has uncovered no evidence of Strike 3's works on two of his hard drives, [DE 115-23] at ¶¶ 8–10, but fails to mention that he spoliated those hard drives and also ran defective searches of those devices. *See* [DE 110] at 2–4; *see also La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, No. 19-24016, 2022 WL 479877, at *8 (S.D. Fla. Feb. 16, 2022) ("Unreliable inputs yield unreliable outputs.") (collecting cases). There is also *zero* mention of the undisclosed *third* hard drive that was disposed of to another family member, or the *fourth* hard drive disclosed just days before the dispositive motion deadline. *See* [DE 103-2]. Again, Defendant cannot meet his burden on summary judgement relying on flagrantly unreliable evidence. *Cf. Kipperman v. Onex Corp.*, 260 F.R.D. 682, 692 (N.D. Ga. 2009) ("condemn[ing]" defendants "for making blatant misrepresentations about the value of [their electronic] discovery . . . in an effort to influence the court's ruling," "and for behaving as if they, and not the court, got to decide what electronic material was relevant and discoverable"). He also cannot meet his burden by providing no evidence, as is the case with his counterclaim for declaratory relief.

### B.   DEFENDANT HAS PRESENTED NO EVIDENCE IN SUPPORT OF STANDING FOR THE COUNTERCLAIM

As a threshold matter, Defendant lacks standing to support his counterclaim of declaratory non-infringement. *See* [DE 114] at 28–34. Defendant has been on notice since Strike 3's Answer that it would contest standing, [DE 24] at 3, and his alleged injury-in-fact, his attorneys' fees, have been a sticking point throughout

discovery. *See*, *e.g.*, [DE 38] at 10; [DE 53] (recounting instructions not to answer at Defendant's deposition). Yet he has not presented any arguments or evidence that so much as hint that his counterclaim for declaratory relief is justiciable.

Thus, the Motion rests on his denial of Strike 3's claim, supported solely through the alleged deficiencies in Strike 3's evidence. Again, "it is *never* enough simply to state that the non-moving party cannot meet its burden at trial." *See Clark*, 929 F.2d at 608 (citation omitted). This is particularly true where, for the purposes of the counterclaim, Defendant must prove up standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (collecting cases). Defendant has presented no authority suggesting that he has independent standing to request declaratory relief merely because he denies Strike 3's allegations. The absence of standing, alone, is grounds to deny Defendant's Motion as to the counterclaim. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214, 210 L. Ed. 2d 568 (2021).

### C.   STRIKE 3 OWNS THE COPYRIGHTS-IN-SUIT

#### 1.   DEFENDANT'S ABSENCE OF EVIDENCE CANNOT INVALIDATE STRIKE 3'S COPYRIGHTS

To the extent there is any dispute over the material facts, they do not support Defendant's claims of innocence.[4] Strike 3 has produced the certificates of

---

[4] Plaintiff maintains that there is no dispute over the material facts, which demonstrate that Defendant has infringed its copyrights. [DE 115].

registrations for its copyrights-in-suit, [DE 114-1], which constitute "prima facie evidence of the validity of the copyright *and of the facts stated in the certificate*." 17 U.S.C. § 410(c) (emphasis added). "[W]here a putative copyright holder obtained an assignment of rights before registration, the registration certificate also provides prima facie evidence that the chain of title is intact." *Tienshan, Inc. v. C.C.A. Int'l (N.J.), Inc.*, 895 F. Supp. 651, 655–56 (S.D.N.Y. 1995) (citation omitted). "Plaintiff, as assignee of the rights to the copyrighted works, is entitled to the presumption of validity[.]" *Yash Raj Films (USA) v. Kumar*, No. 05-3811 (FB)(KAM), 2006 WL 3257215, at *1 (E.D.N.Y. Nov. 9, 2006). Thus, "the burden of production shifts to the defendant to introduce evidence of invalidity." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 826 (11th Cir. 1982) (citations omitted). Defendant has not done this.

Defendant attempts to meet this burden by claiming that because Plaintiff did not produce assignment agreements during discovery, that the certificate may not be accurate. *See* [DE 115] at 13–14. This is pure speculation, however, and Defendant has no evidence of any deficiencies. *See* 3 Patry on Copyright § 9:11("If no evidence is presented, the validity of the certificate stands."). Strike 3 did not produce the assignment agreements because Defendant originally requested "[a]ll

[c]ommunications" between Strike 3 and its assignors. [5] *See* [DE 115-3], at p.34 (RFP No. 32). Strike 3 objected, *inter alia*, that the Request sought "highly confidential and/or trade secret information," *id.* at 35, which is commonly the subject of protective orders.[6] *See* Fed. R. Civ. P. 26(c)(1)(G). Rather than confer with Strike 3 on the documents and a protective order, Defendant did not raise the issue with this response until the last day of fact discovery, only to file a late motion to compel that was later withdrawn. *See* [DE 59] (lacking Rule 3.01(g) certification). Defendant's lack of diligence cannot, and does not, create a genuine issue of material fact. Addressing this issue, a Southern District of Florida judge held that the rightsholder's "failure to produce documents related to copyright ownership and works for hire is insufficient to rebut the presumption of ownership" *CBS Broad.,*

---

[5] Strike 3 and its assignors have overlapping ownership and all communications would encompass high level, private, company business information.

