UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STRIKE 3 HOLDINGS, LLC,

      Plaintiff,

v.                                                               Case No. 8:20-cv-676-T-35CPT

JOHN DOE subscriber assigned IP
address 47.197.99.186,

      Defendant.
_____/

# **O R D E R**

Plaintiff Strike 3 Holdings, LLC (Strike 3) has filed motions (1) to reopen fact discovery, to compel Defendant John Doe to produce images of his hard drives, and to impose sanctions on Doe (Motion to Reopen/Compel) (Doc. 89); and (2) to amend the Court's most recent Case Management and Scheduling Order (CMSO) (Motion to Amend) (Doc. 90).  After hearing oral argument on these motions, the Court entered a summary Order denying them.  (Doc. 105).  This Order sets forth the reasons behind the Court's ruling.

## I.

This case stems from Doe's allegedly unlawful distribution and reproduction of Strike 3's copyrighted works anonymously through the use of the internet and a peer-

to-peer file sharing protocol known as BitTorrent.  (Doc. 1).  Strike 3 originally raised the matter with Doe by serving his internet service provider (ISP) with a bill of discovery in state court in January 2020.  (Doc. 89-11 at 3).  To the uninitiated, a bill of discovery is an equitable remedy under state law, which serves as a mechanism to obtain the disclosure of facts within a defendant's knowledge or items within his custody in aid of the prosecution of an action pending or about to be commenced in some other court.[1]  The purpose of such a bill is to identify the proper parties and the proper legal theories under which a subsequent lawsuit may be brought.[2]  Following the submission of Strike 3's bill of discovery, Doe retained attorneys Steven Vondran and Daniel Simon, the latter of whom filed a motion to quash it.  (Docs. 89-2, 94-2).

In February 2020, Strike 3 sent a letter to Mr. Simon stating that while it did not agree that its bill of discovery was subject to challenge, it would agree to forego its state court proceeding against Doe "to conserve time and resources" and would instead file a subsequent case against him in federal court in the district in which Doe was domiciled.  (Doc. 89-2).  Strike 3 attached to its letter a "Notice of Duty to Preserve Evidence," *id.*, and dismissed its state court case against Doe that same month.

In March 2020, Strike 3 initiated this lawsuit against Doe (Doc. 1) and, in May 2020, moved for leave to serve a third-party subpoena on Doe's ISP so that it could learn his identity (Doc. 11).  Strike 3 represented in its motion that it did not confer

---

[1] *Spector v. Suzuki Motor of Am., Inc.,* 2018 WL 345925, at *2 (M.D. Fla. Jan. 10, 2018) (citation omitted).

[2] *Mesia v. Fla. Agr. and Mech. Univ. Sch. of Law*, 605 F. Supp. 2d 1230, 1232 (M.D. Fla. 2009) (internal quotation marks and citation omitted).

2

with Doe in advance of requesting leave as required by the Local Rules because it did not know Doe's name but that, in an abundance of caution, it contacted Doe's last known attorney (presumably Mr. Simon or Mr. Vondran), who advised he did not represent Doe on the matter. *Id.*

In early June 2020, Doe installed a new Linux operating system on his laptop (hereinafter, the Linux Laptop), which—according to Strike 3—caused all of the device's system log files[3] to be destroyed and caused "critical data" on the device's hard drive to be deleted or overwritten. (Doc. 89-11 at ¶¶ 8–11). Doe acknowledged at his deposition in early February 2022 that he was aware from his counsel that he had a duty to preserve evidence upon receiving a notice of subpoena in the state court proceeding. (Doc. 89-1 at 8–9). Doe clarified in a sworn declaration submitted in connection with Strike 3's Motion to Reopen/Compel, however, that he was told the state court case had been dismissed and that Strike 3 was not "pursuing [him] any further" at the time he changed the operating system on the Linux Laptop. (Doc. 94-8 at ¶ 11). Doe also attests in his declaration that he "did not get any 'evidence preservation letters' from Strike 3[,] nor did [he] get any instruction from [his] lawyer . . . to preserve the evidence." *Id.*

Indeed, according to Doe, it was not until early July 2020 that he was apprised by Mr. Vondran that Strike 3 "wanted to move forward" against him. *Id.* In response, Mr. Vondran informed Strike 3 by email that Doe was "willing to provide a

---

[3] Strike 3 asserts that, among other things, system log files can provide evidence a computer belongs to and was used by particular individual. (Doc. 89-11 at ¶ 3).

declaration" and to permit "a search of his hard[ ] drive." (Doc. 94-3). Strike 3 did not accept this offer.

In August 2020, Strike 3 amended its complaint (Doc. 17), and, in November 2020, Doe filed an answer, asserting various defenses, as well as a counterclaim for a declaration of noninfringement (Doc. 23). Roughly two weeks later, an update occurred on Doe's Windows-based desktop computer (hereinafter, the Windows Desktop). (Doc. 89-11 at 5). According to Doe, this update was "pushed" by Microsoft and did not affect the device's uTorrent application at issue in this litigation. (Doc. 94-8 at ¶¶ 13, 14, 15). Strike 3's expert maintains, however, that this update destroyed all of the Windows Event Logs[4] on the device at the time and that Strike 3 requires a forensically sound copy of the hard drive to determine whether the update had impacted any relevant data. (Doc. 89-11 at ¶¶ 17–19).

In April 2021, the Court entered a Case Management and Scheduling Order (CMSO) establishing, *inter alia*, a fact discovery deadline of December 13, 2021, and a trial date during the August 2022 trial term. (Doc. 28). In mid-August 2021, at the parties' request, the Court issued an amended CMSO, in which it extended the discovery deadline to January 7, 2021, and the trial term to October 2022.[5] (Docs. 33, 34).

---

[4] Strike 3 defines Windows Event Logs as those files that record events that occur on a computer running the Windows operating system, such as "turning the computer on, logging on and off the computer" and other events. (Doc. 89-11 at 5 n.3).

[5] The parties sought to extend the expert and discovery deadlines but not the dispositive motion deadline or the trial term. (Doc. 32).

In mid-November 2021, Strike 3 served its Second Set of Requests for Production on Doe. (Doc. 52 at 3). Pertinent here, Strike 3 sought by way of those production requests certain log files for Doe's hard drives, along with forensically sound copies of his devices. *Id.* at 6, 16. Doe notified Strike 3 in mid-December 2021 that it objected to these discovery demands. *Id.* at 3.

In early January 2022, upon Strike 3's motion, the Court again extended the fact discovery deadline, this time to March 16, 2022. (Docs. 39, 44).[6] More than two months later, on the last day of discovery, Strike 3 filed a motion to compel Doe's disclosure of the system log files or, alternatively, forensic images of his hard drives. (Doc. 52). Strike 3 also moved to compel Doe's responses to questions asked of him at his deposition, which related to his fee arrangements with two of his attorneys in this action. (Doc. 53). Notably, however, Strike 3 did not simultaneously request an extension of the March 16, 2022, discovery deadline.

The Court heard oral argument on these motions in mid-April 2022 and then conducted an evidentiary hearing in late April 2022 to resolve the factual matters raised by the parties. (Docs. 58, 67). In the midst of that hearing, after the Court had received testimony from the parties' respective experts, Strike 3 and Doe advised that they had resolved their dispute. The parties' subsequently read their agreement into

---

[6] In addition, the Court extended the expert and dispositive motions deadlines at the parties' request in mid-March 2022. (Docs. 50, 51).

the record, after which the Court—with the parties' consent—denied Strike 3's motions as moot.[7]   (Docs. 82, 87 at 114–18).

During the time period between oral argument on the above motions in mid-April 2022 and the evidentiary hearing in late April 2022, Strike 3 moved to extend the expert discovery deadline to June 17, 2022, and the dispositive motion deadline to July 20, 2022.  (Doc. 71).  The Court granted this relief shortly after the evidentiary hearing and noted that because the extensions would not afford sufficient time to resolve dispositive motions, the Court would issue a third amended CMSO.  (Doc. 85).  The Court cautioned the parties, however, that "[n]o further extensions of these deadlines will be permitted absent highly extenuating circumstances."  *Id.*

Roughly ten days later, in early May 2022, Doe produced the agreed-upon system log files.  (Doc. 89-11 at ¶ 1).  Strike 3's Motion to Reopen/Compel, filed several weeks afterward, followed.  (Doc. 89).  By way of that motion, Strike 3 asks that it be allowed to again engage in fact discovery so it can conduct a "full examination" of the forensic images of the hard drives from Doe's Linux Laptop and Windows Desktop, which—it maintains—Doe should be compelled to produce.  *Id.* In support of this relief, Strike 3 asserts that its expert has uncovered evidence of a number of instances where Doe may have spoliated evidence or failed to comply with

---

[7] Contrary to Doe's contention (Doc. 94 at 5–7), the Court did not adopt the parties' resolution as part of its Order (Doc. 82).  Nor did it determine that the system log files were relevant.  All that it offered at the time was its "preliminary thought" that the system logs were "subject to discovery," and that although "[t]here seem[ed] to be a discrepancy as to how they're defined," any such disagreement could "be resolved by a discussion between the [parties'] experts."  (Doc. 89-4 at 6).

his discovery obligations, including the installation of a new operating system on the Linux Laptop in June 2020 and the update to the Windows Desktop in November 2020. *Id.*

In addition, Strike 3 contends that Doe apparently used another device or username linked to his name and, if that device was not previously disclosed in this litigation, seeks a "forensically sound image" of it as well. *Id.* Strike 3 also argues that Doe did not produce several files reflecting the term "torrent." *Id.* And, finally, unrelated to these alleged discovery failures, Strike 3 asks that Doe be compelled to answer additional deposition questions regarding his fee agreements with his attorneys in this case. *Id.* To accommodate the time it needs to acquire all of the above information, Strike 3 moves to further extend the fact discovery, expert discovery, and dispositive motions deadlines. (Docs. 89, 90).

## II.

## A.

The Middle District Discovery Handbook makes clear that "[c]ounsel, by agreement, may conduct discovery after the formal completion date [for discovery] but should not expect the Court to resolve discovery disputes arising after the discovery completion date." MIDDLE DISTRICT DISCOVERY § I.F. In accordance with this admonition, courts in this District routinely deny motions to compel filed after the close of discovery, even where the motion is directed at discovery produced after the discovery deadline pursuant to the parties' agreement. *See, e.g.*, *El-Saba v. Univ. of S. Ala.*, 738 F. App'x 640, 645 (11th Cir. 2018) (per curiam) (affirming the denial of a

motion to compel as untimely that "was filed almost two weeks after" discovery closed); *Gov't Emps. Ins. Co. v. Merced*, 2022 WL 218485, at *1 (M.D. Fla. Jan. 25, 2022) ("The parties' apparent agreement to continue discovery after the court's deadline does not make the motion [to compel] timely."); *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.,* 2019 WL 1773288, at *4–5 (M.D. Fla. Apr. 23, 2019) (overruling objections to magistrate judge's denial of a motion to compel brought approximately one month after the discovery deadline); *Davis v. Westfield Ins. Co.*, 2016 WL 9526447, at *3 (M.D. Fla. Dec. 15, 2016) (denying a motion to compel submitted ten weeks after the discovery cut-off); *Eli Rsch., LLC v. Must Have Info., Inc.*, 2015 WL 4694046, at *2 (M.D. Fla. Aug. 6, 2015) (denying a motion to compel filed three days after discovery closed). Courts have also looked with disfavor upon motions to compel brought on or immediately before the discovery deadline. *See, e.g.*, *Malibu Media, LLC v. Weaver*, 2016 WL 473133, at *1–2 (M.D. Fla. Feb. 8, 2016) (upholding the magistrate judge's order denying two motions to compel brought one day before the discovery deadline because the moving party failed to provide a reason or good cause for the delay in bringing the motions); *Oil Consulting Enter., Inc. v. Hawker Beechcraft Glob. Customer Support, LLC*, 2017 WL 7355128, at *1 (M.D. Fla. Dec. 21, 2017) ("Filing a substantive motion to compel on the last day of discovery does not comply with the policy of the Middle District of Florida for the completion of discovery and the resolution of issues related to discovery prior to the discovery deadline[ because] [m]otions to compel must be brought in a timely manner.") (internal quotations and citation omitted).

Here, Strike 3 filed its Motion to Reopen/Compel approximately two and a half months after the March 16, 2022, discovery deadline and roughly five months after Doe first objected to some of the contested discovery demands. Strike 3's evident dilatoriness in pursuing this relief alone justifies denying its request. *El-Saba,* 738 F. App'x at 645–46. The fact that Strike's motion stems from the parties' resolution of their discovery dispute reached at the evidentiary hearing in late April 2022 does not alter the Court's analysis since the authorized discovery period had long concluded by that point. *Gov't Emps. Ins. Co.*, 2022 WL 218485, at *1; MIDDLE DISTRICT DISCOVERY § I.F.

Strike 3's request to extend the discovery and dispositive motions deadlines is similarly deficient. (Docs. 89, 90). Federal Rule of Civil Procedure 16 provides that a scheduling order may ordinarily "be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (internal quotation and citation omitted). Further, where a party files a motion after the expiration of the deadline, it must also usually demonstrate "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In this case, the standard for amending the expert discovery and dispositive motions deadlines is even more stringent given the Court's warning that it would not further enlarge these deadlines absent "highly extenuating circumstances." (Doc. 85).

9

Strike 3 has not made the requisite showing here.  It fails to establish that it could not have completed the discovery it now seeks within the original time frames had it exercised due diligence.  *Sosa*, 133 F.3d at 1418.  And it certainly does not demonstrate the type of "highly extenuating circumstances" the Court said it would require before extending the deadlines in question.  (Doc. 85).

Nor does Strike 3's challenge to Doe's purportedly insufficient discovery responses provide an adequate basis to reopen discovery.  By way of example, with respect to the matter of the username, Doe submitted an affidavit explaining that he configured a computer for his nephew in another state so the two of them could play a videogame together.  (Doc. 94-8 at ¶¶ 5–7).  Doe further attests that he also disclosed to Strike 3 a list of all the devices in his possession and control.  *Id.*  As for Doe's alleged failure to produce three files responsive to the search term "torrent," Doe maintains that those items are not related to the application "uTorrent."  *Id.* at ¶ 10.  Based upon the limited record before the Court, these alleged deficiencies do not warrant an order compelling the discovery sought by Strike 3 at this point in the litigation.

Strike 3's request that it be permitted to conduct a "full examination" of the Linux Laptop and the Windows Desktop fails for another reason as well.  The Middle District Discovery Handbook requires that a party demonstrate "exceptional circumstances" to secure a forensic image of a computer.  MIDDLE DISTRICT DISCOVERY § VIII.E.3.  For many of the same reasons as those discussed above, Strike 3 has not made such a showing here.

10

Furthermore, the Middle District Discovery Handbook also provides that a party seeking a forensic image "should include a proposal for the protection of privacy rights, [the] protection of privileged information, and the need to separate out and ignore non-relevant information." *Id*. § VIII.E.3.  Courts in this District have similarly recognized that the privacy interests of the party whose device is to be imaged must be considered and weighed in deciding the appropriateness of such relief.  *See, e.g., Classic Soft Trim, Inc. v. Albert*, 2020 WL 6734369, at *7–8 (M.D. Fla. June 15, 2020) ("When determining whether a forensic examination is warranted, the Court considers . . . the privacy interests of the parties whose devices are to be examined. . . ."); *Valdes v. Greater Naples Fire Rescue Dist.*, No. 2:17-cv-417-JES-CM (M.D. Fla. Sept. 7, 2018) ("Before granting a motion to compel [a] forensic examination of electronic devices, the court must weigh the utility of the proposed examination against inherent privacy concerns.") (citing *Klayman v. City Pages*, 2014 WL 5426515, at *5 (M.D. Fla. Oct. 22, 2014)).

Despite this body of authority, Strike 3 does not offer any suggested protocols to protect Doe's privacy rights or any safeguards to prevent the disclosure of privileged or irrelevant information that might attend such an examination.  And, although Strike 3 claimed at oral argument that its "full" forensic analysis could be accomplished in a matter of weeks, in the Court's experience, such robust examinations often take

11

months and would likely lead to further expert reports, additional depositions, and even more discovery motions.[8]

In sum, Strike 3 accepted the risk of seeking the information in question late in the discovery process and then filing a motion to compel on the last day of discovery. As a result, any agreement reached by the parties regarding a supplemental production on those issues would necessarily have to occur after the discovery deadline, and any subsequent motion to compel related to that further discovery—here, the instant Motion to Reopen/Compel—would be untimely.  This is especially true given the number of instances the Court has extended the deadlines in this action and the ample time Strike 3 has been afforded to conduct discovery and to resolve its disputes with Doe.

### B.

Strike 3 alternatively argues that the Court should compel production of Doe's hard drives and undisclosed devices because Doe designated himself as an expert and is thus required to produce the hard drives as evidence made available to him.  (Doc. 89 at 19–20).  Strike 3, however, does not cite any binding case authority buttressing its contention that it should be allowed to review the hard drives as it sees fit as a result of Doe's examination of them.[9]  *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th

---

[8] Strike 3's suggestion that a forensic examination of Doe's devices is necessary because Doe spoliated evidence fares no better.  While the issue of spoliation is generally governed by Federal Rule of Civil Procedure 37(e), Strike 3 disclaims any intent to proceed under that provision in its Motion to Reopen/Compel.  (Doc. 98 at 5).  The Court cannot determine whether such alleged spoliation occurred absent full briefing on the matter, and it therefore declines to address the issue here.

[9] Strike 3's reliance on *Digital Assurance Certification, LLC v. Pendolino*, 2019 WL 161981, at *5 (M.D.

Cir. 2006) (per curiam) (stating that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)).

C.

Strike 3's final request is that Doe provide further discovery regarding his fee arrangements with two of his attorneys in this action. (Doc. 89 at 21). According to Strike 3, those agreements authorize Doe to obtain the difference between a regular hourly rate and a premium hourly rate that his lawyers could recover if he prevails on his counterclaim for non-infringement. (Doc. 53). This request is unavailing as well.

As alluded to above, Strike 3 previously moved to compel Doe to answer certain deposition questions related to his fee agreements with counsel. *Id.* At the evidentiary hearing in late April 2022, Doe agreed to provide a written response to four inquiries on the matter and to consider whether he would answer any follow-up queries. (Doc. 89 at 12). Doe apparently addressed those four questions by referring to new fee

---

Fla. Jan. 10, 2019) is misplaced. In that case, there was a question as to whether the defendant inserted a thumb drive into the laptop owned by the plaintiff—his former employer—as part of an alleged effort to take confidential information. *Id.* at *1. To address the matter, the plaintiff's expert offered an opinion regarding the circumstances surrounding the attachment of the thumb drive. *Id.* Based on these facts, the court ordered the plaintiff to provide a forensic image of the laptop to the defendant's expert so that he could "have an equal opportunity to examine, search, test, and analyze the same information made available" to the plaintiff's expert. *Id.* at *5. The court reasoned that "the parties [were] not simply searching for documents that may be uncovered by a keyword search[, rather] [t]hey want[ed] to know how the [laptop and thumb drive] were used during a specific period of time." *Id.* at *5. The court also set forth certain protocols governing the review of the image, including that the plaintiff's expert could be present during the forensic analysis and that the plaintiff would be permitted to produce a privilege log. *Id.* at *6. Strike 3's allegations and its requested relief do not reflect such a situation.

arrangements he entered into with his lawyers that do not contain the challenged fee-shifting language, and then refused to comment any further about the subject. *Id.*

Strike 3 now contends that Doe should be required to respond to additional inquiries. *Id.* In support of its position, Strike 3 asserts that any fee-shifting could show that Doe's motivation in pursuing his counterclaim was to obtain a "financial windfall." *Id.* at 21. Strike 3 also avers that the sought-after fee information is relevant because Doe designated himself an expert and must disclose information related to his compensation under Rule 26. *Id.*

The problem with Strike 3's arguments is that its fee request is untimely and is based upon an agreement reached outside the discovery period. In addition, Strike 3 has not demonstrated "highly extenuating circumstances" that would require the reopening of discovery so that it can depose Doe or otherwise question him on these issues. Strike 3's contention is particularly lacking insofar as Doe has apparently disclaimed any intent to proceed under fee arrangements that could result in a payment to him. And finally, Strike 3 has already received copies of the fee agreements in question, as well as obtained representations from Doe and his attorneys regarding what those agreements mean.

III.

Based upon the foregoing, the Court reiterates its prior ruling that Strike 3's motion to reopen fact discovery, to compel Doe to produce images of his hard drives, and to impose sanctions (Doc. 89), as well as Strike 3's motion to amend the Court's most recent CMSO (Doc. 90) are denied.

SO ORDERED in Tampa, Florida, this 9th day of September 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record