## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited
liability company,

      Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

      Defendant/Counter-Plaintiff.

_____/

### PLAINTIFF'S/COUNTER-DEFENDANT'S MOTION IN LIMINE TO EXCLUDE AND/OR BAR VARIOUS TESTIMONY AND MATERIALS FROM TRIAL

Plaintiff/Counter-Defendant, Strike 3 Holdings, LLC ("Strike 3"), hereby files the following omnibus Motion in Limine to Exclude and/or Bar Various Testimony and Materials from Trial.

### I.  INTRODUCTION

Defendant/Counter-Plaintiff, John Doe ("Doe"), seeks to introduce evidence and elicit testimony from materials that share a host of problems. Many are irrelevant, prejudicial, and lack foundation, while other more

1

egregious cases consist of evidence that is harassing, untimely, and outright unreadable. Pretrial rulings on these matters will streamline trial.

## II. APPLICABLE LEGAL STANDARD

The Court has the "inherent authority" to adjudicate "any motion," including a motion *in limine*, "whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *See Luce v. United States*, 469 U.S. 38 n.2 & n.4, 40, 105 S. Ct. 460, 462, 83 L. Ed. 2d 443 (1984) (citations omitted). "The real purpose of a [m]otion [i]n [l]imine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Hodgetts v. City of Venice*, No. 11-00144-EAK, 2011 WL 2192810, at *1 (M.D. Fla. June 6, 2011) (citation omitted).

"Federal Rules of Evidence 401 and 402 govern the admissibility of evidence." *In re Seroquel Prod. Liab. Litig.*, No. 06-1769-ORL-22DAB, 2009 WL 10706012, at *1 (M.D. Fla. July 2, 2009). However, "[e]vidence may be excluded when the probative value is outweighed by its prejudice," *id.* at *2, and the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' involves some adverse effect beyond tending to prove the fact or issue that justifies the admission of the evidence. Prejudice is unfair when it tends to suggest a decision by the fact finder on an improper basis, such as on an emotional basis." *See United States v. Villanueva*, No. 12-205-T-17MAP, 2016 WL 3670812, at *2 (M.D. Fla. July 5, 2016).

### III. MOTIONS

#### A. Strike 3 Moves to Preclude John Doe from Referring to Strike 3 as a "Troll" and Other Similar Pejoratives

"The use of pejorative terms . . . are unduly prejudicial under [Rule] 403." *See Luv n' care v. Laurain*, No. 16-00777, 2021 WL 7907283, at *2 (W.D. La. Mar. 29, 2021) (citations and internal punctuation omitted). Through the expert Dr. Eric Fruits, Doe has called Strike 3 a "copyright troll" or "troll," *see* [DE 137-11], at 30–35, a term that has no established legal or dictionary definition, but which is undeniably negative. *See* Troll, https://www.merriam-webster.com/dictionary/troll   ("to   harass . . .   or antagonize someone") (internal punctation omitted).

Name-calling has no place in civil litigation. For example, courts have noted that the sister term, "patent troll," is a pejorative. *See In re Teltronics, Inc.*, 540 B.R. 481, 483 n.5 (Bankr. M.D. Fla. 2015), *aff'd sub nom.*

*O'Halloran v. Harris Corp.*, No. 15-2788-T-36, 2016 WL 4467254 (M.D. Fla. Aug. 24, 2016), *aff'd sub nom. In re Teltronics, Inc.*, 904 F.3d 1303 (11th Cir. 2018) (explaining that it is "a pejorative term for non-practicing entity"). Such "terms are more prejudicial than probative" and, "in fact, do not really have much descriptive value." *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, No. 13-10, 2015 WL 11143139, at *1 (D.N.D. Aug. 13, 2015) (granting motion in limine). "The problem with [even] facially neutral labels . . . is that they are generally not helpful to the jury, which is not likely to understand what those terms mean, standing by themselves. And in the event that jury members are familiar with the terms, they may also be familiar with the negative connotations that those terms sometimes carry." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452 (WCB), 2022 WL 2800911, at *3 (D. Del. June 27, 2022) (granting in part motion in limine) (citation omitted). Indeed, the loaded terms appear to be a roundabout means to traffic in prohibited (and baseless) character evidence. *See* Fed. R. Evid. 404(a).

More concerning, the label is inaccurate and thus irrelevant. *See* Fed. R. Evid. 402. There is "no support for the conclusory statement that Strike 3 is a 'copyright troll,' that is, 'a non-producer [of the copyrighted work at issue] who merely has acquired the right to bring lawsuits against alleged

4

infringers.'" *See Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481 (E.D. Pa. 2019) (quoting *Malibu Media, LLC v. John Does*, 950 F.Supp.2d 779, 780 (E.D. Pa. 2013)).[1] Rather, "Strike 3 is part of a group of corporate entities that actually produces the motion pictures at issue and which owns valid copyrights to those works." *See id.* at 481–82.  If Doe has any evidence of abusive conduct by Strike 3, or evidence that Strike 3 has merely acquired the "bare right to sue" for the copyrights, he may present that, but he may not sidestep his burden by resorting to name-calling. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 988 (E.D. Va. 2016) (preventing "any reference" to parties as "copyright trolls" or other slurs).

---

[1] *See*, *e.g.*, *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020) (holding the district court abused its discretion, in part, by calling Strike 3 a "copyright troll"); *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2019 WL 5446239, *6 (D.N.J. Oct. 24, 2019) (finding after two-days of evidentiary hearings, no evidence that Strike 3 engaged in abusive litigation practices), *rev'd on other grounds*, 2020 WL 3567282, at *8 (D.N.J. June 30, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-5818, 2019 WL 5459693, at *2 (S.D.N.Y. Oct. 9, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-1152, 2019 WL 3859514, at *2 (D. Conn. Aug. 16, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at 6 (D.N.J. June 27, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339, at *5 (W.D.N.Y. Apr. 8, 2019); *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481–82 (E.D. Pa. 2019); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256–57 (W.D.N.Y. 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-3763, ECF No. 12, at *1 (N.Y.E.D. Nov. 14, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, D.E. 12 at *1 n.1 (E.D. Pa. Oct. 2, 2018).

**B. Strike 3 Moves to Exclude Evidence of Other Strike 3 Cases or Evidence of Results from Other Cases**

There is "well-settled case law holding that 'evidence of other lawsuits is not normally . . . permitted' in jury trials." *Affiliati Network, Inc. v. Wanamaker*, 2017 WL 8784853, at *5 (S.D. Fla. Aug. 23, 2017) (collecting cases); *see Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) ("[I]ndividual cases . . . deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright litigation."). First, "[e]vidence of other lawsuits is generally considered to be inadmissible hearsay." *Smith v. E-backgroundchecks.com, Inc*., 2015 WL 11233453, at *1 (N.D. Ga. June 4, 2015); Fed. R. Evid. 801(c). Similarly, verdicts, judgments and/or findings of fact from other lawsuits are also hearsay. *See Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1272 (8th Cir. 1997) ("[A] jury verdict does not constitute evidence."); *In re Acceptance Ins. Companies, Inc. Securities Litigation*, 352 F.Supp.2d 940, 950 (D. Neb. 2004) (holding judicial findings of fact from another case were inadmissible hearsay); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, 2006 WL 3041102, at *3 (D.N.J. 2006).

Second, the Court should exclude any evidence or references to third-party lawsuits as irrelevant to the issues being tried in this case. Such evidence

does *not* have a "tendency to make a fact more or less probable" and does not import a fact "of consequence in determining the action." *See* Fed. R. Evid. 401. Evidence of third-party lawsuits—which necessarily involves parties, facts, claims, and defenses wholly alien to this case—is irrelevant to the issue of whether Doe infringed Strike 3's copyrights in this matter.

Likewise, the Court should preclude Doe from referencing any settlement amounts Strike 3 received in the past including any cumulative amount from other cases. *See*, *e.g.*, *Chao v. Tyson Foods, Inc.,* No. 2-1174 (VEH), 2009 WL 10687854, at *2 (N.D. Ala. Jan. 17, 2009) (holding that admission of settlement information from other lawsuits likely to confuse the jury)*; Sheesley v. Cessna Aircraft Co.*, 2006 WL 3042793, at *10 (D.S.D. 2006) (precluding defendants from referring to plaintiffs' previous settlement of litigation, and finding that plaintiffs settled their claims had limited probative value as it did not help defendants prove any part of their case); *Communities for Equity v. Michigan High School Athletic Ass'n*, 137 F. Supp. 2d 910, 914 (W.D. Mich. 2001) (excluding reference to prior lawsuit that was dismissed without any ruling on the merits on the grounds that it was irrelevant because "it [did] not make a consequential fact more or less probable"); *see also* Fed. R. Evid. 408.

Even if the Court finds the evidence marginally relevant, the probative value is far outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. "Even if plaintiff could demonstrate some probative value from allegations in other lawsuits, presenting evidence of these other cases would lead to a series of mini-trials that would likely confuse and mislead the jury from the task at hand of evaluating [P]laintiff's claims in this case and result in a waste of time and judicial resources." *Smith v. E-backgroundchecks.com*, Inc., No. 13-02658 (RGV), 2015 WL 11233453, at *2 (N.D. Ga. June 4, 2015). Any attempt by Doe to introduce evidence of other lawsuits should be recognized for what it is: an attempt to create a "sideshow" or "conspiracy theory" to distract the jury from the facts of Doe's liability.

The trial will then devolve into whether Strike 3's copyright enforcement efforts are legitimate, rather than whether or not Doe stole its movies. This is *exactly* what Defendant would like to have happen, and *exactly* why Rule 403 should be applied here to shut down this tactic and focus the jury. *See, e.g., Feezor v. Golden Bear Restaurant Group, Inc.*, 2012 WL 2873353, at *1–2 (E.D. Cal. 2012) ("As a general matter, . . . the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias."). Accordingly, because the prejudice

8

caused by any reference to third party lawsuits would greatly outweigh any conceivable relevance, the evidence should be excluded under Rule 403.

### C. Strike 3 Moves to Exclude References to Media and Internet Coverage of Strike 3 as Unfairly Prejudicial

The Court should also preclude Doe from referring to any Internet blogs, media coverage, or articles on Strike 3 for any purpose. Plaintiff expects Doe may attempt to reference such material from other defense lawyers in an effort to introduce unsubstantiated allegations against Strike 3. The Internet and media articles target Plaintiff and its counsel and contain comments that are biased, slanderous, and prejudicial, and should not be referred to at trial for any purpose. "Newspaper articles, in general, are classic hearsay when offered primarily to prove the truth of the matters therein." *Moon v. Advanced Med. Optics, Inc*., No. 8-0021 (HLM), 2010 WL 11509121, at *2 (N.D. Ga. Dec. 29, 2010). Indeed, "[m]any [I]nternet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 781 (E.D. Pa. 2013). References to Internet articles and media coverage have no probative value and any reference would unfairly

prejudice Strike 3. *See* Fed. R. Evid. 403.  Further, mentioning them may

provoke a juror to search for them despite being instructed otherwise.

### D. Strike 3 Moves to Preclude References to John Doe's Military Service or Affiliation with the Military or Department of Defense Except to Provide Pertinent Background Information

This litigation concerns Doe's conduct as a private citizen–specifically,

within the four walls of his home–and not his conduct as a member of the

military or as a contractor. His "military career has nothing to do with the

merits of this case." *Dewit v. UPS Ground Freight, Inc.*, No. 16-36

(MW)(CAS), 2017 WL 4863279, at *6 (N.D. Fla. Aug. 22, 2017) (cautioning

that the parties' "attempt at creating an irrelevant sideshow will not be

tolerated"). It may be relevant to providing some background on Doe and his

technical training, but "details of his service such as awards and service-

related injuries would not be relevant to any claim or defense in the case and

may serve to unfairly prejudice the jury in Plaintiffs' favor." *Burkhart v. R.J.

Reynolds Tobacco Co.*, No. 9-10727 (WGY)(HTS), 2014 WL 12617550, at

*9 (M.D. Fla. Apr. 30, 2014) (granting motion in limine); *Cerrato v.

Nutribullet, LLC*, No. 16-3077-T24-JSS, 2017 WL 6373939, at *2 (M.D. Fla.

Dec. 13, 2017) (same).

Additionally, "[c]ourts typically consider evidence of military or police commendations as impermissible character evidence, beyond ordinary background evidence." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 19-2885, 2021 WL 954785, at *1 (N.D. Fla. Mar. 14, 2021) (collecting cases); *see* (prohibiting counsel from electing testimony about the party's military service "to bolster her credibility"). As a result, and particularly where the parties' military service bears little or no relevance on the claims or defenses, the "probative value of this type of evidence is substantially outweighed by the risk unfair prejudice." *Cerrato*, 2017 WL 6373939 at *2 (citing Fed. R. Evid. 403). Accordingly, Strike 3 respectfully requests the Court order that any evidence or testimony about Doe's military record be limited to background evidence.

### E. Strike 3 Moves to Exclude Mr. Martinez's Expert Report and Any Related Testimony

Despite the flagrant defects in Juan Martinez's Expert Report discussing Defendant's Internet configuration, *see* [DE 115-21], Doe continues to pass off the analysis as reliable. Not only are these errors readily apparent on the face of the Report, they are undermined by Doe's discovery

responses.[2] Introducing the Report, or eliciting any testimony from Mr. Martinez's regarding the analysis and opinions contained therein seriously risks misleading the jury. *See* Fed. R. Evid. 403. The Report purports to show that "John Doe's open WiFi signal was accessible by" several of his neighbors during the period of infringement. *See* [DE 115-21] at ¶4. For that to be true, Mr. Martinez would have to show both that the router's signal was strong enough to reach Doe's neighbors' residences, and that the router was unsecured–not protected by a password–and thus accessible to others. He has done neither.

There is no competent evidence about the signal strength of Doe's Internet during the period of infringement. Mr. Martinez reviewed an "Ubiquiti AC Pro" router on February 5, 2021. *See* [DE 155-21] at 7. He claims that this was "the router used at the time of alleged infringement." *Id.*

---

[2] As a result of these obvious failings, Strike 3 elected not to litigate over that Report. It would have cost Strike 3 thousands of dollars to depose Mr. Martinez, *see* [DE115-21] at 6 (outlining fees), and Strike 3 believed that it would have been frivolous for Doe to rely on that Report in any manner. *Cf.* Fed. R. Civ. P. 11(b)(3). Thus, it did not file a *Daubert* motion regarding Mr. Martinez's expert opinions. *See* Fed. R. Civ. P. 1. Yet Doe has proffered Mr. Martinez's Report in his Motion for Summary Judgment, [DE 115], at ¶¶ 12–13; [DE 115-21], and since designated him as a witness for trial.

But this is false. At Doe's deposition–which took place on the same day as Mr. Martinez's examination–Doe admitted that he no longer possessed the relevant device. During the period of infringement, Doe had a router supplied by Verizon, but that router was "swapped out" by Frontier towards the "end of 2020[.]" *See* [DE 138-9] at 76:11–77:15. Doe affirmed that "what I have now is not currently what was then." *Id.* at 77:2–3; *see also* <u>Exhibit 1</u> (Interrogatory No. 6) (responding that Doe did not know the brand, model number, or serial number of the relevant router and that "prior to" 2021, he "had a [Verizon] FIOS Router"). Despite Mr. Martinez's assurance that he "verified that the WiFi router . . . used was Ubiquiti AC Pro," this cannot be reconciled with the record. He examined the wrong device, his analysis lacks foundation, and his expert opinions are unreliable.[3] *See.* Fed. Rs. Evid. 701(b) & (d), 901(a).

The prejudice caused by this error is only amplified by the assumptions Mr. Martinez's employed. He "assume[d] [the router] was configured in

---

[3] Doe did not contest these inconsistencies in his Reply, but, instead, complained that "[a]rgument of counsel are not 'facts', [and] Strike 3 has to provide admissible evidence" questioning Mr. Martinez's Report. *See* [DE 141], at 5. Doe overlooks that his interrogatory responses and deposition testimony *are* admissible evidence. *See* Fed. R. Evid. 801(d)(2).

manner as stated by John Doe during the period" of infringement, and "assume[d] that the WiFi router operated per the manufacturer's specifications." [DE 115-21] at 7. These are groundless.

First, Mr. Martinez's reliance on Doe's hearsay account of his Internet configuration is just a means for Doe to sneak in unverifiable and prejudicial information. He does not even describe *what* assumptions Doe provided. *See* Fed. R. Evid. 703. If it was that his router was an Ubiquiti AC Pro during the period of infringement, then that is demonstrably false. *Supra*. And if it simply was that Doe maintained an unsecured Internet connection (the "FBI_DMZ Network"), then that is irrelevant to his Report, which measured–and can only opine to–"the WiFi signal strength in the vicinity of John Doe's WiFi router." [DE 115-21], at 6; *see* Fed. R. Evid. 402.

Rather, this "assumption" appears to be a vehicle for Mr. Martinez to traffic in speculation about who else could have accessed Doe's Internet. *See* [DE 138-7] at ¶7 (explaining that information about a router's configuration is stored on the router, which was not preserved). For example, Mr. Martinez conjectures "that it is *very possible* to hack into the WiFi LAN" and that residences "within the 400 f[ee]t range" of Doe's home were *just as likely* to have used John Doe's open WiFi" as Doe himself. *See* [DE 115-21] at 6, 9

(emphasis added); *see also id.* at 6 ("If [Doe's neighbors] did infringe, it is *highly unlikely* they would admit to the infringement given that the subpoena was part of a lawsuit. Strike 3 *would like[ly]* need [to] gather other evidence from these third parties to confirm whether or not they were the actual infringers.") (emphasis added).

None of Mr. Martinez's guesses "have any tendency to make a fact more or less probable" that Doe had an unsecured network, let alone that his signal strength reached to any of his neighbor's properties. *See* Fed. R. Evid. 401(a). "The Court's gatekeeping function is 'to ensure that *speculative*, unreliable expert testimony does not reach the jury *under the mantle of reliability that accompanies the appellation 'expert testimony*.'" *McMahan Sec. Co. L.P. v. FB Foods, Inc.*, No. 4-1791-T-24TGW, 2007 WL 704916, at *2 (M.D. Fla. Mar. 2, 2007) (quoting *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005) (discussing *Daubert*) (emphasis added).

The prejudice caused by baseless expert speculation is no less prejudicial under Rule 403 as it is under Rule 702. They are "not sufficiently linked to facts of record and should be stricken as unduly speculative." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 280 (D. Del. 2013) (granting in part motion in limine). His statements, "on [their] face,

speculate[] about what is not known (and might or might not be the case) regarding alleged infringements." *Id.*; *Vigneulle v. Tahsin Indus. Corp., USA*, No. 15-2268-SLB, 2019 WL 4409220, at *6 (N.D. Ala. Feb. 19, 2019) (granting motion in limine and holding that "[n]either party may speculate or guess as to events occurring at the time of accident"); *Phillips v. Irvin*, No. 05-0131-WS-M, 2007 WL 2156412, at *4 (S.D. Ala. July 25, 2007) (granting motion in limine an expert's opinion was "actually dependent on extreme assumptions and leaps of logic that are not supported by (and in some instances are directly contradicted by) reasonable inferences from the evidence of record").

Second, and even more damaging, Mr. Martinez's assumptions are patently false. The tentpole of his analysis is that "the WiFi router operated per *the manufacturer's specifications.*" [DE 115-21], at 7. But "[t]he specification sheet" that informed that assumption was "for the Access Point AC Pro (UAP AC Pro)," i.e. the Ubiquiti AC Pro. *See id.* at 9 & n.2. The Ubiquiti AC Pro device is undeniably *not* the router used during the period of infringement. Thus, his entire analysis is based on the incorrect–and thus irrelevant–router.

Nowhere is this error more palpable than in Mr. Martinez's conclusion that Doe's neighbors "within the 400 f[ee]t range" of his home "are just as likely to have used John Doe's open WiFi[.]" [DE 115-21] at 6. That result does not follow from the data. Again, the 400 feet range "radius" (displayed in "Exhibit 1") represents the manufacturer's specification for the Ubiquiti AC Pro router, *id.* at 9, the wrong router. Yet the "heatmap" of the signal strength from Mr. Martinez's physical test,[4] (displayed in "Exhibit 2") not only shows that the actual signal falls well short of the 400-feet range, but that it is clearly not accessible by any of Doe's neighbors' homes. *See id.* at 11. Thus, even if the Ubiquiti AC Pro were the relevant device, Mr. Martinez's test does not support his conclusion.

There is no reliable evidence in Mr. Martinez's Report that Doe's Internet was "open" or that his Internet signal even reached into his neighbors' homes. To date, Doe has not explained the clear errors made in the Report.

_____

[4] Mr. Martinez acknowledges that outcome of these tests is dependent on the physical conditions of the examination. He "physically visited" Doe's residence to perform the investigation and further explained that "[t]he strength of the signal *is affected by*" physical factors, including "distance," "barriers (such as walls, trees, geography, etc.)," and even "the configuration of antennas and transceiver technology in the WiFi router and the target computer." *See* [DE 115-21] at 7 (emphasis added).

The opinions presented therein substantially risks confusing the jury and would prejudice Strike 3, who was unable to examine the relevant router because it was not preserved. Mr. Martinez's Report should be excluded, as should any testimony by Mr. Martinez or any other witness about the finding and opinions contained in that Report.

### F. Strike 3 Moves to Preclude References to Mr. Paige's "Arrest Record" and "Trial Testimony" as Harassing and Inadmissible

Patrick Paige has never been convicted of a crime and, under the laws of the State of Florida, is statutorily entitled to "deny or fail to acknowledge" ever having been arrested. Fla. Stat. §943.0585 at 6(b). In fact, the expungement of the records of the criminal prosecution places [the accused] in the same position as if he had never been charged with the crime. *Walton v. Turlington*, 444 So. 2d 1082, 1084 (Fla. 1st DCA 1984). Doe, however, intends to cross-examine or introduce evidence of an expunged arrest at trial to harass Mr. Paige.[5] [DE 137-4]. Allowing him to do so would directly contravene Eleventh Circuit precedent which bars the introduction of

_____

[5] This is also true of Doe's attempt to use an excerpt of a transcript of Mr. Paige's trial testimony in another case entirely. [DE 137-5]. There, Mr. Paige was prompted to read aloud to the court part of the pleadings. Introduction of that transcript for the truth of the matter asserted is double-hearsay, Fed. R. Evid. 805, and prejudicial as it is made to appear as if Mr. Paige is adopting those statements.

evidence to merely besmirch a witness's character and does not actually undermine the witness's credibility.

Under Fed. R. Evid. 608, "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a *character for truthfulness or untruthfulness*, or by testimony in the form of an opinion about that character." Fed. R. Evid. 608(a) (emphasis added). The rule further states that "[e]xcept for a *criminal conviction* under Rule 609, *extrinsic evidence is not admissible* to prove specific instances of a witness's conduct in order to attack or support the witness's *character for truthfulness*. But the court may, on cross-examination, allow them to be inquired into if they *are probative of the character for truthfulness or untruthfulness* of . . . the witness[.]" *Id.* at 608(b) (emphasis added).

"Ordinarily, drug use is not a valid subject for impeachment." *United States v. Arias*, 431 F.3d 1327, 1333 (11th Cir.2005). Indeed, "the Eleventh Circuit has long adhered to the principle that a witness's drug use may not be used to attack a person's general credibility because of the 'extreme potential for unfair prejudice flowing from evidence of drug use[.]'" *United States v. Gatlin*, No. 19-20163-CR, 2019 WL 2866504, at *6 (S.D. Fla. July 3, 2019), quoting *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990). Instead,

19

the Eleventh Circuit has held "that such evidence may properly be limited to specific instances of drug use *during relevant periods of trial*[.]" *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990) (emphasis added). "Furthermore, prior instances of drug use are not relevant to truthfulness for purposes of [Rule] 608(b)." *Id*. Finally, "[a]s a prior conviction becomes more remote in time, its probative value decreases." *Moecker v. Honeywell Int'l, Inc.*, No. 97-329-OC-10GRJ, 2001 WL 34098650, at *3 (M.D. Fla. Jan. 30, 2001), *report and recommendation adopted*, 144 F. Supp. 2d 1291 (M.D. Fla. 2001). Thus, the Eleventh Circuit has recognized that "Federal Rule of Evidence 609(b) creates a strong presumption against the use for impeachment purposes of stale convictions" over ten years old. *Id*. at *2.

Mr. Paige's expunged arrest is *not* probative of truthfulness. Indeed, Rule 609 only permits "attacking a witness's character for truthfulness by evidence of a *criminal conviction*" under certain limited circumstances. *See* Fed. R. Evid. 609(a)(1) (emphasis added). The expunged record is not one such exception. Further, the incident in question is "remote in time" since it took place in late 2010. Indeed, there will be a near 13-year gap between the incident and the time Mr. Paige takes the stand at this trial. *Contra* Fed. R. Evid. 609(b). Attempting to impeach Mr. Paige by offering evidence of prior

conduct which does not undermine his credibility is harassing and does not attempt to elicit relevant evidence about Mr. Paige's credibility, but rather, to inflame the jury. *See* Fed. Rs. Evid. 401, 403.

Finally, Rule 611(a) requires the Court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Excluding irrelevant evidence of Mr. Paige's expunged 2010 arrest prior to trial by granting the instant motion *in limine* comports with all of the foregoing. If Defendant attempts to introduce evidence and argument related to Mr. Paige's expunged arrest at trial, much time will be needlessly spent addressing the propriety of such evidence outside of the hearing of the jury. This will clearly prolong the trial unnecessarily. Further, in considering whether a witness is being harassed or unduly embarrassed, "[p]ertinent circumstances include the importance of the testimony, the nature of the inquiry, its relevance to credibility, waste of time, and confusion." Advisory Committee Notes. Mr. Paige's expunged arrest is not at all important in this case, has no bearing on his character for truthfulness, and is an incident that he is certainly not proud of. The only plausible reason for

offering inadmissible evidence of an expunged arrest in this case would be to harass and embarrass Mr. Paige and wrongly attempt to tarnish him before the jury. The Court must prevent this from occurring.

### G. Strike 3 Moves to Exclude Evidence of "Examination" and Supplemental Data from Doe's ADATA Device As Untimely and Incomprehensible

The Court should not countenance Doe's attempt to sneak in data about his untimely disclosed ADATA hard drive. [DE 149-2] (D-1089–D-1098.114). Despite compelling more complete responses to Strike 3's discovery requests early in the litigation, [DE 34] at 5, Doe failed to mention, let alone supplement, information about his ADATA device until after Strike 3 confronted Doe during his expert deposition. *See* [DE 102-1]. Doe's supplemental report was not created until June 17, 2021, well after the deadline, and was not produced to Strike 3 until July–just days prior to the dispositive motion deadline. [DE 103-2]. And when Doe finally supplemented his production of data from the ADATA device (JAD930 and JAD931), they were in non-native format and incomprehensible. *See* [DE 138-7] at ¶¶6–7.

This material "was inexcusably belated" and "no proper foundation for the introduction of" the hard drive or its data "had been laid." *Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799, 804 (8th Cir. 1979) (affirming exclusion

untimely materials "including [under] the latitude allowed by Rule 403"); *see also* Fed. Rs. Civ. P. 26(e), (g); 37(c). Doe cannot profit by his lack of diligence by forcing Strike 3 to explain to the jury material that was not produced during discovery, and worse, deliberately incomprehensible.

### H. Strike 3 Moves to Exclude .bin Files of PCAPSs described on John Doe's Exhibit List

Doe has listed various "PCAP extracted data for exhibit A" in his Exhibit List. See [DE 149-2] (D-1025–D-1096). They were never produced during discovery. The first time Strike 3 received these documents was during the pretrial conferrals. They are .bin files, which counsel for Doe has stated are reports made of some of the PCAPs. While he may insist that the reports are summaries, *see* Fed. R. Evid. 1006, there is remains a simple issue: Strike 3 is unable to open and review the files. *See id.* 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.") (emphasis added); *see also Stallworth v. Sourcecorp*, No. 5-385 (WHA), 2006 WL 2331093, at *3 (M.D. Ala. Aug. 10, 2006) ("Demonstrative evidence also must be shown to the opposing party so that the opposing party may object to its use, if appropriate, before it is shown to the jury.").

Strike 3 has requested that Doe relay at least the name of the program used to create the .bin files so that it can review them, but as of the time of this Motion, Doe has not disclosed that. Since Strike 3 cannot confirm (or open) the contents of these files, it would be prejudicial to allow Doe to ambush Strike 3 at trial.

**WHEREFORE,** Strike 3 respectfully requests that the Court grant its aforementioned motions in limine and exclude evidence, testimony, and/or reference in the manner described above.

Dated: December 13, 2022

Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh [FBN 71093]
WAUGH GRANT PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Email: cwaugh@waughgrant.com
Telephone:  321-800-6008
Fax:   844-206-0245

*Counsel for Plaintiff*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to the Third Amended Case Management and Scheduling Order at II.I., and Local Rule 3.01(g), undersigned counsel conferred with Defendant's counsel on October 28, 2022 telephonically and again on December 1, 2022 via Zoom to discuss all but Sections G and H of the present Motion. The parties were unable to resolve disagreement on the relief sought in the Motion for Sections A through F. Counsel also conferred with Doe's counsel on the relief sought in Section III.H on December 13, 2022, but the parties have been unable to reach agreement on the relief sought by Plaintiff. An attempt was made by the undersigned counsel to confer on Section III.G on December 13, 2022, but has been unable to and will supplement the conferral pursuant to L.R. 3.01(3) at the earliest opportunity.

/s/ Christian W. Waugh

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2022, a true and correct copy of the following documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh