UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | § | |
|---|---|---|
| STRIKE 3 HOLDINGS, LLC, | § | Civil Action |
| | § | No. 8:20-cv-00676-MSS-CPT |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| JOHN DOE infringer identified | § | |
| As using IP address | § | |
| 47.197.99.186, | § | |
| Defendant. | § | |
| | § | |

## JOHN DOE'S OPPOSITION TO STRIKE 3's MIL'S

### I. INTRODUCTION

John Doe respectfully requests that all of Strike 3's eight *motions in limine* be denied or deferred until trial.

### II. ARGUMENT
### A. CALLLING STRIKE 3 A "COPYRIGHT TROLL" (MIL 1)

John Doe's qualified damages expert, Eric Fruits, used the term "Copyright Troll" in his expert report that was based on other materials. (ECF 154, pp. 3-5). In this district, excluding evidence under FRE 403 is at the absolute discretion of the trial court. *Noel Shows, Inc. v. U.S.*, 721 F.2d 327, 329 (11th Cir. 1983) ("excluding evidence of an issued patent under FRE 403").

Strike 3's argues that the term "Copyright Troll…has no established legal or

1

dictionary definition"as the basis for exclusion. (ECF 154, Pg 3).  This is untrue. Many legal scholars use this term. (See Ex. 1, *Copyright Trolling*, *An Empirical Study*, Iowa Law Rev. 2015 )  Also, in the Southern District of New York, that court denied a request to redact the term "copyright troll" from the record.  *McDermott v. Monday Monday, LLC* WL 1033240 *at \*3* (S.D. N.Y. 2018).  As the Court ruled in *McDermott:*

> "…In common parlance, copyright trolls are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim."

Strike 3, like Mr. Leibowitz in *McDermott*, have both filed hundreds of cases a year.  In this case, Strike 3 has oddly refused to produce financials showing the revenue for the thousands of movies that they manufacture.  These movies are displayed for free on their branded websites, such as Vixen ([www.vixen.com](www.vixen.com)). Strike 3's affiliated company, "PornTube", markets Vixen movies for "Free". (see [https://www.porntube.com/channels/vixen](https://www.porntube.com/channels/vixen)).   A  "Google"  search  for  "Vixen" supports this:



Now arguably, Strike 3 is not: "…more focused…on selling a product…"(emphasis added) since it appears they give it away for free. Rather the facts, or more properly the lack of the Strike 3 end-user sales figures, show that Strike 3 makes their money by litigation proceeds. This easily falls within the legal definition of a "Copyright Troll."

Now the question is if the term "Copyright Troll" would be prejudicial under FRE 403 enough to warrant wholesale exclusion.  *Old Chief v. United States*, 519 US 172, 176-185 (1997). By itself, the term, "Copyright Troll", probably has no immediate negative or positive connotation to the lay person since a "troll" can mean a monster (e.g. the troll in the Hobbit) or one of those cute toys in a toy shop. To the extent if "Copyright Troll" becomes a central theme of the case, which it likely should not, then it will have to be explained to the jury, just as one will have to explain the technical term "Bitttorrent" in this case.  And to the extent that Strike 3 uses the term by stating "We are not Copyright Trolls", then John Doe has the right to use that

phrase as Strike 3 has opened the door.

To summarize, John Doe has not specific objection to a limiting instruction, but even it slips out, it is not likely to be understood by the lay person unless there is context.

B. **DISCUSSING STRIKE 3's THOUSANDS OF LAWSUITS (MIL 2)**

Strike 3 objects that John Doe may introduce evidence about the thousands of other lawsuits and that this would be prejudicial under FRE (ECF 154, pp. 6-9). Strike 3 does not dispute that they have filed thousands of lawsuits and receive significant revenue from these settlements.

There are two reasons why this evidence is relevant both as evidence for the jury to consider statutory damages, and for the jury to hear evidence regarding the accuracy of VXN - Strike 3's untested "…infringement detection system…".

1. <u>The Jury Show hear evidence of damages in other cases to properly determine damages in this case under 17 U.S.C. § 504 (c )(2)</u>

The Court has the discretion to admit compromise offers and negotiations under FRE 408(b) and Courts routinely admit the value of settlement agreements as the basis for a reasonable licensing fee in IP Cases. *ResQNet. com, Inc. v. Lansa, Inc* 594 F.3d 860, 877 (2010) "discussing the use of settlement agreements in damages calculations"

Statutory range from $ 200.00 per infringement to $150,000.00 per

infringement. 17 U.S.C. §504(c)(2).  The Supreme Court has held that there is a Seventh Amendment right to a jury trial on all issues pertinent to the award of statutory damages, including the determination of the amount of damages itself. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S.C. 340 (1998).

The courts have identified a number of factors bearing upon the appropriate award within this statutory range.  These include, but are not limited to, the <u>expenses saved and profits reaped by the infringer</u>, <u>the revenues lost by the plaintiff</u>, <u>the value of the copyright</u>, and the deterrent effect on other potential infringers. See *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116-17 (2d Cir. 1986).  Clearly financial information is relevant to this case.

The only financial information that Strike 3 has provided to date are the amount they receive as settlements.  Strike 3 has provided no evidence that they make any money from selling their movies.   So, if we exclude settlement revenue at trial and actual revenue (since Strike 3 did not disclose it), the juror is left with no evidence of damages to determine damages.

It was Strike 3's strategic decision not to disclose sales figures knowing that they were electing statutory damages.  If the jury cannot hear any evidence of damages, then the jury's ability to determine statutory damages would be purely speculative.  As the Supreme Court ruled in *Bigelow vs. RKO Radio Pictures*, et. al, 327 U.S. 251, 264 "..the jury may not render a verdict based on speculation or

guesswork..". If Strike 3 intend to exclude all evidence of settlement amounts and they refuse to produce financials, then the jury has nothing to evaluate and no verdict can be returned for Strike 3.

2. <u>John Doe should be able to elicit from witnesses about the accuracy of the "forensic" infringement detection system, VXN by referring to the other lawsuits.</u>

At issue here is if Strike 3 intends to introduce VXN data at trial. (e.g. PCAP's, infringed movies, etc.). Strike 3 has not disputed that VXN was created solely to gather data solely for the purposes of litigation. VXN has been used in thousands of cases. Here we at least 4,000 lawsuits with identical pleadings and allegations that VXN "detected infringement". Strike does not dispute they did not perform a test of VXN until 2022.

Strike 3 then sues individuals and quickly settles based with *a de minimus* payment. There is no investigation to see if the data on the defendants computer matches what VXN recorded. This would be the most accurate system data available for testing purposes since it would not be in a "controlled environment". Strike 3 could have conducted a sample, say 5% of the cases, to evaluate if VXN is accurate. They chose not to do this.

Evidence of an organizations habit or routine practice is admissible under FRE

406. In this District, habit evidence is admissible if the "...the behavior may become so consistent as to rise to the level of habit…" *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1522 (11th Cir. 1985) quoting from *Reyes v. Missouri Railroad Co.,* 589 F.2d 791 (5th Cir.1979) (citations omitted).

John Doe has the right to introduce evidence of the fact that in the thousands of settlements they found no evidence of infringement on the computers of the alleged infringers. This is not prejudicial under FRE 403, rather essential for the jury to understand the accuracy of VXN.

### C. THE FREE PRESS AND STRIKE 3 (MIL 3)

Strike 3 states: "…The Internet and media articles target Plaintiff and its counsel and contain comments that are biased, slanderous, and prejudicial, and should not be referred to at trial for any purpose…" . Strike 3 provides no examples for such articles for the Court to review to make a determination.

The motion should be denied on the basis that the motion is vague. See *Marshall v. Wal-Mart Stores E. LP* 8:20-cv-1835-CEH-SPF Order on July 22 at pg 4. (M.D. Fla. 2022) holding "…*to the extent that it wants a blanket order excluding all policies and procedures, Wal-Mart fails to demonstrate that the evidence is clearly inadmissible on all potential grounds…*".

### D. JOHN DOE'S MILITARY CAREER MIL 4)

Next, Strike 3 wants John Doe to not talk about his Military Career. John Doe was employed by the United States Army where he gained technical skills. These technical skills were then enhanced by college degree that he got while working at the United States Army. He was injured while working at United States Army.

John Doe works for a military contractor in Tampa close to an hour from his house. His job involves working on computer systems. His testimony, on unclassified topics, will likely center around the fact that when he was at work for 13 of the 36 alleged infringements supported by timecard evidence. All of this is background information.

At this point it is hard to determine what specific testimony or evidence Strike 3 intends to limit since it is not specifically briefed with any detail, except by citing to *Burkhart* and *Cerrato*. So, John Doe respectfully requests this MIL be denied.

E. **MR. MARTINEZ - THE WIFI EXPERT (MIL 5)**

Strike 3's MIL #5 appears to be nothing more than a *Daubert* motion in the form of a *Motion in Limine*. Strike 3 filed three *Daubert* motions on Dickson, Brillhart, and John Doe; but no *Daubert* motion was brought on Martinez. (ECF 109, 112, 113) The cutoff for *Daubert* Motions was on July 20, 2022. (ECF 86). Now almost a half a year later Strike 3 brings a *Daubert* Motion cast as a *Motion in Limine*. This is evident by their references to FRE 703 on pages 14, and an inaccurate technical assault, by an attorney, on the merits of Martinez's expert report.

Strike 3 did not depose Mr. Martinez. Strike 3 did not hire a rebuttal expert to file expert rebuttal report. Strike 3 did not physically inspect the property, the equipment, or the neighborhood. Strike 3 did not create their own mockup of the WiFi configuration to disprove Mr. Martinez's findings. Strike 3 did not even create their own heatmap.

Juan Martinez is an electrical engineer working for several technology companies in Silicon Valley. He is an immigrant from El Salvador having served in our United States Army. He performed a competent heatmap analysis of the WiFi signal. He wrote a thorough Rule 26 report on the fact that John Doe's open WiFi signal would propogate to a number of adjacent households.

Strike 3 argumentative "evidence" in this motion is just attorney argument. Itself is inadmissible opinion testimony by a Strike 3's counsel who did not file an expert report on this topic nor was designated as an expert. There is no merit to this MIL 5 either substantively or procedurally.

### F. MR. PAIGE – STRIKE 3'S INVESTIGATOR (MIL 6)

Strike 3 only wants "good things" to be said about their investigator Patrick Paige. There is no dispute that Patrick Paige moved controlled substances (a felony) for his personal use using police property. (See Ex. 2).

FRE 608(b) allows for cross examination of a witness if they probative of his character for truthfulness or untruthfulness. *U.S. v. Burris*, 959 F.2d 242, (9th Cir.

1992) "…participation in fraudulent transactions and the use of false statements are considered probative of untruthfulness…."; See also *U.S. v. Novation*, 271 F.3d 968,1005 (11th Cir. 2001) "…probative of truthfulnesss or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness…". Mr. Paige provided false information to the Police Department, that "Kevin Michael Reid" was receiving an illegal drug in their dropbox, not himself.

In this case, Patrick Paige filed a declaration (ECF 11-2) which only gave this Court the "good facts" of Mr. Paige as a police officer who investigated internet crimes. A declaration in support of early discovery is not a job application. Patrick Paige failed to tell this Court that he was let go from the police department because he committed a crime, but instead listed his work with the police departments at ¶5 to gain credibility. This shows a remarkable lack of candor on the part of Mr. Paige. If Strike 3 intends to bring in Patrick Paige's good character as evidence, then John Doe have the ability to impeach his character. FRE §405(a).

Patrick Paige is a unique witness. Patrick Paige as filed almost 10,000 pro forma declarations in Strike 3 lawsuits. And before that he has filed at least 10,000 *pro forma* declarations for other movie companies, namely, Malibu Media (another pornography company).

To the extent that Strike 3 opens the door about Patrick Paige's past

accomplishments, John Doe's counsel should have free reign in cross examination.

### G. ADATA EVIDENCE (MIL 7)

Strike 3's MIL #7 regarding the ADATA evidence is shows that it was Strike 3 who was not diligent in resolving the issues ("non-native format and incomprehensible") about the production of data nearly a year and a half later.

John Doe does not dispute that the ADATA evidence was discovered late, but there are no facts that John Doe intentionally withheld the evidence. An analysis was immediately performed on the ADATA drive based on the voluminous search strings provided by Strike 3. This report was given to Strike 3, and no objection was lodged at that time. No motion was made by Strike 3 to modify the scheduling order to resolve the ADATA issue. No requested was made by Strike 3 regarding expert reports.

So 18 months later, Strike 3 is raising objections to this evidence in the form of a motion in limine. The time and place is resolve any issues of evidence was on June 18, 2021 by a meet and confer with counsel, and not by moving to exclude via a *Motion in Limine* two months before trial.

### H. PCAP MOVIES AS IMPEACHMENT EVIDENCE (MIL 8)

Strike 3's complains that evidence should be excluded. The nature of this evidence is very simple and straightforward. Strike 3 has alleged that John Doe has downloaded 36 movies and has provided approximately 130+ PCAPs with raw data

11

allegedly collected by VXN from the IP address at issue in this case[4]. Strike 3 has the burden of proof of infringement.

John Doe has used Strike 3's evidence to create a demonstrative exhibit solely for impeachment purposes. John Doe has taken Strike 3's PCAP data and created a movie file of the same length with that Strike 3's own PCAP data to determine if the resulting movie will show "one movie frame" to a viewer (which Strike 3 admits it does not). This supports John Doe's argument of non-infringement (which is not John Doe's burden).

This issue has been dealt with before in a simpler time. In *Sherman v. Burke Contracting, Inc.*, 891 F. 2d 1527, 1533 and fn12 (11th Cir 1990) the issue was the admissibility of a tape recording for impeachment purposes. The Court allowed the recording in solely for impeachment purposes. See also *Torres v. Rock & River Food Inc.*, 201 F. Supp. 3d 1373, 1374-1375 (2016) where evidence of subsequent remedial measures could only be introduced for impeachment purposes.

John Doe does not intend to bring this demonstrative evidence unless Strike 3 moves to admit and then has admitted the alleged "infringed works" as evidence that "playable" movies were infringed. These alleged infringed "playable movies" were not gathered from the IP address at issue, rather from other computers on different

---

[4] Frontier did not provide evidence that John Doe was assigned the IP address at issue in this case for 10 of the 36 infringements.

12

dates. The only evidence that Strike 3 has from the IP address at issue are the PCAP's and each PCAP is a miniscule amount of data.

## III. CONCLUSION

John Doe respectfully requests that Strike 3's Motions in Limine 1-8 be denied in their entirety.

Dated: December 27, 2022

Respectfully submitted,
BY: */S/ J. CURTIS EDMONDSON*
J. Curtis Edmondson (CSB 236105)
Admitted Pro Hac Vice
Edmondson IP Law
15490 NW Oak
Hillsboro, OR 97123
503-336-3749/ FAX: (503) 482-7418
jcedmondson@edmolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel listed below using CM/ECF system.

By: */s/J. Curtis Edmondson*
J. Curtis Edmondson

## SERVICE LIST

| MAMONE VILLALON<br>Tyler A. Mamone, Esq.<br>100 SE 2nd St., Suite 2000<br>Miami, Florida, 33131<br>Tel: (786) 209-2379<br>Tyler@mvlawpllc.com<br>*Counsel for Plaintiff* | WAUGH GRANT<br>Christian Waugh, Esq.<br>201 E. Pine Street, Suite 315<br>Orlando, Florida 32801<br>Phone: 321-499-9097<br>Fax: 844-206-0245<br>christian@waughgrant.com<br>*Co-counsel for Plaintiff* |
|---|---|