UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 8:20-cv-00676-MSS-CPT

STRIKE 3 HOLDINGS, LLC, a limited
liability company,

    Plaintiff/Counter-Defendant,

v.

JOHN DOE infringer assigned IP address
47.197.99.186, an individual,

    Defendant/Counter-Plaintiff.

_____/

**PLAINTIFF'S/COUNTER-DEFENDANT'S
MOTION REQUESTING STATUS CONFERENCE**

Pursuant to Section III.C. of the Court's Third Amended Case Management and Scheduling Order [DE 86] (hereinafter "CMSO"), as well as Fed. R. Civ. P. 16(f), Plaintiff/Counter-Defendant, Strike 3 Holdings, LLC ("Strike 3") respectfully requests the Court enter an order requiring the parties to attend a status conference regarding their efforts to prepare the Joint Final Pretrial Statement and other related matters that need to be addressed before a trial is set, such as the length of the trial.

## I. BACKGROUND

What should have been a straightforward trial by evidence over Strike 3's claim for copyright infringement has collapsed into a trial by ordeal. Defendant's stonewalling, lack of diligence, dilatory tactics, and omissions in litigation have carried over into the pretrial process, forcing Strike 3 to first file an incomplete Joint Final Pretrial Statement [DE 149], supplements [DE 156], and a Response [DE 168] to Defendant's Partial Objection to the Proposed Jury Instructions and Verdict Form [DE 164].

Defendant recently requested–absent a Local Rule 3.01(g) conferral, and despite numerous requests from Plaintiff to confer–a status conference on the parties' disagreements over the verdict form. *See id.* Strike 3 has since informed Defendant of its consent to that to a status conference in a letter sent on January 5, 2023. Exhibit 1. This letter also requested production of outstanding materials and consent to expand the scope of the status conference to include additional issues. Specially:

> (1) the various motions to remain pending before the Court; (2) issues coordinating dates with the witnesses (most of whom are not based within Florida) such that a request for a date certain for trial may be warranted; (3) issues with the length of the trial; (4) issues with the dearth of stipulated facts in the Statement of Admitted Facts [DE 149] at §9; and (5) issues with pretrials materials still missing from Defendant.

> To that end, to resolve at least these latter issues without the Court's intervention, Strike 3 needs from Defendant: (1) Defendant's proposed verdict form; (2) Defendant's revised objections to Strike 3's Exhibit List; and (3) Defendant highlighted deposition designations. This is the last time I will ask for these items, which are required by the Court order. There is no excuse for your continued failure to deliver these items. The Court's Case Management and Scheduling Order authorizes sanctions for a party's failure to comply with that order or the pretrial procedures. [DE 89] at IV.

Defendant responded to that letter on January 9. Exhibit 2. His response acknowledged some of the issues Strike 3 raised but did not express his consent or opposition to any of the proposed status conference topics.

Defendant's letter only addressed the issues related to "length of the trial," "the dearth of stipulated facts in the Statement of Admitted Facts" and "[the] pretrials materials still missing from Defendant[.]" Although Defendant did not expressly consent to include the issue of the trial's length at the status conference, counsel acknowledged that they are "willing to work with Strike 3 and the Court on a reasonable trial estimate, but [they] would encourage [Strike 3] to again reconsider proceeding on all works and advising how [Defendant and his counsel] are supposed to be able to tie the copyright certificates to the works[.]" *See id.* at p.3.  With respect to the missing materials, Defendant acknowledged that he will send "the amended verdict form to [Plaintiff] by Friday, January 13th." *See id.* at p.2. Defendant also

3

expressed that he will confer with Strike 3 on the specific issues with his objections to Plaintiff's Exhibit List. *See id.* Finally, Defendant waived [his] use of deposition designations at trial. *See id.* As a result, that point has been largely resolved, and Strike 3 will continue to confer with Defendant on the errors in his objections to Plaintiff's Exhibit List. Finally, Defendant's conferral on the issues with the Statement of Admitted Facts is irrelevant and those issues are discussed in greater detail below.

While the parties continue to confer on these issues, because trial date is approaching rapidly, Strike 3 files the following motion and will update the Court on Defendant's positions once they are made.

## II.   STANDARD

Rule 16(f)(1)(C) imbues the Court with the power to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Additionally, the Court "has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). The CMSO permits parties

to request a status conference to "coordinate . . . compliance" with that Order. *See* [DE 85] at III.C.

### III. ANALYSIS

#### A. The Pending Motions Before the Court Will Affect Trial Strategy for Both Parties

As outlined in the Joint Final Pretrial Statement, there are eight pending motions before the Court, [DE 149] at §13m, including lengthy dispositive motions, as well as the dueling motions *in limine* and the parties' requests for a status conference. These motions run the gamut from substantive issues to the admissibility of specific evidence and witnesses. Trial is currently scheduled for January 30. As the parties prepare and coordinate with witnesses, it is extremely likely that some of their efforts will be influenced by the Court's ruling on these motions. Strike 3, thus, respectfully requests that the Court consider these pending motions at the status conference and set a setting a date certain for trial so that the parties can ensure their witnesses availability for trial, preferably out of the current trial window, or, if inside the current trial term window, with enough time to arrange international and domestic flights.

#### B. Resolving Disputes over the Statement of Admitted Facts Will Reduce Trial Time By Days

5

The most pressing issue Strike 3 seeks to discuss with the Court is Defendant's refusal to stipulate to facts that are apparent on their face. But Defendant only partially stipulated to *two facts*. See [DE 149] at §9, ¶¶1–2.[1] This is in direct contravention of the CMSO, which orders the parties to "stipulate to as many facts and issues as possible" and "make *an active and substantial effort* to stipulate at length and in detail as to agreed facts and law, and to limit, narrow, and simplify the issues of fact and law that remain contested[.]"[2] See [DE 86] at III.A.2 (emphasis added). The Court needs to be aware of this issue and its implications for trial now because, as it stands, Strike 3 believes trial will take two (2) weeks to complete, despite the estimated length of trial stating three (3) days in the Third CMSO [DE 86]. Had John Doe really thought that he was not going to stipulate to the authenticity of the thirty-six (36) movies, then he should never have allowed the Court to believe a trial would take three (3) days.

---

[1] Defendant stipulated to at least six facts in the Parties' Stipulation of Agreed Material Facts for Cross Motions for Summary Judgment. [DE 136]. Defendant even struck the *exact* point he stipulated to previously. See Exhibit 3 at ¶6. This is sanctionable bad faith.

[2] The CMSO even establishes an objective benchmark for good faith conduct: "[A]s a rule, parties who have complied with this requirement in good faith will file a Joint Final Pretrial Statement *listing far more agreed facts and principles of law than those that remain for determination at trial*[.]"

To facilitate the Statement of Admitted Facts, Strike 3 sent Defendant a draft of stipulated facts on November 3, and its Exhibit List on November 23 (with some additions to the Exhibit List several days later). That draft of the stipulated facts contained citations for almost every point. Despite several attempts by counsel to follow up on Defendant's positions, Defendant repeatedly declined to comment on the stipulations. Despite having Strike 3's stipulations for over three weeks, Defendant's counsel did not comment on any of those materials until the night of Sunday, November 27, just three-days before the parties' meeting. Of the 108 proposed factual stipulations, Defendant struck *all but two* of the stipulations (although even the surviving points were partially struck). *See* Exhibit 3 at ¶¶2, 3. Defendant did not propose any additional factual stipulations, did not explain why he would not stipulate to many of these facts, and did not propose any revisions beyond the strikethroughs.  Strike 3 informed Defendant that his stipulations were inadequate, but he would not admit any more facts.

Many of the proposed facts are obvious on their face as they quote directly from the discovery materials, and list the dates of certain filings (from the record) to establish the timeline. But, Defendant would not stipulate to these points. This refusal has far reaching consequences for trial. This is

particularly true of Defendant's refusal to stipulate to any language related to the similarity of the "control copies" and "infringing copies" of the works. *See* [DE 138-10]; *see also* Exhibit 3 at ¶49.

First, the similarity between the copies of the works is not seriously in question. Defendant has had these materials for months and has not produced a single expert report, witness, or argument denying the similarity of any of the copies of any of the thirty-six works-in-suit. Plaintiff is unaware of any basis for Defendant to *not* stipulate that these copies are, at a minimum, similar. Indeed, they are visually and auditorily exact replicas. Second, having to publish and examine each of the thirty-six works with the jury *twice* to demonstrate their similarity will add hours if not days to the trial. To date, Defendant has not articulated what and where in these copies there are salient differences. This only serves to increase the cost and time expended at trial to prove an obvious fact.

Defendant argues that he cannot stipulate to the authenticity because "Strike 3 has never provided any documents or means to tie the copyright certificates to the movies/movie clips at issue in this case[.]" Exhibit 2 at p.2. But Defendant fails to explain why his dispute over the authenticity of the works prevents him from agreeing to (or suggesting revisions to) other factual

8

stipulations. And authenticity objections are wholly separate and distinct from issues of similarity. The former inquiry is procedural and evidentiary, the latter is factual. Indeed, Defendant can maintain his foundation objection while still recognizing that two files are similar to one another.

Defendant's objection is also frivolous. The "control copies" and "infringing copies" are clearly labeled. The "control copies" have the website and work's title in the file name. The "infringing copies" are labeled by their infohashes, which can be easily correlated with the work. *See* [DE 17-1]. And they can be confirmed through various methods. As Strike 3 has previously explained:

> All of the works' titles are displayed publicly on Plaintiff's websites, and Defendant has the hash values and registration numbers, [DE 17-1], as well as the titles. *See* [DE 138-10]. Defendant also has the certificates of registration, [DE 114-1], deposit copies of the works as registered with the Copyright Office (which contain the titles corresponding to the certificate and the websites in the file names), and copies of the works as they appear when downloaded from the BitTorrent network, *see* [DE 138-10], as confirmed by Ms. Stalzer. *See* [DE 11-3] at ¶¶8–11. Mr. Dickson, also identifies several elements to distinguish the works, including different runtimes, performers, and plots. *Compare* [DE 109-1] at 16–22 with [DE 137-9] at ¶¶9–10.

[DE 142] at 1–2. Strike 3's corporate representative and Chief Technology Officer have also been tendered as witnesses who can authenticate the files.

*See* Fed. R. Evid. 901(b)(1). Thus, Defendant's objection is meritless and a poor excuse for failing to stipulate to basic facts. These matters will directly impact the length of the trial. If even minor, reasonable stipulations occur, then the trial may be one (1) week or five (5) days. If major stipulations occur, it could be three (3) days. If the situation stays as it is, this is a two (2) week trial due to the introduction and publishing of thirty-six (36) works and their infringing copies, which would need to be viewed by the jury for similarity. It is possible that Strike 3 could contrive of a method to show both, for each of the thirty-six (36) at the same time, side-by-side, but such a trial technique will still lead to several days being spent on viewing.

### C. Defendant's Conduct May Be Sanctionable

"[T]he district court possesses the inherent power to police its docket." *Royal Palace Hotel Assocs., Inc. v. Int'l Resort Classics, Inc.*, 178 F.R.D. 588, 591 (M.D. Fla. 1997) (citations omitted). To sharpen the disputes for trial, the Court has ordered that "the parties shall make an active and substantial effort to stipulate at length and in detail as to agreed facts and law, and to limit, narrow, and simplify the issues of fact and law that remain contested" *See* [DE 86] at III.A.2., as well as gather and submit other materials to aide in the expeditious resolution of the claims. Despite multiple conferrals, Defendant

has ignored these duties and has refused to participate in good faith. This has delayed the pretrial process and wasted hours of Strike 3's time trying to remedy these defects. If the Parties are unable to improve these situations, then it may be a basis for sanctions under 28 U.S.C. §1927. Either Strike 3 would so move or ask that the Court issue an order to show cause why John Doe and his counsel should not be sanctioned under it, citing Middle District of Florida precedent.

### IV. CONCLUSION

For the foregoing reasons, Strike 3 respectfully requests the Court hold a status conference with the parties to review their pretrial disputes and sanction Defendant.

Dated: January 10, 2023

        Respectfully submitted,

        /s/ Christian W. Waugh
        Christian W. Waugh [FBN 71093]
        WAUGH GRANT PLLC
        201 E. Pine Street, Suite 315
        Orlando, FL 32801
        Email: cwaugh@waughgrant.com
        Telephone: 321-800-6008
        Fax: 844-206-0245

        *Counsel for Plaintiff*

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to the Third Amended Case Management and Scheduling Order at II.I., and Local Rule 3.01(g), undersigned counsel conferred with Defendant's counsel on January 5, 2023, Plaintiff emailed all four of Defendant's counsel to consent to his motion requesting a status conference, and to confer with Defendant on expanding the scope of that conference to the various materials discussed above. Defendant responded via Email on January 9 and has proposed the parties call to further discuss these issues "next week."

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2023, a true and correct copy of the following documents was served on Defendant's counsel by email via CM/ECF.

/s/ Christian W. Waugh