[6] Plaintiff is wary of producing sensitive information without protections in place since opposing counsels openly advertise theories on how to circumvent Strike 3's litigation. *See*, *e.g.*, Lawful Masses with Leonard French, *Copyright "Troll" Strike3 Holdings WINS Abuse of Process Counter-Claim*, (Jul. 31, 2019) https://www.youtube.com/watch?v=L8cQF4mQffk (stating "don't download adult entertainment without paying for it; at least don't do it via BitTorrent without a VPN going"); Steve C. Vondran, *The SINGLE MOST IMPORTANT THING TO DO if you received a Strike 3 torrent subpoena*, (Sep. 4, 2020) https://www.avvo.com/legal-guides/ugc/the-single-most-important-thing-to-do-if-you-received-a-strike-3-torrent-subpoena ("[T]he MOST IMPORTANT THING YOU NEED TO KNOW to prevent your case from moving to the next step of litigation (where you will have to respond to the complaint, and possibly wind up defending yourself in a federal court) . . . is to set your social media accounts to PRIVATE!").

*Inc. v. EchoStar Commc'ns Corp.*, No. 98-2651, 2003 WL 27387389, at *5 (S.D. Fla. Apr. 1, 2003). "[I]f [Defendant] believed Plaintiff[] [was] wrongly objecting to [Defendant's] requests to produce such documents, the proper procedure would have been to file a timely motion to compel the documents." *Id.*

Defendant makes three additional points to try to overcome the presumption. First, he contends that different entities assign the copyrights to Strike 3, which diminishes its interest. But assignments are not uncommon, and fully consonant with copyright. "The reality is that contracts . . . govern much of the . . . production world," so that the law does not "make[] Swiss cheese of copyrights." *See Garcia v. Google, Inc.*, 786 F.3d 733, 743–44 (9th Cir. 2015) (citing 1 Nimmer on Copyright § 6.07[B][2]). Motion pictures are often the product of multiple creative endeavors: pre-production and post-production to name a few. Indeed, those entities are Strike 3's sister companies (VXN Group, LLC; Kode Shop, LLC; and formerly GL Web Media, Inc.) with overlapping ownership. *See* <u>Exhibit 1</u> at 150:1–150:8.

Second, Defendant notes that GL Web Media, Inc. is no longer active. That much is true, but it is a red herring. Strike 3 used to work with that entity, but now its production company is VXN Group, LLC. Importantly, none of the certificates list GL Web Media, Inc. as an assignee after it became inactive. *See* [DE 114-1].

Finally, Defendant completely fabricates the idea that Strike 3 has merely been assigned a "bare right to sue." There is no evidence to support this proposition,

and Defendant cannot manufacture evidence of it by questioning the existence of the assignments. *See Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 854 (N.D. Ill. 1999).  Defendant's resort to *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) is inflammatory and knowingly false.[7] This is not a case in which the claimant has merely been assigned "the bare right to sue for infringement, without the transfer of an associated exclusive right[.]" *See id.* at 1169; *see also Strike 3 Holdings, LLC v. Doe*, No. 19-00145, ECF No. 8 (D. Nev. Feb. 26, 2019) (discharging order to show cause inquiring about Strike 3's assignments and *Righthaven*). "Plaintiff is an intellectual property holding company that owns the right" to the copyrights-in-suit, *see Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2020 WL 3567282, at *1 (D.N.J. June 30, 2020), a standard practice in the entertainment field. *E.g.*, *Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-20427, 2013 WL 6336286, at *1 (S.D. Fla. Sept. 20, 2013) (listing major studios' holding companies). Strike 3, and no one else, is listed as the owner on the certificates and its corporate representative submitted evidence via testimony that it owns "every right under the sun that you could have to a movie," in other words, "it's a total assignment[.]" Exhibit 1 at 34:13–34:20.

---

[7] Defendant's counsel knows GL Web Media Inc.'s assignment agreements exist because Plaintiff has produced them to him in past cases. *See* Exhibit 4 at ¶6.  And, Strike 3's corporate representative testified that she did not know where the assignments were located during the deposition, not that they did not exist.  *See* Exhibit 1 at 196:3-196:9.

### 2.    PLAINTIFF'S EVIDENCE OF COPYING IS AUTHENTIC AND ADMISSABLE

Before turning to the substance of the copying prong for infringement, it is incumbent to first put to rest Defendant's collateral attacks on the admissibility of Plaintiff's evidence. The scattered objections challenge Plaintiff's data as well as witness reports, testimony, and declarations on hearsay and authentication grounds. These criticisms not only misapprehend the posture of the case, they misconstrue the doctrines themselves.

The rules on hearsay and authentication are designed to aid the Court in "ascertaining the truth and securing a just determination." *See* Fed. R. Evid. 102. "[H]earsay is an out-of-court statement offered into evidence 'to prove the truth of the matter asserted in the statement.'" *United States v. Hart*, 841 F. App'x 180, 182 (11th Cir. 2021) (quoting Fed. R. Evid. 801(c)). "The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." *Anderson v. United States*, 417 U.S. 211, 220, 94 S. Ct. 2253, 2260, 41 L. Ed. 2d 20 (1974) (collecting cases). "[W]hen deciding whether an exception to the rule against hearsay applies, the court may consider any unprivileged evidence— even hearsay." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1268 (11th Cir. 2015) (citation omitted).

Authentication also ensures that there is "evidence sufficient to support a finding that the item is what the proponent claims it is." *See* Fed. R. Evid. 901(a). "Federal Rule of Evidence 901 does not specify how a piece of evidence may be authenticated." *Bury v. Marietta Dodge*, 692 F.2d 1335, 1338 (11th Cir. 1982). It may be done many ways, including "solely through the use of circumstantial evidence," *see United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990), and the burden "is a light one." *In re Int'l Mgmt. Assocs.*, 781 F.3d at 1267 (citing *United States v. Lebowitz,* 676 F.3d 1000, 1009 (11th Cir. 2012)).

### a.     VXN Scan's Data is Not Hearsay

Defendant's hearsay challenges fail on several grounds. First, VXN Scan's "data"–presumptively, the PCAPs and Additional Evidence–are not hearsay because the rule against hearsay does not apply to computer data. *See* [DE 115] at 15–18. VXN Scan is not a "declarant" nor a "person" stating an "assertion." *See United States v. Lamons*, 532 F.3d 1251, 1263 (11th Cir. 2008) (finding "no difficulty concluding that the statements in question are the statements of machines, not statements of persons"); *Corbin v. Affiliated Computer Servs., Inc.*, No. 13-180-ORL-36, 2013 WL 3804862, at *8 (M.D. Fla. July 19, 2013); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 313 (4th Cir. 2018) (citation omitted). Its data is akin to surveillance footage which falls outside the scope of hearsay's purview. *See*, *e.g.*, *Clotaire*, 963 F.3d at 1295 ("Surveillance cameras are not

16

witnesses, and surveillance photos are not statements."); *Charlemagne v. Alibayof*, No. 20-62043, 2022 WL 1642299, at *2 (S.D. Fla. Apr. 29, 2022) (holding that "a soundless video does not qualify as hearsay" and that "the Court may consider the surveillance video at summary judgment"); *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (collecting appellant decisions holding that "machine statements" are not hearsay).

Additionally, to the extent the PCAPs are proffered to demonstrate the reliability of VXN Scan, they are not offered "to prove the truth of the matter asserted in the statement." *See* Fed. R. Evid. 801(c)(2). Mr. Williamson testified that VXN Scan's proper working order and accuracy is evidenced by error-free captured PCAPs. Exhibit 2 at 59:2–61:6. Similarly, "[i]f there [were] any errors with [the] PCAPs, they would immediately be observed[.]" *Id.* at 53:4–53:8. They are thus admissible as evidence that VXN Scan functioned properly.

Second, the data "can either be qualified as business records or Plaintiff can call [its experts] as witnesses." *See Alibayof*, 2022 WL 1642299 at *2. "The touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence." *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996) (citation omitted). "Computer generated business records are admissible under the following circumstances: '(1) [t]he records must be kept pursuant to some routine

17

procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) they must not themselves be mere accumulations of hearsay or uninformed opinion.'"[8] *United States v. Warner*, 638 F. App'x 961, 963–64 (11th Cir. 2016) (quoting *United States v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985)).

VXN Scan records the PCAPs "in real-time," [DE 127-2] at ¶63, and they were recorded and stored in a regularly conducted business activity, namely, under Amazon's "legal hold" feature.[9] *See id.* at ¶66. Both the functionality,

---

[8] Rule 803(6) was amended in 2014, but the Eleventh Circuit appears to still rely on the factors originally announced in its 1985 *Glasser* decision. That Rule currently excepts "record[s] of an act [or] event if (A) they were "made at or near the time by . . . someone with knowledge;" (B) they were "kept in the course of a regularly conducted activity of a business;" (C) such that "making the record[s] w[ere] a regular practice of that activity;" (D) the above "conditions are shown by the testimony of [a] qualified witness;" and (E) Defendant "does not show that the . . . method or circumstances of preparation indicate a lack of trustworthiness."

[9] *See Legal holds*, AWS https://docs.aws.amazon.com/AmazonS3/latest/userguide/object-lock-overview.html#object-lock-legal-holds (last accessed Aug. 26, 2022). Defendant's note that "Strike 3 did not provide . . . any documents from records custodians at Amazon showing that the data produce were true and accurate copies from the 'VXN' system," [DE 115] at 16, is a distraction. Not only did Defendant not request any such documents during discovery, *see* [DE 115-3], but a "challenge to the chain of custody goes to the weight rather than the admissibility of the evidence." *United States v. Block*, 148 F. App'x 904, 910 (11th Cir. 2005) (quoting *United States v. Lopez,* 758 F.2d 1517, 1521 (11th Cir. 1985)). Nor does Defendant suggests that any of the materials or data were altered. *See id.* at 910–11. Mr. Williamson's report expressly notes that the materials were "housed at Equinix servers in Miami, FL or in corresponding Reflected Networks Inc.'s servers." *Williamson Rebut. Report* [DE 114-2] at ¶35; *see United States v. Craig*, 573 F.2d

implementation, and reliability of VXN Scan are attested also to by Mr. Williamson, *see* Exhibit 2 at 58:10–64:2, its designer, and Mr. Paige, an independent digital forensic expert.[10] Exhibit 3 at 8:20–9:14, 37:24–39:17, 123:14–123:21; *see Brown v. Vivint Solar, Inc.*, No. 18-2838-T24-JSS, 2020 WL 2198184, at *2 (M.D. Fla. May 6, 2020) (holding similar evidence sufficient to meet the requirements of Rule 803(6)). Indeed, Mr. Paige tested VXN Scan and reported that it accurately recorded BitTorrent activity. *See* [114-9] at ¶¶32–60. Defendant has not rebutted Strike 3's PCAPs or its experts' findings.

Plaintiff's Additional Evidence, a chart summarizing all BitTorrent downloads from Defendant's IP address, also makes the grade. "When an electronically generated record is entirely the product of the functioning of a computerized system or process, such as the 'report' generated when a fax is sent showing the number to which the fax was sent and the time it was received, there is no 'person' involved in the creation of the record, and no 'assertion' being made."

---

455, 478 (7th Cir. 1977) (holding chain of custody was unnecessary since "a proper foundation demonstrating the accuracy and trustworthiness of the evidence is laid")**.**

[10] While Defendant casts aspersions on Mr. Paige's and Mr. Williamson's alleged financial interests, *see* [DE 115] at 20, conjectures about the "financial stake [they] may have . . . goes to [their] credibility rather than the admissibility of [their] opinion." *See Am. Pegasus SPC v. Clear Skies Holding Co., LLC*, No. 13-03035 (ELR), 2015 WL 10891937, at *13 (N.D. Ga. Sept. 22, 2015).

*Corbin*, 2013 WL 3804862 at *8 (citation omitted). Such records are "not a statement and cannot be hearsay."[11] *Id.* (citations omitted).

Lastly, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial." *Evanston Ins. Co. v. Via Ent., LLC*, No. 19-562-OC-30PRL, 2020 WL 5995665, at *4 (M.D. Fla. Oct. 6, 2020) (quoting *Lewis v. Residential Mortg. Sols.*, 800 F. App'x 830, 834 (11th Cir. 2020)). "The most obvious way to reduce hearsay to admissible form is to call the declarant to testify at trial." *Id.* (citations omitted). Thus, the data is admissible on multiple grounds.

Defendant overreliance on *Palmer v. Hoffman*, 318 U.S. 109, 63 S. Ct. 477, 87 L. Ed. 645 (1943) for the sweeping proposition that evidence is inadmissible because it is "used solely for the purposes of litigation," does not alter the results. *See* [DE 115] at 18–19. *Palmer*, which antedates the controlling Federal Rules of Evidence, did not rule on data generally; it simply held that an accident report

---

[11] The Additional Evidence also qualifies as a business record. *See* [DE 111-1] at ¶¶82–87 (describing the "Cross Reference Tool" that Strike 3 uses to collect data for its Additional Evidence). "Although the spreadsheets were formatted to be easier to understand and printed for litigation, the underlying records were kept in the ordinary course of business and the data was not modified or combined when entered into the spreadsheet." *See United States v. Warner*, 638 F. App'x 961, 964 (11th Cir. 2016) (citations omitted). Reformatting the evidence to make it easier to comprehend does not transform the underlying material into hearsay. "[W]hile the format of the records was changed, their communicative content was not. And . . . little human discretion or judgment was involved; only a technical format change was needed." *See. Clotaire*, 963 F.3d 1294.

prepared by a later-deceased engineer was "not a record made for the systematic conduct of the business as a business" and thus could not avail to a hearsay exception. *See id.* at 113–14.

That holding does not "require the exclusion . . . of all records which were made with some contemplation that they might be valuable in the event of litigation." *See United States v. New York Foreign Trade Zone Operators, Inc.*, 304 F.2d 792, 797 (2d Cir. 1962). Such an expansive reading would transform even the most banal evidence into hearsay. This is not a situation where an individual's subjective impressions about an event have been recorded; the PCAPs and Additional Evidence contain raw data. Indeed, in light of the amendment of the Federal Rules of Evidence, the leading treatise suggests that courts should "steer the 'anticipation of litigation' concern to Rule 803(6)(E)," Wright & Miller, *30B Fed. Prac. & Proc. Evid.* § 6865 (2022 ed.), i.e., whether the "method or circumstances of preparation indicate a lack of trustworthiness." *See* Fed. R. Evid. 803, Advisory Committee Notes (criticizing *Palmer* and explaining that it should be viewed as a "factor[]" in evaluating admissibly). VXN Scan's data is, therefore, not inadmissible hearsay.[12]

---

[12] The Court may also admit VXN Scan's data under the residual exception to hearsay, Fed. R. Evid. 807, which "is intended to 'encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere.' *Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-25046, 2021 WL 4891334, at *2 (S.D. Fla. Sept. 23, 2021) (quoting *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977)). As discussed above, "is supported by sufficient guarantees of

**b.      There is Sufficient Foundation to Authenticate VXN Scan's Data**

"To say that a wholly machine-generated statement is unreliable is to speak of mechanical error, not mendacity. The best way to advance the truth-seeking process with respect to such statements is . . . through the process of authentication as provided for in Federal Rule of Evidence 901(b)(9)[.]" *Lamons*, 532 F.3d at 1265 (collecting cases). There is no genuine dispute that Strike 3 has laid an adequate foundation for its evidence. Its experts have not only testified to about the data itself, Fed. R. Evid. 901(b)(1), but have laid out, in step-by-step detail, the "process[es]" of how the data is collected, recorded, and preserved "showing that it produces an accurate result."[13] *See id.* 901(b)(9); Exhibit 2 at 58:10–64:2; Exhibit 3 at 8:20–9:14, 37:24–39:17, 123:14–123:21.

It is telling that Defendant does not contest the merits of *any* of Strike 3's expert reports or findings, but instead, collaterally attacks their admissibility. While Plaintiff's expert witnesses clear *Daubert*'s hurdle, *see* [DE 127], Defendant's

---

trustworthiness" by Strike 3's experts, and "more probative . . . than any other evidence that the proponent can obtain" particularly where Defendant has spoliated other data. *See* Fed. R. Evid. 807(1)–(2).

[13] Plaintiff's response to Defendant's request for production of VXN Scan's code was clear: the code is a trade secret. *See* [DE 115] at 3–7. Plaintiff tried to propose an ESI protocol with Defendant early on, but Defendant never agreed to one. *See* [DE 52] at 9–10 (recounting efforts to negotiate an ESI protocol).

attempt to shoehorn the *Daubert* factors into the analysis of VXN Scan's admissibility is senseless since VXN Scan is not an expert witness; it is a software. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999) (holding *Daubert* applies to "expert testimony") (discussing Fed. R. Evid. 702); *see also La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, No. 19-24016, 2022 WL 479877, at *9 (S.D. Fla. Feb. 16, 2022) (distinguishing the reliability of the software used by the expert and the reliability of the expert's methods utilizing the software).

As described above, Strike 3's experts have repeatedly declared, testified, and submitted expert reports describing VXN Scan's processes and methods, including how the data is generated and stored. That Defendant did not review the actual code does not entail that VXN Scan is unreliable. Strike 3, through its experts, has laid sufficient foundation regarding VXN Scan and its attendant data. To remove any doubt, Strike 3 has appended certifications from both its corporate representative and Mr. Williamson authenticating those materials. *See* Exhibit 4; Exhibit 5.

### c. Frontier's Response to Strike 3's Subpoena is Admissible

Defendant also argues that Frontier's response to Strike 3's subpoena is hearsay. *See* [DE 115] at 20–21. He does not deny the accuracy of the response and has tacitly conceded that he was the subscriber of that address for at least portions of the infringement by responding to the subpoena. *Cf.* Fed. R. Evid. 801(d)(2)(B).

Again, Defendant overlooks that Strike 3 may (and will) call a representative from Frontier to testify at trial to authenticate the results. *See Evanston Ins. Co. v. Via Ent., LLC*, No. 19-562-OC-30PRL, 2020 WL 5995665, at *4 (M.D. Fla. Oct. 6, 2020); *United States v. Langford*, 647 F.3d 1309, 1326–27 (11th Cir. 2011). And again, Strike 3 has appended a certification from a Frontier representative authenticating those materials. Exhibit 6. Accordingly, Defendant's digressions about admissibility do not excuse him from arguing the merits of the copying prong.

### 3. DEFENDANT COPIED THE WORKS-IN-SUIT

#### a. Plaintiff has Shown by a Preponderance of the Evidence that Defendant, Not Someone Else, Is the Infringer

Returning to the substantive allegations, Defendant denies all copying and denies that Plaintiff's evidence can show that Defendant was in possession of the IP address during the full period of infringement. He *does not* deny that he was the subscriber to IP address 47.197.99.186 during the relevant period; he only questions the sufficiency of that evidence. *See* [DE 115] at 9, 20–21.

This overlooks the obvious: Frontier's response provides direct evidence that Defendant *was* the subscriber to IP address 47.197.99.186 from August 23, 2019 to December 16, 2019, [DE 115-6] at 2, which accounts for twenty-six of the thirty-six

works.[14] *See* [DE 17-2].  But it does not follow that just because Frontier does not have records of earlier times that Defendant was not assigned that IP address before August 23. "ISP logs are temporary, not permanent," *Malibu Media, LLC v. Does 1-22*, No. 12-575-J-34TEM, 2012 WL 13098529, at *2 (M.D. Fla. June 8, 2012), and they are often purged to protect customer's information. *See Frontier Communications Privacy Policy*, Frontier https://frontier.com/corporate/privacy-policy (last accessed Aug. 26, 2022) ("Personally identifiable and other sensitive records are retained only as long as reasonably necessary for business, accounting, tax, or legal purposes.").

At most, Strike 3 does not have *direct* evidence connecting Defendant to the IP address during the earlier infringements. That does not rule out circumstantial evidence. Frontier was Defendant's ISP for "the entire period." *See* [DE 110-1] at 61:24–62:7. It is the only party with direct evidence of who it assigned the IP address to and when. *Cf. BMG Rts. Mgmt.*, 881 F.3d at 299. Further evidence of what IP address Defendant used during the period may have been contained on system log files, but those were not preserved. *See* [DE 110]; *see also* Exhibit 7 at ¶8. But the same BitTorrent client, and *same software version*, was used throughout the entire period. Exhibit 7 at ¶10.

---

[14] Other infringements took place that day, but before the records maintained by Fronter were preserved.

Attempting to further deflect blame, Defendant continues to speculate that someone else may have used his IP address. Yet he has admitted there is no evidence to support this theory, *see* [DE 114-6] at119:3–119:22, and not even his neighbor could remember seeing an unsecured Internet connection.[15] *See* [DE 114-8] at 21:21–24:2. The only evidence proffered is an expert report by Juan Martinez, which, rather than show that someone else *actually* accessed Defendant's IP address, is a collection of unempirical assumptions. *See* [DE 115] at 10; *see also Martinez Report*, [DE 115-21], at 6.

First, Mr. Martinez's report did not examine Defendant's router; he merely "*assume[d]* that the WiFi router operated per the manufacturer's specifications," and "*assume[d]* it was configured in manner as stated by John Doe during the period" of infringement. [DE 115-21] at 7 (emphasis added). Those two assumptions inform the bulk of the analysis. *See id.* at 9 (superimposing the data provided in the

---

[15] Although Defendant originally responded to Strike 3's interrogatory that he "assume[d] my neighbors gave out the password to their friends and family," Exhibit 8, he later testified that he "never said that." Exhibit 9 at 190:19–190:22. When shown his response, Defendant explained:

> I must have been misquoted because I – there was no need to give out a password to anybody since I don't have an internet. So, I'm not sure how that got transcribed. That must have been the person typing that was misrepresenting what I – not misrepresented, but misheard what I stated.

*Id.* at 192:4–192:9.

"manufacturer's specifications" to generate the "heatmap" of WiFi coverage in the neighborhood). The methodology is particularly unreliable where, as Mr. Martinez points out, a router's range is significantly affected by its psychical environment. *See* [DE 115-21] at 7; *see also* [DE 115-23] at ¶4 (noting that he disabled his alleged open Internet connection once he received "notice" about "the Florida lawsuit").

Second, despite Mr. Martinez's assurance that he "inspected the router used at the time of alleged infringement," this is impossible as Defendant admitted that he no longer possessed that device. During the relevant period, Defendant had a router supplied by Verizon that was "swapped out" towards the "end of 2020," Exhibit 9 at 76:11–77:15, long after the duty to preserve attached. Mr. Martinez's report and Defendant's testimony cannot be reconciled. Had Defendant properly preserved the relevant router, the parties may have been able to verify its configuration. *See* Exhibit 7 at ¶9. There is thus no evidence to support a reasonable inference that Defendant even had an unsecured Internet connection. *Cf. Primesite Consulting Grp., Inc. v. City of Tampa, FL*, No. 98-2085-T-24(B), 1999 WL 33743963, at *4–5 (M.D. Fla. Sept. 30, 1999).

### b. The PCAPs Prove Defendant Factually Copied the Works

The 137 PCAPs establish that Defendant had access to the works. Although Defendant challenges that the PCAPs cannot "be traced . . . to John Doe's computer," *see* [DE 115] at 16, this misstates the evidence. "VXN Scan operates at

the IP address level." [DE 114-2] at ¶21. VXN Scan, and the PCAPs it records, tracks and logs *network* activity–that is, data transferred from one network to another–and not information about a user's computer device. *See id.* at ¶22. "[E]ach of the PCAPs provided show portions of [Strike 3's] copyrighted works being transmitted from the infringer's IP address." *Id.* at ¶39.

What the PCAPs do show, and what Defendant does not contest,[16] is that IP address 47.197.99.186 uploaded pieces of Strike 3's works (along with additional data like the BitField values) to VXN Scan. Defendant was the subscriber to IP address 47.197.99.186. *Supra.* III.B.2.a. This is sufficient to show "access" which only "requires proof of 'a reasonable opportunity to view' the work[a] in question." *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007); *Malibu Media, LLC v. Weaver*, No. 14- 1580-T-33TBM, 2016 WL 1394331, at *4 (M.D. Fla. Apr. 8, 2016). Indeed, Defendant does not claim that the pieces uploaded to VXN Scan were "independent creation[s.]" *Cf. Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002) (citation omitted). The only place the pieces could have come from is from Strike 3's works.

---

[16] While Defendant has submitted a declaration stating that he "did not download Strike 3's works," [DE 115-23], at ¶¶2, 7, such conclusory statements "do[] not defeat an otherwise well-supported motion for summary judgment." *See Shelton v. Price Waterhouse Coopers, LLP*, No. 12- 02757-T-27, 2014 WL 2581350, at *2 (M.D. Fla. May 23, 2014) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)). Curiously, that declaration omits discussion of the recently disclosed hard drive. *See* [DE 115-23] at ¶3.

### c.     The Downloaded Works Are Substantially Similar to Strike 3's Copyrighted Works

Finally, Defendant's challenge to the similarity of the works is frivolous. Strike 3 produced to Defendant both the copies of its works (control copies) and copies of the works from the infohash Defendant downloaded (infringing copies). *See* [DE 114-2] at ¶7. Defendant and his experts have had ample opportunity to review them.  *Id.* at ¶6. Instead of contesting the similarity of the files–or simply stipulating to that fact–Defendant refuses to concede an inch. *Contra.* Fed. R. Civ. P. 1 (admonishing "parties" to litigate in a manner that "secure[s] the just, speedy, and inexpensive" resolution of issues). While it is wasteful for the Court to review tens of hours of the works-in-suit and their attendant PCAPs to compare the files, it may take notice of those materials. *See Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063 (C.D. Cal. 2017) (taking notice of pilot episode and script under Fed. R. Evid. 201(b)(2)). Strike 3 has produced both the control copies, copies of the works registered with the Copyright Office, and infringing copies of the works, copies of the works as they appear when downloaded from the BitTorrent network, for its review. *See* Exhibit 10.

Although he does not rebut Ms. Stalzer's findings that the works are substantially similar, Defendant does challenge the validity of her testimony. It is of no consequence that Ms. Stalzer does not offer expert opinion on the works: "substantial similarity exists 'where *an average lay observer* would recognize the

29

alleged copy as having been appropriated from the copyrighted work.'" *DuBay v. King*, 366 F. Supp. 3d 1330, 1336 (M.D. Fla. 2019), *aff'd*, 844 F. App'x 257 (11th Cir. 2021) (citation omitted) (emphasis added). "Ms. Stalzer's declaration does not call for a nuanced parsing of minute audio and visual elements; she is simply comparing whether the file downloaded from the BitTorrent network is essentially the same (or substantially similar) to Strike 3's movie." [DE 114-2] at ¶5.

The PCAPs also provide more than a "snapshot" of the infringement. *See* [DE 115] at 22. Again, Defendant does not contest any of the information contained in the PCAPs–including the BitField values. But his argument that they merely prove *de minimis* copying misapprehends the evidence. Returning to the surveillance camera analogy, the PCAP is like footage shot with a low frame rate. A single frame of a crime in progress is evidence of the crime; one does not need to record every second of the event to convict.[17] *Cf. Pabon Gonzalez v. Allen*, No. 17-850 (JDP), 2019 WL 5802528, at *2 (W.D. Wis. Nov. 7, 2019) (noting "even with the choppiness that results from the low frame rate" that "the video clearly shows what happened").

---

[17] Defendant cites to *Ingenuity 13 LLC v. Doe* for the opposite proposition, [DE 115] at 22, but he omits that court's caveat: "A reasonable investigation should include evidence showing that Defendants downloaded the entire copyrighted work—or at least a usable portion of a copyrighted work." No. 12-08333-ODW-JC, 2013 WL 765102, at *3 (C.D. Cal. Feb. 7, 2013). That is what the BitField does.

Collectively, the 137 PCAPs show transactions of Defendant's IP address uploading a piece or pieces of Strike 3's works to the BitTorrent network. That is, there are at least 137 instances of Defendant's infringement. Thirty-three of the thirty-six works had BitField values of 100%, indicating that the uploader–Defendant–was in possession of 100% of the infringing work. *See* [114-2], at ¶31. The remaining three works had BitField values of 39%, 77%, and 86%. *Id.* This is certainly enough to show substantial similarity, which Defendant does not contest. "It makes no difference from a copyright perspective whether the infringing copy is created in a single wholesale file transfer using a peer-to-peer protocol; or in a swarm of fragmented transfers [using BitTorrent] that are eventually reassembled into the new infringing copy." *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 763 (W.D. Tex. 2019) (collecting cases). "[I]t is enough if constituent parts of each work are similar; the plaintiff is not required to show the whole of the infringing work is similar to the whole of the copyrighted work." *Id.* (collecting cases). Accordingly, the evidence not only counsels against summary judgment in favor of Defendant's counterclaim, but shows that there is no genuine dispute over the material facts supporting Strike 3's claim for infringement.

## D.    DEFENDANT IS BARRED IN EQUITY FROM RECOVERY

Defendant's counterclaim for declaratory relief was suspicious from the start. It is at best, redundant, *Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 406–07

(6th Cir. 2017), and at worst, an abusive use of the pleadings to gain a tactical advantage in the litigation. Discovery proves the latter.

Defendant and his attorneys entered into unethical fee-sharing agreements that would have allowed him to profit from the litigation rather than vindicate his rights. *See* [DE 53-1]; [DE 53-2].  As Defendant's counsel originally admitted, Mr. French and Mr. Edmondson would bill their services at an elevated rate and remit to Defendant the difference. Exhibit 11 at 42:12–45:19. This created a perverse incentive to stonewall discovery, frustrating Strike 3's ability to uncover evidence related to its claim, all so that Defendant could extort a nuisance settlement or disrupt Strike 3's discovery into the infringement.

Defendant has insisted throughout this litigation that he is entitled to attorneys' fees under 17 U.S.C. § 505. While it is still unclear to this day what fees he has incurred, what is clear is that the original fee agreements would have allowed Defendant to profit from the litigation along with his counsel. Although that has so far been unsuccessful in this Court, that did not stop Mr. Edmondson from seeking (without disclosing his fee-shifting agreement or correct rate) the elevated fee in a related subpoena dispute in the Northern District of California. *Compare Strike 3 Holdings, LLC v. Doe*, No. 22-80075-NC, ECF No. 1-1, at 2, ¶6 (N.D. Cal. Mar. 19, 2022) (declaring "John Doe's counsel has a []billing rate for Strike 3 copyright cases

of $ 350.00 per hour" and using that as a basis to his fee request) *with* [DE 53-2] (incurring a "reduced rate of $100.00 per hour").

Although Defendant "amended" these agreements after the close of fact discovery, and after the Court was informed of the arrangement, *see* [DE 89-7]; [DE 89-8], the damage to the discovery process was done. Underscoring this, Defendant brough his counterclaim *knowing* that he reinstalled the operating system on his laptop and failed to preserve his desktop computer, depriving Plaintiff of that ESI. *See* [DE 110]. He also failed to disclose at least two other devices and has since only supplemented in incomprehensible documents on one of those devices. *See* Exhibit 7 at ¶¶ 1–7. Defendant's attempts to conceal these facts during discovery forced Plaintiff to file multiple motions to compel, wasting countless hours. Equity demands that Defendant recover nothing.

An abuse of process occurs when there has been "a use of the process for an immediate purpose other than that for which it was designed." *Duncanson v. SJ Wathen Bloomington LLC*, No. 14-704-ORL-40KRS, 2016 WL 7228743, at *2 (M.D. Fla. June 24, 2016) (citation omitted). That is, "(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *See id.* (citation omitted).

The Declaratory Judgment Act was enacted to adjudicate rights; Defendant has alleged none. *See* [DE 114] at n.5. Rather the purpose of the counterclaim was to lock Strike 3 into litigation where Defendant *knew* he had destroyed ESI, *cf.* Fed. R. Civ. P. 41(a)(1), robbing Plaintiff of that direct evidence while maintaining that Plaintiff cannot show infringement because no evidence was found on the hard drives. *See* [DE 115] at 10.. This was all done with the aim of having Defendant be declared the prevailing party so that he could recover fees. In counsel's words: "If [Defendant] were to prevail, then that would necessarily mean that Strike 3 had not prevailed." Exhibit 12 at 90:6–90:7.

Similarly, the unclean hands doctrine bars recovery because "(1) [Defendant]'s alleged wrongdoing is directly related to the claim against which it is asserted; and (2) [Plaintiff was] personally injured by [Defendant]'s conduct." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1283 (M.D. Fla. 2008) (citations omitted). Again, as Strike 3's evidence shows, Defendant "did infringe Strike 3's copyrights," [DE 24] at 3, and that he destroyed, obstructed, and withheld evidence, wasting both Plaintiff's and the Court's time and resources. Defendant's bad faith approach to discovery has marred the litigation. Should the Court find that Plaintiff cannot meet its burden, it should nonetheless bar Defendant from any recovery.

## IV.   CONCLUSION

In his Motion, Defendant moves for summary judgment as to both the copyright infringement claim brought by Plaintiff in the Amended Complaint [DE 17] as well as Defendant's own counterclaim for a declaratory judgment of non-infringement. The burden of proof on Defendant is the same: to show that there is no dispute of material fact that he did not infringe. But in this Response, Plaintiff produces and highlights overwhelming evidence that Defendant did infringe.

**WHEREFORE**, Plaintiff respectfully requests the Court deny Defendant's Motion for Summary Judgment.

DATED: August 26, 2022

Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh [FBN 71093]
WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone:  321-800-6008
Fax:   844-206-0245

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2022, a true and correct copy of the following documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh
